# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

_____

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

_____

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-
ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

## APPENDIX TO BRIEF FOR THE APPELLANTS

# Volume V - A0574-A0635

# EXHIBIT 2

**AMENDMENT 25
TO CREDIT AGREEMENT OF
TRANSCARE CORPORATION**

Amendment 25 (this "<u>Amendment</u>"), dated as of March 5, 2015, to the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "<u>Credit Agreement</u>"), among TRANSCARE CORPORATION, a Delaware corporation (the "<u>Borrower</u>"), the financial institutions and other investors from time to time party thereto as Lenders and PATRIARCH PARTNERS AGENCY SERVICES, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "<u>Administrative Agent</u>"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

W I T N E S S E T H :

WHEREAS, the Borrower, the Guarantors, the Lenders and the Administrative Agent are party to the Credit Agreement;

WHEREAS, the Lenders party to this Amendment, the Borrower and the Administrative Agent have agreed, subject to certain limitations and conditions set forth below, to make certain amendments to the Credit Agreement, as more specifically set forth below;

NOW, THEREFORE, the parties hereto agree as follows:

Section 1.    <u>Amendments to the Credit Agreement</u>.    The Credit Agreement is, effective as of the date first written above and subject to the satisfaction (or due waiver) of the conditions set forth in <u>Section 2</u> (<u>Conditions Precedent to the Effectiveness of this Amendment</u>) hereof, hereby amended as follows (with boldface, underlining, highlighting, indenting and other formatting modified to conform to the formatting of the Credit Agreement):

(a)    <u>Amendment to Schedules to the Credit Agreement</u>.    The contents of Schedule 1.0 to the Credit Agreement are hereby replaced in their entirety with the contents of <u>Schedule A</u> hereto.

Section 2.    <u>Conditions Precedent to the Effectiveness of this Amendment</u>.    This Amendment shall become effective as of the date first written above (the "<u>Amendment Effective Date</u>") when, and only when, each of the following conditions precedent shall have been satisfied or duly waived by the Administrative Agent (the date each such conditions precedent is satisfied or duly waived, the "<u>Conditions Precedent Date</u>"):

(a)    <u>Certain Documents</u>.    The Administrative Agent shall have received this Amendment, duly executed by the Borrower, each other Loan Party and the Lenders party hereto, constituting the Required Lenders, together with such additional documentation as the Administrative Agent may reasonably require, dated the Amendment Effective Date (unless otherwise agreed by the Administrative Agent) and in form and substance satisfactory to it;

(b)    <u>Representations and Warranties</u>.    Each of the representations and warranties contained in this Amendment were true when made;

**A0575**

Confidential

      (c)     <u>No Default or Event of Default</u>.  After giving effect to this Amendment, no Default or Event of Default shall hav e occurred and be continuing, either on the date hereof or on the Conditions Precedent Date;

      (d)     <u>Corporate and Other Proceedings</u>.  All corporate and other proceedings, and all documents, instruments,  consents and othe r legal matters ancillary to the transactions contemplated by this A mendment shall be co mpleted in a form and  manner satisfactory in all respects to the Administrative Agent; and

      (e)     <u>Fees and Expenses Paid</u>.  The Borrower shall have  paid all Obligations due, after gi ving effect to this Am endment, on or  before the l ater of the d ate hereof and the Conditions Precedent Date, including, without limitation, all fees set forth in <u>Section  4</u> (<u>Fees and Expenses</u>) hereof and all   other costs, expenses a nd fees due under any Loa n Document and invoiced prior to the Conditions Precedent Date.

     Section 3.     <u>Representations and Warranties</u>.  On and as of the d ate hereof and as of the Conditions Precedent Date, after giving effect to this Amendm ent, each Loan Party  hereby represents and warrants to the Administrative Agent and each Lender as follows:

      (a)     <u>Binding Obligation</u>.  This A mendment has been  duly authorized, executed and delivered by such Loan Party and constitutes a legal, valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordan ce with its terms and the Credit Agreement as modified by this Amendment;

      (b)     <u>Subsidiaries</u>.  (i) If such Loan Party is the Borrower, the represent ations and warranties set forth in  <u>Section 6.15</u> (<u>Subsidiaries</u>) of the Cr edit Agreement are true as of the date hereof ( replacing "Closing Date" therein with the date of this Amend ment and taking into account any updated information delivered by the Borrower to the Administrative Agent on or prior to the date hereof) an d all new Loan Documents required to be executed an d delivered by or with respect to Subsidiaries of the Borrower ex isting on the Conditions Precedent Date b y the existing Loan Documents, including , without lim itation, <u>Section 8. 10</u> (<u>Additional Coll ateral;</u> <u>Additional Subsidiary Guarantors</u>) thereof, have been executed a nd delivered and (ii) in any case, all certificates, statements, updated sch edules, collateral and other updat es and other documents required to be delivered by such Loan Party to the Administrative Agent or any Lender pursuant to any Loan Document as modified hereby have been delivered thereunder and all filings requi red to be made by  or on behalf of such Loan  Party p ursuant to an y such Loan Doc ument have been made;

      (c)     <u>Representations and Warranties in Loan Docu ments</u>.  Each of the other representations and warra nties of such  Loan Part y contained any Loan Document (a s modified hereby) or in any certificate, document or financial or other statement furnished  at any time under or in connection therewith is true in al  l material respects on and as of the  date hereof and the Conditions Precedent Date, in each case as if made on and as of such date and except to the extent that such representations  and warranties expressly relate to a  specific date, in which cas e such representations and warra nties shall be true in all     material respects as of s uch specific date; <u>provided,</u> that, as used therein, (i)  "<u>Credit Agreement</u>" shall refer to the Credit Agreement and after giving effect to this Amendment and (ii) "<u>Loan Documents</u>" shall include this Amendment;

      (d)     <u>No Litigation or Defense </u>.  No litigation has been co     mmenced or threatened against such  Loan Party or any  of its Subsidiaries seeking to restrain or enjoin

Confidential

PP-TRBK0099601

(whether temporarily, preliminarily or permanently) the performance of any action by any Loan Party or an y Subsidiary of any Loan Party required or contem plated by the terms of this Amendment or any other Loan Docu ment as modified hereby, and there exists no cause of action, offset, claim, counterclaim or defense, whether or not asserted, against the Administrative Agent or any Lender or any of their Related Parties (as defined below) with respect to the Obligations under any Loan Document;

   (e)  <u>No Default or Event of Default</u>. No Default or Event of Default is continuing; and

   Section 4.  <u>Fees and Expenses</u>.

   (a)  As consideration for the execution of this Amendment, the Loan Parties jointly and s everally agree to pa y to the Administrative Agent for this Am endment by 5 p.m. (New York Time) on the date of this Amendment (or such later date or time as the Administrative Agent and the Borrower may agree), an amendment fee equal to $3,000. The Ad ministrative Agent may (but shall not be obligated to), as pa yment thereof, deduct such fee from the proceeds of any Loan to be funded to the Borrower on or after the date hereof.

   (b)  Each Loan Party agrees to pay on demand in accordance with the ter ms of <u>Section 12.5</u> (<u>Payment of Expenses and Taxes</u>) of the Credit Agreement all costs and expenses of the Administrative Agent in connection with the preparation, reproduction, execution, delivery and enforcement of this Amendment and all othe r Loan Documents entered into in connection herewith (including, without lim itation, the fees and expenses of attorne ys, advisors and other professionals hired by the Administrative Agent w ith respect to the Loan Parties or the Loa n Documents).

   Section 5.  <u>Release</u>.

   (a)  In further consideration f or the ex ecution by the A dministrative Agent and the Lenders party hereto of this Amendment and without limiting any rights or remedies the Administrative Agent or any Lender may have, each Loan Party hereby releases e ach of the Administrative Agent, eac h Lender and each of their Relat ed Parties (e ach a "<u>Releasee</u>" and, collectively, the "<u>Releasees</u>") from any and all Clai ms that any Loan Party has or m ay have against any Releasee, whether or not relating to any Loan Document, Obliga tion, Collateral, or legal relationship that exists or may exist between any Releasee and any Loan Party.

   (b)  As used in this <u>Section 5</u>, (i) "<u>Claims</u>" means all liabilities, rights, demands, covenants, duties, oblig ations (including, without lim itation, indebtedness, receivabl es and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, losses, debts, responsibiliti es, fines, penalties, sanctions, co mmissions and interest, disbursements, taxes, charges, costs, fees and expenses (including, without lim itation, fees, charges and disburse ments of financial, legal and other advisors, consultants and professionals and, if applicable , any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and w hether or not known, asser ted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "<u>Related Party</u>" means, with respe ct to any Person, any Affiliate of such Perso n or of another Rel ated Party of such Person (excluding, in each case, (A) the Loan Parties and their Controll ed Affiliates and (B) any other Portfolio Company) and such Person's and such Affiliate' s predecessors, successors, assigns, managers, members,

- 3 -

Confidential

partners, directors, officer s, employees (regardless of whether seconded to a third part y and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fi duciaries, representatives and advisors, (iii) "Portfolio Company" means any Person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any Person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or t he Administrative Agent and (v) "Controlled Affiliate" means, with r espect to any entity, any Person directl y or indirectly "controlled" (a s defined in the definiti on of "Affil iate" set forth in t he Credit Agreement on the date hereof) by one or more of such entity and its other Controlled Affiliates.

Section 6.    Consent of Subsidiar y Guarantors and Reaffirmation of Oblig ations. Each Subsidiary Guarantor hereby consents to this Amendment and agrees that it continue s to guaranty, pursuant to the Loan Documents, jointly and severally, unconditionally and irrevocably, as primary obligor and not as surety, the prompt and complete payment and performance when due of the Obligations as modified hereby and that the terms hereof shall not affect in any way its obligations and liabilities, as expressly modified hereby, under the Loan Documents. Each Loan Party hereby reaffirms (a) all such obligations and liabilities, and agrees that such obligations and liabilities shall remain in full force and effect, (b) the Liens granted under the L oan Documents, and agrees that such Liens shall continue to secure the Obligations as expressly modified hereby, and (c) the validity and enforceability of the Loan Documents.

Section 7.    Effect on the Loan Documents. This A mendment is a Loan Docu ment and is limited as written. As of the date each modification set forth herein shall become effective, each reference in the Cred it Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of like import, and each refe rence in the other Loan Documents to the Credit Agree ment (including, without limitation, by means of words lik e "thereunder," "thereof" and words of l ike import), shall refer to the Credit Agreement as modified thereby, and th is Amendment and the Credit Agreement shall be read together and c onstrued as a single agree ment. The execution, delivery and effectiveness of this A mendment shall not, except as expres sly provided herein, (a) waive or m odify any right, power or remedy under, or any other provision of, any Loan Document or (b) commit or otherwise obligate th e Administrative Agent or any Lender to enter into or consider entering into any other waiver or modification of any Loan Document.

