# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

_____

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

_____

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

## APPENDIX TO BRIEF FOR THE APPELLANTS

# Volume VI - A0636-A0699

# EXHIBIT 6

# TRANSCARE CORPORATION

December 8, 2015

PATRIARCH PARTNERS AGENCY SERVICES, LLC
1 Broadway, 5th Floor
New York, NY 10004
Attention: Loan Administration/ Transcare Corporation

> Re: <u>Direction Letter for Payment of Certain Loan Proceeds</u>

Dear Sir or Madam:

Reference is made to (a) the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "<u>Credit Agreement</u>"), among TRANSCARE CORPORATION, a Delaware corporation (the "<u>Borrower</u>" or "<u>you</u>"), the affiliates thereof from time to time party thereto as Guarantors, the financial institutions and other investors from time to time party thereto as Lenders and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "<u>Administrative Agent</u>" or "<u>we</u>"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

Anything else in the Credit Agreement to the contrary notwithstanding, the Borrower hereby directs the Secured Parties to disburse proceeds to the applicable accounts set forth on <u>Exhibit A</u> attached hereto.

In further consideration for the execution of this letter by the Secured Parties party hereto and without limiting any rights or remedies any Secured Party may have, the Borrower hereby releases each Secured Party and each of their Related Parties (each a "<u>Releasee</u>" and, collectively, the "<u>Releasees</u>") from any and all Claims that the Borrower has or may have against any Releasee, whether or not relating to the Credit Agreement or any other legal relationship that exists or may exist between any Releasee and the Borrower. As used in this paragraph, (i) "<u>Claims</u>" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, settlements, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, interest, costs, fees, and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "<u>Related Party</u>" means, with respect to any person, any Affiliate of such person or of another Related Party of such person (excluding, in each case, (A) the Secured Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "<u>Portfolio</u>

**A0637**

TRANSCARE00231409

Company" means any person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent, (v) "Controlled Affiliate" means, with respect to any entity, any person directly or indirectly "controlled" (as defined below) by one or more of such entity and its other Controlled Affiliates, (vi) "Affiliate" means, with respect to a specified person, any other person, directly or indirectly, through one or more intermediaries, controlling or being controlled by or under common control with such person and (vii) "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any person, means being a director, manager, general partner or executive officer of such person or possessing, directly or indirectly, through the ownership of voting securities or other equity interests, through an agreement or otherwise, (A) the power to direct or cause the direction of the management and policies of such person, or (B) the power to vote, or beneficial ownership of, 5% or more of any class of voting securities of such person or of any other equity interests in such person.

This letter (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the Credit Agreement constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof and (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Credit Agreement (and any attempt to assign this letter without such writing shall be null and void).

[SIGNATURE PAGES TO FOLLOW]

2

**A0638**

TRANSCARE00231410

This letter may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument.

Very truly yours,

TRANSCARE CORPORATION,
  as Borrower

By:_____
   Name:
   Title:

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
  as Subsidiary Guarantor

By:_____
   Name:
   Title:

SIGNATURE PAGE TO DIRECTION LETTER (December 8, 2015)

**A0639**

TRANSCARE00231411

Accepted and Agreed
As of the Date First Written Above:

ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager


By:_____
    Name: Lynn Tilton
    Title: Manager


ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager


By:_____
    Name:    Lynn Tilton
    Title:    Manager


ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager


By:_____
    Name:    Lynn Tilton
    Title:    Manager

SIGNATURE PAGE TO DIRECTION LETTER (December 8, 2015)

**A0640**

TRANSCARE00231412

ARK INVESTMENT PARTNERS II, L.P.,
 as Lender
By: Patriarch Partners III, LLC,
 its Investment Adviser


By:_____
 Name: Lynn Tilton
 Title:  Manager



PATRIARCH PARTNERS AGENCY SERVICES, LLC,
for itself and as administrative agent for the Lenders



By: _____
Name:  Lynn Tilton
Title:  Manager

SIGNATURE PAGE TO DIRECTION LETTER (December 8, 2015)

**A0641**

TRANSCARE00231413

EXHIBIT A

| Payee | Amount | Purpose | Payment Instructions |
|-------|--------|---------|----------------------|
| Transcare | **$100,000** | Interest | Bank: Wells Fargo NA<br>Account Name: Patriarch Partners Agency Services<br>Account Number: 200-001-727-4759<br>Routing Number: 121000248<br>Reference: Interest |

TRANSCARE00231414

Case 1:20-cv-06274-LAK   Document 116   Filed 09/30/22   Page 9 of 65

# EXHIBIT 7

Case 1:20-cv-06247-LAK   Document 16   Filed 09/30/20   Page 10 of 65

# TRANSCARE CORPORATION

December 11, 2015

PATRIARCH PARTNERS AGENCY SERVICES, LLC
1 Broadway, 5th Floor
New York, NY 10004
Attention:  Loan Administration/ Transcare Corporation

      Re:     Direction Letter for Payment of Certain Loan Proceeds

Dear Sir or Madam:

Reference is made to (a) the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TRANSCARE CORPORATION, a Delaware corporation (the "Borrower" or "you"), the affiliates thereof from time to time party thereto as Guarantors, the financial institutions and other investors from time to time party thereto as Lenders and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent" or "we"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

Anything else in the Credit Agreement to the contrary notwithstanding, the Borrower hereby directs the Secured Parties to disburse proceeds to the applicable accounts set forth on Exhibit A attached hereto.

In further consideration for the execution of this letter by the Secured Parties party hereto and without limiting any rights or remedies any Secured Party may have, the Borrower hereby releases each Secured Party and each of their Related Parties (each a "Releasee" and, collectively, the "Releasees") from any and all Claims that the Borrower has or may have against any Releasee, whether or not relating to the Credit Agreement or any other legal relationship that exists or may exist between any Releasee and the Borrower.  As used in this paragraph, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, settlements, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, interest, costs, fees, and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any person, any Affiliate of such person or of another Related Party of such person (excluding, in each case, (A) the Secured Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio

**A0644**

Confidential

Company" means any person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent, (v) "Controlled Affiliate" means, with respect to any entity, any person directly or indirectly "controlled" (as defined below) by one or more of such entity and its other Controlled Affiliates, (vi) "Affiliate" means, with respect to a specified person, any other person, directly or indirectly, through one or more intermediaries, controlling or being controlled by or under common control with such person and (vii) "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any person, means being a director, manager, general partner or executive officer of such person or possessing, directly or indirectly, through the ownership of voting securities or other equity interests, through an agreement or otherwise, (A) the power to direct or cause the direction of the management and policies of such person, or (B) the power to vote, or beneficial ownership of, 5% or more of any class of voting securities of such person or of any other equity interests in such person.

This letter (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the Credit Agreement constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof and (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Credit Agreement (and any attempt to assign this letter without such writing shall be null and void).

[SIGNATURE PAGES TO FOLLOW]

2

**A0645**

Confidential

PP-TRBK0099431

This letter may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument.

Very truly yours,

TRANSCARE CORPORATION,
as Borrower

By: _____
Name: GLENN LELAND
Title: CHIEF EXECUTIVE OFFICER

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
as Subsidiary Guarantor

By: _____
Name: GLENN LELAND
Title: CHIEF EXECUTIVE OFFICER

SIGNATURE PAGE TO DIRECTION LETTER (December 11, 2015)

**A0646**

Confidential

Accepted and Agreed
As of the Date First Written Above:

ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager

By: _____
    Name: Lynn Tilton
    Title: Manager

ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager

By: _____
    Name:    Lynn Tilton
    Title:    Manager

ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager

By: _____
    Name:    Lynn Tilton
    Title:    Manager

SIGNATURE PAGE TO DIRECTION LETTER (December 11, 2015)

**A0647**

PP-TRBK0099433

Case 1:20-cv-06247-LAK    Document 11-6    Filed 09/30/20    Page 14 of 65

ARK INVESTMENT PARTNERS II, L.P.,
    as Lender
By: Patriarch Partners III, LLC,
    its Investment Adviser

By: _____
    Name: Lynn Tilton
    Title:  Manager


PATRIARCH PARTNERS AGENCY SERVICES, LLC,
for itself and as administrative agent for the Lenders

By: _____
Name: Lynn Tilton
Title: Manager


SIGNATURE PAGE TO DIRECTION LETTER (December 11, 2015)

**A0648**

Confidential

PP-TRBK0099434

Case 1:20-cv-06274-LAK   Document 11-6   Filed 09/30/20   Page 15 of 65

EXHIBIT A

| Payee | Amount | Purpose | Payment Instructions |
|-------|--------|---------|----------------------|
| Transcare | $110,000 | Payroll | Bank: Wells Fargo NA<br>Account Name: Transcare Corporation<br>Account Number: 2000030130935<br>Routing Number: 121000248<br>Reference: Payroll |

**A0649**

Confidential

PP-TRBK0099435

Case 1:20-cv-06274-LAK   Document 11-6   Filed 09/30/20   Page 16 of 65

# EXHIBIT 8

| | |
|---|---|
| **From:** | Larry Careaga <LarryC@transcare.com> |
| **To:** | Daily BBC; melissa.provost@wellsfargo.com; Teresa.Garney@wellsfargo.com |
| **Sent:** | 12/17/2015 4:10:44 PM |
| **Subject:** | FW: BBC 2015-12-16.xlsx |
| **Importance:** | High |
| **Attachments:** | image003.png |

Here is the confirmation of the funds received from Patriarch into our receivable account.

