# 20 Civ. 06274 (LAK)

### United States District Court

### *for the*

### Southern District of New York

―――――――――――――――――

*IN RE TRANSCARE CORPORATION*, ET AL.

DEBTORS,

―――――――――――――――――

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

―against―

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

―――――――――――――――――

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

**APPENDIX TO BRIEF FOR THE APPELLANTS**

# Volume XVII- A3292-A3300

## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | ISTANBUL | | TELEPHONE +1 212 696 6000 |
| ASHGABAT | LONDON | ATTORNEYS AND COUNSELLORS AT LAW | FACSIMILE +1 212 697 1559 |
| ASTANA | MEXICO CITY | 101 PARK AVENUE | WWW.CURTIS.COM |
| BEIJING | MILAN | NEW YORK, NEW YORK 10178-0061 | |
| BUENOS AIRES | MUSCAT | | |
| DUBAI | PARIS | | |
| FRANKFURT | ROME | | STEVEN J. REISMAN |
| HOUSTON | WASHINGTON, D.C. | | TEL.: +1 212 696 6065 |
| | | | FAX: +1 917 368 8869 |
| | | | E-MAIL: sreisman@curtis.com |

Dated as of February 9, 2016

VIA EMAIL: peterw@transcare.com

Peter Wolf
Chief Operating Officer
TransCare Corporation
1 Metrotech Center
Brooklyn, NY 11201

Re: **Engagement Agreement**

Dear Mr. Wolf:

Thank you for engaging Curtis, Mallet-Prevost, Colt & Mosle LLP and its affiliates (the "Firm") to act as counsel to TransCare Corporation and its subsidiaries (collectively, the "Company").

The Firm has been engaged to assist the Company in connection with its out-of-court restructuring matters (including, without limitation, in connection with efforts to restructure the Company's overall businesses and a potential reorganization, recapitalization, refinancing, combination, sale(s) of assets, or any other restructuring), as well as any in-court involuntary or voluntary insolvency proceedings and such other matters as the Company may request and the Firm may agree to handle (collectively, the "Engagement"). If a case under Chapter 11 of the U.S. Bankruptcy Code (a "Chapter 11 Case") is commenced, our ongoing employment by the Company will be subject to the approval of the court with jurisdiction over the Chapter 11 Case.

The enclosed Terms of Engagement contain our practices and policies on fees, billing, collection, conflicts and other material terms of our Engagement. Although it is not our intention to be unduly formal in our dealings with you, the rules covering our professional obligations require that we establish a common understanding as to the terms and conditions of our Engagement. To the extent that there is any inconsistency between the Terms of Engagement and this letter, the terms of this letter shall govern.

In connection with this Engagement, you have agreed to deposit $250,000 (the "Deposit") with us as an advance toward our fees and charges. We will apply this advance

JX 077

LaMonica v. Tilton, et al., 18-1021-smb

Confidential

PP-TRBK0051777

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 2

Mr. Peter Wolf
Dated as of February 9, 2016

toward our fees and charges as they are billed. Concurrently, you are to make an additional payment to us to restore the advance to its initial level. Any funds that you deposit with us as an advance against our fees and charges will be treated as property of the firm. Any used portion of such advance after our services are concluded will be returned to you.

I will be the principal member of the Firm who will be responsible for representing the Company in the Engagement and will be assisted by Lynn Harrison and Cindi Giglio and such other partner(s), associate(s) and other members of the Firm as appropriate.

Our client in this Engagement is the Company. Unless otherwise agreed, we are not being engaged to represent its individual directors, officers, employees or shareholders. However, in acting as counsel to the Company in connection with the Engagement, we expect to provide information or advice to directors, officers or employees in their corporate capacities.

If the contents of this letter and the attached Terms of Engagement meet with your approval and accurately reflect your understanding of this agreement with the Firm, please sign one copy of this agreement and return it to my attention by fax at (212) 697-1559 or by e-mail in PDF format at sreisman@curtis.com with an original signature to follow by mail. Moreover, please remit the Deposit as soon as possible in accordance with the payment instructions set forth on Exhibit B hereto.

We look forward to working with you.