Section 8.    Waiver of Jury Trial; Miscellaneous. Headings are for convenien ce only and do not form part of thi s Amendment, except when used to reference an arti cle or section, in which case such title reference shall govern absent manifest error in case o f conflict. All communications and notices her eunder shall be given as provided in the Loan Documents. This Amendment (a) shall be governed by and construed in accordance with the law of the State o f New York, (b) is for the e xclusive benefit of the pa rties hereto and, together with the other Loan Documents, constitutes the entire agreem ent of su ch parties, superseding all prior agreements among them, with respect to the subject matter hereof, (c) may be modified, waived or assig ned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Loan Docu ments (and any attempt to assign this Amendment without such writing shall be null and v oid), (d) may be execu ted in counterparts, which may be effectively

- 4 -

**A0578**

transmitted by fax  or e-mail (in each   case return receipt requested and  obtained) and which, together, shall constitute one and the same instru ment, (e) is a negotiated document, entered  into freely among the parties upon advice of their own counsel, and it should not be construed against any of its drafters and (f)  shall survive the satisf action or discharge of the  Obligations.  The fact that any term or provision of this Amendm ent is held invalid, ille gal or unenforceable as to any person in any situation in any jurisdiction shall not affect the validity, enforceability or legality of the  remaining  terms  or  provisions  hereof or th  e  validity,  enforceability  or  legality  of  such offending  term or provision in an  y  other  situation  or jurisdiction or as  applied to any  person. **Each party hereto hereby irrevocably and unconditionally waives any right to trial by jury with respect to this Amendment.**

[SIGNATURE PAGES FOLLOW]

- 5 -

Confidential

PP-TRBK0099604

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers and general partners thereunto duly authorized, as of the date first written above.

TRANSCARE CORPORATION,
    as Borrower

By: _____
    Name:
    Title:

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
    as Subsidiary Guarantor

By: _____
    Name:
    Title:

SIGNATURE PAGE TO AMENDMENT 25
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0580**

Confidential

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
    as Administrative Agent

By: _____
    Name:   Lynn Tilton
    Title:    Manager


ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager


By: _____
    Name:   Lynn Tilton
    Title:    Manager


ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager


By: _____
    Name:   Lynn Tilton
    Title:    Manager


ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager


By: _____
    Name:   Lynn Tilton
    Title:    Manager

Confidential                                                    PP-TRBK0099606

ARK INVESTMENT PARTNERS II, L.P.,
    as Lender
By: Ark Investment GP II, LLC,
    its General Partner

By: _____
    Name: Lynn Tilton
    Title: Manager

SIGNATURE PAGE TO AMENDMENT 25
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0582**

PP-TRBK0099607

Case 1:20-cv-06274-LAK   Document 11-5   Filed 09/30/20   Page 11 of 63

FIRST DOMINION FUNDING I,
    as Lender
By: Credit- Suisse Asset Management, LLC,
    its Collateral Manager


By: _____
    Name:
    Title:


CREDIT SUISSE ALTERNATIVE CAPITAL, INC.,
    as Lender


By: _____
    Name:
    Title:

SIGNATURE PAGE TO AMENDMENT 25
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0583**

Confidential

PP-TRBK0099608

18-01021-smb   Doc 104-2   Filed 07/08/19   Entered 07/08/19 21:19:09   Ex. 2 - Pg
11 of 11

Case 1:20-cv-06274-LAK   Document 11-5   Filed 09/30/20   Page 12 of 63

SCHEDULE A TO
AMENDMENT 25
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

(As of March 5, 2015)

#### Revolving Credit Loans

| Revolving Credit Lender | Revolving Credit Loan Commitment | Revolving Credit Loan Commitment Period |
|---|---|---|
| Zohar III, Limited | $1,350,000 | N/A |

#### Tranche A Term Loans

| Tranche A Term Loan Lender | Tranche A Term Loans Outstanding |
|---|---|
| Ark Investment Partners II, L.P. | $2,905,731.99 |
| Zohar III, Limited | $15,584,129.76 |
| First Dominion Funding I | $4,043,858.69 |
| Credit Suisse Alternative Capital, Inc. | $3,537,243.56 |

#### Tranche B Term Loans

| Tranche B Term Loan Lender | Tranche B Term Loans Outstanding |
|---|---|
| Zohar CDO 2003-1, Limited | $3,500,000.00 |

#### Tranche C Term Loans

| Tranche C Term Loan Lender | Tranche C Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $0 |

#### Tranche D Term Loans

| Tranche D Term Loan Lender | Tranche D Term Loans Outstanding |
|---|---|
| Zohar III, Limited | $2,961,052.63 |

#### Tranche E Term Loans

| Tranche E Term Loan Lender | Tranche E Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $850,000.00 |

#### Tranche F Term Loans

| Tranche F Term Loan Lender | Tranche F Term Loans Outstanding | Tranche F Term Loan Commitment |
|---|---|---|
| Zohar III, Limited | $2,883,560.00 | $4,650,000.00 |

**A0584**

Confidential

Case 1:20-cv-06274-LAK    Document 11-5    Filed 09/30/20    Page 13 of 63

# EXHIBIT 3

Confidential

Page 1

```
 1
 2          UNITED STATES BANKRUPTCY COURT
 3          SOUTHERN DISTRICT OF NEW YORK
 4    --------------------------------X     *
                                            *
      In re:                                *
                                            *
 5    TRANSCARE CORPORATION, et al,         *      Chapter 7
                                            *
 6              DEBTORS,                     *
      --------------------------------X     *      CASE NO:
 7    SALVATORE LAMONICA, as Chapter 7      *      16-10407
      Trustee for the Estates of            *        (SMB)
 8    TransCare Corporation, et al.,        *
                                            *
 9                  PLAINTIFF,              *       Jointly
                                            *     Administered
10          vs                              *
                                            *
11    LYNN TILTON, PATRIARCH PARTNERS       *
      AGENCY SERVICES, LLC, PATRIARCH       *     Adv. Proc.
12    PARTNERS, LLC, PATRIARCH PARTNERS     *     No. 18-1021
      MANAGEMENT GROUP, LLC, ARK II CLO     *
13    2001-1, LIMITED, ARK INVESTMENT       *
      PARTNERS II, LP, LD INVESTMENTS,      *
14    LLC, PATRIARCH PARTNERS II, LLC,      *
      PATRIARCH PARTNERS III, LLC,          *
15    PATRIARCH PARTNERS VIII, LLC,         *
      PATRIARCH PARTNERS XIV, LLC,          *
16    PATRIARCH PARTNERS XV, LLC,           *
      TRANSCENDENCE TRANSIT, INC, and       *
17    TRANSCENDENCE TRANSIT II, INC,        *
                                            *
18              DEFENDANTS.                 *
      --------------------------------X     *
20
21            *** CONFIDENTIAL ***
22      Videotaped Deposition of LYNN TILTON
23            New York, New York
24         Monday, October 29, 2018
25
```

Case 1:20-cv-06274-LAK   Document 11-5   Filed 09/30/20   Page 15 of 63
Confidential

Page 18

1                        LYNN TILTON

2    the 2015/2016 timeframe, if you know?

3         A.    I don't know.

4         Q.    More than 50?

5         A.    No.

6         Q.    More than ten?

7         A.    Probably approximately ten.

8         Q.    There is another entity called

9    Patriarch Partners Agency Services, LLC.  Are

10   you familiar with that company?

11        A.    Yes.

12        Q.    Is that a standalone company?

13             MR. MERVIS:  Objection to the form.

14             THE WITNESS:  I don't know what you

15        mean by standalone company.

16   BY MR. AMINI:

17        Q.    What I mean is do you own that

18   company, individually?

19        A.    Yes.

20        Q.    Does it have any subsidiaries?

21        A.    No.

22        Q.    And you are, based on your

23   testimony, the manager of Patriarch Partners

24   Agency Services, LLC; is that correct?

25        A.    Yes.

Case 1:20-cv-06274-LAK   Document 11-5   Filed 09/30/20   Page 16 of 63

Confidential

Page 19

                         LYNN TILTON

1

2      Q.    And you've held that position since

3   at least 2015?

4      A.    Yes.

5      Q.    And what does Patriarch Partners

6   Agency Services, LLC do?

7      A.    It serves as the agent for lender

8   groups who loan money to these portfolio

9   companies, among having relationships with the

10  portfolio companies themselves.

11     Q.    Besides being the agent for lender

12  groups who loan money to the portfolio

13  companies, what other relationships with the

14  portfolio companies are you referring to?

15     A.    They also have custodial

16  relationships with the portfolio companies

17  under the credit agreement.

18     Q.    And by custodial relationships, what

19  are you referring to?

20     A.    Often they hold money for them, if

21  appropriate; or in certain circumstances, act

22  as their bank accounts, if necessary.

23     Q.    What is ARK II CLO 2001 Limited?

24     A.    ARK II is my personal investment

25  account where I lend or provide equity

Confidential

Page 83

1                    LYNN TILTON

2        A.    Not on the deal, yes, but not on the

3   purchase of receivables.  They were well aware

4   of the deal and approved the NewCo.

5        Q.    When you say they approved the

6   NewCo, you're talking about Wells or somebody

7   else?

8        A.    Wells.  Wells was involved in the

9   deal every step of the way.  It was a deal to

10  save 700 jobs and to get Wells out whole,

11  that's what it was structured for and to do an

12  orderly wind down of the core 911 business over

13  90 days.  That was the deal that was

14  structured.

15       Q.    And you said Wells approved it, who

16  at Wells approved it?

17       A.    Kurt Marsden and their attorney

18  Otterbourg.

19       Q.    Did they communicate that to you

20  directly?

21       A.    They did through the attorneys.

22  Well, I mean I talked to Kurt Marsden directly,

23  yes.  And right as the deal was going on it was

24  approved through Curtis Mallet and Otterbourg.

25       Q.    So your understanding of this deal

Page 236

1              LYNN TILTON

2        Q.    Do you have a recollection that when

3   you did file, you had missed an earlier

4   payroll?  On February 24th, when you filed the

5   bankruptcy, do you have any recollection that

6   the payroll prior to that date had been missed?

7        A.    By the company, yes, because Wells

8   had said they would fund it and then did not.

9              (Whereupon, Plaintiff Exhibit 48,

10        Pelissier E-mail Chain Dated 2/14/16, Bates

11        Stamped PP-TRBK0091291 to '299, 9-Pages was

12        previously marked for identification.)

13   BY MR. AMINI:

14        Q.    Let me show you what was previously

15   marked as Exhibit 48.

16        A.    Okay.

17        Q.    Are you familiar with this document?

18        A.    Yes.

19        Q.    What is it?

20        A.    This is the document that we put

21   together on a check list of all the things we

22   would need to doff in order to execute on the

23   Article nine foreclosure sale and the

24   Chapter 11 bankruptcy orderly wind down or

25   Chapter 7 orderly wind down.

Page 237

1                    LYNN TILTON

2        Q.    And is it fair to say this is a

3   check list that, with whatever adjustments were

4   necessary, but the check list that you followed

5   for the next ten days leading up to the

6   bankruptcy?

7              MR. MERVIS:  Object to the form of

8        the question.

9              THE WITNESS:  We worked on all of

10        these issues during those days because

11        everything on this list was necessary in

12        order to execute on that plan.  And so

13        there may have been things added there may

14        have been things deleted but this was our

15        list of what we thought needed to get done

16        in order execute on those two endeavors of

17        Article nine foreclosure as well as a

18        chapter filing for an orderly wind down of

19        certain of the entities.

20   BY MR. AMINI:

21        Q.    And what was Peter Wolf's roll going

22   to be going for the record if anything?