12/17/2015

206 / BOOK TRANSFER CREDIT

Credit Amount:

1,278,501.84

Cust Ref: COMPLETE

Bank Ref:

Unique ID: RG151217139561

Wells Ref: 151217139561

002000017274759 PATRIARCH PARTNERS AGENCY SERVICES 1 BROADWAY FL 5 NEW YORK NY 10004-1079 IN15

121712534003 ORG=PATRIARCH PARTNERS AGENCY SERVICES One Broadway 5th Floor New York, NY 10004

US RFB=000006548 OBI=Trasncare borrowing /FTR/ BNF=D 002000030130935 Transcare Corporation

**A0651**

TRANSCARE00138081

Completed Timestamp 151217150802 (Time Released)

From: Larry Careaga
Sent: Thursday, December 17, 2015 3:31 PM
To: Daily BBC; melissa.provost@wellsfargo.com; Teresa.Garney@wellsfargo.com
Subject: BBC 2015-12-16.xlsx
Importance: High


I've added $ 1,278,504.84 to the loan balance tab of the BBC to reflect funds to be
received from Patriarch. I will follow up with the appropriate backup when the funds hit
our receivable account.


_____


The cash swept this morning of $ 268,500.93 which is reflected in the loan balance tab and
cell B87 on the "new BBC format" tab is not posted.

**A0652**

TRANSCARE00138082

# EXHIBIT 9

# TRANSCARE CORPORATION

December 17, 2015

PATRIARCH PARTNERS AGENCY SERVICES, LLC
1 Broadway, 5th Floor
New York, NY 10004
Attention: Loan Administration/ Transcare Corporation

Re:   Direction Letter for Payment of Certain Loan Proceeds

Dear Sir or Madam:

Reference is made to (a) the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TRANSCARE CORPORATION, a Delaware corporation (the "Borrower" or "you"), the affiliates thereof from time to time party thereto as Guarantors, the financial institutions and other investors from time to time party thereto as Lenders and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent" or "we"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

Anything else in the Credit Agreement to the contrary notwithstanding, the Borrower hereby directs the Secured Parties to disburse proceeds to the applicable accounts set forth on Exhibit A attached hereto.

In further consideration for the execution of this letter by the Secured Parties party hereto and without limiting any rights or remedies any Secured Party may have, the Borrower hereby releases each Secured Party and each of their Related Parties (each a "Releasee" and, collectively, the "Releasees") from any and all Claims that the Borrower has or may have against any Releasee, whether or not relating to the Credit Agreement or any other legal relationship that exists or may exist between any Releasee and the Borrower. As used in this paragraph, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, settlements, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, interest, costs, fees, and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any person, any Affiliate of such person or of another Related Party of such person (excluding, in each case, (A) the Secured Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio

Confidential

Company" means any person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent, (v) "Controlled Affiliate" means, with respect to any entity, any person directly or indirectly "controlled" (as defined below) by one or more of such entity and its other Controlled Affiliates, (vi) "Affiliate" means, with respect to a specified person, any other person, directly or indirectly, through one or more intermediaries, controlling or being controlled by or under common control with such person and (vii) "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any person, means being a director, manager, general partner or executive officer of such person or possessing, directly or indirectly, through the ownership of voting securities or other equity interests, through an agreement or otherwise, (A) the power to direct or cause the direction of the management and policies of such person, or (B) the power to vote, or beneficial ownership of, 5% or more of any class of voting securities of such person or of any other equity interests in such person.

This letter (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the Credit Agreement constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof and (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Credit Agreement (and any attempt to assign this letter without such writing shall be null and void).

[SIGNATURE PAGES TO FOLLOW]

2

Confidential

PP-TRBK0098917

This letter may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument.

Very truly yours,

TRANSCARE CORPORATION,
as Borrower

By: _____
Name: GLEN LELAND
Title: CHIEF EXECUTIVE OFFICER

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
as Subsidiary Guarantor

By: _____
Name: GLEN LELAND
Title: CHIEF EXECUTIVE OFFICER

SIGNATURE PAGE TO DIRECTION LETTER (December 17, 2015)

**A0656**

Confidential

Accepted and Agreed
As of the Date First Written Above:

ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager


By: _____
    Name: Lynn Tilton
    Title: Manager


ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager



By: _____
    Name:    Lynn Tilton
    Title:    Manager


ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager



By: _____
    Name:    Lynn Tilton
    Title:    Manager

SIGNATURE PAGE TO DIRECTION LETTER (December 17, 2015)

**A0657**

    PP-TRBK0098919

ARK INVESTMENT PARTNERS II, L.P.,
as Lender
By: Patriarch Partners III, LLC,
its Investment Adviser

By:_____
Name: Lynn Tilton
Title: Manager


PATRIARCH PARTNERS AGENCY SERVICES, LLC,
for itself and as administrative agent for the Lenders


By: _____
Name: Lynn Tilton
Title: Manager

SIGNATURE PAGE TO DIRECTION LETTER (December 17, 2015)

**A0658**

Confidential                                        PP-TRBK0098920

## EXHIBIT A

| Payee | Amount | Purpose | Payment Instructions |
|-------|--------|---------|----------------------|
| Transcare | $1,278,501.84 | Payroll, Payroll taxes, and Aetna healthcare | Bank: Wells Fargo NA<br>Account Name: Transcare Corporation<br>Account Number: 2000030130935<br>Routing Number: 121000248<br>Reference: Payroll, Payroll taxes, and Aetna healthcare |

**A0659**

Confidential

PP-TRBK0098921

# EXHIBIT 10

| **From:** | Larry Careaga </O=TRANSCARE/OU=FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS /CN=LARRYC> |
| **To:** | melissa.provost@wellsfargo.com; Teresa.Garney@wellsfargo.com |
| **CC:** | Glenn Leland; Mark Bonilla (markb@transcare.com); Gerald Campbell |
| **Sent:** | 1/5/2016 3:19:12 PM |
| **Subject:** | Patriarch Funds - DOD 01/05/16 |
| **Importance:** | High |
| **Attachments:** | Treasury Information Report_ Intraday Composite Report.pdf |

Here is the backup of the $115k received in our receivable account (ending in 935).

1/5/2016 206 / BOOK TRANSFER CREDIT Credit Amount: 115,000.00

      Cust Ref: COMPLETE        Bank Ref:

      Unique ID: RG160105110448

          Wells Ref: 160105110448

002000017274759 PATRIARCH PARTNERS AGENCY SERVICES 1 BROADWAY FL 5 NEW YORK NY 10004-1079 IN16

010511125439 ORG=PATRIARCH PARTNERS AGENCY SERVICES One Broadway 5th Floor New York, NY 10004

US RFB=000006639 OBI=Trasncare borrowing /FTR/ BNF=D 002000030130935 Transcare Corporation

Completed Timestamp 160105140601 (Time Released)

**Lawrence Careaga**
Treasury Analyst
TransCare Corporation
1 Metrotech Center
20th Floor
Brooklyn, NY 11201
O:  718.510.9161
F:  347.689.7293
X2887

TRANSCARE00024535

| **WELLS FARGO** | **Custom**<br>01/05/2016 03:16 PM ET<br>**CUSTOMER ID:** TRANS799<br>**OPERATOR ID:** LARRYC | **TRANSCARE CORPORATION**<br>Intraday Composite Report<br>As of 01/05/2016 |

**Commercial Electronic Office®**             **Treasury Information Reporting**

Note: Intraday information subject to change

| **Currency:** USD | |
|---|---|
| **Bank:** 121000248 | **WELLS FARGO BANK, N.A.** |
| **Account:** 2000030130935(NY) | **TRANSCARE CORPORATION** |