My best,

Sincerely,

Steven J. Reisman
A Member of the Firm

Attachment

AGREED AND ACKNOWLEDGED
Dated as of February 9, 2016

TransCare Corporation and its subsidiaries

By: _____
Name: Peter Wolf
Title: Chief Operating Officer

24585294

**A3293**

Confidential
PP-TRBK0051778

## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

## TERMS OF ENGAGEMENT

We appreciate your decision to retain Curtis, Mallet-Prevost, Colt & Mosle LLP (the "Firm") as your legal counsel. This document explains the policies and practices that apply to our Engagement. In addition to our professional obligations, experience has shown that an understanding of these matters will contribute to a better relationship between us, which in turn will make our efforts more productive.

### 1. *Scope of Engagement*

You understand that the Firm is not your general counsel, and that our representation is limited to the Matter identified as the "Engagement" in the accompanying agreement. We would be pleased to consider representing you in other matters designated by you. For any new matters, however, we must first confirm that we will be able to expand the scope of the Engagement as you request, and then provide you with written confirmation as to our agreement. Unless otherwise agreed in writing, the terms set forth in these Terms of Engagement and the accompanying agreement shall apply to the new matter.

In all matters in which we represent you, we will provide services of a strictly legal nature. You will not rely on us for business, investment or accounting decisions, nor to assess the character or creditworthiness of persons with whom you may deal. You will provide us with the factual information and materials we require to perform the services identified in the agreement.

### 2. *Fees for Legal Services*

Our fees for professional services are based on hourly rates for the attorneys or paralegals who render services. In determining a reasonable fee for the time and effort required for a particular matter, we consider the ability, experience and reputation of the lawyer or lawyers in our Firm who perform the services. To facilitate this determination, we internally assign to each lawyer an hourly rate based on these factors. Our internal hourly rates are adjusted periodically, usually September 1 of each year, to account for increases in our cost of delivering legal service, other economic factors, and the augmentation of a particular lawyer's ability, experience, and reputation. Enclosed as **Exhibit A** is a schedule of our current billing rates. If we provide any estimate of fees and expenses, it will be based on our best professional judgment, but it is always subject to the clear understanding that it is not a maximum or fixed fee quotation.

### 3. *Chargeable Costs and Disbursements*

We are committed to serving you with the most effective and cost efficient support systems and to this end we allocate charges for such systems in accordance with the extent of use by individual clients. Consequently, in addition to our fees for legal services, we will separately charge you for certain services reasonably required for the performance of legal services on your behalf. A description of some of these disbursements and internal charges can be found on **Exhibit A**. When required to do so by applicable law, the Firm will also

24585294

**A3294**

Confidential                                                                                                       PP-TRBK0051779

charge applicable value and similar taxes. All payments will be made free and clear of any withholding tax or deduction of any nature (and you will indemnify and reimburse the Firm in respect thereof).

### 4. *Outside Experts*

In the course of this Engagement it may be appropriate to retain persons of special training or expertise to assist in our provision of legal services. Because there are privileges that may apply to services that an attorney requests from a third party, it may be advisable for the Firm to assume responsibility for hiring such experts, with your prior consent. You will be obligated to pay the invoices for the fees and expenses of such experts, whether they are retained by the Firm or by you directly.

### 5. *Billing*

We want our clients to be satisfied with both the quality of our services and the reasonableness of our invoices and we invite questions or comments you may have about any of our fees and disbursements or the format of our invoices. Our practice is to bill on a monthly basis for the fees and chargeable costs and disbursements incurred in the preceding month. Please notify us promptly as to any amount in such invoices that you question. Our invoices are due upon receipt. The Client agrees to promptly remit the amount due to the Firm within 30 days of receipt of our statement. Payments will be made as set forth in **Exhibit B**.

### 6. *Retainer*

The Firm customarily receives a reasonable retainer/on account payment for services rendered and disbursements and internal charges incurred on behalf of its clients. The retainer will be held by the Firm until our final invoice has been paid in full or applied against the final invoice. We will have the right to apply the retainer to any outstanding invoice at any time subject to (and without prejudice to) your right to review our statements. Any amount of the retainer remaining on account at the conclusion of the engagement will be refunded to you after all invoices have been paid.

### 7. *Confidentiality*

For our relationship with you to succeed, it is essential for you to provide us with all factual information reasonably relevant and material to the subject matter of our Engagement. A lawyer has an ethical obligation to preserve the confidences and secrets of a client. That duty is one we regard with the utmost seriousness. In instances in which we represent a corporation, partnership, or other legal entity, our relationship is with, and hence this duty of confidentiality is owed to, the entity and not to the entity's parent or subsidiary corporations, or its shareholders, members, officers, directors or partners.