23        A.    I don't recall.

24        Q.    What about Glen Youngblood?

25        A.    He was going to be the president of

Confidential

Page 238

1          LYNN TILTON

2    Transcendence.

3          Q.    What was he at this point in time,

4    do you know on February 14th?

5          A.    He had a role at Transcare, I don't

6    exactly what that role was.

7          Q.    When it says timing of all could

8    bankruptcy filing, had you ever determined that

9    you were going to do the foreclosure?

10         A.    We were considering this joint plan

11   this is what we were discussion Wells and Carl

12   Marks and the lawyers.  This was the two part

13   the Article nine foreclosure to save as much of

14   the company as possible and 700 jobs and an

15   orderly wind down of the 911 in core and other

16   businesses so give people the proper warn

17   notice.  To give the customers the chance to

18   move the business and to allow Wells to collect

19   their receivables.

20         Q.    This time to pay Document 48 it

21   lists does it not all the tasks that your time

22   at that point had come up with that needed to

23   be undertaken and who specifically would be

24   tasked with undertaking them, correct?

25         A.    This was our internal list of all

Page 239

                              LYNN TILTON

1

2   the actions we thought needed to get done to

3   execute on this plan and the people, whether it

4   was finished or the people who would be working

5   on and the date that we were trying to get it

6   done by.  Or things that needed to be done.

7        Q.     And J L P was Jean Luc?

8        A.     Please year, yes.

9        Q.     And G Y was Greg Youngblood?

10        A.     That is correct.

11               (Whereupon, Plaintiff Exhibit 124,

12        Tilton E-mail Chain Dated 2/15/16, Bates

13        Stamped CM_TC2018_0008781 to '8782, 2-Pages

14        was marked for identification.)

15        A.     Okay.

16   BY MR. AMINI:

17        Q.     This is correspondence between

18   yourself and Mr. Landeck and Carl Marks on

19   February 15th, right?

20        A.     That is correct.

21        Q.     And he was tasked with a budget for

22   the OldCo in bankruptcy, was he not?

23        A.     By whom?

24        Q.     I don't know, that was going to be

25   my next question.  First I'm asking, was he

Case 1:20-cv-06274-LAK Document 11-5 Filed 09/30/20 Page 22 of 63

Confidential

```
 1                    LYNN TILTON

 2        Q.    Well wasn't one of the conditions

 3   that the non-NewCo, the none New York Transcare

 4   companies be setup and running in advance so

 5   that Wells will not be funding any of those

 6   expenses?

 7               MR. MERVIS:  Objection.

 8               THE WITNESS:  They asked if it would

 9        be setup in advance.  Any mean look anyway

10        you look at it.  These were questions.

11        They were reviewing, as I stated earlier.

12        We discussed this NewCo OldCo transaction

13        with them for multiple weeks and they were

14        very interested in that transaction.  And

15        we were trying to come to agreement on the

16        conditions and there was, as you can see,

17        there was going to be at least a 90-day run

18        down or wind down plan on OldCo to give

19        those employees the 90-day warn out act

20        notice.  So it had to be the 90 days, as we

21        agreed to.

22   BY MR. AMINI:

23        Q.    Did you ever resolve the questions?

24               MR. MERVIS:  Objection to form.

25               THE WITNESS:  I don't know that we
```

# EXHIBIT 4

Case 1:20-cv-06274-LAK    Document 11-5    Filed 09/30/20    Page 24 of 63

# AMENDMENT 24
## TO CREDIT AGREEMENT OF
## TRANSCARE CORPORATION

Amendment 24 (this "Amendment"), dated as of February 26, 2015, to the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TRANSCARE CORPORATION, a Delaware corporation (the "Borrower"), the financial institutions and other investors from time to time party thereto as Lenders and PATRIARCH PARTNERS AGENCY SERVICES, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

## W I T N E S S E T H :

WHEREAS, the Borrower, the Guarantors, the Lenders and the Administrative Agent are party to the Credit Agreement;

WHEREAS, the Lenders party to this Amendment, the Borrower and the Administrative Agent have agreed, subject to certain limitations and conditions set forth below, to make certain amendments to the Credit Agreement, as more specifically set forth below;

NOW, THEREFORE, the parties hereto agree as follows:

Section 1.    Amendments to the Credit Agreement.    The Credit Agreement is, effective as of the date first written above and subject to the satisfaction (or due waiver) of the conditions set forth in Section 2 (Conditions Precedent to the Effectiveness of this Amendment) hereof, hereby amended as follows (with boldface, underlining, highlighting, indenting and other formatting modified to conform to the formatting of the Credit Agreement):

(a)    Amendments to Section 1 (Definitions).

(i)    The following definitions are hereby inserted in Section 1.1 (Defined Terms) of the Credit Agreement in the appropriate place to preserve the alphabetical order of the definitions in such section (and, if applicable, the following definitions shall replace in their entirety existing definitions for the corresponding terms in such section):

"Domestic Credit Party" means any Loan Party organized under the laws of the United States of America or any State thereof.

"LIBOR" means, as to any Loan for any day of any calendar month, the rate quoted by Bloomberg Information Service (or by any successor or substitute for such service providing rate quotations comparable to those currently provided by such service, as determined by the Administrative Agent from time to time for purposes of providing quotations of interest rates applicable to Dollar deposits in the London interbank market) at approximately 11:00 a.m., London time, two Business Days before the beginning of such calendar month, as the rate for Dollar deposits with a maturity comparable to one month. If such rate is not available at such time for any reason, LIBOR for any calendar month shall be the arithmetic mean (rounded upward, if necessary, to the next 1/16 of

**A0596**

PP-TRBK0099588

1%) of the offered quotations of at least two Reference Banks to the prime banks in the London interbank market for dollar deposits with a maturity comparable to one month at approximately 11:00 a.m., London time, two Business Days before the beginning of such calendar month.  For purposes of this definition, "Reference Banks" shall mean major banks in the London interbank market selected by the Administrative Agent.

"Revolving Credit Commitment" means, with respect to each Revolving Credit Lender and each Revolving Credit Loans, the amount, if any, set forth as such opposite such Revolving Credit Lender's name on Schedule 1.0 for Revolving Credit Loans of, as modified from time to time.

"Revolving Credit Commitment Period" means, with respect to Revolving Credit Commitments, the period set forth as such on Schedule 1.0 for such Revolving Credit Loans.

"Revolving Credit Loan" means a Revolving Credit Loan made by a Revolving Lender to the Borrower pursuant to Section 3.1.

"Revolving Credit Termination Date" means April 15, 2019.

(ii)    The definitions of the following terms are hereby deleted in their entirety from Section 1.1 (Defined Terms) of the Credit Agreement:

"Revolving Credit Commitment Percentage"

(b)    Amendments to Section 3 (Amount and Terms of Revolving Credit Commitments

(i)    Section 3.1 is hereby amended and restated in its entirety to read as follows:

3.1    Revolving Credit Loans.

(a)    During the Revolving Credit Commitment Period for any Revolving Credit Loan, subject to and upon the terms and conditions hereof, each Lender having a Revolving Credit Commitment in such Revolving Credit Loan agrees, severally and not jointly and severally, to make Revolving Credit Loans to the Borrower in the aggregate amount up to but not exceeding such Revolving Credit Commitment.

(b)    Amounts borrowed pursuant to this Section 3.1may be repaid and reborrowed during the Revolving Credit Commitment Period.  Subject to Sections 5.5 and 5.6, all amounts owed under this Section 2.1 shall be paid in full no later than the Revolving Credit Termination Date.

(c)    Any amount borrowed under this Section 3.1 shall (i) bear interest as set forth as such on Schedule 1.0 and (ii) be entitled to the security

- 2 -

**A0597**

interests, collateral and other rights and benefits provided pursuant to this Agreement and the other Loan Documents.

(ii)     Section 3.2 is hereby amended and restated in its entirety to read as follows:

3.2     <u>Revolving Credit Loan Borrowing Mechanics</u>.

(a)     Revolving Credit Loans shall be made in an aggregate minimum amount of $25,000 and integral multiples of $10,000 in excess of that amount.  No Lender shall be responsible for any default by any other Lender in such other Lender's obligation to make the Revolving Credit Loans hereunder.

(b)     Whenever the Borrower desires that the Lenders make a Revolving Credit Loan, the Borrower shall deliver to the Administrative Agent a fully executed borrowing certificate no later than 10:00 a.m. (New York City time) at least one Business Day in advance of the proposed Borrowing Date, which Borrowing Date shall be a Business Day.

(iii)     Section 3.3 is hereby amended and restated in its entirety to read as follows:

3.2     <u>Commitment Fee</u>.  The Borrower agrees to pay to the Administrative Agent, for the ratable benefit of the Lender in any Revolving Credit Loan, commitment fees on the actual daily amount by which the Revolving Credit Commitments in such Revolving Credit Loan exceed the aggregate outstanding principal amount of Revolving Credit Loan, at a rate equal to 0.625% per annum of such amount.  Such commitment fees shall accrue daily during the Revolving Credit Commitment Period for such Revolving Credit Loan and be payable in arrears on each Interest Payment Date for the Revolving Credit Loans and on the last day of the Revolving Credit Commitment Period for such Revolving Credit Loan.

(c)     <u>Amendments to Section 5 (General Provisions Applicable to Loans</u>

(i)     Clause (h) Section 5.1 (Interest Rates and Payment Dates) is hereby amended and restated in its entirety to read as follows:

(h) Each Revolving Credit Loan shall bear interest at a rate per annum equal to LIBOR + 4%.

(b)     <u>Amendment to Schedules to the Credit Agreement</u>.  The contents of Schedule 1.0 to the Credit Agreement are hereby replaced in their entirety with the contents of <u>Schedule A</u> hereto.

Confidential

PP-TRBK0099590

Section 2.    <u>Conditions Precedent to the Effectiveness of this Amendment</u>.  This Amendment shall become effective as of the date first written above (the "<u>Amendment Effective Date</u>") when, and only when, each of the following conditions precedent shall have been satisfied or duly waived by the Administrative Agent (the date each such conditions precedent is satisfied or duly waived, the "<u>Conditions Precedent Date</u>"):

(a)    <u>Certain Documents</u>.  The Administrative Agent shall have received this Amendment, duly executed by the Borrower, each other Loan Party and the Lenders party hereto, constituting the Required Lenders, together with such additional documentation as the Administrative Agent may reasonably require, dated the Amendment Effective Date (unless otherwise agreed by the Administrative Agent) and in form and substance satisfactory to it;

(b)    <u>Representations and Warranties</u>.  Each of the representations and warranties contained in this Amendment were true when made;

(c)    <u>No Default or Event of Default</u>.  After giving effect to this Amendment, no Default or Event of Default shall have occurred and be continuing, either on the date hereof or on the Conditions Precedent Date;

(d)    <u>Corporate and Other Proceedings</u>.  All corporate and other proceedings, and all documents, instruments, consents and other legal matters ancillary to the transactions contemplated by this Amendment shall be completed in a form and manner satisfactory in all respects to the Administrative Agent; and

(e)    <u>Fees and Expenses Paid</u>.  The Borrower shall have paid all Obligations due, after giving effect to this Amendment, on or before the later of the date hereof and the Conditions Precedent Date, including, without limitation, all fees set forth in <u>Section 4</u> (<u>Fees and Expenses</u>) hereof and all other costs, expenses and fees due under any Loan Document and invoiced prior to the Conditions Precedent Date.