## Balances

| | |
|---|---:|
| Opening Ledger Balance | .00 |
| Opening Available Balance | .00 |
| Current Ledger Balance | 269,776.61 |
| Current Available Balance | 199,148.94 |
| One Day Float | 70,627.67 |
| Two+ Day Float | .00 |
| Back Value Adjustment to Opening Ledger | .00 |
| Back Value Adjustment to Opening Available | .00 |
| Change in Available Balance Since Opening | 199,148.94 |
| Today's Credits | 269,776.61 |
| Today's Debits | .00 |
| Total Number Credits | 17 |
| Total Number Debits | 0 |

## Summaries

| Type of Credit | Number of Items | Amount |
|---|---:|---:|
| Total ACH Concentration Credits | 10 | 7,149.60 |
| Total Lockbox Credits | 5 | 71,264.09 |
| Total Wire Transfer Credits | 2 | 191,362.92 |
| **Credit Totals** | **17** | **269,776.61** |

## Credit Transactions

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT<br>**Cust Ref:** 043000090764591<br>**Unique ID:** 00000091003655417024<br>COMPANY NAME: OXFORD HEALTH PL<br>ENTRY DESC: HCCLAIMPMT<br>RECIPIENT ID: 621341997483<br>RECIPIENT NAME:TRANSCARE NEW YORK INC<br>COMPANY ID: 1061181200 | **Credit Amount:**<br>**Bank Ref:** | 1,596.00 |

TRANSCARE00024536

|  |  |  |  |
|---|---|---|---|
|  | ENTRY CLASS CODE: CCD |  |  |
|  | DISCRETIONARY DATA: |  |  |
|  | TRN*1*621341997483*1061181200*043000096\ 00010764591 |  |  |
|  | TRANSACTION CODE: 22 |  |  |

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 1,551.23 |
|---|---|---|---|
|  | **Cust Ref:** 043000090761456 | Bank Ref: |  |
|  | **Unique ID:** 0000091003655417022 |  |  |
|  | COMPANY NAME: OXFORD HEALTH PL |  |  |
|  | ENTRY DESC: HCCLAIMPMT |  |  |
|  | RECIPIENT ID: 621341997465 |  |  |
|  | RECIPIENT NAME:TC AMBULANCE CORPORATI |  |  |
|  | COMPANY ID: 1061181200 |  |  |
|  | ENTRY CLASS CODE: CCD |  |  |
|  | DISCRETIONARY DATA: |  |  |
|  | TRN*1*621341997465*1061181200*043000096\ 00010761456 |  |  |
|  | TRANSACTION CODE: 22 |  |  |

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 1,337.98 |
|---|---|---|---|
|  | **Cust Ref:** 043000260480679 | Bank Ref: |  |
|  | **Unique ID:** 0000091003655417026 |  |  |
|  | COMPANY NAME: UPMC |  |  |
|  | ENTRY DESC: EDI PAYMTS |  |  |
|  | RECIPIENT ID: 996694 |  |  |
|  | RECIPIENT NAME:0009TRANSCARE PENNSY |  |  |
|  | COMPANY ID: 4250965480 |  |  |
|  | ENTRY CLASS CODE: CTX |  |  |
|  | DISCRETIONARY DATA: |  |  |
|  | ISA*00* *00* *ZZ*6THXTY400 *01*BNYMELLON *160104*14400010480679 |  |  |
|  | TRANSACTION CODE: 22 |  |  |

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 653.35 |
|---|---|---|---|
|  | **Cust Ref:** 051000015526730 | Bank Ref: |  |
|  | **Unique ID:** 0000091003655417018 |  |  |
|  | COMPANY NAME: AETNA AS01 |  |  |
|  | ENTRY DESC: HCCLAIMPMT |  |  |
|  | RECIPIENT ID: XXXXX8438 |  |  |
|  | RECIPIENT NAME:TRANSCARE PENNSYLVANIA |  |  |
|  | COMPANY ID: 1066033492 |  |  |
|  | ENTRY CLASS CODE: CCD |  |  |
|  | DISCRETIONARY DATA: |  |  |
|  | TRN*1*815363530005085*1066033492\ 00015526730 |  |  |
|  | TRANSACTION CODE: 22 |  |  |

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 490.25 |
|---|---|---|---|
|  | **Cust Ref:** 043000090761538 | Bank Ref: |  |
|  | **Unique ID:** 0000091003655417023 |  |  |
|  | COMPANY NAME: OXFORD HEALTH PL |  |  |
|  | ENTRY DESC: HCCLAIMPMT |  |  |
|  | RECIPIENT ID: 621341997466 |  |  |

TRANSCARE00024537

RECIPIENT NAME:TC HUDSON VALLEY AMBUL
COMPANY ID: 1061181200
ENTRY CLASS CODE: CCD
DISCRETIONARY DATA:
TRN*1*621341997466*1061181200*043000096\ 00010761538
TRANSACTION CODE: 22

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 470.41 |
|---|---|---|---|

**Cust Ref:** 124384870094587
**Unique ID:** 0000009100365541702 1     Bank Ref:
COMPANY NAME: AARP UnitedHealt
ENTRY DESC: HCCLAIMPMT
RECIPIENT ID: 752598438
RECIPIENT NAME:TRANSCARE PENNSYLVANIA
COMPANY ID: 1362739571
ENTRY CLASS CODE: CCD
DISCRETIONARY DATA:
TRN*1*1185978060*1362739571*000036273\ 00010094587
TRANSACTION CODE: 22

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 404.75 |
|---|---|---|---|

**Cust Ref:** 043000090761541
**Unique ID:** 0000009100365541702 5     Bank Ref:
COMPANY NAME: OXFORD HEALTH PL
ENTRY DESC: HCCLAIMPMT
RECIPIENT ID: 62185776004
RECIPIENT NAME:TC HUDSON VALLEY AMBUL
COMPANY ID: 1061587795
ENTRY CLASS CODE: CCD
DISCRETIONARY DATA:
TRN*1*62185776004*1061587795*043000096\ 00010761541
TRANSACTION CODE: 22

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 310.00 |
|---|---|---|---|

**Cust Ref:** 091000010538627
**Unique ID:** 0000009100365541701 9     Bank Ref:
COMPANY NAME: UHC COMMUNITY PL
ENTRY DESC: HCCLAIMPMT
RECIPIENT ID: 752598438
RECIPIENT NAME:TRANSCARE PENNSYLVANIA
COMPANY ID: 6723957101
ENTRY CLASS CODE: CCD
DISCRETIONARY DATA:
TRN*1*2016010110800453*1251756858*000004567\ 00010538627
TRANSACTION CODE: 22

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | Credit Amount: | 302.94 |
|---|---|---|---|

**Cust Ref:** 044000028584830
**Unique ID:** 0000009100365541702 0     Bank Ref:
COMPANY NAME: UPMC BMS-ASO PAYMENTS

ENTRY DESC: PAYABLES
RECIPIENT ID: 1251769564
RECIPIENT NAME:TRANSCARE PENNSYLVANIA
COMPANY ID: 1251769564
ENTRY CLASS CODE: CCD
DISCRETIONARY DATA:
TRN*1*E 35663*1251769564\ 00018584830
TRANSACTION CODE: 22

| 1/5/2016 | 145 / ACH CONCENTRATION CREDIT | **Credit Amount:** | 32.69 |
| | **Cust Ref:** 091000018474125 | **Bank Ref:** | |