### 8. *Conflicts of Interest*

Because we represent a large number of clients in a wide variety of legal matters around the world, it is possible that, while you are our client, we will be representing,

Confidential

or asked to represent, a client whose interests are actually or potentially adverse to your interests.

By entering into this engagement agreement, you are waiving any conflict of interest arising by reason of the Firm's representation of any other past, present or future client of the Firm in connection with any matter that (a) is not related to any matter in which we represent you or have previously represented you, and (b) does not involve a situation where we have obtained confidential information from you that is related to such matter, and, subject to such limitations, agreeing not to make any motion or take any other action to disqualify the Firm as counsel in any such case or proceeding.

The foregoing waiver is subject to the continuing obligation of the Firm to not disclose to third parties any confidential information to which it is privy concerning your business or affairs, or to utilize any such information in any matter or proceeding other than the Engagement without your prior consent.

### 9. *Retention of Records*

We are required by certain laws or regulations to retain records of our Engagement for minimum periods of time. Barring a legal duty or other obligation to retain records associated with an engagement for a longer period, the Firm currently expects to discard those records (whether in paper or electronic form) when ten years have lapsed since the termination of the Engagement. However, we retain the discretion to shorten this period upon notice to you, and we will discuss alternative record retention arrangements with you if your own policies dictate longer retention periods. If we are required to maintain paper records in an offsite facility, we retain the right to charge you for the Firm's cost of continued storage and handling of those records.

We will retain the "work product" accumulated during the course of the Engagement, which will be owned by the Firm. "Work product" includes documents intended for internal law office review or otherwise reflecting preliminary or tentative conclusions of an attorney, and Firm administrative records such as client screening documents.

### 10. *No Representations*

You should know that we cannot make any promises or guarantees to you concerning the outcome of the Matter for which you have retained us and nothing in the cover letter or terms of engagement will be construed as such a promise or guarantee. If the Matter does not go forward or reach a successful conclusion for any reason, you are still directly responsible for all fees and disbursements charged by the Firm in the Engagement. Additionally, your obligation to pay our fees and disbursements will not be affected by any agreement that you may have with another party to pay your legal fees and costs or any failure by that party to comply with such agreement.

Confidential                                                                                                    PP-TRBK0051781

### 11. *Termination*

We hope and trust that our relationship with you will be mutually satisfactory. Nevertheless, you are free to terminate our Engagement at any time, unless judicial approval is required for us to withdraw, in which event we agree not to oppose such withdrawal. Subject always to any applicable rule of court, we may terminate our Engagement to represent you if you fail to honor the terms of our Engagement or if, in our professional judgment, we are unable to continue the representation consistent with our ethical obligations. Notwithstanding any such termination, you will remain liable to pay all of our fees and charges incurred up to the date of termination.

Our attorney-client relationship will be terminated upon our completion of the specific services that you have retained us to perform. If you later retain us to perform further or additional services, our attorney-client relationship will be revived, subject to these and any supplemental terms of the new engagement. The fact that we may inform you from time to time of developments which may be of interest to you, by newsletter or otherwise, should not be understood to be a renewal of an attorney-client relationship. Moreover, we have no obligation to inform you of such developments in the law unless we are specifically engaged in writing to do so.

### 12. *Renewal Notices of Security Interests and Liens*

If this or any subsequent Engagement involves the taking of a security interest or lien on the property of another, you are advised that applicable law may provide that public filings giving notice of security interests or liens must be preserved by further public filing prior to expiration of a prescribed period of time (*e.g.*, five years in the case of renewal notices of security interests granted under the New York Commercial Code). Failure to make timely renewal filings could result in the loss of the security interest or lien. We do <u>not</u> undertake to schedule or make renewal filings in your behalf. However, if you need assistance in making renewal filings in the future, we will be pleased to assist you at that time.