Section 3.    <u>Representations and Warranties</u>.  On and as of the date hereof and as of the Conditions Precedent Date, after giving effect to this Amendment, each Loan Party hereby represents and warrants to the Administrative Agent and each Lender as follows:

(a)    <u>Binding Obligation</u>.  This Amendment has been duly authorized, executed and delivered by such Loan Party and constitutes a legal, valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its terms and the Credit Agreement as modified by this Amendment;

(b)    <u>Subsidiaries</u>.  (i) If such Loan Party is the Borrower, the representations and warranties set forth in <u>Section 6.15</u> (<u>Subsidiaries</u>) of the Credit Agreement are true as of the date hereof (replacing "Closing Date" therein with the date of this Amendment and taking into account any updated information delivered by the Borrower to the Administrative Agent on or prior to the date hereof) and all new Loan Documents required to be executed and delivered by or with respect to Subsidiaries of the Borrower existing on the Conditions Precedent Date by the existing Loan Documents, including, without limitation, <u>Section 8.10</u> (<u>Additional Collateral; Additional Subsidiary Guarantors</u>) thereof, have been executed and delivered and (ii) in any case, all certificates, statements, updated schedules, collateral and other updates and other documents required to be delivered by such Loan Party to the Administrative Agent or any Lender pursuant to any Loan Document as modified hereby have been delivered thereunder and all filings required to

- 4 -

**A0599**

Confidential

PP-TRBK0099591

18-01021-smb   Doc 1044   Filed 07/08/19   Entered 07/08/19 21:19:04   Pg
6 of 13

Case 1:20-cv-06274-LAK   Document 11-5   Filed 09/30/20   Page 28 of 63

AMENDMENT 24
CREDIT AGREEMENT
TRANSCARE CORPORATION

be made by or on behalf of such Loan Party pursuant to any such Loan Document have been made;

      (c)    <u>Representations and Warranties in Loan Documents</u>.  Each of the other representations and warranties of such Loan Party contained any Loan Document (as modified hereby) or in any certificate, document or financial or other statement furnished at any time under or in connection therewith is true in all material respects on and as of the date hereof and the Conditions Precedent Date, in each case as if made on and as of such date and except to the extent that such representations and warranties expressly relate to a specific date, in which case such representations and warranties shall be true in all material respects as of such specific date; <u>provided</u>, that, as used therein, (i) ”<u>Credit Agreement</u>” shall refer to the Credit Agreement and after giving effect to this Amendment and (ii) ”<u>Loan Documents</u>” shall include this Amendment;

      (d)    <u>No Litigation or Defense</u>.  No litigation has been commenced or threatened against such Loan Party or any of its Subsidiaries seeking to restraint or enjoin (whether temporarily, preliminarily or permanently) the performance of any action by any Loan Party or any Subsidiary of any Loan Party required or contemplated by the terms of this Amendment or any other Loan Document as modified hereby, and there exists no cause of action, offset, claim, counterclaim or defense, whether or not asserted, against the Administrative Agent or any Lender or any of their Related Parties (as defined below) with respect to the Obligations under any Loan Document;

      (e)    <u>No Default or Event of Default</u>.  No Default or Event of Default is continuing; and

    Section 4.    <u>Fees and Expenses</u>.

      (a)    As consideration for the execution of this Amendment, the Loan Parties jointly and severally agree to pay to the Administrative Agent for this Amendment by 5 p.m. (New York Time) on the date of this Amendment (or such later date or time as the Administrative Agent and the Borrower may agree), an amendment fee equal to $3,000.  The Administrative Agent may (but shall not be obligated to), as payment thereof, deduct such fee from the proceeds of any Loan to be funded to the Borrower on or after the date hereof.

      (b)    Each Loan Party agrees to pay on demand in accordance with the terms of <u>Section 12.5 (Payment of Expenses and Taxes)</u> of the Credit Agreement all costs and expenses of the Administrative Agent in connection with the preparation, reproduction, execution, delivery and enforcement of this Amendment and all other Loan Documents entered into in connection herewith (including, without limitation, the fees and expenses of attorneys, advisors and other professionals hired by the Administrative Agent with respect to the Loan Parties or the Loan Documents).

    Section 5.    <u>Release</u>.

      (a)    In further consideration for the execution by the Administrative Agent and the Lenders party hereto of this Amendment and without limiting any rights or remedies the Administrative Agent or any Lender may have, each Loan Party hereby releases each of the Administrative Agent, each Lender and each of their Related Parties (each a "<u>Releasee</u>" and, collectively, the "<u>Releasees</u>") from any and all Claims that any Loan Party has or may have

- 5 -

**A0600**

PP-TRBK0099592

against any Releasee, whether or not relating to any Loan Document, Obligation, Collateral, or legal relationship that exists or may exist between any Releasee and any Loan Party.

(b)    As used in this Section 5, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, costs, fees and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any Person, any Affiliate of such Person or of another Related Party of such Person (excluding, in each case, (A) the Loan Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such Person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio Company" means any Person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any Person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent and (v) "Controlled Affiliate" means, with respect to any entity, any Person directly or indirectly "controlled" (as defined in the definition of "Affiliate" set forth in the Credit Agreement on the date hereof) by one or more of such entity and its other Controlled Affiliates.

Section 6.    Consent of Subsidiary Guarantors and Reaffirmation of Obligations. Each Subsidiary Guarantor hereby consents to this Amendment and agrees that it continues to guaranty, pursuant to the Loan Documents, jointly and severally, unconditionally and irrevocably, as primary obligor and not as surety, the prompt and complete payment and performance when due of the Obligations as modified hereby and that the terms hereof shall not affect in any way its obligations and liabilities, as expressly modified hereby, under the Loan Documents. Each Loan Party hereby reaffirms (a) all such obligations and liabilities, and agrees that such obligations and liabilities shall remain in full force and effect, (b) the Liens granted under the Loan Documents, and agrees that such Liens shall continue to secure the Obligations as expressly modified hereby, and (c) the validity and enforceability of the Loan Documents.

Section 7.    Effect on the Loan Documents. This Amendment is a Loan Document and is limited as written. As of the date each modification set forth herein shall become effective, each reference in the Credit Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of like import, and each reference in the other Loan Documents to the Credit Agreement (including, without limitation, by means of words like "thereunder," "thereof" and words of like import), shall refer to the Credit Agreement as modified thereby, and this Amendment and the Credit Agreement shall be read together and construed as a single agreement. The execution,

- 6 -

**A0601**

delivery and effectiveness of this Amendment shall not, except as expressly provided herein, (a) waive or modify any right, power or remedy under, or any other provision of, any Loan Document or (b) commit or otherwise obligate the Administrative Agent or any Lender to enter into or consider entering into any other waiver or modification of any Loan Document.

Section 8.    Waiver of Jury Trial; Miscellaneous.  Headings are for convenience only and do not form part of this Amendment, except when used to reference an article or section, in which case such title reference shall govern absent manifest error in case of conflict.  All communications and notices hereunder shall be given as provided in the Loan Documents.  This Amendment (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the other Loan Documents, constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof, (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Loan Documents (and any attempt to assign this Amendment without such writing shall be null and void), (d) may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument, (e) is a negotiated document, entered into freely among the parties upon advice of their own counsel, and it should not be construed against any of its drafters and (f) shall survive the satisfaction or discharge of the Obligations.  The fact that any term or provision of this Amendment is held invalid, illegal or unenforceable as to any person in any situation in any jurisdiction shall not affect the validity, enforceability or legality of the remaining terms or provisions hereof or the validity, enforceability or legality of such offending term or provision in any other situation or jurisdiction or as applied to any person.  **Each party hereto hereby irrevocably and unconditionally waives any right to trial by jury with respect to this Amendment.**

[SIGNATURE PAGES FOLLOW]

- 7 -

Confidential

PP-TRBK0099594

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers and general partners thereunto duly authorized, as of the date first written above.

TRANSCARE CORPORATION,
    as Borrower

By: _____
    Name: Michael Greenberg
    Title:

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
    as Subsidiary Guarantor

By: _____
    Name: Michael Greenberg
    Title:

Confidential

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
      as Administrative Agent

By: _____
      Name: Lynn Tilton
      Title:   Manager


ZOHAR CDO 2003-1, LIMITED,
      as Lender
By: Patriarch Partners VIII, LLC,
      its Collateral Manager


By: _____
      Name: Lynn Tilton
      Title:   Manager


ZOHAR II 2005-1, LIMITED,
      as Lender
By: Patriarch Partners XIV, LLC,
      its Collateral Manager


By: _____
      Name: Lynn Tilton
      Title:   Manager


ZOHAR III, LIMITED,
      as Lender
By: Patriarch Partners XV, LLC,
      its Collateral Manager


By: _____
      Name: Lynn Tilton
      Title:   Manager


SIGNATURE PAGE TO AMENDMENT 24
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0604**

Confidential

PP-TRBK0099596

ARK INVESTMENT PARTNERS II, L.P.,
    as Lender
By: Ark Investment GP II, LLC,
    its General Partner

By:    _____
    Name:  Lynn Tilton
    Title:   Manager

SIGNATURE PAGE TO AMENDMENT 24
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0605**

FIRST DOMINION FUNDING I,
    as Lender
By: Credit- Suisse Asset Management, LLC,
    its Collateral Manager


By: _____
    Name:
    Title:


CREDIT SUISSE ALTERNATIVE CAPITAL, INC.,
    as Lender


By: _____
    Name:
    Title:

SIGNATURE PAGE TO AMENDMENT 24
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0606**

Confidential

(As of February 26, 2015)

Revolving Credit Loans

| Revolving Credit Lender | Revolving Credit Loan Commitment | Revolving Credit Loan Commitment Period |
|---|---|---|
| Zohar III, Limited | $1,100,000 | N/A |

Tranche A Term Loans

| Tranche A Term Loan Lender | Tranche A Term Loans Outstanding |
|---|---|
| Ark Investment Partners II, L.P. | $2,905,731.99 |
| Zohar III, Limited | $15,584,129.76 |
| First Dominion Funding I | $4,043,858.69 |
| Credit Suisse Alternative Capital, Inc. | $3,537,243.56 |

Tranche B Term Loans

| Tranche B Term Loan Lender | Tranche B Term Loans Outstanding |
|---|---|
| Zohar CDO 2003-1, Limited | $3,500,000.00 |

Tranche C Term Loans

| Tranche C Term Loan Lender | Tranche C Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $0 |

Tranche D Term Loans

| Tranche D Term Loan Lender | Tranche D Term Loans Outstanding |
|---|---|
| Zohar III, Limited | $2,961,052.63 |

Tranche E Term Loans

| Tranche E Term Loan Lender | Tranche E Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $850,000.00 |

Tranche F Term Loans

| Tranche F Term Loan Lender | Tranche F Term Loans Outstanding | Tranche F Term Loan Commitment |
|---|---|---|
| Zohar III, Limited | $3,983,560.00 | $4,900,000.00 |