**Unique ID:** 00000091003655417027
COMPANY NAME: PAYPAL TRANSFER
ENTRY DESC: TRANSFER
RECIPIENT ID: 4FU229BQPQ7PC
RECIPIENT NAME:TRANSCARE CORP
COMPANY ID: PAYPALSD11
ENTRY CLASS CODE: PPD
DISCRETIONARY DATA:
TRANSACTION CODE: 22

| | **ACH CONCENTRATION CREDIT Total** | **Credit Amount** | **7,149.60** |

| 1/5/2016 | 115 / LOCKBOX DEPOSIT | **Credit Amount:** | 62,493.06 |
| | **Cust Ref:** 0000785586 | **Bank Ref:** 010087 004261170585 CK | |
| | **Float-Zero Day:** 636.42   **One Day:** 61,856.64   **Two+ Day:** .00 | | |

| 1/5/2016 | 115 / LOCKBOX DEPOSIT | **Credit Amount:** | 4,460.62 |
| | **Cust Ref:** 0000008212 | **Bank Ref:** 010087 004261170414 CK | |
| | **Float-Zero Day:** .00   **One Day:** 4,460.62   **Two+ Day:** .00 | | |

| 1/5/2016 | 115 / LOCKBOX DEPOSIT | **Credit Amount:** | 2,419.57 |
| | **Cust Ref:** 0000006731 | **Bank Ref:** 010087 004261170343 CK | |
| | **Float-Zero Day:** .00   **One Day:** 2,419.57   **Two+ Day:** .00 | | |

| 1/5/2016 | 115 / LOCKBOX DEPOSIT | **Credit Amount:** | 1,815.84 |
| | **Cust Ref:** 0000785491 | **Bank Ref:** 010087 004261170577 CK | |
| | **Float-Zero Day:** .00   **One Day:** 1,815.84   **Two+ Day:** .00 | | |

| 1/5/2016 | 115 / LOCKBOX DEPOSIT | **Credit Amount:** | 75.00 |
| | **Cust Ref:** 0000009181 | **Bank Ref:** 010087 004261167020 CK | |
| | **Float-Zero Day:** .00   **One Day:** 75.00   **Two+ Day:** .00 | | |

| | **LOCKBOX DEPOSIT Total** | **Credit Amount** | **71,264.09** |
| | **Float-Zero Day:** 636.42   **One Day:** 70,627.67   **Two+ Day:** .00 | | |

TRANSCARE00024539

| 1/5/2016 | 195 / INCOMING MONEY TRANSFER | Credit Amount: | 76,362.92 |
|---|---|---|---|
| | **Cust Ref:** COMPLETE | **Bank Ref:** | |

**Unique ID:** RG160105041915
**Wires Ref:** 0105B1Q8983C001504
**Wells Ref:** 160105041915
021001088 HSBC BANK USA 452 FIFTH AVENUE NEW YORK, NEW YORK 005421236 OGB=HSBC BANK USA
-HSBCN
ET PAYMENT ORG=TRANSCARE NY INC 1 METROTECH CTR FL 20 BROOKLYN NY 11201-3949 BROOKLYN
RFB=9736
31550 OPI=678716935 /FTR/ BNF=2000030130935 TRANSCARE CORP 5811FOSTER AVENUE BROOKLYN NY
1123
4 BBI=/DAS/REF:32264IT00BDH/BIB
Completed Timestamp 160105084854 (Time Released)

| 1/5/2016 | 206 / BOOK TRANSFER CREDIT | Credit Amount: | 115,000.00 |
|---|---|---|---|
| | **Cust Ref:** COMPLETE | **Bank Ref:** | |

**Unique ID:** RG160105110448
**Wells Ref:** 160105110448
002000017274759 PATRIARCH PARTNERS AGENCY SERVICES 1 BROADWAY FL 5 NEW YORK NY 10004-1079
IN16
010511125439 ORG=PATRIARCH PARTNERS AGENCY SERVICES One Broadway 5th Floor New York, NY 10004
US RFB=000006639 OBI=Trasncare borrowing /FTR/ BNF=D 002000030130935 Transcare Corporation
Completed Timestamp 160105140601 (Time Released)

| **Credit Total** | | **Credit Amount** | **269,776.61** |
|---|---|---|---|

**Float-Zero Day:** 199,148.94  **One Day:** 70,627.67  **Two+ Day:** .00
**Account Net Amount**                                                                                      **269,776.61**

**Grand Total For Currency:** USD

---

**Balances**

| | |
|---|---|
| Opening Ledger Balance | .00 |
| Opening Available Balance | .00 |
| Current Ledger Balance | 269,776.61 |
| Current Available Balance | 199,148.94 |
| One Day Float | 70,627.67 |
| Two+ Day Float | .00 |
| Back Value Adjustment to Opening Ledger | .00 |
| Back Value Adjustment to Opening Available | .00 |
| Change in Available Balance Since Opening | 199,148.94 |
| Today's Credits | 269,776.61 |
| Today's Debits | .00 |
| Total Number Credits | 17 |
| Total Number Debits | 0 |

---- END OF REPORT ----

TRANSCARE00024540

Case 1:20-cv-06274-AK    Document 31-6    Filed 09/30/20    Page 33 of 65

# EXHIBIT 11

# TRANSCARE CORPORATION

January 5, 2016

PATRIARCH PARTNERS AGENCY SERVICES, LLC
1 Broadway, 5th Floor
New York, NY 10004
Attention: Loan Administration/ Transcare Corporation

      Re:    Direction Letter for Payment of Certain Loan Proceeds

Dear Sir or Madam:

Reference is made to (a) the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TRANSCARE CORPORATION, a Delaware corporation (the "Borrower" or "you"), the affiliates thereof from time to time party thereto as Guarantors, the financial institutions and other investors from time to time party thereto as Lenders and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent" or "we"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

Anything else in the Credit Agreement to the contrary notwithstanding, the Borrower hereby directs the Secured Parties to disburse proceeds to the applicable accounts set forth on Exhibit A attached hereto.

In further consideration for the execution of this letter by the Secured Parties party hereto and without limiting any rights or remedies any Secured Party may have, the Borrower hereby releases each Secured Party and each of their Related Parties (each a "Releasee" and, collectively, the "Releasees") from any and all Claims that the Borrower has or may have against any Releasee, whether or not relating to the Credit Agreement or any other legal relationship that exists or may exist between any Releasee and the Borrower. As used in this paragraph, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, settlements, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, interest, costs, fees, and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any person, any Affiliate of such person or of another Related Party of such person (excluding, in each case, (A) the Secured Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio

**A0668**

TRANSCARE00231415

Company" means any person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent, (v) "Controlled Affiliate" means, with respect to any entity, any person directly or indirectly "controlled" (as defined below) by one or more of such entity and its other Controlled Affiliates, (vi) "Affiliate" means, with respect to a specified person, any other person, directly or indirectly, through one or more intermediaries, controlling or being controlled by or under common control with such person and (vii) "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any person, means being a director, manager, general partner or executive officer of such person or possessing, directly or indirectly, through the ownership of voting securities or other equity interests, through an agreement or otherwise, (A) the power to direct or cause the direction of the management and policies of such person, or (B) the power to vote, or beneficial ownership of, 5% or more of any class of voting securities of such person or of any other equity interests in such person.

This letter (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the Credit Agreement constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof and (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Credit Agreement (and any attempt to assign this letter without such writing shall be null and void).

[SIGNATURE PAGES TO FOLLOW]

2

TRANSCARE00231416

This letter may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument.

<div style="margin-left: 40%">

Very truly yours,

TRANSCARE CORPORATION,
   as Borrower


By:_____
   Name:
   Title:



TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
   as Subsidiary Guarantor


By:_____
   Name:
   Title:

</div>

TRANSCARE00231417

Accepted and Agreed
As of the Date First Written Above:

ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager


By:_____
    Name: Lynn Tilton
    Title: Manager


ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager



By:_____
    Name:    Lynn Tilton
    Title:    Manager



ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager



By:_____
    Name:    Lynn Tilton
    Title:    Manager

TRANSCARE00231418

ARK INVESTMENT PARTNERS II, L.P.,
    as Lender
By: Patriarch Partners III, LLC,
    its Investment Adviser


By:_____
    Name: Lynn Tilton
    Title:  Manager




PATRIARCH PARTNERS AGENCY SERVICES, LLC,
for itself and as administrative agent for the Lenders



By: _____
Name:  Lynn Tilton
Title:  Manager

TRANSCARE00231419

EXHIBIT A

| Payee | Amount | Purpose | Payment Instructions |
|-------|--------|---------|----------------------|
| Transcare | $115,000 | Payroll and T&E | Bank: Wells Fargo NA<br>Account Name: Transcare Corporation<br>Account Number: 2000030130935<br>Routing Number: 121000248<br>Reference: Payroll and T&E |

**A0673**

# EXHIBIT 12

# TRANSCARE CORPORATION

January 7, 2016

PATRIARCH PARTNERS AGENCY SERVICES, LLC
1 Broadway, 5th Floor
New York, NY 10004
Attention:  Loan Administration/ Transcare Corporation

      Re:    Direction Letter for Payment of Certain Loan Proceeds

Dear Sir or Madam:

Reference is made to (a) the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TRANSCARE CORPORATION, a Delaware corporation (the "Borrower" or "you"), the affiliates thereof from time to time party thereto as Guarantors, the financial institutions and other investors from time to time party thereto as Lenders and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent" or "we"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

Anything else in the Credit Agreement to the contrary notwithstanding, the Borrower hereby directs the Secured Parties to disburse proceeds to the applicable accounts set forth on Exhibit A attached hereto.