### 13. *Applicable Law; Dispute Resolution*

This engagement agreement, and any disputes arising out of or relating to the Engagement, will be governed by and construed in accordance with the laws of the State of New York. In the event there are any disputes regarding our invoices, you may be entitled to require arbitration under a procedure established in New York State for resolution of certain fee disputes pursuant to Part 137 of the Rules of the Chief Administrator, New York Unified Court System. We will provide copies of those rules to you at your request. Except to the extent required by such Rules, any dispute or claim arising out of or in any way relating to the Firm's representation of you in connection with this Engagement or otherwise (including, without limitation, any claim of malpractice or breach of contract) will be finally settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award may be entered in any court having jurisdiction thereof. The place of arbitration will be New York City, New York. Submission of any

Confidential

dispute or claim to arbitration will not deprive either party of its right to seek a remedy or damages from the arbitration tribunal that would be available in a New York court.

The consent to arbitration before the American Arbitration Association in the above paragraph is included because the Firm believes that arbitration is a superior method of dispute resolution. However, there are material differences between arbitration and litigation in a New York court which you should understand in evaluating whether you wish to enter into this agreement. Chief among these differences is that an agreement to arbitrate amounts to a waiver of the right to a jury trial, which is not available in arbitration. Other differences may include, but may not be limited to, the extent of discovery rights, the right to compel production of witnesses and documents, the application of the rules of evidence, the access of the general public and the press to the hearings, the availability of relief, the availability of appellate review on the merits, the fees and costs payable to the arbitrator, the availability of a public forum, and the discretion of the arbitrator to award reasonable attorneys' fees to the prevailing party. Arbitration may be faster and less expensive, a factor that may benefit you in some respects yet also have adverse consequences for your freedom of choice in pursuit of any claim against the Firm. In addition, there is some dispute under New York law as to whether an arbitrator may award punitive damages whereas a New York court does have such power in appropriate cases. For that reason, the Firm agrees that the submission of any dispute to arbitration will not deprive a party of its right to seek a remedy or damages from the arbitration tribunal that would be available in a New York court.

### 14. *Consultation with Independent Counsel and Disclosures*

This Engagement agreement includes a waiver of possible future conflicts, which is set forth in paragraph 8, and a consent to arbitration set forth in paragraph 13. These are complex matters as to which you may wish to consult with independent counsel.

[*Exhibits Follow*]

Confidential

PP-TRBK0051783

## Exhibit A

### Billing Rates and Internal Charges

The Firm's hourly billing rates for its lawyers, legal assistants and other support personnel are based on seniority, experience and location, and are within the ranges set forth in the following schedule:

| CATEGORY | HOURLY RATE |
|---|---|
| Partners | $765-$900 |
| Counsel | $660 |
| Associates | $325-$620 |
| Legal Assistants | $200-$300 |
| Managing Clerk | $570 |
| Other Support Personnel | $70-$325 |

The Firm charges for all third party expenses at its actual cost, except that internal charges for the items listed below are billed in accordance with the following schedule (converted to the appropriate currency at the date of billing):

| DESCRIPTION OF EXPENSE | CHARGE |
|---|---|
| Document Editing | $0.015 / second |
| All other document production (WPC) | $80 / hour |
| Litigation Support | $0.11 / paged Scanned / OCR'ed<br>$0.03 / page TIFF / OCR'ed<br>$0.05 / blowback page<br>$1.20 / GB storage / month<br>$50.00 / GB Data Intake |
| Duplicating (B&W) | $0.10 / page printed |
| Duplicating (Color) | $0.25 / page printed |
| Printing (B&W) | $0.10 / page copied. The first 20 pages are free. |
| Printing (Color) | $0.25 / page copied. The first 20 pages are free. |
| Lexis & Westlaw | Firm's allocated cost (Pass Through) |
| Telephone (4-digit dialing within Firm) | No Charge |
| Telephone (U.S. domestic long distance) | No Charge |
| Telephone (International) | Commercial Rates |

Where required to do so, the Firm also charges the value added tax applicable to legal services provided by lawyers working in its offices outside the United States.

24585294

Confidential

# Exhibit B

## Payment Instructions

Payments of our invoices should be made as follows:

For wire transfers:

| | |
|---|---|
| Bank: | Citibank |
| ABA Routing #: | ▉▉▉▉▉▉▉▉ |
| F/B/O: | Curtis, Mallet-Prevost, Colt & Mosle LLP |
| Account #: | ▉▉▉▉▉▉▉▉ |
| Re: | TransCare Corporation |

For checks:

Curtis, Mallet-Prevost, Colt & Mosle LLP
General Post Office
PO Box 27930
New York, N.Y. 10087-7930
Re: TransCare Corporation

24585294

A3300

Confidential