Confidential

PP-TRBK0099599

Case 1:20-cv-06274-LAK    Document 11-5    Filed 09/30/20    Page 36 of 63

# EXHIBIT 5

**TRANSCARE CORPORATION**
**WRITTEN CONSENT OF DIRECTOR**
**WITHOUT A MEETING**

April 9, 2015

Pursuant to Article III, Section 13 of the Bylaws of TransCare Corporation, a Delaware corporation (the "**Company**"), the undersigned, being the sole member of the Board of Directors of the Company (the "**Board**"), hereby adopts, by this written consent, pursuant to Section 141(f) of the Delaware General Corporation Law, the following resolutions with the same force and effect as if they had been adopted at a duly convened meeting of the Board and directs that this written consent be filed with the minutes of the proceedings of the Board:

WHEREAS, it is in the best interests of the Company to (a) amend the Credit Agreement (as modified to the date hereof, the "**Credit Agreement**" and, together with all other related documents executed by the Company and its affiliates in connection therewith, each a "**Credit Document**" and, collectively, the "**Credit Documents**") among the Company, as borrower, the lenders from time to time party thereto (each a "**Lender**" and, collectively, the "**Lenders**") and Patriarch Partners Agency Services, LLC, as administrative agent for such Lenders (in such capacity, the "**Administrative Agent**") by entering into the amendment attached hereto as **Exhibit A** (the "**Amendment**"), which, among other things, (i) consents to Amendment No. 11 to the Loan and Security Agreement and Waiver, dated as of the date hereof, by and among Wells Fargo Bank, National Association, TransCare Corporation, TransCare New York, Inc., TransCare Pennsylvania, Inc., TransCare Maryland, Inc., TransCare ML, Inc., TC Hudson Valley Ambulance Corp., TC Billing and Services Corp., TC Ambulance Corporation, TransCare Management Services, Inc., TCBA Ambulance, Inc., TransCare Westchester, Inc., TransCare Harford County, Inc., TC Ambulance Group, Inc., and TC Ambulance North, Inc. (ii) provides for an increase to $2,500,000.00 of the aggregate commitments of the Lenders for revolving Tranche RCA, (iii) includes a reaffirmation of the liens securing the obligations under the Credit Documents and (iv) includes release and indemnification provisions towards the Administrative Agent, the Lenders and their related parties and (b) borrow under Tranche RCA from time to time in an aggregate principal amount not to exceed the aggregate amount of such commitments (the "**Borrowings**"); and

WHEREAS, the relationships among the Company, the Administrative Agent, the Lenders, the shareholders of the Company, the manager hired by the Company and various other entities affiliated with them have been fully disclosed to the signatory hereto;

**Approval of Amendment**

NOW, THEREFORE, BE IT RESOLVED that (i) the Amendment, is authorized and approved in every respect by the Company as being in the best interest of the Company, (ii) each transaction contemplated by the Amendment or the Credit Documents as amended thereby is authorized and approved in every respect as being in the best interest of the Company and (iii) the Company is authorized to enter into the Amendment and consummate the transactions contemplated thereby and by the Credit Documents as amended thereby; and further

**General**

RESOLVED that Michael Greenberg (the "**Authorized Officer**") is authorized, empowered and directed, in the name and on behalf of the Company to execute and deliver the

TransCare Corporation – Amendment No. 26 to Credit Agreement of TransCare Corporation (April 2015)

**A0609**

Confidential

Amendment substantially in the form attached hereto as **Exhibit A**, with such modifications thereto as the Authorized Officer shall deem necessary or appropriate, the authority therefor to be conclusively evidenced by the Authorized Officer's execution and delivery thereof; and further

RESOLVED that the Authorized Officer is authorized, empowered and directed to take such additional action from time to time, including, without limitation, executing and delivering, or filing and recording with the appropriate judicial, public and governmental authorities and other appropriate persons or entities, additional documents (including, without limitation, agreements, instruments, certifications, attestation, notices, amendments, extensions, waivers or consents) as may be deemed appropriate by the Authorized Officer and either (a) required or contemplated by the Amendment or the Credit Documents as amended thereby or (b) required or requested by the Administrative Agent or the Lenders pursuant to the Amendment or such Credit Documents, the taking of such action to be conclusive evidence of the authority therefore granted; and further

RESOLVED that any other employee of the Company designated by the Authorized Officer for such purpose is authorized to take the additional actions described in the preceding paragraph deemed appropriate by the Authorized Officer to the extent he is authorized to take such action on behalf of the Company pursuant to the resolution immediately preceding this resolution; and further

RESOLVED that the authority given hereunder is retroactive and all acts relating to the Amendment performed prior to the passage of the foregoing resolutions by the Company or any officer, director or shareholder of the Company that would have been permitted had this resolution been effective at the time of such acts are ratified, confirmed and approved in all respects as fully authorized acts of the Company completed in the best interest of the Company; and further

RESOLVED that the Administrative Agent and the Lenders, together with each of their successors and (if permitted under the Credit Documents as amended by the Amendment) assigns, are hereby authorized to rely upon the foregoing.

_____
Name: Lynn Tilton, Director

TransCare Corporation – Amendment No. 26 to Credit Agreement of TransCare Corporation (April 2015)

Confidential
PP-TRBK0098858

**EXHIBIT A**

**AMENDMENT**

Confidential

PP-TRBK0098859

**AMENDMENT 26**
**TO CREDIT AGREEMENT OF**
**TRANSCARE CORPORATION**


Amendment 26 (this "<u>Amendment</u>"), dated as of April 9, 2015, to the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "<u>Credit Agreement</u>"), among TRANSCARE CORPORATION, a Delaware corporation (the "<u>Borrower</u>"), the financial institutions and other investors from time to time party thereto as Lenders and PATRIARCH PARTNERS AGENCY SERVICES, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "<u>Administrative Agent</u>"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

W I T N E S S E T H :

WHEREAS, the Borrower, the Guarantors, the Lenders and the Administrative Agent are party to the Credit Agreement;

WHEREAS, the Lenders party to this Amendment, the Borrower and the Administrative Agent have agreed, subject to certain limitations and conditions set forth below, to make certain amendments to the Credit Agreement, as more specifically set forth below;

NOW, THEREFORE, the parties hereto agree as follows:

Section 1. <u>Amendments to the Credit Agreement</u>. The Credit Agreement is, effective as of the date first written above and subject to the satisfaction (or due waiver) of the conditions set forth in <u>Section 2</u> (<u>Conditions Precedent to the Effectiveness of this Amendment</u>) hereof, hereby amended as follows (with boldface, underlining, highlighting, indenting and other formatting modified to conform to the formatting of the Credit Agreement):

(a) <u>Amendment to Schedules to the Credit Agreement</u>. The contents of Schedule 1.0 to the Credit Agreement are hereby replaced in their entirety with the contents of <u>Schedule A</u> hereto.

Section 2. <u>Conditions Precedent to the Effectiveness of this Amendment</u>. This Amendment shall become effective as of the date first written above (the "<u>Amendment Effective Date</u>") when, and only when, each of the following conditions precedent shall have been satisfied or duly waived by the Administrative Agent (the date each such conditions precedent is satisfied or duly waived, the "<u>Conditions Precedent Date</u>"):

(a) <u>Certain Documents</u>. The Administrative Agent shall have received this Amendment, duly executed by the Borrower, each other Loan Party and the Lenders party hereto, constituting the Required Lenders, together with such additional documentation as the Administrative Agent may reasonably require, dated the Amendment Effective Date (unless otherwise agreed by the Administrative Agent) and in form and substance satisfactory to it;

(b) <u>Representations and Warranties</u>. Each of the representations and warranties contained in this Amendment were true when made;

**A0612**

Confidential

(c)      No Default or Event of Default.  After giving effect to this Amendment, no Default or Event of Default shall have occurred and be continuing, either on the date hereof or on the Conditions Precedent Date;

(d)      Corporate and Other Proceedings.  All corporate and other proceedings, and all documents, instruments, consents and other legal matters ancillary to the transactions contemplated by this Amendment shall be completed in a form and manner satisfactory in all respects to the Administrative Agent; and

(e)      Fees and Expenses Paid.  The Borrower shall have paid all Obligations due, after giving effect to this Amendment, on or before the later of the date hereof and the Conditions Precedent Date, including, without limitation, all fees set forth in Section 4 (Fees and Expenses) hereof and all other costs, expenses and fees due under any Loan Document and invoiced prior to the Conditions Precedent Date.

Section 3.      Representations and Warranties.  On and as of the date hereof and as of the Conditions Precedent Date, after giving effect to this Amendment, each Loan Party hereby represents and warrants to the Administrative Agent and each Lender as follows:

(a)      Binding Obligation.   This Amendment has been duly authorized, executed and delivered by such Loan Party and constitutes a legal, valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its terms and the Credit Agreement as modified by this Amendment;

(b)      Subsidiaries.  (i) If such Loan Party is the Borrower, the representations and warranties set forth in Section 6.15 (Subsidiaries) of the Credit Agreement are true as of the date hereof (replacing "Closing Date" therein with the date of this Amendment and taking into account any updated information delivered by the Borrower to the Administrative Agent on or prior to the date hereof) and all new Loan Documents required to be executed and delivered by or with respect to Subsidiaries of the Borrower existing on the Conditions Precedent Date by the existing Loan Documents, including, without limitation, Section 8.10 (Additional Collateral; Additional Subsidiary Guarantors) thereof, have been executed and delivered and (ii) in any case, all certificates, statements, updated schedules, collateral and other updates and other documents required to be delivered by such Loan Party to the Administrative Agent or any Lender pursuant to any Loan Document as modified hereby have been delivered thereunder and all filings required to be made by or on behalf of such Loan Party pursuant to any such Loan Document have been made;

(c)      Representations and Warranties in Loan Documents.  Each of the other representations and warranties of such Loan Party contained any Loan Document (as modified hereby) or in any certificate, document or financial or other statement furnished at any time under or in connection therewith is true in all material respects on and as of the date hereof and the Conditions Precedent Date, in each case as if made on and as of such date and except to the extent that such representations and warranties expressly relate to a specific date, in which case such representations and warranties shall be true in all material respects as of such specific date; provided, that, as used therein, (i) "Credit Agreement" shall refer to the Credit Agreement and after giving effect to this Amendment and (ii) "Loan Documents" shall include this Amendment;

(d)      No Litigation or Defense.  No litigation has been commenced or threatened against such Loan Party or any of its Subsidiaries seeking to restrain or enjoin

- 2 -

Confidential

PP-TRBK0098861

(whether temporarily, preliminarily or permanently) the performance of any action by any Loan Party or any Subsidiary of any Loan Party required or contemplated by the terms of this Amendment or any other Loan Document as modified hereby, and there exists no cause of action, offset, claim, counterclaim or defense, whether or not asserted, against the Administrative Agent or any Lender or any of their Related Parties (as defined below) with respect to the Obligations under any Loan Document;

(e)     No Default or Event of Default.  No Default or Event of Default is continuing; and

Section 4.     Fees and Expenses.

(a)     As consideration for the execution of this Amendment, the Loan Parties jointly and severally agree to pay to the Administrative Agent for this Amendment by 5 p.m. (New York Time) on the date of this Amendment (or such later date or time as the Administrative Agent and the Borrower may agree), an amendment fee equal to $3,000.  The Administrative Agent may (but shall not be obligated to), as payment thereof, deduct such fee from the proceeds of any Loan to be funded to the Borrower on or after the date hereof.