In further consideration for the execution of this letter by the Secured Parties party hereto and without limiting any rights or remedies any Secured Party may have, the Borrower hereby releases each Secured Party and each of their Related Parties (each a "Releasee" and, collectively, the "Releasees") from any and all Claims that the Borrower has or may have against any Releasee, whether or not relating to the Credit Agreement or any other legal relationship that exists or may exist between any Releasee and the Borrower.  As used in this paragraph, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, settlements, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, interest, costs, fees, and expenses (including, without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any person, any Affiliate of such person or of another Related Party of such person (excluding, in each case, (A) the Secured Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio

**A0675**

TRANSCARE00231421

Company" means any person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent, (v) "Controlled Affiliate" means, with respect to any entity, any person directly or indirectly "controlled" (as defined below) by one or more of such entity and its other Controlled Affiliates, (vi) "Affiliate" means, with respect to a specified person, any other person, directly or indirectly, through one or more intermediaries, controlling or being controlled by or under common control with such person and (vii) "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any person, means being a director, manager, general partner or executive officer of such person or possessing, directly or indirectly, through the ownership of voting securities or other equity interests, through an agreement or otherwise, (A) the power to direct or cause the direction of the management and policies of such person, or (B) the power to vote, or beneficial ownership of, 5% or more of any class of voting securities of such person or of any other equity interests in such person.

This letter (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the Credit Agreement constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof and (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Credit Agreement (and any attempt to assign this letter without such writing shall be null and void).

[SIGNATURE PAGES TO FOLLOW]

2

**A0676**

TRANSCARE00231422

This letter may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument.

Very truly yours,

TRANSCARE CORPORATION,
  as Borrower

By:_____
  Name:
  Title:

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
  as Subsidiary Guarantor

By:_____
  Name:
  Title:

TRANSCARE00231423

Accepted and Agreed
As of the Date First Written Above:

ZOHAR CDO 2003-1, LIMITED,
    as Lender
By: Patriarch Partners VIII, LLC,
    its Collateral Manager


By:_____
    Name: Lynn Tilton
    Title: Manager


ZOHAR II 2005-1, LIMITED,
    as Lender
By: Patriarch Partners XIV, LLC,
    its Collateral Manager



By:_____
    Name:    Lynn Tilton
    Title:    Manager



ZOHAR III, LIMITED,
    as Lender
By: Patriarch Partners XV, LLC,
    its Collateral Manager



By:_____
    Name:    Lynn Tilton
    Title:    Manager

TRANSCARE00231424

ARK INVESTMENT PARTNERS II, L.P.,
    as Lender
By: Patriarch Partners III, LLC,
    its Investment Adviser

By:_____
    Name: Lynn Tilton
    Title:  Manager




PATRIARCH PARTNERS AGENCY SERVICES, LLC,
for itself and as administrative agent for the Lenders



By: _____
Name:  Lynn Tilton
Title:  Manager

TRANSCARE00231425

EXHIBIT A

| Payee | Amount | Purpose | Payment Instructions |
|-------|--------|---------|----------------------|
| Transcare | **$100,000** | Interest | Bank: Wells Fargo NA<br>Account Name: Patriarch Partners Agency Services<br>Account Number: 200-001-727-4759<br>Routing Number: 121000248<br>Reference: Interest |

TRANSCARE00231426

# EXHIBIT 13

| From: | Lynn Tilton |
|---|---|
| Sent: | Wednesday, February 24, 2016 2:06 PM |
| To: | 'Giglio, Cindi'; Harrison III, Lynn P. |
| Cc: | Brian Stephen |
| Subject: | FW: Transcare borrowings - Privileged and Confidential |
| Importance: | High |

I have funded payroll all year.
Wells has taken my money and then not made payroll.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

## Transcare Corporation

| Effective Date | Principal Balance | Funds Came From |
|---|---|---|
| 02/26/2015 | $ 1,100,000.00 | Zohar Funds |
| 03/05/2015 | $ 250,000.00 | Zohar Funds |
| 04/09/2015 | $ 300,000.00 | Zohar Funds |
| 04/10/2015 | $ 300,000.00 | Zohar Funds |
| 04/23/2015 | $ 550,000.00 | Zohar Funds |
| 07/07/2015 | $ 150,115.00 | Zohar Funds |
| 07/08/2015 | $ 650,000.00 | Zohar Funds |
| 07/16/2015 | $ 1,479,906.42 | Zohar Funds |
| 10/08/2015 | $ 250,000.00 | Zohar Funds |
| 10/16/2015 | $ 500,000.00 | Zohar Funds |
| 12/08/2015 | $ 100,000.00 | Zohar Funds |
| 12/11/2015 | $ 110,000.00 | Zohar Funds |

1

**A0682**

Confidential
PP-TRBK0047615

| 12/17/2015 | $ | 1,278,501.84 | Zohar Funds |
| 01/05/2016 | $ | 115,000.00 | Zohar Funds |
| 01/07/2016 | $ | 100,000.00 | Zohar Funds |
| 1/15/2016 | $ | 1,172,757.53 | Ark II - CLO 2001-1 |
| 1/28/2016 | $ | 195,975.00 | Ark Angels II |
| 1/29/2015 | $ | 690,168.24 | Ark II - CLO 2001-1 |

Totals:

| Zohar Funds: | $ | 7,233,523.26 |
| Ark II - CLO 2001-1 | $ | 1,862,925.77 |
| Ark Angels II | $ | 195,975.00 |
| Grand Total : | $ | 9,292,424.03 |

2

Confidential

PP-TRBK0047616

Case 1:20-cv-06274-LAK   Document 1-6   Filed 09/30/20   Page 50 of 65

# EXHIBIT 14

**AMENDMENT NO. 27
TO CREDIT AGREEMENT OF
TRANSCARE CORPORATION**

Amendment No. 27 (this "Amendment"), dated as of July 7, 2015, to the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TRANSCARE CORPORATION, a Delaware corporation (the "Borrower"), the financial institutions and other investors from time to time party thereto as Lenders and PATRIARCH PARTNERS AGENCY SERVICES, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

WITNESSETH:

WHEREAS, the Borrower, the Guarantors, the Lenders and the Administrative Agent are party to the Credit Agreement;

WHEREAS, the Lenders party to this Amendment, the Borrower and the Administrative Agent have agreed, subject to certain limitations and conditions set forth below, to make certain amendments to the Credit Agreement, as more specifically set forth below;

NOW, THEREFORE, the parties hereto agree as follows:

Section 1.     Amendments to the Credit Agreement.     The Credit Agreement is, effective as of the date first written above and subject to the satisfaction (or due waiver) of the conditions set forth in Section 2 (Conditions Precedent to the Effectiveness of this Amendment) hereof, hereby amended as follows (with boldface, underlining, highlighting, indenting and other formatting modified to conform to the formatting of the Credit Agreement):

(a)     Amendments to Section 1 (Definitions)

(i)     The following definitions are hereby inserted in Section 1.1 (Defined Terms) of the Credit Agreement in the appropriate place to preserve the alphabetical order of the definitions in such section (and, if applicable, the following definitions shall replace in their entirety existing definitions for the corresponding terms in such section):

"Term Loan": collectively, the Tranche A Term Loans, the Tranche B Term Loans, the Tranche C Term Loans, the Tranche D Term Loans, the Tranche E Term Loans, the Tranche F Term Loans and the Tranche G Term Loans.

"Term Loan Commitment": any or all of the Tranche A Term Loan Commitments, the Tranche B Term Loan Commitments, the Tranche C Term Loan Commitments, the Tranche D Term Loan Commitments, the Tranche E Term Loan commitments, the Tranche F Term Loan commitments, and/or the Tranche G Term Loan Commitments, as applicable.

"Tranche G OID Number" means 0.963827711



EXHIBIT
177
11-15-18

Confidential       **A0685**       PP-TRBK0049638

"Tranche G Term Loan": as defined in Section 2.1(g).

"Tranche G Term Loan Commitment": means, as to each Lender, the amount, if any, set forth as such opposite such Lender's name on Schedule 1.0 for Tranche G Term Loans or, as the case may be, in the Assignment and Acceptance pursuant to which such Lender became a party hereto, as such amount may be changed from time to time in accordance with the provisions of this Agreement.

"Tranche G Term Loan Commitment Period": the period beginning on and including July 7, 2015 and ending on the Business Day immediately preceding the day all Tranche G Term Loans must be repaid pursuant to Section 2.3(g).