(b)     Each Loan Party agrees to pay on demand in accordance with the terms of Section 12.5 (Payment of Expenses and Taxes) of the Credit Agreement all costs and expenses of the Administrative Agent in connection with the preparation, reproduction, execution, delivery and enforcement of this Amendment and all other Loan Documents entered into in connection herewith (including, without limitation, the fees and expenses of attorneys, advisors and other professionals hired by the Administrative Agent with respect to the Loan Parties or the Loan Documents).

Section 5.     Release.

(a)     In further consideration for the execution by the Administrative Agent and the Lenders party hereto of this Amendment and without limiting any rights or remedies the Administrative Agent or any Lender may have, each Loan Party hereby releases each of the Administrative Agent, each Lender and each of their Related Parties (each a "Releasee" and, collectively, the "Releasees") from any and all Claims that any Loan Party has or may have against any Releasee, whether or not relating to any Loan Document, Obligation, Collateral, or legal relationship that exists or may exist between any Releasee and any Loan Party.

(b)     As used in this Section 5, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, costs, fees and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any Person, any Affiliate of such Person or of another Related Party of such Person (excluding, in each case, (A) the Loan Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such Person's and such Affiliate's predecessors, successors, assigns, managers, members,

- 3 -

Confidential

partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio Company" means any Person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any Person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent and (v) "Controlled Affiliate" means, with respect to any entity, any Person directly or indirectly "controlled" (as defined in the definition of "Affiliate" set forth in the Credit Agreement on the date hereof) by one or more of such entity and its other Controlled Affiliates.

Section 6.    Consent to Amendment No. 11 to Loan and Security Agreement and Waiver.  Each of the parties hereto hereby agrees that, Amendment No. 11 to the Loan and Security Agreement and Waiver, dated as of the date hereof, by and among Wells Fargo Bank, National Association, TransCare Corporation, TransCare New York, Inc., TransCare Pennsylvania, Inc., TransCare Maryland, Inc., TransCare ML, Inc., TC Hudson Valley Ambulance Corp., a Delaware corporation ("TC Hudson Valley"), TC Billing and Services Corp., TC Ambulance Corporation, TransCare Management Services, Inc., TCBA Ambulance, Inc., TransCare Westchester, Inc., TransCare Harford County, Inc., TC Ambulance Group, Inc., and TC Ambulance North, Inc. attached hereto as Exhibit A shall be executed in the form attached effective as of the date set forth on such amendment (with the brackets removed), and, in any case, consents to and agrees to the transactions contemplated by such amendment.

Section 7.    Consent of Subsidiary Guarantors and Reaffirmation of Obligations. Each Subsidiary Guarantor hereby consents to this Amendment and agrees that it continues to guaranty, pursuant to the Loan Documents, jointly and severally, unconditionally and irrevocably, as primary obligor and not as surety, the prompt and complete payment and performance when due of the Obligations as modified hereby and that the terms hereof shall not affect in any way its obligations and liabilities, as expressly modified hereby, under the Loan Documents.  Each Loan Party hereby reaffirms (a) all such obligations and liabilities, and agrees that such obligations and liabilities shall remain in full force and effect, (b) the Liens granted under the Loan Documents, and agrees that such Liens shall continue to secure the Obligations as expressly modified hereby, and (c) the validity and enforceability of the Loan Documents.

Section 8.    Effect on the Loan Documents.  This Amendment is a Loan Document and is limited as written.  As of the date each modification set forth herein shall become effective, each reference in the Credit Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of like import, and each reference in the other Loan Documents to the Credit Agreement (including, without limitation, by means of words like "thereunder," "thereof" and words of like import), shall refer to the Credit Agreement as modified thereby, and this Amendment and the Credit Agreement shall be read together and construed as a single agreement.  The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, (a) waive or modify any right, power or remedy under, or any other provision of, any Loan Document or (b) commit or otherwise obligate the Administrative Agent or any Lender to enter into or consider entering into any other waiver or modification of any Loan Document.

Confidential

PP-TRBK0098863

Section 9.    Waiver of Jury Trial; Miscellaneous.  Headings are for convenience only and do not form part of this Amendment, except when used to reference an article or section, in which case such title reference shall govern absent manifest error in case of conflict.  All communications and notices hereunder shall be given as provided in the Loan Documents.  This Amendment (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the other Loan Documents, constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof, (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Loan Documents (and any attempt to assign this Amendment without such writing shall be null and void), (d) may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument, (e) is a negotiated document, entered into freely among the parties upon advice of their own counsel, and it should not be construed against any of its drafters and (f) shall survive the satisfaction or discharge of the Obligations.  The fact that any term or provision of this Amendment is held invalid, illegal or unenforceable as to any person in any situation in any jurisdiction shall not affect the validity, enforceability or legality of the remaining terms or provisions hereof or the validity, enforceability or legality of such offending term or provision in any other situation or jurisdiction or as applied to any person. **Each party hereto hereby irrevocably and unconditionally waives any right to trial by jury with respect to this Amendment.**

[SIGNATURE PAGES FOLLOW]

- 5 -

Confidential

PP-TRBK0098864

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers and general partners thereunto duly authorized, as of the date first written above.

TRANSCARE CORPORATION,
   as Borrower

By: _____
   Name: Michael Koenberg
   Title:

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
   as Subsidiary Guarantor

By: _____
   Name: Michael Greenberg
   Title:

Confidential

PP-TRBK0098865

Case 1:20-cv-06274-LAK    Document 11-5    Filed 09/30/20    Page 46 of 63

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
    as Administrative Agent

By: _____
    Name:  Lynn Tilton
    Title:  Manager


ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager

By: _____
    Name:  Lynn Tilton
    Title:  Manager


ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager

By: _____
    Name:  Lynn Tilton
    Title:  Manager


ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager

By: _____
    Name:  Lynn Tilton
    Title:  Manager


SIGNATURE PAGE TO AMENDMENT 26
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0618**

PP-TRBK0098866

ARK INVESTMENT PARTNERS II, L.P.,
   as Lender
By: Ark Investment GP II, LLC,
   its General Partner

By: _____
   Name:  Lynn Tilton
   Title:  Manager

SIGNATURE PAGE TO AMENDMENT 26
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

**A0619**

Confidential

PP-TRBK0098867

Case 1:20-cv-06274-LAK   Document 11-5   Filed 09/30/20   Page 48 of 63

FIRST DOMINION FUNDING I,
    as Lender
By: Credit- Suisse Asset Management, LLC,
    its Collateral Manager


By: _____
    Name:
    Title:


CREDIT SUISSE ALTERNATIVE CAPITAL, INC.,
    as Lender


By: _____
    Name:
    Title:

SIGNATURE PAGE TO AMENDMENT 26
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

A0620

Confidential

PP-TRBK0098868

(As of April 3, 2015)

**Revolving Credit Loans**

| Revolving Credit Lender | Revolving Credit Loan Commitment | Revolving Credit Loan Commitment Period |
|---|---|---|
| Zohar III, Limited | $2,500,000 | N/A |

**Tranche A Term Loans**

| Tranche A Term Loan Lender | Tranche A Term Loans Outstanding |
|---|---|
| Ark Investment Partners II, L.P. | $2,905,731.99 |
| Zohar III, Limited | $15,584,129.76 |
| First Dominion Funding I | $4,043,858.69 |
| Credit Suisse Alternative Capital, Inc. | $3,537,243.56 |

**Tranche B Term Loans**

| Tranche B Term Loan Lender | Tranche B Term Loans Outstanding |
|---|---|
| Zohar CDO 2003-1, Limited | $3,500,000.00 |

**Tranche C Term Loans**

| Tranche C Term Loan Lender | Tranche C Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $0 |

**Tranche D Term Loans**

| Tranche D Term Loan Lender | Tranche D Term Loans Outstanding |
|---|---|
| Zohar III, Limited | $2,961,052.63 |

**Tranche E Term Loans**

| Tranche E Term Loan Lender | Tranche E Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $850,000.00 |

**Tranche F Term Loans**

| Tranche F Term Loan Lender | Tranche F Term Loans Outstanding | Tranche F Term Loan Commitment |
|---|---|---|
| Zohar III, Limited | $2,883,560.00 | $3,500,000.00 |

**A0621**

Confidential

## EXHIBIT A

AMENDMENT NO. 11 TO LOAN AND SECURITY AGREEMENT AND WAIVER

[AFFIXED HERETO]

Confidential                                                                                               PP-TRBK0098870

Case 1:20-cv-06274-LAK    Document 11-5    Filed 09/30/20    Page 51 of 63    Pg

Execution Copy

## AMENDMENT NO. 11 TO LOAN AND SECURITY AGREEMENT AND WAIVER

THIS AMENDMENT NO. 11 TO LOAN AND SECURITY AGREEMENT AND
WAIVER (this "Amendment"), dated as of April 3, 2015, is entered into by and among Wells
Fargo Bank, National Association, a national banking association, successor by merger to
Wachovia Bank, National Association, a national banking association ("Lender"), TransCare
Corporation, a Delaware corporation ("TransCare" or "Parent"), TransCare New York, Inc., a
Delaware corporation ("TransCare NY"), TransCare Pennsylvania, Inc., a Delaware corporation
("TransCare PA"), TransCare Maryland, Inc., a Delaware corporation ("TransCare MD"),
TransCare ML, Inc., a Delaware corporation ("TCML"), TC Hudson Valley Ambulance Corp., a
Delaware corporation ("TC Hudson Valley"), TC Billing and Services Corp., a Delaware
corporation ("TC Billing"), TC Ambulance Corporation, a Delaware corporation ("TC Corp"),
TransCare Management Services, Inc., a Delaware corporation ("TC Management"), TCBA
Ambulance, Inc., a Delaware corporation ("TCBA"), TransCare Westchester, Inc., a Delaware
corporation ("TransCare Westchester"), and TransCare Harford County, Inc., a Delaware
corporation ("TransCare Harford" and together with TransCare, TransCare NY, TransCare PA,
TransCare MD, TCML, TC Hudson Valley, TC Billing, TC Corp, TC Management, TCBA, and
TransCare Westchester, each individually a "Borrower" and collectively, "Borrowers"), TC
Ambulance Group, Inc., a Delaware corporation ("TC Group"), and TC Ambulance North, Inc.,
a Delaware corporation ("TC North" and together with TC Group, each individually a
"Guarantor" and collectively, "Guarantors").