"Tranche G Term Loan Discounted Amount" means the amount of a Tranche G Term Loan multiplied by the Tranche G OID Number.

"Tranche G Term Loan Lender": the Lender(s) identified as holding a Tranche G Term Loan Commitment pursuant to Schedule 1.0 or, as the case may be, as listed in the Assignment and Acceptance pursuant to which such Lender became a party hereto, as such amount may be changed from time to time in accordance with the provisions of this Agreement.

"Tranche G Term Loan Percentage": as to any Lender, at any time, with respect to any Lender, the percentage obtained by dividing (i) the sum of the aggregate principal amount of the Tranche G Term Loans of such Lender and any outstanding undrawn Tranche G Term Loan Commitment of such Lender by (y) the sum of the aggregate principal amount of all Tranche G Term Loans and all outstanding undrawn Tranche G Term Loan Commitments; provided, that solely for purposes of calculating the amount of each installment of Tranche G Term Loans (other than the last installment) payable to a Tranche G Term Loan Lender pursuant to Section 2.2, such Tranche G Term Loan Lender's Term Loan Percentage shall be calculated without giving effect to any portion of any prior mandatory or optional prepayment attributable to such Tranche G Term Loan Lender's Term Loans that shall have been declined by such Tranche G Term Loan Lender (or in the case of any Tranche G Term Loan Lender that shall have acquired its Term Loans by assignment from another Person, by such other Person).

(b)     Amendments to Section 2 (Amount and Terms of Term Loans).

(i)     Section 2.1 of the Credit Agreement hereby is amended by adding a new subsection (g) immediately following subsection (f) as follows:

(g) During the Tranche G Term Loan Commitment Period, subject to the terms and conditions hereof and relying on the representations and warranties set forth herein, each Tranche G Term Loan Lender having a Tranche G Term Loan Commitment, severally and not jointly and severally, agrees to make Tranche G Term Loans to the Borrower (a "Tranche G Term Loan") in an aggregate amount up to but not exceeding such Tranche G Term Loan Commitment by advancing the Tranche G Term Loan Discounted Amount for such Tranche G Term Loans. The aggregate principal amount of any Tranche G Term Loan deemed

- 2 -

outstanding hereunder shall be equal to the aggregate principal amount of the proceeds of such Tranche G Term Loans advanced to the Borrower hereunder divided by the Tranche G OID Number. Such principal amount deemed outstanding hereunder shall be owed by the Borrower hereunder from the date such proceeds are advanced hereunder and shall be deemed to be the principal amount of the Loan of such Tranche outstanding hereunder for all purposes under the Loan Documents, including for purposes of calculating proceeds required to be disbursed and undrawn Tranche G Term Loan Commitments pursuant to the first sentence of this clause (g). Any amount borrowed under this Section 2.1(g) and subsequently repaid or prepaid may not be reborrowed. At the request of a Tranche G Term Loan Lender, Borrower shall issue one or more Tranche G Term Notes to evidence the Tranche G Term Loans. Interest on the Tranche G Term Loans shall be calculated on the principal amount of the Tranche G Term Loans then outstanding and in accordance with the terms of Section 5.1 hereof.

(ii)    Section 2.2 of the Credit Agreement hereby is amended by adding a new subsection (g) immediately following subsection (f) as follows:

(g) During the Tranche G Commitment Period, and upon receipt at least one Business Day (except as otherwise agreed by the Administrative Agent in its sole discretion) prior to the date such Tranche G Term Loan is made of an irrevocable notice of borrowing from the Borrower in form and substance acceptable to the Administrative Agent in its sole discretion requesting such Tranche G Term Loans, each Tranche G Term Loan Lender shall advance its Tranche G Term Loan Discounted Amount to the Administrative Agent in same day Dollars, to such account of the Administrative Agent as the Administrative Agent may designate. After the Administrative Agent's receipt of the proceeds of the Tranche G Term Loan Discounted Amount of each Tranche G Term Loan Lender, the Administrative Agent shall make available to Borrower the proceeds of such Tranche G Term Loans that were funded on such date, by transferring to the account of Borrower designated in writing by Borrower (or as Borrower otherwise shall instruct in writing prior to such transfer) same day Dollars equal to the Tranche G Term Loan Discounted Amount received by the Administrative Agent from each Tranche G Term Loan Lender.

(iii)    Section 2.3 of the Credit Agreement hereby is amended by adding a new subsection (g) immediately following subsection (f) as follows:

(g) For Tranche G Term Loans, Borrower shall pay to the Administrative Agent, for the account of the Tranche G Term Loan Lenders, the aggregate outstanding principal amount of the Tranche G Term Loans in one installment payable on April 15, 2019 and, upon receipt thereof, the Administrative Agent shall distribute to each Tranche G Term Loan Lender its Tranche G Term Loan Percentage of such payment.

(c)    Amendments to Section 5 (General Provisions Applicable to Loans).

(i)    Section 5.1 (Interest Rates and Payment Dates) of the Credit Agreement hereby is amended and restated as follows:

- 3 -

**A0687**

AMENDMENT NO. 27
CREDIT AGREEMENT
TRANSCARE CORPORATION

(i)     Each Tranche G Term Loan shall bear interest at a rate per annum equal to the LIBOR plus 4%.

(ii)     Section 5.4(e) of the Credit Agreement hereby is amended and restated in its entirety to read as follows:

(e)     Borrower agrees that, upon the request to the Administrative Agent by any Lender, Borrower shall execute and deliver to such Lender a promissory note of the Borrower evidencing the Tranche A Term Loan, Revolving Credit Loans, Tranche B Term Loan, Tranche C Term Loan, Tranche D Term Loan, Tranche E Term Loan, Tranche F Term Loan or Tranche G Term Loan of such Lender, substantially in a form reasonably acceptable to such Lender (a "Tranche A Term Note", "Revolving Credit Note", "Tranche B Term Note", "Tranche C Term Note", "Tranche D Term Note", "Tranche E Term Note", "Tranche F Term Note" or "Tranche G Term Note" respectively; each Tranche A Term Note, Tranche B Term Note, Tranche C Term Note, Tranche D Term Note, Tranche E Term Note, Tranche F Term Note or Tranche G Term Note being referred to as a "Term Note")."

(iii)     Section 5.5 of the Credit Agreement hereby is amended and restated to read in its entirety as follows:

5.5     Optional Prepayments. The Borrower may on the last day of any Interest Period with respect thereto, in the case of Eurodollar Loans, or at any time and from time to time, in the case of Base Rate Loans or Tranche B Term Loans, prepay the Loans, in whole or in part, without premium or penalty, upon irrevocable notice delivered to the Administrative Agent prior to 12:00 noon, New York City time, at least three Business Days prior thereof, in the case of Eurodollar Loans, or upon irrevocable notice delivered to the Administrative Agent, prior to 12:00 noon, New York City, on the Business Day thereof, in the case of Base Rate Loans or Tranche B Term Loans, specifying the date and amount of prepayment and whether the prepayment is of Eurodollar Loans, Base Rate Loans, Tranche B Term Loans or a combination thereof, and, if of a combination thereof, the amount allocable to each. Upon receipt of any such notice the Administrative Agent shall promptly notify each Lender thereof. If any such notice is given, the amount specified in such notice shall be due and payable on the date specified therein, together with any amounts payable pursuant to Section 5.13 and, in the case prepayments of any Term Loan only, accrued interest to such date on the amount prepaid. Amounts prepaid on account of the Term Loans may not be reborrowed. Partial prepayments of the Tranche A Term Loans, Tranche B Term Loans, Tranche C Term Loans, Tranche D Term Loans, Tranche E Term Loans, Tranche F Term Loans or Tranche G Term Loans pursuant to this Section 5.5 shall be applied to the installments of principal of the Tranche A Term Loans, Tranche B Term Loans, Tranche C Term Loans, Tranche D Term Loans, Tranche E Term Loans, Tranche F Term Loans or Tranche G Term Loans being repaid as applicable, in the inverse order of their scheduled maturities. Partial prepayments pursuant to this Section shall be in an aggregate principal amount of $100,000 or a whole multiple thereof.