## W I T N E S S E T H:

WHEREAS, Lender, Borrowers and Guarantors have entered into financing
arrangements as set forth in the Loan and Security Agreement, dated October 13, 2006, by and
among Lender, Borrowers and Guarantors, as amended by Amendment No. 1 to Loan and
Security Agreement, dated as of June 28, 2007, Amendment No. 2 to Loan and Security
Agreement, dated as of October 24, 2007, Amendment No. 3 to Loan and Security Agreement,
dated as of January 31, 2008, Amendment No. 4 to Loan and Security Agreement, dated as of
August 13, 2008, Amendment No. 5 to Loan and Security Agreement, dated as of December 22,
2008, Amendment No. 6 to Loan and Security Agreement, dated as of September 18, 2009,
Amendment No. 7 to Loan and Security Agreement, dated as of February 12, 2010, Amendment
No. 8 to Loan and Security Agreement and Waiver, dated as of January 31, 2013, Amendment
No. 9 to Loan and Security Agreement and Waiver, dated as of May 31, 2013, Amendment No.
10 to Loan and Security Agreement and Waiver, dated as of August 14, 2013, and this
Amendment (as the same now exists or may hereafter be amended, modified, supplemented,
extended, renewed, restated or replaced, the "Loan Agreement") and other agreements,
documents and instruments referred to therein or at any time executed or delivered in connection
therewith or related thereto, including this Amendment (all of the foregoing, including the Loan
Agreement and this Amendment, as the same now exist or may hereafter be amended, modified,
supplemented, extended, renewed, restated or replaced, being collectively referred to herein as
the "Financing Agreements");

3626914.3

1

**A0623**

Confidential

WHEREAS, Borrowers and Guarantors have requested, among other things, that Lender (a) waive the Existing Defaults (as defined below), (b) consent to an increase of the Second Lien Debt in the aggregate principal amount of $2,500,000 and certain amendments to the Second Lien Documents in connection therewith, and (c) make certain amendments to the Loan Agreement as set forth herein; and

WHEREAS, the parties hereto desire to enter into this Amendment to evidence and effectuate such consents and amendments under the Loan Agreement and the other Financing Agreements relating thereto, in each case subject to the terms and conditions and to the extent set forth herein;

NOW, THEREFORE, in consideration of the premises and covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

Section 1.      Definitions.   For purposes of this Amendment, unless otherwise defined herein, all terms used herein shall have the respective meanings assigned to them in the Loan Agreement.

Section 2.      Waiver of Events of Defaults.

2.1      Subject to the terms and conditions contained herein, Lender hereby waives the following Defaults and Events of Default under Section 10.1(a)(iii) of the Loan Agreement (collectively, the "Existing Defaults"):

(a)      the Events of Default arising from the failure of Borrowers to deliver to Lender letters from the TransCare CPA (i) for the fiscal year ended December 31, 2013, within 120 days after the end of such fiscal year and (ii) for the fiscal quarters ended March 31, 2014, June 30, 2014 and September 30, 2014, within 60 days after the end of such fiscal quarters, in accordance with Section 7.1(a)(vi) of the Loan Agreement;

(b)      the Events of Default arising from the failure of Administrative Borrower to deliver to Lender unaudited financial statements of Parent and its Subsidiaries for the fiscal month ended February 28, 2014 and for each fiscal month thereafter through and including the fiscal month ended February 28, 2015, within 30 days after the end of such fiscal months, in accordance with Section 9.6(a)(i) of the Loan Agreement;

(c)      the Event of Default arising from the failure of Administrative Borrower to deliver to Lender audited financial statements of Parent and its Subsidiaries for the fiscal year ended December 31, 2013, within 120 days after the end of such fiscal year, in accordance with Section 9.6(a)(ii) of the Loan Agreement;

(d)      the Events of Default arising from the failure of Borrowers and Guarantors to comply with Section 9.9(g)(ii)(A) of the Loan Agreement, which prohibits Borrowers and Guarantors from using proceeds of Revolving Loans to make regularly scheduled payments of interest and fees in respect of the Second Lien Debt when a Default or Event of Default exists under the Loan Agreement, it being understood for the avoidance of doubt that the waiver of such Events of Default shall apply only to such payments made prior to April __, 2015; and

3626914.3

2

Confidential

(e)     the Events of Default arising from the failure of Parent and its Subsidiaries to maintain the minimum Fixed Charge Coverage Ratio for the measurement periods ended January 31, 2014 through and including the measurement period ended January 31, 2015, in accordance with Section 9.18 of the Loan Agreement;

together with, in the case of each of clauses (a) through (e) above, any Event of Default that may exist (i) by reason of any failure to deliver notice thereof pursuant to the Loan Agreement or (ii) by reason of any past misrepresentations under the Loan Agreement, if any, prior to the date hereof, that no Default or Event of Default existed or had occurred and was continuing.

2.2     Lender has not waived, is not by this Amendment waiving, and has no intention of waiving any Event of Default which may have occurred on or prior to the date hereof, whether or not continuing on the date hereof, or which may occur after the date hereof, other than the Existing Defaults, whether the same or similar to the Existing Defaults or otherwise.  The foregoing waivers should not be construed as a bar to or waiver of any other or further Event of Default on any future occasion, whether similar in kind or otherwise and shall not be considered a waiver, express or implied, of any of the rights and remedies of Lender arising under the terms of the Loan Agreement or the other Financing Agreements on any future occasion or otherwise. Lender reserves the right, in its discretion, to exercise its rights and remedies arising under the Financing Agreements, applicable law or otherwise as a result of any other Events of Default that may have occurred before the date hereof, or are continuing on the date hereof, or any Event of Default that may occur after the date hereof, whether the same or similar to the Existing Defaults or otherwise.

**Section 3.     Amendments to Loan Agreement.**

3.1     Collateral Reporting.

(a)     Borrowers and Guarantors represent, warrant, covenant and agree in favor of Lender that Borrowers shall deliver to Lender (i) on or before April 15, 2015, a letter from the TransCare CPA in accordance with Section 7.1(a)(vi) of the Loan Agreement covering the fiscal year ended December 31, 2013, and (ii) on or before July 31, 2015, a letter from the TransCare CPA in accordance with 7.1(a)(vi) of the Loan Agreement covering the fiscal year ended December 31, 2014.

(b)     Section 7.1(a) of the Loan Agreement is hereby amended by adding new clause (vii) as follows:

"(vii)   as soon as possible after the end of each month (but in any event within ten (10) Business Days after the end of the month), on a monthly basis or more frequently as Lender may request, a report, in form and substance satisfactory to Lender, (A) identifying each Ambulance of Borrowers by providing the make, model and year of each such Ambulance, and disclosing whether such Ambulance is owned or leased (and if leased, the term and a description of any purchase option associated with such lease), (B) the number and description of Ambulances removed from service, disposed of, or returned to the applicable lessor of such Ambulance during such month, and (C) the number and description of new or additional Ambulances purchased or leased (and if leased, the term and a

3626914.3                                    3

Confidential                                                         PP-TRBK0098873

description of any purchase option associated with such lease) by Borrowers during such month.

    3.2    <u>Delivery of Financial Statements, Etc</u>.  Borrowers and Guarantors represent, warrant, covenant and agree in favor of Lender the following:

    (a)    Administrative Borrower shall, on or before April 30, 2015, monthly unaudited consolidated financial statements for the month ended February 28, 2015 in accordance with Section 9.6(a)(i) of the Loan Agreement.

    (b)    Administrative Borrower shall, on or before April 15, 2015, deliver to Lender the audited consolidated financial statements for the fiscal year ended December 31, 2013 Section 9.6(a)(ii) of the Loan Agreement.

    (c)    Administrative Borrower shall, on or before July 31, 2015, deliver to Lender the audited consolidated financial statements for the fiscal year ended December 31, 2014 Section 9.6(a)(ii) of the Loan Agreement.

    3.3    <u>Indebtedness</u>.  Notwithstanding anything to the contrary contained in Section 9.9(g) of the Loan Agreement, Lender hereby consents to the changes to the Second Lien Debt as set forth in the Twenty-fourth Amendment, Twenty-fifth Amendment, and Twenty-sixth Amendment to the Second Lien Agreement as in effect on the date hereof, so long as Lender shall have received, in form and substance satisfactory to Lender, a true, correct and complete copy of the Twenty-fourth Amendment, Twenty-fifth Amendment, and Twenty-sixth Amendment to Second Lien Agreement, in form and substance satisfactory to Lender, and any other agreements executed and delivered by Borrowers or Guarantors to Second Lien Agent in connection therewith.

    3.4    <u>Fixed Charge Coverage Ratio</u>.  Notwithstanding anything to the contrary contained in <u>Schedule 9.18</u> to the Loan Agreement or otherwise:

    (a)    Parent and its Subsidiaries shall have a Fixed Charge Coverage Ratio, measured on a month-end basis, of at least the required amount set forth in the following table for the applicable period set forth opposite thereto:

| Measurement Period | Fixed Charge Coverage Ratio |
|---|---|
| January 1, 2015 through July 31, 2015 | .70:1.0 |
| January 1, 2015 through August 31, 2015 | .75:1.0 |
| January 1, 2015 through September 30, 2015 | .80:1.0 |
| January 1, 2015 through October 31, 2015 | .80:1.0 |
| January 1, 2015 through November 30, 2015 | .80:1.0 |
| January 1, 2015 through December 31, 2015 | .85:1.0 |
| February 1, 2015 through January 31, 2016 | .90:1.0 |

3626914.3

4

Confidential

PP-TRBK0098874

3.5    Minimum EBITDA.  Section 9 of the Loan Agreement is hereby amended by adding the following new Section 9.24 at the end thereof:

(a) "9.24.  Minimum EBITDA.  Parent and its Subsidiaries shall achieve EBITDA, measured on a month-end basis, of at least the required amount set forth in the following table for the applicable period set forth opposite thereto:

| Applicable Amount | Applicable Period |
|---|---|
| ($500,000) | January 1, 2015 through March 31, 2015 |
| $75,000 | January 1, 2015 through April 30, 2015 |
| $1,000,000 | January 1, 2015 through May 31, 2015 |
| $2,000,000 | January 1, 2015 through June 30, 2015 |

3.6    Special Reserve.

(a)    Section 1 of the Loan Agreement is hereby is hereby amended by adding the following new Section 1.164 at the end of thereof:

1.164  Special Reserve.

"Special Reserve" shall mean as of any date of determination the required amount set forth in the following table for the applicable period set forth opposite thereto:

| Applicable Period | Minimum Required Amount |
|---|---|
| April 6, 2015 through April 12, 2015 | $100,000 |
| April 13, 2015 through April 19, 2015 | $200,000 |
| April 20, 2015 through April 26, 2015 | $300,000 |
| April 27, 2015 through May 3, 2015 | $400,000 |
| May 4, 2015 through May 10, 2015 | $600,000 |
| May 11, 2015 through May 17, 2015 | $800,000 |
| May 18, 2015 through May 24, 2015 | $900,000 |

3626914.3

5

Confidential

PP-TRBK0098875

| May 25, 2015 through May 31, 2015 | $1,000,000 |
| June 1, 2015 through June 7, 2015 | $1,100,000 |
| June 8, 2015 through June 14, 2015 | $1,200,000 |
| June 15, 2015 through June 21, 2015 | $1,300,000 |
| June 22, 2015 through June 28, 2015 | $1,400,000 |
| June 29, 2015 and continuing on each day thereafter until all Obligations are indefeasibly paid and satisfied in full | $1,500,000 |

(b) Notwithstanding anything set forth to the contrary in the Loan Agreement (including, without limitation, Section 2.1(c) of the Loan Agreement), or otherwise, on and after the implementation of the Special Reserve in accordance with the terms of the Loan Agreement, as amended by this Amendment, it shall be an Event of Default if, at any time in Lender's determination, either (i) the aggregate amount of the Loans and the Letter of Credit Obligations outstanding at any time to exceed the Maximum Credit, or (ii) the aggregate principal amount of the Revolving Loans and Letter of Credit Obligations outstanding to a Borrower to exceed the Borrowing Base.  For the avoidance of doubt, the occurrence of either event identified in clauses (i) and (ii) of this Section 3.6(b) shall automatically constitute an Event of Default without any action to be taken by Lender in connection with the foregoing.