- 4 -

(iv)    Section 5.6(d) of the Credit Agreement hereby is amended and restated in its entirety to read as follows:

(d) Amounts prepaid pursuant to this Section 5.6 (other than Section 5.6(a), 5.6(f) or 5.6(g)) shall be applied first, to the installments of principal of the Tranche A Term Loans, then to installments of principal of the Tranche B Term Loans, then to installments of principal of the Tranche C Term Loans, then to installments of principal of the Tranche D Term Loans, then to installments of principal of the Tranche E Term Loans, then to installments of principal of the Tranche F Term Loans, then to installments of principal of the Tranche G Term Loans until all Term Loans are paid in full, then to reduce any outstanding undrawn Tranche G Term Loan Commitment and second, to the reduction of the Revolving Credit Commitments and the prepayment of the Revolving Credit Loans. Prepayments of installments of the Tranche A Term Loans, Tranche B Term Loans, Tranche C Term Loans, Tranche D Term Loans, Tranche E Term Loans, Tranche F Term Loans and Tranche G Term Loans, respectively, shall be applied in the inverse order of maturity of the Tranche A Term Loans, the Tranche B Term Loans, the Tranche C Term Loans, the Tranche D Loans, Tranche E Term Loans, Tranche F Term Loans and the Tranche G Term Loans and such amounts so prepaid may not be re-borrowed.

(v)    Section 5.7 of the Credit Agreement hereby is amended by deleting the last sentence thereof in its entirety.

(d)    Amendment to Section 7 (Conditions Precedent). Section 7.2 of the Credit Agreement hereby is amended by adding a new subsection (e) at the end thereof to read as follows:

(e)    Available Commitment. After making all Loans requested on such Borrowing Date, (i) the aggregate outstanding principal amount of all Revolving Credit Loans shall not exceed the aggregate outstanding Revolving Credit Commitments and (ii) the aggregate outstanding principal amount of Tranche G Term Loans requested on such Borrowing Date (after giving effect to any increase caused by the application of Section 2.1(g) shall not exceed the aggregate outstanding Tranche G Term Loan Commitments.

(e)    Amendments to Schedules and Exhibits to the Credit Agreement. The contents of Schedule 1.0 to the Credit Agreement are hereby replaced with the contents of Exhibit A to this Amendment.

Section 2.    Conditions Precedent to the Effectiveness of this Amendment. This Amendment shall become effective as of the date first written above (the "Amendment Effective Date") when, and only when, each of the following conditions precedent shall have been satisfied or duly waived by the Administrative Agent (the date each such conditions precedent is satisfied or duly waived, the "Conditions Precedent Date"):

(a)    Certain Documents. The Administrative Agent shall have received this Amendment, duly executed by the Borrower, each other Loan Party and the Lenders

- 5 -

party hereto, constituting the Required Lenders, together with such additional documentation as the Administrative Agent may reasonably require, dated the Amendment Effective Date (unless otherwise agreed by the Administrative Agent) and in form and substance satisfactory to it;

(b)     Representations and Warranties. Each of the representations and warranties contained in this Amendment were true when made;

(c)     No Default or Event of Default. After giving effect to this Amendment, no Default or Event of Default shall have occurred and be continuing, either on the date hereof or on the Conditions Precedent Date;

(d)     Corporate and Other Proceedings. All corporate and other proceedings, and all documents, instruments, consents and other legal matters ancillary to the transactions contemplated by this Amendment shall be completed in a form and manner satisfactory in all respects to the Administrative Agent; and

(e)     Fees and Expenses Paid. The Borrower shall have paid all Obligations due, after giving effect to this Amendment, on or before the later of the date hereof and the Conditions Precedent Date, including, without limitation, all fees set forth in Section 4 (Fees and Expenses) hereof and all other costs, expenses and fees due under any Loan Document and invoiced prior to the Conditions Precedent Date.

Section 3.     Representations and Warranties. On and as of the date hereof and as of the Conditions Precedent Date, after giving effect to this Amendment, each Loan Party hereby represents and warrants to the Administrative Agent and each Lender as follows:

(a)     Binding Obligation. This Amendment has been duly authorized, executed and delivered by such Loan Party and constitutes a legal, valid and binding obligation of such Loan Party, enforceable against such Loan Party in accordance with its terms and the Credit Agreement as modified by this Amendment;

(b)     Subsidiaries. (i) If such Loan Party is the Borrower, the representations and warranties set forth in Section 6.15 (Subsidiaries) of the Credit Agreement are true as of the date hereof (replacing "Closing Date" therein with the date of this Amendment and taking into account any updated information delivered by the Borrower to the Administrative Agent on or prior to the date hereof) and all new Loan Documents required to be executed and delivered by or with respect to Subsidiaries of the Borrower existing on the Conditions Precedent Date by the existing Loan Documents, including, without limitation, Section 8.10 (Additional Collateral; Additional Subsidiary Guarantors) thereof, have been executed and delivered and (ii) in any case, all certificates, statements, updated schedules, collateral and other updates and other documents required to be delivered by such Loan Party to the Administrative Agent or any Lender pursuant to any Loan Document as modified hereby have been delivered thereunder and all filings required to be made by or on behalf of such Loan Party pursuant to any such Loan Document have been made;

(c)     Representations and Warranties in Loan Documents. Each of the other representations and warranties of such Loan Party contained any Loan Document (as modified hereby) or in any certificate, document or financial or other statement furnished at any time under or in connection therewith is true in all material respects on and as of the date hereof and the Conditions Precedent Date, in each case as if made on and as of such date and except to

- 6 -

the extent that such representations and warranties expressly relate to a specific date, in which case such representations and warranties shall be true in all material respects as of such specific date; provided, that, as used therein, (i) "Credit Agreement" shall refer to the Credit Agreement and after giving effect to this Amendment and (ii) "Loan Documents" shall include this Amendment;

      (d)      No Litigation or Defense. No litigation has been commenced or threatened against such Loan Party or any of its Subsidiaries seeking to restraint or enjoin (whether temporarily, preliminarily or permanently) the performance of any action by any Loan Party or any Subsidiary of any Loan Party required or contemplated by the terms of this Amendment or any other Loan Document as modified hereby, and there exists no cause of action, offset, claim, counterclaim or defense, whether or not asserted, against the Administrative Agent or any Lender or any of their Related Parties (as defined below) with respect to the Obligations under any Loan Document; and

      (e)      No Default or Event of Default. No Default or Event of Default is continuing.

      Section 4.      Fees and Expenses.

      (a)      As consideration for the execution of this Amendment, the Loan Parties jointly and severally agree to pay to the Administrative Agent for this Amendment by 5 p.m. (New York Time) on the date of this Amendment (or such later date or time as the Administrative Agent and the Borrower may agree), an amendment fee equal to $3,000. The Administrative Agent may (but shall not be obligated to), as payment thereof, deduct such fee from the proceeds of any Loan to be funded to the Borrower on or after the date hereof.

      (b)      Each Loan Party agrees to pay on demand in accordance with the terms of Section 12.5 (Payment of Expenses and Taxes) of the Credit Agreement all costs and expenses of the Administrative Agent in connection with the preparation, reproduction, execution, delivery and enforcement of this Amendment and all other Loan Documents entered into in connection herewith (including, without limitation, the fees and expenses of attorneys, advisors and other professionals hired by the Administrative Agent with respect to the Loan Parties or the Loan Documents).

      Section 5.      Release.

      (a)      In further consideration for the execution by the Administrative Agent and the Lenders party hereto of this Amendment and without limiting any rights or remedies the Administrative Agent or any Lender may have, each Loan Party hereby releases each of the Administrative Agent, each Lender and each of their Related Parties (each a "Releasee" and, collectively, the "Releasees") from any and all Claims that any Loan Party has or may have against any Releasee, whether or not relating to any Loan Document, Obligation, Collateral, or legal relationship that exists or may exist between any Releasee and any Loan Party.