3.7.  <u>Reserves</u>.  Section 1.143 of the Loan Agreement is hereby is hereby replaced with the following:

"Reserves" shall mean as of any date of determination, (1) the Special Reserve, plus (2) such amounts as Lender may from time to time establish and revise in good faith reducing the amount of Revolving Loans and Letters of Credit which would otherwise be available to any Borrower under the lending formula(s) provided for herein:  (a) to reflect events, conditions, contingencies or risks which, as determined by Lender in good faith, adversely affect, or would have a reasonable likelihood of adversely affecting, either (i) the Collateral or any other property which is security for the Obligations, its value or the amount that might be received by Lender from the sale or other disposition or realization upon such Collateral, or (ii) the assets, business or prospects of any Borrower or Guarantor or (iii) the security interests and other rights of Lender in the Collateral (including the enforceability, perfection and priority thereof) or (b) to reflect Lender's good faith belief that any collateral report or financial information furnished by or on behalf of any Borrower or Guarantor to Lender is or may have been incomplete, inaccurate or misleading in any material respect or (c) to reflect outstanding Letters of Credit as provided in Section 2.2 hereof or (d) in respect of any state of facts which Lender determines in good faith constitutes a Default or an Event of Default.  Without limiting the generality of the foregoing, Reserves may, at Lender's option, be established to reflect: dilution with respect to the Accounts as calculated by Lender for any period is or is reasonably anticipated to be greater than five (5%) percent; discounts, claims,

Confidential

**A0628**

PP-TRBK0098876

credits and allowances of any nature that are not paid pursuant to the reduction of Accounts; sales, excise or similar taxes included in the amount of any Accounts reported to Lender; amounts due or to become due to owners and lessors of premises any Collateral is located, other than for those locations where Lender has received a Collateral Access Agreement that Lender has accepted in writing. The amount of any Reserve established by Lender that is in addition to the Special Reserve shall have a reasonable relationship to the event, condition or other matter which is the basis for such additional Reserve as determined by Lender in good faith; to the extent that any portion of such Reserve is in respect of amounts that may be payable to third parties, Lender may, at its option, deduct such portion of such Reserves from the Maximum Credit at any time that such limit is less than the amount of the Borrowing Base.

Section 4.    Representations, Warranties and Covenants.  Each Borrower and Guarantor represents, warrants and covenants with, to and in favor of Lender as follows, which representations, warranties and covenants are continuing and shall survive the execution and delivery hereof, the truth and accuracy of, or compliance with each, together with the representations, warranties and covenants in the other Financing Agreements, being a condition of the effectiveness of this Amendment:

4.1    The execution and delivery of this Amendment does not and shall not (a) violate any Health Care Laws or other law or regulation or any order or decree of any court or governmental instrumentality binding on or applicable to the Borrowers or the Guarantors, (b) conflict with or result in the breach of, or constitute a default in any respect under any mortgage, deed of trust, security agreement, agreement or instrument to which any Borrower or Guarantor is a party or may be bound, or (c) violate any provision of the Certificate of Incorporation or By-Laws of any Borrower or Guarantor.

4.2    All of the representations and warranties set forth in the Loan Agreement as amended hereby, and the other Financing Agreements, are true and correct in all material respects after giving effect to the provisions of this Amendment, except to the extent any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct as of such date.

4.3    Borrowers and Guarantors are not required to obtain any consents, waivers or approvals to or of this Amendment from any other Person, including any waiver of any cross-default arising under any agreement, mortgage, instrument with any other Person to which any Borrower or Guarantor is a party or may be bound.

4.4    After giving effect to the waivers and provisions of this Amendment, no Default or Event of Default exists or has occurred and is continuing.

Section 5.    Amendment Fee.  In consideration of this Amendment and, in addition to, and not in limitation of, any other fee paid or payable to Lender under any of the Financing Agreements at any time, Borrowers shall pay to Lender, or Lender, at its option, may charge the loan account of Borrowers maintained by Lender, an amendment fee in the amount of $56,250.00, which fee is fully earned and payable on the date hereof; provided that Lender, as an accommodation to Borrowers, will permit Borrowers to pay $28,125 upon execution of this Amendment and an additional $28,125 on or before 90 days from the date of this Amendment.  The fee payable

3626914.3

7

Confidential

PP-TRBK0098877

hereunder is nonrefundable and constitutes and shall be deemed part of the Obligations.

Section 6.    <u>Conditions Precedent for Amendment and Consents</u>.  Concurrently with the execution and delivery hereof, and as a further condition to the effectiveness of this Amendment and the agreement of Lender to the modifications and amendments set forth in this Amendment:

6.1    Lender shall have received, in form and substance satisfactory to Lender, an executed copy of an original or executed original counterparts of this Amendment by electronic mail or facsimile (with the originals to be delivered within five (5) Business Days after the date hereof), duly authorized, executed and delivered by each Borrower and Guarantor

6.2    Lender shall have received, in form and substance satisfactory to Lender, evidence that any consents or approvals to the Twenty-fourth Amendment, Twenty-fifth Amendment, and Twenty-sixth Amendment to Second Lien Agreement, and the other transactions contemplated by this Amendment have been duly obtained;

6.3    Evidence, in form and substance satisfactory to Lender, of the Borrowers' receipt of a commitment in the principal amount of $2,500,000 in net loan proceeds by the Second Lien Lenders pursuant to the Second Lien Agreement, as amended or modified from time to time;

6.4    All of the representations and warranties contained in this Amendment and in the Loan Agreement and each of the other Financing Agreements, as amended hereby, shall be true and correct in all material respects after giving effect to this Amendment, except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct as of such date;

6.5    Lender shall have received, in form and substance satisfactory to Lender, for each Borrower and Guarantor, an Officer's Certificate evidencing the adoption and subsistence of corporate resolutions approving the execution, delivery and performance by such Borrower and Guarantor of this Amendment and any agreements, documents and instruments to be delivered pursuant to this Amendment;

6.6    Lender shall have received, in form and substance, satisfactory to Lender a true and correct copy of any consent, waiver or approval to or of this Amendment, which any Borrower or Guarantor is required to obtain from any other Person;

6.7    Lender shall have received, in form and substance satisfactory to Lender, a executed copy of the Twenty-fourth Amendment, Twenty-fifth Amendment, and Twenty-sixth Amendment to the Second Lien Agreement, duly executed and delivered by Second Lien Agent, the required Second Lien Lenders, each Borrower and each Guarantor;

6.8    After giving effect to the waivers and provisions of this Amendment and the Twenty-fourth Amendment, Twenty-fifth Amendment, and Twenty-sixth Amendment to the Second Lien Agreement, no Default or Event of Default shall exist or shall have occurred and be continuing.

Section 7.    <u>Effect of this Amendment</u>.  This Amendment shall be effective as of the date set forth above, subject to the satisfaction of the conditions set forth in Section 6 hereof, which shall

3626914.3

8

Confidential

PP-TRBK0098878

be deemed satisfied by the Lender's execution and delivery of a signed copy of this Amendment. This Amendment constitutes the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior oral or written communications, memoranda, proposals, negotiations, discussions, term sheets and commitments with respect to the subject matter hereof. Except as expressly provided herein, no other changes or modifications to the Loan Agreement or any of the other Financing Agreements, or waivers of or consents under any provisions of any of the foregoing, are intended or implied by this Amendment, and in all other respects the Financing Agreements are hereby specifically ratified, restated and confirmed by all parties hereto as of the effective date of this Amendment. The applicable provisions of this Amendment and the Loan Agreement shall be read and interpreted as one agreement. To the extent that any provision of the Loan Agreement or any of the other Financing Agreements conflicts with any provision of this Amendment, the provision of this Amendment shall control.

Section 8.     Further Assurances. Borrowers and Guarantors shall execute and deliver such additional documents and take such additional action as may be reasonably requested by Lender to effectuate the provisions and purposes of this Amendment.

Section 9.     Governing Law. The validity, interpretation and enforcement of this Amendment in any dispute arising out of the relationship between the parties hereto, whether in contract, tort, equity or otherwise shall be governed by the internal laws of the State of New York, without regard to any principle of conflict of laws or other rule of law that would result in the application of the law of any jurisdiction other than the State of New York. Without in any way limiting the foregoing, the parties elect to be governed by New York law in accordance with, and relying on (at least in part), Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York.

Section 10.     Binding Effect. This Amendment shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and assigns.

Section 11.     Counterparts. This Amendment may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original but all of which when taken together shall constitute one and the same instrument. In making proof of this Amendment, it shall not be necessary to produce or account for more than one counterpart hereof signed by each of the parties hereto. This Amendment may be executed and delivered by telecopier (or other electronic transmission of a manually executed counterpart) with the same force and effect as if it were a manually executed and delivered counterpart. Any party delivering an executed counterpart of this Amendment by telecopier (or other electronic transmission of a manually executed counterpart) shall also deliver an original executed counterpart of this Amendment, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability, and binding effect of this Amendment as to such party or any other party.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

3626914.3

9

Confidential

PP-TRBK0098879

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Amendment as of the date first written above.

TRANSCARE CORPORATION

By: _____
Name:_____
Title: _____

TRANSCARE NEW YORK, INC.

By: _____
Name:_____
Title: _____

TRANSCARE PENNSYLVANIA, INC.

By: _____
Name:_____
Title: _____

TRANSCARE MARYLAND, INC.

By: _____
Name:_____
Title: _____

TRANSCARE ML, INC.

By: _____
Name:_____
Title: _____

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[Amendment No. 11 to Loan and Security Agreement and Waiver]

**A0632**

Confidential

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

TC HUDSON VALLEY
AMBULANCE CORP.

By: _____
Name: _____
Title: _____

TC BILLING AND SERVICES CORP.

By: _____
Name: _____
Title: _____

TC AMBULANCE CORPORATION

By: _____
Name: _____
Title: _____

TRANSCARE MANAGEMENT
SERVICES, INC.

By: _____
Name: _____
Title: _____

TCBA AMBULANCE, INC.

By: _____
Name: _____
Title: _____

TRANSCARE WESTCHESTER, INC.

By: _____
Name: _____
Title: _____

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[Amendment No. 11 to Loan and Security Agreement and Waiver]

**A0633**

Confidential

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

TRANSCARE HARFORD COUNTY,
INC.

By: _____
Name: _____
Title: _____

TC AMBULANCE GROUP, INC.

By: _____
Name: _____
Title: _____

TC AMBULANCE NORTH, INC.

By: _____
Name: _____
Title:

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

[Amendment No. 11 to Loan and Security Agreement and Waiver]

**A0634**

Confidential

[SIGNATURES CONTINUED FROM PREVIOUS PAGE]

WELLS FARGO BANK, NATIONAL
ASSOCIATION

By: _____
Name:_____
Title: _____

[Amendment No. 11 to Loan and Security Agreement and Waiver]

**A0635**

Confidential

PP-TRBK0098883