      (b)      As used in this Section 5, (i) "Claims" means all liabilities, rights, demands, covenants, duties, obligations (including, without limitation, indebtedness, receivables and other contractual obligations), claims, actions and causes of actions, suits, disputes, judgments, damages, losses, debts, responsibilities, fines, penalties, sanctions, commissions and interest, disbursements, taxes, charges, costs, fees and expenses (including,

- 7 -

without limitation, fees, charges and disbursements of financial, legal and other advisors, consultants and professionals and, if applicable, any value-added and other taxes and charges thereon), in each case of any kind or nature, whether joint or several, whether now existing or hereafter arising and however acquired and whether or not known, asserted, direct, contingent, liquidated, due, consequential, actual, punitive or treble, (ii) "Related Party" means, with respect to any Person, any Affiliate of such Person or of another Related Party of such Person (excluding, in each case, (A) the Loan Parties and their Controlled Affiliates and (B) any other Portfolio Company) and such Person's and such Affiliate's predecessors, successors, assigns, managers, members, partners, directors, officers, employees (regardless of whether seconded to a third party and including, without limitation, individuals with independent contractor or similar status), individual stockholders, agents, attorneys-in-fact, trustees, fiduciaries, representatives and advisors, (iii) "Portfolio Company" means any Person and its Controlled Affiliates in which any Lender or any other Affiliated Investor has made any investment, whether through the purchase of debt or equity securities, loans or otherwise, (iv) "Affiliated Investor" means any Person that is a collateralized debt obligation, collateralized loan obligation or any other investment pooling vehicle or other entity that (A) is created primarily to invest in equity or debt securities, loans and other investments, (B) does not operate any trade or business and (C) is administered, advised or managed by, or directly or indirectly under common administration, advice or management with, the Administrative Agent or any Lender or any Affiliate of any Lender or the Administrative Agent and (v) "Controlled Affiliate" means, with respect to any entity, any Person directly or indirectly "controlled" (as defined in the definition of "Affiliate" set forth in the Credit Agreement on the date hereof) by one or more of such entity and its other Controlled Affiliates.

Section 6.    Consent of Subsidiary Guarantors and Reaffirmation of Obligations. Each Subsidiary Guarantor hereby consents to this Amendment and agrees that it continues to guaranty, pursuant to the Loan Documents, jointly and severally, unconditionally and irrevocably, as primary obligor and not as surety, the prompt and complete payment and performance when due of the Obligations as modified hereby and that the terms hereof shall not affect in any way its obligations and liabilities, as expressly modified hereby, under the Loan Documents. Each Loan Party hereby reaffirms (a) all such obligations and liabilities, and agrees that such obligations and liabilities shall remain in full force and effect, (b) the Liens granted under the Loan Documents, and agrees that such Liens shall continue to secure the Obligations as expressly modified hereby, and (c) the validity and enforceability of the Loan Documents.

Section 7.    Effect on the Loan Documents. This Amendment is a Loan Document and is limited as written. As of the date each modification set forth herein shall become effective, each reference in the Credit Agreement to "this Agreement," "hereunder," "hereof," "herein," or words of like import, and each reference in the other Loan Documents to the Credit Agreement (including, without limitation, by means of words like "thereunder," "thereof" and words of like import), shall refer to the Credit Agreement as modified thereby, and this Amendment and the Credit Agreement shall be read together and construed as a single document. The execution, delivery and effectiveness of this Amendment shall not, except as expressly provided herein, (a) waive or modify any right, power or remedy under, or any other provision of, any Loan Document or (b) commit or otherwise obligate the Administrative Agent or any Lender to enter into or consider entering into any other waiver or modification of any Loan Document.

Section 8.    Waiver of Jury Trial; Miscellaneous. Headings are for convenience only and do not form part of this Amendment, except when used to reference an article or section, in which case such title reference shall govern absent manifest error in case of conflict. All

- 8 -

communications and notices hereunder shall be given as provided in the Loan Documents. This Amendment (a) shall be governed by and construed in accordance with the law of the State of New York, (b) is for the exclusive benefit of the parties hereto and, together with the other Loan Documents, constitutes the entire agreement of such parties, superseding all prior agreements among them, with respect to the subject matter hereof, (c) may be modified, waived or assigned only in writing and only to the extent such modification, waiver or assignment would be permitted under the Loan Documents (and any attempt to assign this Amendment without such writing shall be null and void), (d) may be executed in counterparts, which may be effectively transmitted by fax or e-mail (in each case return receipt requested and obtained) and which, together, shall constitute one and the same instrument, (e) is a negotiated document, entered into freely among the parties upon advice of their own counsel, and it should not be construed against any of its drafters and (f) shall survive the satisfaction or discharge of the Obligations. The fact that any term or provision of this Amendment is held invalid, illegal or unenforceable as to any person in any situation in any jurisdiction shall not affect the validity, enforceability or legality of the remaining terms or provisions hereof or the validity, enforceability or legality of such offending term or provision in any other situation or jurisdiction or as applied to any person. **Each party hereto hereby irrevocably and unconditionally waives any right to trial by jury with respect to this Amendment.**

[SIGNATURE PAGES FOLLOW]

- 9 -

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be executed by their respective officers and general partners thereunto duly authorized, as of the date first written above.

TRANSCARE CORPORATION,
as Borrower

By: _____

Name: Mark Bonille
Title: CFo

TC AMBULANCE CORPORATION
TC AMBULANCE GROUP, INC.
TC AMBULANCE NORTH, INC.
TC BILLING AND SERVICES CORP.
TC HUDSON VALLEY AMBULANCE CORP.
TCBA AMBULANCE, INC.
TRANSCARE HARFORD COUNTY, INC.
TRANSCARE MANAGEMENT SERVICES, INC.
TRANSCARE MARYLAND, INC.
TRANSCARE ML, INC.
TRANSCARE NEW YORK, INC.
TRANSCARE PENNSYLVANIA, INC.
TRANSCARE WESTCHESTER, INC.,
as Subsidiary Guarantor

By: _____

Name: Mark Bonille
Title: CFo

SIGNATURE PAGE TO AMENDMENT NO. 27
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

A0694

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
   as Administrative Agent

By: _____
   Name: Lynn Tilton
   Title: Manager


ZOHAR CDO 2003-1, LIMITED,
   as Lender
By: Patriarch Partners VIII, LLC,
   its Collateral Manager

By: _____
   Name: Lynn Tilton
   Title: Manager


ZOHAR II 2005-1, LIMITED,
   as Lender
By: Patriarch Partners XIV, LLC,
   its Collateral Manager

By: _____
   Name: Lynn Tilton
   Title: Manager


ZOHAR III, LIMITED,
   as Lender
By: Patriarch Partners XV, LLC,
   its Collateral Manager

By: _____
   Name: Lynn Tilton
   Title: Manager


SIGNATURE PAGE TO AMENDMENT NO. 27
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

ARK INVESTMENT PARTNERS II, L.P.,
    as Lender
By: Ark Investment GP II, LLC,
    its General Partner

By: _____
    Name:  Lynn Tilton
    Title:  Manager

Confidential                    **A0696**                    PP-TRBK0049649

FIRST DOMINION FUNDING I,
    as Lender

By: Credit- Suisse Asset Management, LLC,
    its Collateral Manager


By:_____
Name:
Title:


CREDIT SUISSE ALTERNATIVE CAPITAL, INC.,
    as Lender


By:_____
Name:
Title:


SIGNATURE PAGE TO AMENDMENT NO.
TO THE CREDIT AGREEMENT OF TRANSCARE CORPORATION

Confidential    **A0697**    PP-TRBK0049650

**SCHEDULE 1.0**

(As of July 7, 2015)

Revolving Credit Loans

| Revolving Credit Lender | Revolving Credit Loan Commitment | Revolving Credit Loan Commitment Period |
|---|---|---|
| Zohar III, Limited | $2,500,000 | $2,500,000 |

Tranche A Term Loans

| Tranche A Term Loan Lender | Tranche A Term Loans Outstanding |
|---|---|
| Ark Investment Partners II, L.P. | $2,905,731.99 |
| Zohar III, Limited | $15,584,129.76 |
| First Dominion Funding I | $4,043,858.69 |
| Credit Suisse Alternative Capital, Inc. | $3,537,243.56 |

Tranche B Term Loans

| Tranche B Term Loan Lender | Tranche B Term Loans Outstanding |
|---|---|
| Zohar CDO 2003-1, Limited | $3,500,000.00 |

Tranche C Term Loans

| Tranche C Term Loan Lender | Tranche C Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $0 |

Tranche D Term Loans

| Tranche D Term Loan Lender | Tranche D Term Loans Outstanding |
|---|---|
| Zohar III, Limited | $2,961,052.63 |

Tranche E Term Loans

| Tranche E Term Loan Lender | Tranche E Term Loans Outstanding |
|---|---|
| Zohar II 2005-1, Limited | $850,000.00 |

Tranche F Term Loans

| Tranche F Term Loan Lender | Tranche F Term Loans Outstanding | Tranche F Term Loan Commitment |
|---|---|---|
| Zohar III, Limited | $2,883,560.00 | $3,500,000.00 |

**A0698** PP-TRBK0049651

Tranche G Term Loan Commitment

| Tranche G Term Loan Lender | Tranche G Term Loan Commitment |
|---|---|
| Zohar II 2005-1, Limited | $4,150,000.00 |
| **Total** | **$4,150,000.00** |

PP-TRBK0049652