# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

_____

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

_____

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

## APPENDIX TO BRIEF FOR THE APPELLANTS

# Volume XIX- A3382-A3460

**From:** Lynn Tilton
**Sent:** Friday, February 12, 2016 12:00 AM
**To:** Scott Whalen
**Cc:** John Pothin; Brian Stephen; Carlos Mercado; Michael Greenberg
**Subject:** RE: Highly Confidential

Thank you.  I hope we will have some good news in the morning.



Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Scott Whalen
**Sent:** Thursday, February 11, 2016 8:55 PM
**To:** Lynn Tilton
**Cc:** John Pothin; Brian Stephen; Carlos Mercado; Michael Greenberg
**Subject:** Re: Highly Confidential

I spoke to Bobby and he said this email is great and will be very helpful. He's working on the strategy for the London open.

He asked that we send him the 5 year loss history for the non-911 business so he can use that to get the quote done.

I spoke to Mike Greenberg and he had previously provided the 5 year loss history for the whole company but will get the breakout Bobby needs.

-----------------------------------
Scott Whalen
Patriarch Partners
1 Broadway, 5th Floor
New York, NY 10004
Tel. 212-825-6838
Fax. 212-825-2038
Mob. 646-431-1315
Email. scott.whalen@patriarchpartners.com

1

**JX 080**

LaMonica v. Tilton, et al., 18-1021-smb

**A3382**

PP-TRBK0092227

On Feb 11, 2016, at 7:57 PM, Lynn Tilton <Lynn.Tilton@PatriarchPartners.Com> wrote:

Dear Bobby,

It was a pleasure to speak to you this evening and I very much appreciate your willingness to work with us to bind insurance for our new Transit company.

After more than $10mm of new investment this year and with a heavy heart, we have decided to wind down and exit the NY 911 and hospital businesses.  We will do this in an orderly manner notifying parties.  We want to make sure that the hospitals and workers are given the proper notice to make the transition.  This business, although Transcare's hallmark business, is a high risk, high cost business where most of the accidents and insurance liability reside.

However, there is a smaller, less risky transit business that we would like to continue in a new company.  This would include our NY Transit business and our suburban ambulance businesses in Hudson Valley, Pittsburgh Pennsylvania and Maryland.  It would allow us to maintain a profitable, lower risk transit company that would still employ over 1000 of our workers.

The models show that this business in 2016 would be approximately $67mm with $4mm of EBITDA and would grow with the additional transit business under the contract to $79mm and $7mm of EBITDA in 2017.  It is because this new business makes sense that I would be providing all the new working capital for this business myself, personally.

I would be extremely grateful if you and your firm could use your relationships to bind insurance tomorrow.  This would work even if it was for the first 3 months until we could find new providers.

Feel free to call me day or night if you need more information.

Warm Regards,
Lynn

<image003.jpg>
*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

2

**A3383**

Confidential

**From:** Lynn Tilton
**Sent:** Monday, February 15, 2016 9:49 PM
**To:** Giglio, Cindi
**Cc:** Brian Stephen; Harrison III, Lynn P.
**Subject:** RE: TransCare - Revised Budget

Of course this is the same game that Wells got the company to play—to pay everything but payroll and then come to me to fund. If the people running the cash pay payroll first and payroll taxes second, then all the remaining that needs to be paid is not due to the equity. This is a game that I do not like. And given how I am trying to bail them out, I find it offensive.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Giglio, Cindi [mailto:cgiglio@curtis.com]
**Sent:** Monday, February 15, 2016 9:44 PM
**To:** Lynn Tilton
**Cc:** Brian Stephen; Harrison III, Lynn P.
**Subject:** Re: TransCare - Revised Budget

My two cents is that the bank will say they will do some sort of over advance, but not the whole 2.4 million and they are using payroll as a way to preview that position. Of course, they still need the availability overlay in the budget to make that decision.

Cindi Giglio
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-6936

On Feb 15, 2016, at 9:42 PM, Lynn Tilton <Lynn.Tilton@PatriarchPartners.Com<mailto:Lynn.Tilton@patriarchpartners.com>> wrote:

1



**JX 082**

LaMonica v. Tilton, et al., 18-1021-smb

EXHIBIT
125
10-22-18

But they should know cash is fungible. To say there is payroll or payroll taxes is just cash that has been allocated elsewhere than payroll.
This whole thing is just insane.

<image001.jpg>
Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com>
Web: www.patriarchpartners.com<http://www.patriarchpartners.com/>

From: Giglio, Cindi [mailto:cgiglio@curtis.com]
Sent: Monday, February 15, 2016 9:41 PM
To: Lynn Tilton
Cc: Brian Stephen; Harrison III, Lynn P.
Subject: Re: TransCare - Revised Budget

Wells needs the availability projection to make the rest of the decision. We told this to CM several times, so we are hopeful it is underway. We also asked Otterbourg to push on their end.

Cindi Giglio
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-6936


On Feb 15, 2016, at 9:34 PM, Lynn Tilton <Lynn.Tilton@PatriarchPartners.Com<mailto:Lynn.Tilton@patriarchpartners.com<mailto:Lynn.Tilton@Patriarchpartners.Com%3cmailto:Lynn.Tilton@patriarchpartners.com>>> wrote:

What are they doing about the rest of the payments. Cash is fungible.

<image001.jpg>
Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com%3cmailto:Lynn.Tilton@PatriarchPartners.com>>
Web:
www.patriarchpartners.com<http://www.patriarchpartners.com>><http://www.patriarchpartners.com/<http://www.patriarchpartners.com/>>

2

Confidential

From: Giglio, Cindi [mailto:cgiglio@curtis.com]
Sent: Monday, February 15, 2016 9:09 PM
To: Lynn Tilton; Brian Stephen
Cc: Harrison III, Lynn P.
Subject: Fwd: TransCare - Revised Budget

Lynn and Brian,

See below from Otterbourg. I went back and asked about the remainder of the items that comprise the funding need and they are still reviewing the budget with their client.

Will get back to you when I hear more information.

Thank you,
Cindi

Cindi Giglio
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-6936


Begin forwarded message:

From: "Jonathan N. Helfat"
<jhelfat@otterbourg.com<mailto:jhelfat@otterbourg.com<mailto:jhelfat@otterbourg.com%3cmailto:jhelfat@otterbourg.com<mailto:jhelfat@otterbourg.com%3cmailto:jhelfat@otterbourg.com%3cmailto:jhelfat@otterbourg.com>>>>
Date: February 15, 2016 at 8:55:00 PM EST
To: "Harrison III, Lynn P."
<lharrison@curtis.com<mailto:lharrison@curtis.com<mailto:lharrison@curtis.com%3cmailto:lharrison@curtis.com<mailto:lharrison@curtis.com%3cmailto:lharrison@curtis.com%3cmailto:lharrison@curtis.com%3cmailto:lharrison@curtis.com>>>>, "Giglio, Cindi"
<cgiglio@curtis.com<mailto:cgiglio@curtis.com<mailto:cgiglio@curtis.com%3cmailto:cgiglio@curtis.com<mailto:cgiglio@curtis.com%3cmailto:cgiglio@curtis.com%3cmailto:cgiglio@curtis.com%3cmailto:cgiglio@curtis.com>>>>
Subject: FW: TransCare - Revised Budget

Cindi and Lynn: As anticipated our client will not agree to subordinate it's liens and indebtedness to any other lender or lenders to the borrowers/debtors and expects that any past due payroll and payroll taxes will be funded by Patriarch either pre filing or on a subordinated basis in the Chapter. Jon.


[cid:image001.jpg@01D1681C.72247560]
[cid:image002.jpg@01D1681C.72247560]


3

PP-TRBK0048227

A3386

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Your privacy is very important to our firm. Therefore, if this message contains unsolicited commercial content, you may forward this e-mail to
unsubscribe@curtis.com<mailto:unsubscribe@curtis.com<mailto:unsubscribe@curtis.com%3cmailto:unsubscri be@curtis.com>> or click here
(www.curtis.com/unsubscribe.htm<http://www.curtis.com/unsubscribe.htm<http://www.curtis.com/unsubscribe .htm%3chttp:/www.curtis.com/unsubscribe.htm>>) if you do not want to receive further messages of this nature. Thank you.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

4

Confidential

PP-TRBK0048228

**From:** Lynn Tilton
**Sent:** Wednesday, February 17, 2016 2:13 PM
**To:** robert.strack@wellsfargo.com
**Subject:** Got your messages

Bob,
As I said, the office is working on rebuilding from scratch the models that Carl Marks provided. They are fraught with errors and inaccurate.
I also heard you are cutting the line as of today. If that is the case, I will ask the lawyers to file for a Chapter 7.
We can only do what we can do.
Lynn



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com



JX 083

LaMonica v. Tilton, et al., 18-1021-smb

EXHIBIT
126
10-29-18

1

**Message**

| | |
|---|---|
| **From**: | Lynn Tilton [Lynn.Tilton@PatriarchPartners.Com] |
| **Sent**: | 2/17/2016 2:23:48 PM |
| **To**: | Strack, Robert P. [robert.strack@wellsfargo.com] |
| **CC**: | Marsden, Kurt [kurt.marsden@wellsfargo.com]; Forte, Laurence S. [laurence.forte@wellsfargo.com] |
| **Subject**: | RE: Wells Fargo/TransCare - Financing Discussion Points |

You should be having Carl Marks who is being paid to do this building you something as well.



*Lynn Tilton*

Chief Executive Officer

Patriarch Partners, LLC

One Broadway, 5th Floor

New York, NY 10004

212-825-6772

212-825-2038 – FAX

Lynn.Tilton@PatriarchPartners.com

Web: www.patriarchpartners.com


**From:** robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
**Sent:** Wednesday, February 17, 2016 2:13 PM
**To:** Lynn Tilton
**Cc:** Kurt.Marsden@wellsfargo.com; laurence.forte@wellsfargo.com
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points


Lynn, I just called for you and left a message with your assistant.  Without our having received a viable plan, we are not approved to further extend the financing, which expired yesterday.  I don't know that we have received an updated borrowing base or funding request today, but did want to highlight where things are (or aren't) at this point.

I am available between 2:30 and 4:00, then have a meeting from 4:00-5:00 pm.


**Robert P. Strack**

Senior VP / Regional Portfolio Manager

**Wells Fargo Capital Finance**

**Tel: 212-545-4230**

<div style="border:1px solid black;">

**JX 084**

LaMonica v. Tilton, et al., 18-1021-smb

</div>

CONFIDENTIAL TREATMENT REQUESTED

WF_TC_00000046

*robert.strack@wellsfargo.com*

**From:** Lynn Tilton [mailto:Lynn.Tilton@PatriarchPartners.Com]
**Sent:** Wednesday, February 17, 2016 11:09 AM
**To:** Strack, Robert P.
**Cc:** Marsden, Kurt; Forte, Laurence S.
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points

I can only tell you that we are now building from scratch.

I have the entire office working on it since we do not have anything accurate from Carl Marks.

I will have something today.



*Lynn Tilton*

Chief Executive Officer

Patriarch Partners, LLC

One Broadway, 5th Floor

New York, NY 10004

212-825-6772

212-825-2038 – FAX

Lynn.Tilton@PatriarchPartners.com

Web: www.patriarchpartners.com

**From:** robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
**Sent:** Wednesday, February 17, 2016 10:58 AM
**To:** Lynn Tilton
**Cc:** Kurt.Marsden@wellsfargo.com; laurence.forte@wellsfargo.com
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points

Lynn,

I am heading into a meeting from 11:00-12:00. Any update on getting us the model?

*Robert P. Strack*

Senior VP / Regional Portfolio Manager

**A3390**

CONFIDENTIAL TREATMENT REQUESTED                                                WF_TC_00000047

**Wells Fargo Capital Finance**

**Tel: 212-545-4230**

*robert.strack@wellsfargo.com*

**From:** Strack, Robert P.
**Sent:** Tuesday, February 16, 2016 11:19 PM
**To:** Lynn Tilton
**Cc:** Marsden, Kurt; Forte, Laurence S.
**Subject:** Re: Wells Fargo/TransCare - Financing Discussion Points

Ok Lynn, thanks for the update.

Let's talk tomorrow.


-Bob


Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.

**From:** Lynn Tilton

**Sent:** Tuesday, February 16, 2016 10:31 PM

**To:** Strack, Robert P.ý

**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points


Bob,

I apologize for not sending any of the models yet.  I am still working with the team to make sure they are accurate.  I don't expect I will have anything before the morning.  The hardest part is trying to rebuild the opening balance sheets since the company has not been current on financials. This was less important if filing immediately for Chapter 11. In order to understand if we can run out core and 911 for 45-60 days and then file for a Chapter 7, I need to understand the current liabilities and what past dues will need to be paid over this period to keep from shutting down.  We have the company in the office right now and we are trying to get accuracy.  I do think if we can avoid the big Chapter 11 expenses, this will be much better for everyone.


I will try to have something to you in the morning separating Newco (we are still working to make this happen and the wind down of Oldco (Core/911).


I also have an interview with a CRO tomorrow who comes highly recommended from an old friend.  We must put someone on the ground at Transcare that will take responsibility for paying the bills and running the operation.  We cannot make this work without that.  I had thought that was why Carl Marks was hired. But this needs to be transitioned.

**A3391**

CONFIDENTIAL TREATMENT REQUESTED                                              WF_TC_00000048

Again, I apologize for the delay.  I found mistakes when checking the work of others and I am trying to rebuild the models.

I am happy to talk in the morning.

Lynn



*Lynn Tilton*

Chief Executive Officer

Patriarch Partners, LLC

One Broadway, 5th Floor

New York, NY 10004

212-825-6772

212-825-2038 – FAX

Lynn.Tilton@PatriarchPartners.com

Web: www.patriarchpartners.com

**From:** robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
**Sent:** Friday, February 12, 2016 10:25 AM
**To:** Lynn Tilton; Randy Jones; Michael Greenberg; Jean Luc Pelissier
**Cc:** Kurt.Marsden@wellsfargo.com; laurence.forte@wellsfargo.com; john.husson@wellsfargo.com; melissa.provost@wellsfargo.com; dfiorillo@otterbourg.com; jhelfat@otterbourg.com
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points

Lynn and team,

We would like to have a conference call with business people and bankruptcy counsel to further discuss the bankruptcy strategy.  The feedback from Otterbourg from their call with your counsel last evening is that there is not a clear understanding of said strategy.

Would 10:45 work for the call?

Also, we did not yet receive the proposed budget, and want to check on the status of our seeing that.

Thank you,

*Bob*

**A3392**

CONFIDENTIAL TREATMENT REQUESTED

*Robert P. Strack*

Senior VP / Regional Portfolio Manager

**Wells Fargo Capital Finance**

**Tel: 212-545-4230**


*robert.strack@wellsfargo.com*


**From:** Strack, Robert P.
**Sent:** Thursday, February 11, 2016 9:50 AM
**To:** Randy Jones; Lynn Tilton; Michael Greenberg; Jean Luc Pelissier
**Cc:** Marsden, Kurt; Forte, Laurence S.; Husson, John E.; Provost, Melissa A.; dfiorillo@otterbourg.com
**Subject:** Re: Wells Fargo/TransCare - Financing Discussion Points


Thanks Randy. I would still like to bring Dan along, because we need to understand the bankruptcy strategy that is being contemplated. Perhaps your in-house counsel can join the discussion.


Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.

**From:** Randy Jones
**Sent:** Thursday, February 11, 2016 9:43 AM
**To:** Strack, Robert P.; Lynn Tilton; Michael Greenberg; Jean Luc Pelissier
**Cc:** Marsden, Kurt; Forte, Laurence S.; Husson, John E.; Provost, Melissa A.; dfiorillo@otterbourg.com
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points


Hi Bob,

We will not have bankruptcy counsel present this afternoon.  Lynn says you are welcome to join the discussion table, but we will not need your attorneys today.

Best,

Randy


**W. Randall Jones**

**Managing Director**

**Patriarch Partners, LLC**

**One Broadway**

**5th Floor**

**New York, NY 10004**

**212-825-2034 (O)**

**646-372-6860 (C)**

**A3393**

CONFIDENTIAL TREATMENT REQUESTED

**From:** robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
**Sent:** Thursday, February 11, 2016 9:25 AM
**To:** Lynn Tilton; Michael Greenberg; Jean Luc Pelissier; Randy Jones
**Cc:** Kurt.Marsden@wellsfargo.com; laurence.forte@wellsfargo.com; john.husson@wellsfargo.com; melissa.provost@wellsfargo.com; dfiorillo@otterbourg.com
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points

Hi All,

I wanted to confirm that I am planning to come over to your offices at One Broadway at 2:00 pm today.  Dan Fiorillo, our counsel from Otterbourg, will be joining me.

Have you hired bankruptcy counsel at this point?  If so, please let us know the contact information.

I look forward to seeing you later.

Best,


*Bob*


**Robert P. Strack**

Senior VP / Regional Portfolio Manager

**Wells Fargo Capital Finance**

**Tel: 212-545-4230**


**robert.strack@wellsfargo.com**


**From:** Strack, Robert P.
**Sent:** Wednesday, February 10, 2016 6:25 PM
**To:** 'Lynn Tilton'; 'Michael Greenberg'; 'Jean Luc Pelissier'; 'Randy Jones'
**Cc:** Marsden, Kurt; Forte, Laurence S.; Husson, John E.; Provost, Melissa A.
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points


Sorry Lynn, I have been tied up on another matter.

Assuming you have bankruptcy counsel in place tomorrow, we think it would be beneficial for us to come over in the afternoon and go through the expected bankruptcy scenario from both a business and legal perspective.

As far as the budget process goes, we think it makes the most sense for Carl Marks to continue to work with your team to develop a wind down plan that fits the proposed bankruptcy process. We do not have analysts that are equipped for such budgeting, nor have we hired financial advisors at this point. Our time frame is the same as your time frame. The February 12th delivery date for the wind down budget was based on your expectation that a bankruptcy filing would occur on Sunday, February 14th. In order for us to seek approval for a DIP Facility, a budget is necessary – even if it is in draft form initially.

I will be available by cell after 8:00 pm (516-641-4760), if you would like to talk before tomorrow.


**A3394**

*Bob*


**From:** Lynn Tilton [mailto:Lynn.Tilton@PatriarchPartners.Com]
**Sent:** Wednesday, February 10, 2016 4:29 PM
**To:** Strack, Robert P.; Michael Greenberg; Jean Luc Pelissier; Randy Jones
**Cc:** Marsden, Kurt; Forte, Laurence S.; Husson, John E.; Provost, Melissa A.
**Subject:** RE: Wells Fargo/TransCare - Financing Discussion Points

Bob,

I am happy to speak to you again today.  But as I said to you earlier, we are all scrambling here: Patriarch, Carl Marks and the Company to try to figure out a way forward. We are happy to have you here but I do not think we are in a position to have people meet your requests at this time.  If you would like to send any of your Wells people or your own financial advisors to work with us, we would welcome them here.  As soon as we have a path forward and understand what we must do, we will provide you with the information we have.  I know you would like things in your format and in your time frame, but we are dealing in crisis mode and trying to make sure as much is saved as possible. A forced liquidation of this company will not serve any party.

Lynn




*Lynn Tilton*

Chief Executive Officer

Patriarch Partners, LLC

One Broadway, 5th Floor

New York, NY 10004

212-825-6772

212-825-2038 – FAX

Lynn.Tilton@PatriarchPartners.com

Web: www.patriarchpartners.com


**From:** robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
**Sent:** Wednesday, February 10, 2016 4:11 PM
**To:** Lynn Tilton; Michael Greenberg; Jean Luc Pelissier; Randy Jones
**Cc:** Kurt.Marsden@wellsfargo.com; laurence.forte@wellsfargo.com; john.husson@wellsfargo.com; melissa.provost@wellsfargo.com
**Subject:** Wells Fargo/TransCare - Financing Discussion Points
**Importance:** High

CONFIDENTIAL TREATMENT REQUESTED

Lynn and team,

Below is a list of financing discussion points prepared by our counsel, which details certain parameters we would require in order to move forward.  The below was prepared prior to your guidance that a bankruptcy filing is contemplated in the near term, and we would require additional bankruptcy-related conditions in conjunction with providing a DIP Facility.  The gating item in any scenario is obviously a budget that is satisfactory to all parties.

I will be tied up from now until 5:00 pm, but am available thereafter to discuss the below, or to otherwise follow up on our earlier discussion.

For discussion purposes only:

In connection with discussions between Wells Fargo and TransCare regarding the proposed extension of the Wells Fargo financing arrangements beyond the stated credit facility maturity date of February 16, 2016, and in light of the various Events of Default that have occurred and are continuing under the financing arrangements, set forth below are the proposed terms and conditions on which Wells Fargo would consider financing TransCare on an orderly wind down basis beyond February 16, 2016.

In the event that the TransCare companies are interested in pursuing a business plan that does not require the orderly wind down of the TransCare businesses, Wells Fargo would require that TransCare submit a business plan and projections, acceptable to Wells Fargo, that would reflect the projected cash flows, availability, and loan activity of Wells Fargo in a going concern scenario.

For the wind down basis:

■ TransCare to retain a Chief Restructuring Officer ("CRO"), either Carl Marks or other candidate acceptable to Wells Fargo, on terms and conditions acceptable to Wells Fargo at all times during which the obligations owing to Wells Fargo remain outstanding, for the purposes of conducting the orderly wind down of the TransCare borrowers and guarantors.  The CRO would have authority from the TransCare Board of Directors to determine and  implement all measures necessary to achieve the orderly wind down of the TransCare businesses, including, without limitation, conducting asset sales, preparation and compliance with a wind down budget (the "Wind Down Budget"), exclusive authority over all disbursements and personnel decisions, and regular reporting to Wells Fargo on the Wind Down Budget compliance.

■ The Wind Down Budget must be delivered to Wells Fargo by February 12, 2016 and must be acceptable to Wells Fargo as a condition to the continued financing.  The new term of the financing would be tied to the Wind Down Budget, but would terminate upon, among other things, the full repayment of obligations owing by TransCare to Wells Fargo.  TransCare's compliance with the Wind Down Budget would be an ongoing condition to the financing arrangements.  Wells' willingness to provide any overadvances to TransCare would be conditioned upon TransCare's compliance with the Wind Down Budget and subject to no additional Events of Default occurring and continuing, other than the existing Events of Default against which Wells Fargo would agree to continue to forbear from exercising its rights.

**A3396**

■ The Term Loan Lenders would need to consent and agree to forbear from exercising their rights and remedies against the Term Lenders' first lien collateral on terms and conditions acceptable to Wells Fargo during the term of the extended financing arrangements between Wells Fargo and TransCare. Term Loan Lenders may also be required to fund a portion of the budget to the extent that the collateral preservation and liquidation expenses are determined to benefit Term Lender collateral.


■ Other customary terms and conditions to be included in a forbearance agreement between Wells Fargo and TransCare.



The above terms and conditions are not intended to be exhaustive or constitute an agreement, obligation, commitment or offer to enter into an agreement by Wells Fargo, but is for discussion purposes only. Any commitment or agreement by Wells Fargo is expressly conditioned on and subject to, among other things, credit committee approval of any such terms and conditions and documentation in form and substance acceptable to Wells Fargo setting forth the definitive terms and conditions evidencing Wells Fargo's agreement with respect to the matters covered thereby.


Best regards,


*Bob*


**Robert P. Strack**
Senior VP / Regional Portfolio Manager
**Wells Fargo Capital Finance**
**Tel: 212-545-4230**


**robert.strack@wellsfargo.com**

**A3397**

CONFIDENTIAL TREATMENT REQUESTED

| From: | Lynn Tilton |
|---|---|
| Sent: | Wednesday, February 17, 2016 11:56 PM |
| To: | robert.strack@wellsfargo.com |
| Cc: | Jean Luc Pelissier; Vincent Devito; Michael Greenberg; Giglio, Cindi; Harrison III, Lynn P.; Kurt.Marsden@wellsfargo.com; Brian Stephen |
| Subject: | Privileged and Confidential |
| Attachments: | Transcare Model 2.17.16 v2LT.xlsx |
| | |
| Importance: | High |

Please Do Not Forward

Bob,
Please find attached the bottom up model that we built today which reflects our best projection of a wind down model for the 911 and Core businesses in NY (OLDCO).

There are assumptions in the model that can be modified. The basic assumptions are in stated in the model.

However, this also assumes the following:
Payments are made such that further deterioration to the business is not caused by evictions or loss of insurance that will force an immediate filing.
The separation of the Newco assets is achieved such that the $7.5mm of receivables taken in that separation flows directly Wells without any additional costs associated to the future business.
A CRO actually runs the business through the wind down.

I have not been able to work on that separation of NEWCO assets over the last few days as I have been working to build models. This will actually take work to achieve beyond modeling.

I will have the bottom up built NEWCO model ready tomorrow. It is complete but needs to be reviewed and refined.

Lynn

**JX 086**

LaMonica v. Tilton, et al., 18-1021-smb

EXHIBIT
127
10-27-18

Confidential

PP-TRBK0044615

**Document Produced Natively**

Confidential

**A3399**

PP-TRBK0044617

TransCare Ambulance
Privileged and Confidential – Draft Subject to Review and Change
13 Week Forecast
February 2015

Nelson's Formula, Proprietary and Confidential

TransCare Ambulance
**Anticipated and Confidential - Draft Subject to Review and Change**
**13 Week Forecast**
**February 2016**

Reflects Preliminary Proprietary and Confidential

| Cash Flow | Week 1 2/21/2016 | Week 2 2/28/2016 | Week 3 3/6/2016 | Week 4 3/13/2016 | Week 5 3/20/2016 | Week 6 3/27/2016 | Week 7 4/3/2016 | Week 8 4/10/2016 | Week 9 4/17/2016 | Week 10 4/24/2016 | Week 11 4/29/2016 | Week 12 5/6/2016 | Week 13 5/13/2016 | Total 13 Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Income** | $ (824,418) | $ (616) | $ 7,673 | $ 9,675 | $ (16,527) | $ (65,557) | $ 19,541 | $ 19,541 | $ 3,154 | $ (27,198) | $ (11,081) | $ (9,287) | $ (79,847) | $ (53,520) | $ (27,589) |
| Depreciation & Amortization | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| (Increase) Decrease in AR | (3,071) | (23,794) | 144,491 | | (55,122) | (65,557) | | (39,549) | 316,778 | 82,319 | 106,894 | 199,637 | 173,423 | 157,723 | 368,753 |
| (Increase) Decrease in Prepaid | | | | | | | | | | | | | | |
| (Increase) Decrease in Inventory | | | | | | | | | | | | | | |
| (Increase) Decrease in Other | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Increase (Decrease) in AP | (670,000) | (40,000) | 140,000 | | (40,000) | | (40,000) | 140,000 | 140,000 | (40,000) | (40,000) | 140,000 | | 140,000 | (710,000) |
| Increase (Decrease) in Accrued | (900,000) | | | | | | | | | | | | | | (900,000) |
| Increase (Decrease) in Pail Due Payroll | (606,000) | | | | | | | | | | | | | | (606,000) |
| Increase (Decrease) in Pail Due Landlord | (68,000) | | | | | | | | | | | | | | (68,000) |
| Increase (Decrease) in Misc | (245,000) | | | | | | | | | | | | | | (245,000) |
| Increase (Decrease) in NYSIF | | | | 1,092,000 | | | | | | | | | | | 1,092,000 |
| Increase (Decrease) in Accrued Interest | | | | | | | | | | | | | | |
| Increase (Decrease) in Account Compensation | | | | | | | | | | | | | | |
| Increase (Decrease) in Capital Leases | | | | | | | | | | | | | | |
| Increase (Decrease) in Other LT Liabilities | | | | | | | | | | | | | | |
| **Cash Flow from Operating Activities** | $ (1,749,490) | $ (74,375) | $ (858,748) | $ (125,449) | $ (122,194) | $ (39,438) | $ (468,508) | $ 47,471 | $ 79,403 | $ 133,550 | $ (185,844) | $ 172,858 | $ 8,436 | $ (729,996,654) |
| | | | | | | | | | | | | | | |
| Capex | | | | | | | | | | | | | | |
| **Cash Flow from Investing Activities:** | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — | $ — |
| | | | | | | | | | | | | | | |
| CF available for Financing | $ (1,749,490) | $ (74,375) | $ (858,748) | $ (125,449) | $ (122,194) | $ (39,438) | $ (468,508) | $ 47,471 | $ 79,403 | $ 133,550 | $ (185,844) | $ 172,858 | $ 8,436 | $ 84,836 |
| Indebtedness | | | | | | | | | | | | | | |
| Revolver | 1,739,493 | 74,375 | 588,748 | 125,449 | 1,122,194 | 89,688 | 498,508 | (47,471) | (19,403) | (133,550) | 185,644 | (172,858) | (84,836) | 2,999,664 |
| **Cash Flow from Financing Activities:** | $ 1,739,493 | $ 74,375 | $ 74,375 | $ 125,449 | $ 122,194 | $ 39,688 | $ 498,508 | $ (47,471) | $ 19,403 | $ 133,550 | $ 185,644 | $ 172,858 | $ 84,836 | $ 2,999,664 |
| | | | | | | | | | | | | | | |
| Net Change in Cash | (10,000) | | | 10,000 | | | 30,000 | | | | | | | | 10,000 |
| Beginning Cash | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Ending Cash | 10,000 | 10,000 | 12,000 | 10,000 | 10,000 | 30,000 | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |

**A3401**

Debtor's Pathway Proprietary and Confidential

TransZone Ambulance
Privileged and Confidential - Draft subject to Review and Change
13 Week Forecast
January 2016

**Balance Sheet** — 13 Week Forecast

| | 1/20/16 | Adjustments | Balance Sheet | Week 1 2/27/2016 | Week 2 3/05/2016 | Week 3 3/12/2016 | Week 4 3/19/2016 | Week 5 3/26/2016 | Week 6 4/2/2016 | Week 7 4/9/2016 | Week 8 4/16/2016 | Week 9 4/23/2016 | Week 10 4/30/2016 | Week 11 4/29/2016 | Week 12 5/6/2016 | Week 13 5/13/2016 | Total 13 Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Balance Sheet** | | | | | | | | | | | | | | | | | |

Total Current Asset

Total Asset

Total Current Liabilities

Subtotal of Liabilities

Subtotal All Indebtedness

Total Liabilities

Retained Earnings
Total Liability & Equity

Check

**A3402**

TransTime Ambulance
Privileged and Confidential - Draft Subject to Review and Change
13 Week Forecast
February 2014

**From:** Lynn Tilton
**Sent:** Friday, February 19, 2016 10:53 AM
**To:** 'Harrison III, Lynn P.'
**Cc:** Brian Stephen; Giglio, Cindi
**Subject:** RE: TransCare

Notice cannot be given prior to a foreclosure on NEWCO or there will be no NEWCO. I cannot foreclose on NEWCO without insurance and with continual loss of value based on their behaviors.
We lost University of Maryland this morning which means Maryland no longer goes with Newco. This will continue without a plan forward.
I also cannot work on Newco if every minute of the day is battle over payments.
They owe me a plan under which they are willing to over advance.
I am working on the Newco model but I run a big business and just cannot continue to be a Wells bitch on a minute by minute basis.

As I said to Kurt Marsden, this needs to be a productive, constructive relationship going forward or I cannot put the people or public safety at risk on a daily basis.
We are not consultants here and do not work for Wells. It is time for them to decide what they want.
Lynn



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Harrison III, Lynn P. [mailto:lharrison@curtis.com]
**Sent:** Friday, February 19, 2016 10:42 AM
**To:** Lynn Tilton
**Cc:** Brian Stephen; Giglio, Cindi
**Subject:** FW: TransCare

Please see email below.

**L. P. Harrison 3rd** / Partner

1



JX 087

LaMonica v. Tilton, et al., 18-1021-smb

EXHIBIT
128
10-29-18

Fellow INSOL International

Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

Direct Dial: +1 212 696 6199
Main Fax: +1 212 697 1599
lharrison@curtis.com
http://www.curtis.com/lharrison



www.curtis.com

 Please consider the
environment before
printing this email.

**From:** Daniel F. Fiorillo [mailto:dfiorillo@otterbourg.com]
**Sent:** Friday, February 19, 2016 10:40 AM
**To:** Giglio, Cindi; Harrison III, Lynn P.
**Cc:** Jonathan N. Helfat
**Subject:** TransCare

Cindi and Lynn:

Following up on our conversation of earlier today, Jon and I have spoken to Bob Strack, who is going through the numbers and is working with his team in order to get back to TransCare as soon as possible. He as several questions which we need your immediate input assuming a transaction is agreed to along the lines of what has been discussed last night between the business folks:

1.  Will the TransCare Warn Act notices go out of Monday, February 22nd?
2.  Will all of the customers of the proposed TransCare bankruptcy debtors be notified on Monday 22nd that TransCare is terminating service as soon as the contracts permit, but in any event within 90 days from February 22?
3.  Will Newco(s) of the non-NY TransCare companies be up and running by Friday of next week, at the latest, so that all of the payroll, insurance and other operational expenses and liabilities associated with such businesses are eliminated from the "budget" that will govern the use of funding provided by Wells during the wind down of the NY TransCare businesses?  We are assuming that Wells is not funding any of the Newcos.
4.  When can we see a draft of a Transition Services Agreement between the Newcos and TransCare?  The TSA must be acceptable to Wells and provide, among other things, that the transition services will be at no cost to TransCare, and that Newcos will not offset or deduct or cause any amount to be reduced from the accounts receivable owing to TransCare.

Happy to get on a call to discuss further if you have any questions or comments.

Regards,
Dan

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient.  If you are not the intended recipient,

2

Confidential

PP-TRBK0047844

you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Your privacy is very important to our firm. Therefore, if this message contains unsolicited commercial content, you may forward this e-mail to unsubscribe@curtis.com or click here (www.curtis.com/unsubscribe.htm) if you do not want to receive further messages of this nature. Thank you.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

3

Confidential

PP-TRBK0047845

| From: | Lynn Tilton |
|---|---|
| Sent: | Friday, February 19, 2016 4:15 PM |
| To: | 'clandeck@carlmarks.com'; Giglio, Cindi |
| Cc: | Harrison III, Lynn P.; Brian Stephen; Jean Luc Pelissier; Peter Wolf; robert.strack@wellsfargo.com; Kurt.Marsden@wellsfargo.com; Mark Claster (mclaster@carlmarks.com) |
| Subject: | RE: Borrowing base |
| Importance: | High |

Carl,
You were hired as the CFO. It is in your engagement letter. Act in the role and make decisions on what needs to be paid.
This behavior is causing rumors, loss of contracts and will lead to a complete shutdown.
It is your responsibility to act in the company's best interest. Please make the people on the ground feel that this is the case.
Lynn



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** clandeck@carlmarks.com [mailto:clandeck@carlmarks.com]
**Sent:** Friday, February 19, 2016 4:06 PM
**To:** Giglio, Cindi
**Cc:** Harrison III, Lynn P.; Lynn Tilton; Brian Stephen; Jean Luc Pelissier; Peter Wolf
**Subject:** Re: Borrowing base

Hi Cindi,

Just following up. Need direction so that I can complete the Funding request to Wells Fargo today.

Carl

1

EXHIBIT
129
10-29-18

Confidential

**JX 088**
LaMonica v. Tilton, et al., 18-1021-smb

PP-TRBK0051609

**Carl Landeck**
Managing Director
Carl Marks Advisory Group LLC
900 Third Avenue
New York, NY 10022
clandeck@carlmarks.com
212-909-8400 (Office)
516-317-8308 (Mobile)


On 02.19.2016 3:16 PM, clandeck@carlmarks.com wrote:

Cindi,

Ok borrowing base has now been finalized and signed by Pete Wolf. Availability is $128,163.79

Please let me know what you'd like to do with each of the following:

1. Payroll checks released and 401k impounded this morning at 10am totaling $834,275
2. Prior week's payroll checks covered with SUI escow funds totaling $150,000
3. Today's ACH presentments totaling $16,000
4. IPFS Insurance Notice of Termination for non-payment of $142,994 effective Monday 2/22/16
5. Garnishments totaling approximately $32,000 (withheld from 2/5 & 2/12 pay checks - unpaid alimony/child support, etc. - employees now hearing from their ex's, etc.)
6. Milea stip default $245,000
7. Unpaid Payroll Taxes from Pay Date 2/12/16 totaling $436,181
8. Unpaid Employee reimbursements (Expense reports mostly personal pay of critical business services) $16,000
9. Earl's Clarion Ambulance subcontract $35,000
10. Earl's EverDixie order $27,000
11. EMSCharts $33,000

Carl



**Carl Landeck**
Managing Director
Carl Marks Advisory Group LLC
900 Third Avenue
New York, NY 10022
clandeck@carlmarks.com
212-909-8400 (Office)
516-317-8308 (Mobile)




On 02.19.2016 1:13 PM, clandeck@carlmarks.com wrote:

Cindi,

2

See the red below for the email I sent to Melissa earlier.

Hi Melissa,

It is being finished up. The monthly ineligible update is being incorporated into today's BBC. That's the delay.

Thanks for your patience and understanding.

Carl

We will endeavor to do whatever you direct to be done. Availability will be $128K before covering the clearing ACH debits of $16K. Please remember that today more than $800K of payroll was disbursed. $150K of payroll from last week is also uncovered. Please remember everything else that is on the list for payment.

Carl


**Carl Landeck**
Managing Director
Carl Marks Advisory Group LLC
900 Third Avenue
New York, NY 10022
clandeck@carlmarks.com
212-909-8400 (Office)
516-317-8308 (Mobile)


On 02.19.2016 1:04 PM, Giglio, Cindi wrote:

All,

Just got off the phone with Otterbourg. We need to get wells the borrowing base ASAP and they will make funds available. Include in the request the items I raised in my prior email.

Thank you,
Cindi

Cindi Giglio
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-6936


This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error,

3

please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system.  Your privacy is very important to our firm.  Therefore, if this message contains unsolicited commercial content, you may forward this e-mail to unsubscribe@curtis.com or click here (www.curtis.com/unsubscribe.htm) if you do not want to receive further messages of this nature.  Thank you.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

4

Confidential

PP-TRBK0051612

| From: | robert.strack@wellsfargo.com |
|---|---|
| Sent: | Monday, February 22, 2016 7:52 AM |
| To: | Lynn Tilton; john.husson@wellsfargo.com; melissa.provost@wellsfargo.com; Michael Greenberg; Jean Luc Pelissier; Vincent Devito |
| Cc: | laurence.forte@wellsfargo.com; Kurt.Marsden@wellsfargo.com |
| Subject: | Re: 13 Week Model Questions |

Lynn,

Should we have an all hands call this morning to get an update? From our side, any ongoing funding decisions will be conditioned on receiving Patriarch's acknowledgement that the terms/structure outlined in our Friday proposal are acceptable. We will also need to review the revised budget.
Please let us know.
Thanks,

-Bob

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.
  Original Message
From: Lynn Tilton
Sent: Sunday, February 21, 2016 9:10 AM
To: Strack, Robert P.; Husson, John E.; Provost, Melissa A.; Michael Greenberg; Jean Luc Pelissier; Vincent Devito
Cc: Forte, Laurence S.; Marsden, Kurt
Subject: RE: 13 Week Model Questions


Of course, we have already requested the information.  Carl said he could not get to it today but would try to work on the request this morning.
We attempt to reconcile the outstanding payables, the opening balance sheet, to make certain we are all starting from the same place.


Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com


-----Original Message-----
From: robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
Sent: Saturday, February 20, 2016 9:24 PM
To: Lynn Tilton; john.husson@wellsfargo.com; melissa.provost@wellsfargo.com; Michael Greenberg; Jean Luc Pelissier; Vincent Devito

1

EXHIBIT
132
10-29-18

JX 091

LaMonica v. Tilton, et al., 18-1021-smb

Confidential

PP-TRBK0044475

Cc: laurence.forte@wellsfargo.com; Kurt.Marsden@wellsfargo.com
Subject: Re: 13 Week Model Questions

Lynn,
We assume you and/or your team are still talking to CM directly, since they were engaged by the company, not Wells. Not sure how to "encourage them...", since we don't know what request is pending. We are aware that outstanding vendor payments have been detailed several times already. Have they provided a time frame as to when they can deliver the requested info?

-Bob

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.
  Original Message
From: Lynn Tilton
Sent: Saturday, February 20, 2016 8:37 PM
To: Strack, Robert P.; Husson, John E.; Provost, Melissa A.; Michael Greenberg; Jean Luc Pelissier; Vincent Devito
Cc: Forte, Laurence S.; Marsden, Kurt
Subject: RE: 13 Week Model Questions

If you speak to Carl Marks, please encourage them to get us that information.
Once received, we will have a new model ready for you in short order.

Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 - FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

-----Original Message-----
From: robert.strack@wellsfargo.com [mailto:robert.strack@wellsfargo.com]
Sent: Saturday, February 20, 2016 6:43 PM
To: Lynn Tilton; john.husson@wellsfargo.com; melissa.provost@wellsfargo.com; Michael Greenberg; Jean Luc Pelissier; Vincent Devito
Cc: laurence.forte@wellsfargo.com; Kurt.Marsden@wellsfargo.com
Subject: Re: 13 Week Model Questions

Ok thanks for the update Lynn.

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.
From: Lynn Tilton
Sent: Saturday, February 20, 2016 5:12 PM
To: Husson, John E.; Provost, Melissa A.; Michael Greenberg; Jean Luc Pelissier; Vincent Devito
Cc: Strack, Robert P.; Forte, Laurence S.; Marsden, Kurt
Subject: RE: 13 Week Model Questions

2

Confidential

PP-TRBK0044476

**A3412**

We apologize for the delays.  We are working to get information from Carl Marks on the opening balance sheet and outstanding vendor payments.
We believe this is the most import information to understand the wind down.
We want to make certain that all parties are starting from the same place.
We are being told that Carl Marks cannot respond today.
I will let you know if this changes.
Lynn

[emailLogo]
Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 - FAX
Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com>
Web: www.patriarchpartners.com<http://www.patriarchpartners.com/>

From: john.husson@wellsfargo.com [mailto:john.husson@wellsfargo.com]
Sent: Saturday, February 20, 2016 12:54 PM
To: Lynn Tilton; melissa.provost@wellsfargo.com; Michael Greenberg; Jean Luc Pelissier
Cc: robert.strack@wellsfargo.com; laurence.forte@wellsfargo.com; Kurt.Marsden@wellsfargo.com
Subject: RE: 13 Week Model Questions

Ok

We are available anytime to discuss thanks


-----Original Message-----
From: Lynn Tilton [Lynn.Tilton@PatriarchPartners.Com<mailto:Lynn.Tilton@PatriarchPartners.Com>]
Sent: Saturday, February 20, 2016 12:51 PM Eastern Standard Time
To: Husson, John E.; Provost, Melissa A.; Michael Greenberg; Jean Luc Pelissier
Cc: Strack, Robert P.; Forte, Laurence S.; Marsden, Kurt
Subject: RE: 13 Week Model Questions


I have an internal call at 1.  We will review the model internally with your questions as received.
Once we feel comfort with our work, we will let you know when we are available to discuss.

It is the weekend.  Please give us the time to do our work.  We are also working here to try to save some of our company and our people.
That will make your recovery better.  But we must have some time to think and work.

Thank you,
Lynn

[emailLogo]
Lynn Tilton

3

Confidential

PP-TRBK0044477

Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 - FAX
Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com>
Web: www.patriarchpartners.com<http://www.patriarchpartners.com/>

From: john.husson@wellsfargo.com<mailto:john.husson@wellsfargo.com> [mailto:john.husson@wellsfargo.com]
Sent: Saturday, February 20, 2016 12:43 PM
To: melissa.provost@wellsfargo.com<mailto:melissa.provost@wellsfargo.com>; Lynn Tilton; Michael Greenberg; Jean Luc Pelissier
Cc: robert.strack@wellsfargo.com<mailto:robert.strack@wellsfargo.com>;
laurence.forte@wellsfargo.com<mailto:laurence.forte@wellsfargo.com>;
Kurt.Marsden@wellsfargo.com<mailto:Kurt.Marsden@wellsfargo.com>
Subject: RE: 13 Week Model Questions

I will make myself available as well

-----Original Message-----
From: Provost, Melissa A.
Sent: Saturday, February 20, 2016 09:27 AM Eastern Standard Time
To: 'Lynn Tilton'; Husson, John E.; 'Michael Greenberg'; 'Jean Luc Pelissier'
Cc: Strack, Robert P.; Forte, Laurence S.; Marsden, Kurt
Subject: RE: 13 Week Model Questions

I don't think all parties need to on a call but I can be available at noon to discuss my questions with at least Vince and Michael. If you would rather all involved, we can try to arrange as well.

-----Original Message-----
From: Lynn Tilton [Lynn.Tilton@PatriarchPartners.Com<mailto:Lynn.Tilton@PatriarchPartners.Com>]
Sent: Saturday, February 20, 2016 08:18 AM Central Standard Time
To: Husson, John E.; Provost, Melissa A.; Michael Greenberg; Jean Luc Pelissier
Cc: Strack, Robert P.; Forte, Laurence S.; Marsden, Kurt
Subject: RE: 13 Week Model Questions

John and Melissa,
This is a Patriarch proprietary model that was prepared for our use and shared with Wells in an attempt to find a productive solution to a dangerous and destructive situation.
Wells was not happy with what was prepared by Carl Marks and I was asked by Bob Strack to share what we were using in an our analysis with you.
We have shared this with you in the spirit of partnership but it was not prepared because we were hired by you.  We are not the company nor the consultants.
If you have questions on the model, please prepare those questions together and we will set up a call to answer.  We will be helpful in all ways possible.  It is a workable model so you might use it with your own assumptions.
But it is time for the tone towards and the respect for my people to change.
The multiple emails and the accusatory tone of those emails are not appropriate.

4

Confidential

PP-TRBK0044478

We do not work for Wells. We had once been partners in relationships with companies. We are now working with Wells in our best efforts to elegantly unwind a company, to treat people with dignity and help Wells be repaid.

I believe the best outcome can be achieved if there is a productive relationship going forward. We at Patriarch are inspired by doing the most for those we care deeply and in the spirit of loyalty to relationships.

Inspire us; stop berating us.

Let us know a time you might like to speak and I will make sure the team is together.

Lynn

[emailLogo]
Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 - FAX
Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com>
Web: www.patriarchpartners.com<http://www.patriarchpartners.com/>

From: john.husson@wellsfargo.com<mailto:john.husson@wellsfargo.com> [mailto:john.husson@wellsfargo.com]
Sent: Saturday, February 20, 2016 2:46 AM
To: melissa.provost@wellsfargo.com<mailto:melissa.provost@wellsfargo.com>; Michael Greenberg; Jean Luc Pelissier
Cc: robert.strack@wellsfargo.com<mailto:robert.strack@wellsfargo.com>;
laurence.forte@wellsfargo.com<mailto:laurence.forte@wellsfargo.com>;
Kurt.Marsden@wellsfargo.com<mailto:Kurt.Marsden@wellsfargo.com>; Lynn Tilton
Subject: RE: 13 Week Model Questions

Who prepared this model ?

-----Original Message-----
From: Provost, Melissa A.
Sent: Friday, February 19, 2016 08:36 PM Eastern Standard Time
To: Michael Greenberg; Jean-Luc Pelissier
(jeanluc.pelissier@patriarchpartners.com<mailto:jeanluc.pelissier@patriarchpartners.com>)
Cc: Husson, John E.; Strack, Robert P.; Forte, Laurence S.; Marsden, Kurt; Lynn Tilton
(Lynn.Tilton@PatriarchPartners.Com<mailto:Lynn.Tilton@PatriarchPartners.Com>)
Subject: 13 Week Model Questions
John mentioned that you will be updating the model to reflect the recently lost contracts. I have just completed a more detailed review of the model and based on my read it appears that weekly current payroll and payroll taxes are missing. I have factored in these expenses, made adjustments to gross the A/R and Revolver back up to reflect combined Oldco and Newco, and posed questions to other line items which appear understated or I wasn't sure if they should be recurring. Can you take a look at my comments/changes to the model which I have highlighted in yellow and confirm my read of the payroll/taxes? Largely due to the inclusion of payroll and payroll taxes the overadvance would increase to $6.7MM. Please advise.

5

Confidential

Melissa Provost

Vice President/Senior Relationship Manager Wells Fargo Capital Finance

Business Finance | One Boston Place, 18th Floor | Boston, MA  02108-4407 MAC J9214-180 Tel (617) 854-4336 | Mobile (518) 578-8604 | eFax (855) 477-5033

melissa.provost@wellsfargo.com<mailto:melissa.provost@wellsfargo.com>

This message (including any attachments) contains confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this message and are hereby notified that any disclosure, copying, or distribution of this message, or the taking of any action based on it, is strictly prohibited.

Confidential

PP-TRBK0044480

**A3416**

**From:** Lynn Tilton
**Sent:** Tuesday, February 23, 2016 9:51 AM
**To:** Jonathan N. Helfat; 'Giglio, Cindi'
**Cc:** Daniel F. Fiorillo; Jean Luc Pelissier; Michael Greenberg; Brian Stephen
**Subject:** RE: Privileged and Confidential

**Importance:** High

John,

I have pointed out the distinctions in the analysis. We are all scrambling here in an attempt to save 700 jobs and parts of this company.

I will try to build a bridge between numbers that CM provided to you.

But I am also very comfortable taking no receivables and having Wells collect them.

There has to be a choice that is made when the livelihoods of real people and their families are at stake.

This is heading into a Chapter 7 with a trustee and all parties will be out of control.

I think the employees will come first. You may want to help your client understand that they are being offered choices that allow them to decide the value of their receivables but it is time to understand their soft issues at stake as well.

Under all circumstances, the hiring of 700 people reduces the damages of this liquidation and the continuity of these divisions increase the likelihood of collectability of receivables in this division. This is a win/win and it is facilitated by my personal funding because I care deeply about my employees.

Respectfully,
Lynn



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Jonathan N. Helfat [mailto:jhelfat@otterbourg.com]
**Sent:** Tuesday, February 23, 2016 9:42 AM
**To:** Lynn Tilton; 'Giglio, Cindi'



JX 093

LaMonica v. Tilton, et al., 18-1021-smb

EXHIBIT
133
10-29-18

1

**Cc:** Daniel F. Fiorillo; Jean Luc Pelissier; Michael Greenberg; Brian Stephen
**Subject:** RE: Privileged and Confidential

Lynn: This is not my analysis or Well Fargo's analysis but I am going back to Carl Marks now to get clarity so we can hopefully move forward.

---

**From:** Lynn Tilton [mailto:Lynn.Tilton@PatriarchPartners.Com]
**Sent:** Tuesday, February 23, 2016 9:27 AM
**To:** Jonathan N. Helfat; 'Giglio, Cindi'
**Cc:** Daniel F. Fiorillo; Jean Luc Pelissier; Michael Greenberg; Brian Stephen
**Subject:** RE: Privileged and Confidential
**Importance:** High

John,

This calculation include $900k gross and $700k net of Westchester Receivables which divisions we are not taking and TMS which we are not taking.

So you need to clean your analysis before we are even beginning to look at a comparable analysis.

In Hudson Valley your analysis shows $2.2 million and our collectability number is $1.3mm. We are not paying for private pay. You can keep it.

Your Paratransit numbers did not take into account the charge back and liquidated damages which is contractual and based on overpayments last year.

We are not paying for what we will not receive. If you feel such comfort, then we are content that you should work to collect your receivables.

We are trying to save 700 jobs and pay your client cash.

You have the choice of taking our price or keeping your receivables and we will start with no receivables. Not sure how you could choose to take neither when lives are at stake. You either think the price is fair or that you can collect more on your own.

Not sure why you would want to put more people out of work. This not a just a formula; this is people's lives.

Respectfully,
Lynn



PATRIARCH PARTNERS

*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX

2

Confidential

Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Jonathan N. Helfat [mailto:jhelfat@otterbourg.com]
**Sent:** Tuesday, February 23, 2016 8:52 AM
**To:** 'Giglio, Cindi'; Lynn Tilton
**Cc:** Daniel F. Fiorillo
**Subject:** FW: Privileged and Confidential

Cindi: We will call you now. Enclosed is CM's analysis of the a/rs.

**Transcare Corporation**
**AR Analysis**
**As of February 22, 2016**

| | TCPA | | | TMS | | |
|---|---|---|---|---|---|---|
| | Gross AR | Over 90 days | Net | Gross AR | Over 90 days | Net |
| Medicare | 162,163.36 | 41,904.33 | 120,259.03 | 3,324.69 | 50.00 | 3,274.69 |
| Medicaid | 20,600.52 | 870.84 | 19,729.68 | - | - | - |
| Commercial Insurance | 59,752.63 | 10,644.65 | 49,107.98 | 19,163.86 | 2,463.25 | 16,700.61 |
| Private/Self Pay | 142,325.62 | 43,732.31 | 98,593.31 | 34,236.01 | 7,723.08 | 26,512.93 |
| Facility/Contract | 546,038.67 | 97,002.04 | 449,036.63 | 1,152.22 | 225.62 | 926.60 |
| | 930,880.80 | 194,154.17 | 736,726.63 | 57,876.78 | 10,461.95 | 47,414.83 |

| | TCHV | | | Transcare Westchester, Inc. | | |
|---|---|---|---|---|---|---|
| | Gross AR | Over 90 days | Net | Gross AR | Over 90 days | Net |
| Medicare | 333,547.78 | 19,686.04 | 313,861.74 | 387,244.99 | 7,169.30 | 380,075.69 |
| Medicaid | 484,245.06 | 125,955.58 | 358,289.48 | 327,035.81 | 118,348.77 | 208,687.04 |
| Commercial Insurance | 60,273.17 | 3,056.32 | 57,216.85 | 39,206.67 | 4,291.09 | 34,915.58 |
| Private/Self Pay | 489,060.03 | 66,535.66 | 422,524.37 | 109,811.10 | 6,595.54 | 103,215.56 |
| Facility/Contract | 594,443.87 | 291,529.26 | 302,914.61 | 45,665.44 | 15,070.74 | 30,594.70 |
| | 1,961,569.91 | 506,762.86 | 1,454,807.05 | 908,964.01 | 151,475.44 | 757,488.57 |

| | ParaTransit | | | MTA | | |
|---|---|---|---|---|---|---|
| | Gross AR | Over 90 days | Net | Gross AR | Over 90 days | Net |
| Billed | 2,430,166.07 | - | 2,430,166.07 | 116,486.05 | - | 116,486.05 |
| Unbilled | 1,261,875.00 | - | 1,261,875.00 | 146,996.52 | - | 146,996.52 |
| | 3,692,041.07 | - | 3,692,041.07 | 263,482.57 | - | 263,482.57 |

**Total**

**NOTE: The above does not include either Pending Medicaid or Unbilled Amounts for either PA or H
90 days**

3

PP-TRBK0051381

**A3419**

**NOTE: HV Over 90 day Aging does not appear to make sense although it is based on daily reporting
noted that the Private/Self Pay category aging is not consistent with expected aging. HV personne**

4

Confidential

PP-TRBK0051382

| | |
|---|---|
| **From:** | Lynn Tilton |
| **Sent:** | Tuesday, February 23, 2016 12:51 PM |
| **To:** | 'Giglio, Cindi' |
| **Cc:** | Harrison III, Lynn P. |
| **Subject:** | RE: TransCare |

$5.3 million is my bottom line.  Otherwise they can keep and collect their receivables.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Giglio, Cindi [mailto:cgiglio@curtis.com]
**Sent:** Tuesday, February 23, 2016 12:49 PM
**To:** Lynn Tilton
**Cc:** Harrison III, Lynn P.
**Subject:** FW: TransCare

Lynn,

See below from Wells.  Bottom line is they are looking for more than $5.2, but less than $6.9.  If we get to a number, they will advance today.  I believe $5.3 is your bottom line, but please let me know if I am incorrect.

Thanks,
Cindi

**From:** Jonathan N. Helfat [mailto:jhelfat@otterbourg.com]
**Sent:** Tuesday, February 23, 2016 12:31 PM
**To:** Giglio, Cindi; Harrison III, Lynn P.
**Cc:** Daniel F. Fiorillo
**Subject:** TransCare

Dear Cindi:

> **JX 094**
>
> LaMonica v. Tilton, et al., 18-1021-smb

> EXHIBIT
> 134
> 10-29-18

1

Confidential

PP-TRBK0096546

At Lynn's suggestion Wells Fargo reconciled her emails of earlier today regarding the TransCare accounts with Carl Marks.

In an attempt to bring closure let me set forth what we believe to be your client's offer. A yet to be determined third party would pay Transcare and in turn Wells Fargo $ 5,200,000 for the under 90 day accounts for TCPA ,MTA, TCHV and ParaTransit exclusive of Westchester assuming that the Westchester accounts are not imbedded/comingled in either TCPA, TCHV, MTA or ParaTransit. In addition this third party would not be purchasing the accounts of TMS. In consideration of this purchase price and receiving the proceeds Wells Fargo would release its lien on these accounts.

Wells Fargo believes that this offer is not sufficient and should be increased as full value is not being given for accounts that are being purchased  Specifically (a)  the over 90 day accounts have value. Wells Fargo is in fact lending on $215M of the over 90 days past invoice date accounts and is not receiving any payment for these accounts in the existing offer yet these proceeds are going to the purchaser.(b) Imbedded/comingled in each of the regional operations are private pay receivable that also have value given that they will be reclassified into other payer categories such as Medicaid, Medicare and private insurance.  Based on Wells Fargo's experience a substantial portion  of "private pay" eventually becomes reclassified to other payer accounts.   For ease of collection the Private Pay A/R should remain with the originating entities.  Break out and collection these accounts from the regions is not easily done. Therefore we believe an offer should be made for these receivables(c) Wells Fargo previously advanced at an 85% advance rate on the Paratransit accounts and is now is being told  after these advance were made that there are  upwards of $720,000 in chargebacks and liquidated damages  which the purchaser now wishes to deduct from the purchase price even though TransCare knew of these charge backs and liquidated damage obligations at the time Wells Fargo advanced on the accounts but were undisclosed to Wells Fargo.  Therefore we request to either be made whole as no offsets were reported to Wells Fargo as was required by the terms of the agreement or increase the purchase price.

We are available to talk at your convenience.

 Otterbourg.

**Jonathan N. Helfat** • Otterbourg P.C. • 230 Park Avenue • New York, NY 10169 • Direct: (212) 905-3626 • Fax: (212) 682-6104 • jhelfat@otterbourg.com • otterbourg.com

The information contained in this communication may be privileged and/or confidential and is intended only for the individual to whom it is addressed or agent responsible to deliver it to the intended recipient. If you have received this communication in error, please immediately notify us by telephone.

Confidential

PP-TRBK0096547

A3422

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Your privacy is very important to our firm. Therefore, if this message contains unsolicited commercial content, you may forward this e-mail to unsubscribe@curtis.com or click here (www.curtis.com/unsubscribe.htm) if you do not want to receive further messages of this nature. Thank you.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

3

PP-TRBK0096548

| | |
|---|---|
| **From:** | Brian Stephen |
| **Sent:** | Tuesday, February 23, 2016 1:53 PM |
| **To:** | Giglio, Cindi; L. P. Harrison (lharrison@curtis.com) |
| **Cc:** | Kevin Dell |
| **Subject:** | Privileged and Confidential - TSA |
| **Attachments:** | 2016 02 23 TC Transition Services Agreement V7 (Clean).docx |

Lynn and Cindi,

I attach a draft of the Transition Services Agreement between TransCare Corporation and Transcendence Transit, Inc.

The attached has not been review by, or discussed with, Lynn, but I wanted to get something to you to give you an idea of what we are looking to do.

Please let me know if you have any concerns or comments.

Thanks,
Brian

Brian D. Stephen
Senior Director, Legal
Patriarch Partners, LLC
One Broadway
New York, NY 10004
646.723.7656 Office
212.825.2038
www.patriarchpartners.com



EXHIBIT
144
10-29-18

**JX 095**

LaMonica v. Tilton, et al., 18-1021-smb

Confidential

PP-TRBK0043997

DRAFT 02/23/2016

## TRANSITION SERVICES AGREEMENT

THIS TRANSITION SERVICES AGREEMENT (hereinafter this **"Agreement"**) is entered into as of February __, 2016 (the **"Effective Date"**), by and among Transcendence Transit, Inc., a Delaware corporation (**"Transcendence"**), and TransCare Corporation, a Delaware corporation (**"TransCare"**).

## R E C I T A L S

WHEREAS, certain businesses and assets of TransCare have been purchased by Transcendence in connection with a reorganization of TransCare's business (the **"Purchased Businesses and Assets"**).

WHEREAS, commencing the Effective Date Transcendence desires to receive and TransCare desires to provide, certain transitional services and support all in accordance with the terms and conditions set forth herein; and

WHEREAS, commencing the Effective Date, TransCare desires to receive and Transcendence desires to provide certain transitional services and support necessary for the continuing operation of the Business, all in accordance with the terms and conditions set forth herein.

## A G R E E M E N T

NOW, THEREFORE, in consideration of the mutual covenants herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.  <u>Transition Services/Assignment and Assumption of Certain Contracts</u>.

(a) TransCare and its Affiliates (as hereinafter defined), directly or through one or more third party service providers, agrees to provide to Transcendence and its subsidiaries those services and assets listed and described in <u>Exhibit A</u> attached hereto (the **"TransCare Transition Services"**) during the Term provided in Section 3 hereof.

(b) Transcendence and its Affiliates, directly or through one or more third party service providers, agrees to provide to TransCare and its subsidiaries (i) those services listed and described in <u>Exhibit B</u> attached hereto (the **"Transcendence Transition Services"**, and together with the TransCare Transition Services, the **"Transition Services"**), and (ii) those vehicles set forth on <u>Exhibit C</u> for the Monthly Charge set forth therein, during the Term provided in Section 3 hereof.

**"Affiliate"** has the meaning set forth in Rule 12b-2 of the regulations promulgated under the Securities Exchange Act of 1934, as amended.

(c) TransCare hereby assigns to Transcendence, and Transcendence hereby assumes, all of the rights and obligations under the following contracts:

(i)     Ambulance Services Agreement dated January 18, 2001, between

Montefiore Medical Center and TransCare New York, Inc.;          (ii)     Master Lease Agreement No. 062710-KBdated June 27, 2010 between TransCare, as lessee and First Financial Corporate Leasing, LLC (dba First Financial Healthcare Solutions) solely with respect to the equipment set forth on Equipment Schedule No. 10123-001X1 dated January 21, 2014; and

(iii)     [EPCR Services Agreement].

To the extent any of the contracts hereby assigned to Transcendence pursuant to Section 1(c) clauses (i), (ii) and (iii) above (collectively, "**Contracts**") is subject to one or more consents to such assignment, and such consents are not obtained prior to the Effective Date, or if such assignment or attempted assignment would constitute a breach or violation of the Contract, nothing in this Agreement will constitute, or be deemed to constitute, an assignment or attempted assignment thereof. If any required consent is not obtained at or prior to the Effective Date, or if any attempted assignment would be ineffective, at Transcendence's request, TransCare shall use its commercially reasonable efforts (A) to obtain all required consents and to use commercially reasonable efforts to resolve all impracticalities of assignment or transfer necessary to convey the applicable Contract to Transcendence at the earliest practicable date and in accordance with applicable law, (B) to provide Transcendence with the economic benefits of the applicable Contract, (C) to cooperate in any reasonable and lawful arrangement designed to provide such benefits to Transcendence, and (D) to enforce at the request and expense and for the account of Transcendence, any of any of TransCare's rights arising from any such Contract.

2.     Expenses.    The   parties   receiving Transition Services hereunder shall be responsible for any expense reimbursement required to be made to the party(ies) providing such Transition Service, as required under and set forth on Exhibit A, Exhibit B, and Exhibit C, respectively, attached hereto.

3.     Effectiveness; Term.   This Agreement shall become effective as of the Effective Date. The term of this Agreement (the "Term") shall commence on the Effective Date and end on the six month anniversary thereof; provided, however, that the obligations of each party to provide any Transition Service to the other party under this Agreement shall extend for such period of time as is set forth in Exhibit A, Exhibit B, and Exhibit C hereto with respect to such Transition Service, but in no event for any time beyond the Term; provided, further, that the obligation of a party to provide any particular Transition Service shall terminate immediately if the contract with the third party service provider used by such party to perform such Transition Service is assumed by the other party or is rejected in any bankruptcy proceeding involving the party providing such Transition Service.

4.     Transitional Nature of Transition Services.   It is understood and acknowledged by the parties to this Agreement that the Transition Services are transitional in nature and that, notwithstanding the obligations of each party to provide Transition Services to the other under this Agreement through the Term, as promptly as practicable following the execution of this Agreement, Transcendence shall use its commercially reasonable efforts to successfully assume sole responsibility for all Transition Services provided by TransCare.

5.     Staffing of Personnel.   Each party shall assign (or shall use commercially reasonable efforts to cause any third party service provider to assign) adequately trained personnel to

perform the Transition Services. The Transition Services shall be performed by the performing party or a third party service provider engaged by the performing party to perform the Transition Services in a timely, efficient and workmanlike manner consistent with the prior practices of the business performed. Nothing herein shall require TransCare to hire any new employees.

6. <u>Information</u>. Each party shall, and shall cause its subsidiaries to, provide to the other party on a timely basis any and all information which is necessary for the performing party to provide the Transition Services. Each party shall be solely responsible for the timely delivery of such information, and the accuracy and completeness thereof.

7. <u>Proprietary and Confidential Information</u>. Except as specifically provided herein, the parties hereto hereby agree that neither party shall (i) disclose to any third party (other than a third party service provider of Transition Services who is subject to an obligation of confidentiality) any confidential information provided to it by the other party or any of its Affiliates in connection with this Agreement and such party's performance of Transition Services hereunder, except as required by law or as required to be disclosed to a bankruptcy court, or (ii) use such information other than in the performance of Transition Services under this Agreement.

8. <u>Taxes</u>. The party receiving the Transition Services shall be responsible for all sales or use taxes imposed or assessed as a result of the provision of Transition Services by the other party.

9. <u>Termination</u>.

(a) Either party may terminate any of the Transition Services being provided by the other party hereunder at any time during the Term of this Agreement by ten (10) days prior written notice to the other party.

(b) Either party may terminate this Agreement by written notice to the other upon the material breach or failure by such other party (or such other party's Affiliates) to perform its obligations arising under this Agreement. In the event that either party elects to terminate this Agreement pursuant to this Section 9(b), such termination shall be effective when the material breach or failure is not cured within ten (10) days after written notice of such breach or failure is given by the non-breaching party to the breaching party.

10. <u>Limitation of Liability</u>. In no event will any party hereto, or any third party provider of Transition Services, be liable for any punitive, incidental, indirect, special or consequential damages, relating to, in connection with or arising out of this Agreement and the Transition Services to be provided hereunder.

11. <u>Standard of Performance of Services</u>. Each party providing Transition Services shall perform, or use commercially reasonable efforts to cause their third party service providers to perform, the Transition Services with the same degree of care, skill and prudence customarily exercised with respect to the operations of the ongoing businesses, and in compliance with all applicable laws, rules, regulations, orders, licenses authorizations, certifications and permits; provided, however, that except as expressly set forth in this Agreement, neither party makes any representation or warranty, express or implied, with respect to the Transition Services to be provided hereunder including, without

**A3427**

limitation, any warranties of merchantability or fitness for a particular purpose, which are specifically disclaimed.

12.    Indemnification. Each party shall indemnify and hold harmless the other party, its Affiliates, and their respective officers, directors, members, managers, partners, shareholders, employees, and agents from and against all claims, liabilities, obligations, suits, causes of action, or expenses (including reasonable attorneys' fees) (collectively **"Claims"**) resulting, directly or indirectly, from the gross negligence or willful misconduct in connection with its performance of Transition Services; provided, however, that a party shall not be required to indemnify or hold harmless the other party to the extent the Claims are caused by the gross negligence or willful misconduct of the other party or its Affiliates.

13.    Notices. All notices, requests, demands, claims, and other communications hereunder shall be in writing. Any notice, request, demand, claim, or other communication hereunder shall be deemed duly given (i) when delivered personally to the recipient, (ii) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid), (iii) one (1) Business Day after being sent to the recipient by facsimile transmission or electronic mail, receipt verified or (iv) four (4) Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below (for purposes hereof **"Business Day"** means a day other than a Saturday, a Sunday or any other day on which commercial banks in the City of New York are authorized or obligated to be closed):

> TransCare Corporation:
> One Metrotech Center
> Brooklyn, NY 11201
>
> Transcendence Transit, Inc.:
> 10615 Foster Avenue
> Brooklyn, NY 11236
>
> All notices with a copy to:
>
> Patriarch Partners Agency Services, LLC
> One Broadway, 5th floor
> New York, NY 1004
> Attention: Legal Department
>
> Curtis, Mallet-Prevost, Colt & Mosle LLP
> 101 Park Avenue
> New York, NY 10178
> Attention:

14.    Independent Contractor. The parties hereto understand and agree that this Agreement does not make either of them an agent, fiduciary or legal representative of the other for any purpose whatsoever. No party is granted, by this Agreement or otherwise, any right or authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of any other party, or to bind any other party in any manner whatsoever.

15.     Responsibility of Personnel. Each party agrees that it shall use commercially reasonable efforts to ensure that all personnel assigned to perform the Transition Services under this Agreement shall comply with all of the terms and conditions of this Agreement, including, but not limited to, the terms and conditions of Section 7 hereof.

16.     Subcontracting.   Unless TransCare subcontracted the performance of any similar services relating to the ownership, operation and management of the Business prior to the Effective Date, TransCare will not subcontract to any third person the performance of any TransCare Transition Service without Transcendence's prior written consent.

17.     No Assignment. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any party (whether by operation of law or otherwise) without the prior written consent of the other party, and any such assignment shall be null and void. No assignment by any party shall relieve such party of any of its obligations hereunder. Subject to the foregoing, this Agreement and all of the provisions hereof shall be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns, including, in the case of TransCare, the trustee in any bankruptcy proceeding.

18.     Force Majeure. No party hereto shall be liable for any failure of or delay in the performance of this Agreement for the period that such failure or delay is due to acts of God, public enemy, civil war, strikes or labor disputes, or any other cause beyond the parties reasonable control.   Each party hereto agrees to notify the other party hereto promptly of the occurrence of any such cause and to carry out this Agreement as promptly as practicable after such cause is terminated.

19.     Modifications, Amendments and Waivers.   This Agreement may be amended, modified or supplemented only by a written instrument signed on behalf of each of the parties.

20.     Integration. This Agreement contains the entire understanding among the parties hereto with respect to the transactions contemplated hereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All exhibits hereto are expressly made a part of this Agreement as fully as though completely set forth herein.

21.     Severability. If any non-material term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.   Upon a determination that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible; provided, however, that in doing so, no party shall be obligated to waive or forego any material right or benefit available to it hereunder.

22.     No Third Party Beneficiaries. This Agreement shall be binding upon and inure solely

to the benefit of the parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person any legal or equitable right, benefit or remedy of any nature whatsoever, including any rights of employment for any specified period, under or by reason of this Agreement.

23.    Governing Law.  Except to the extent that mandatory provisions of the U.S. Bankruptcy Code apply, this Agreement, and all claims and causes of action arising out of, based upon, or related to this Agreement or the negotiation, execution or performance hereof, shall be governed by, and construed, interpreted and enforced in accordance with, the laws of the State of Delaware, without regard to choice or conflict of law principles that would result in the application of any laws other than the laws of the State of Delaware.

24.    SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.

(a)    Any action, claim, suit or legal proceeding arising out of, based upon or relating to this Agreement or the transactions contemplated hereby shall be brought solely in the Supreme Court of the State of New York and any state appellate court within the State of New York (or, if the Supreme Court of the State of New York declines to accept jurisdiction over a particular matter, any state or federal court within the State of New York and any direct appellate court therefrom). Each party hereby irrevocably submits to the exclusive jurisdiction of such courts in respect of any action, claim, suit or legal proceeding arising out of, based upon or relating to this Agreement or any of the rights and obligations arising hereunder, and agrees that it will not bring any action arising out of, based upon or related thereto in any other court. Each party hereby irrevocably waives, and agrees not to assert as a defense, counterclaim or otherwise, in any such action, claim, suit or legal proceeding, (i) any claim that it is not personally subject to the jurisdiction of the above named courts for any reason other than the failure to properly serve process, (ii) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (iii) to the fullest extent permitted by applicable law, any claim that (x) the suit, action or legal proceeding in such court is brought in an inconvenient forum, (y) the venue of such suit, action or legal proceeding is improper or (z) this Agreement or any other agreement or instrument contemplated hereby or entered into in connection herewith, or the subject matter hereof or thereof, may not be enforced in or by such courts. Each party agrees that notice or the service of process in any action, claim, suit or legal proceeding arising out of, based upon or relating to this Agreement or any of the rights and obligations arising hereunder or thereunder, shall be properly served or delivered if delivered in the manner contemplated by Section 13 of this Agreement.

(b)    EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY AND ALL RIGHT SUCH PARTY MAY HAVE TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR LEGAL PROCEEDING BETWEEN THE PARTIES HERETO ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR THE NEGOTIATION, EXECUTION OR PERFORMANCE HEREOF.

25.    Specific Performance.  The parties agree that irreparable damage may occur in the event

that any provision of this Agreement were not performed in accordance with its specific terms or was otherwise breached and that monetary damages may not be an adequate remedy for any breach or threatened breach of any of the provisions of this Agreement.  It is accordingly agreed that the parties shall be entitled to seek an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement, and any such injunction shall be in addition to any other remedy to which any party is entitled, at law or in equity.

26.    Headings. The descriptive headings contained in this Agreement are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

27.    Counterparts. This Agreement may be executed in one or more counterparts, and by the different parties in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement, and which shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party.

[Signatures appear on the following page.]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

TRANSCARE CORPORATION

By: _____
Name:
Title:

TRANSCENDENCE TRANSIT, INC.

By: _____
Name:
Title:

**A3432**

## Exhibit A

## TransCare Transition Services

During the Term of the Agreement, TransCare shall use its commercially reasonable efforts to provide Transcendence and its Affiliates with all transitional support services and physical assets, including the vehicles subject to the vehicles leases, the medical equipment subject to equipment leases, the telecommunications equipment provided pursuant to the service provider services agreement and the EPCR equipment provided pursuant to the service provider services agreement, all as set forth below, as are (a) necessary or advisable to (i) operate the Business in the ordinary course consistent with past practice, (ii) preserve in all material respects the Purchased Business and Assets, and (iii) preserve the current relationships of the Business with the suppliers, vendors, customers, clients, contractors and others having business dealings therewith, in each case as requested by Transcendence, and (b) otherwise reasonably requested by Transcendence in connection with its ownership, operation and management of the Business; *provided, however,* that TransCare shall not be required to take any action that is outside of the scope of the actions taken thereby in connection with the ordinary course of the Business consistent with the pre-purchase practices thereof.

TransCare Transition Services shall be of equal priority to the day-to-day operations of TransCare and, if there is a conflict between the immediate needs of TransCare or any of its Affiliates and those of Transcendence and its Affiliates as to the use of or access to a particular Transition Service to be provided hereunder, the Board of Directors of TransCare shall have the right, in its sole discretion, to establish priorities, at particular times and under particular circumstances, as between TransCare and its Affiliates, on the one hand, and Transcendence, on the other hand. If, however, TransCare anticipates, that such Transition Services cannot be accomplished within the agreed upon timetable, TransCare will notify Transcendence as promptly as practicable of its inability to perform. TransCare shall invoice Transcendence monthly in arrears the Applicable Monthly Charge for each Transition Service calculated as set forth in the table below. Transcendence shall offset the Applicable Monthly Charge payable to TransCare by the Applicable Monthly Charge payable by TransCare to Transcendence for the Transcendence Transition Services set forth on Exhibit B.

| (A) Transition Service/Asset | (B) Designated Provider | (C) Monthly Designated Provider Cost | (D) % of Designated Provider's Time/Activity/Cost for such month | (E) Applicable Monthly Charge [C * D] |
|---|---|---|---|---|
| | | | | |
| Telecommunications equipment and services (AT&T voice, data, mobility and Verizon mobility) | | $53,400 | | $ |

4

| Insurance premium for the following coverage as Named Insured under TransCare policies:<br><br>[Coverage A]<br>[Coverage B]<br>[Coverage C]<br>[Coverage D] | N/A | N/A | N/A | $ |
|---|---|---|---|---|
| EPCR equipment and services tablets and | | | | |
| Facilities – right for Transcendence to use:<br>•<br>• MTA Facility (10615 Foster Avenue, Brooklyn, NY)<br>• MTA repair facility (Stanley Avenue Garage) | N/A | $ [monthly lease plus utilities] | N/A | <br><br><br><br><br><br>• $<br><br><br><br>• $ |

(1) percentage (%) to be determined based on the number of bills/claims processed for Transcendence as a percentage of total bills/claims processed for TransCare and Transcendence during the applicable period.

Exhibit A – continued on following page

5

| Transcendence Business to Use | Vehicle | Monthly Use Amount |
|---|---|---|
| Hudson Valley | Ambulance - Unit 403-HV – VIN 1FDSS3ELXDDB15142 | $1,149 |
| Hudson Valley | Ambulance - Unit 404-HV – VIN 1FDSS3EL9DDB15181 | $1,169 |
| Hudson Valley | Ambulance - Unit 405-HV – VIN 1FDSS3EL7DDA92113 | $1,209 |
| Hudson Valley | Sports Utility Vehicle Type 2- Unit 401-HV – VIN 1FM5K8B81EGB14309 | $789 |
| Hudson Valley | Sports Utility Vehicle - Unit 402-HV – VIN 1FM5K8B86EGA72445 | $789 |
| | Vehicles: 5 | $5,105 |

6

PP-TRBK0044008

**Exhibit B**

**Transcendence Transition Services**

During the Term of the Agreement, Transcendence shall use its commercially reasonable efforts to provide TransCare and its Affiliates with certain transitional support services and physical assets, including the vehicles and the medical equipment within those vehicles, and rights to use certain trademarks and tradenames, as set forth below.

Transcendence shall invoice TransCare monthly in arrears the Applicable Monthly Charge for each Transition Service calculated as set forth in the table below. Transcendence shall offset the Applicable Monthly Charge payable to TransCare based on the Exhibit A monthly invoice process by the Applicable Monthly Charge payable by TransCare for the Transcendence Transition Services set forth below and the Monthly Vehicle Use Charges set forth on Exhibit C.

| (A) Transition Service | (B) Designated Provider | (C) Monthly Designated Provider Cost | (D) % of Designated Provider's Time/Activity for such month | (E) Applicable Monthly Charge [C * D] |
|---|---|---|---|---|
| Risk Management/ Safety | Foerst, John | $11,000 | | $ |
| | | | | |
| Compliance/ Quality Assurance | Azizo, Margaret | $5,000 | | $ |
| | | | | |
| Human Resources | Hunter, Patricia | $5,000 | | $ |
| | | | | $ |
| Payroll | Serbinenko, Yelena | $6,000 | | $ |
| | | | | |
| Finance/ Accounting | Careaga, Lawrence | $5,000 | | $ |
| | Len, Shameeka | $4,000 | | $ |
| | Lameras, John | $8,000 | | $ |
| | | | | |
| IT | Tom Milea | | | |
| | | | | |
| Use of TransCare Trademarks, Trade Names, and any associated Intellectual Property necessary to operate the Business. | N/A | N/A | N/A | N/A |
| | | | | |
| Various Medical Equipment owned by | N/A | $[x] | | $ |

7

| Transcendence | | | | |
|---|---|---|---|---|
| | | | | |

**Risk Management/Safety** – risk management; insurance contracts; broker relationship; motor vehicle accident claims; workers compensation claims; and safety training to minimize insurance claims.

**Compliance/ Quality Assurance** – third party billing for compliance; regulatory affairs and quality assurance oversight.

**Human Resources** – benefits management; time and attendance monitoring and management; payroll support and disbursement of paychecks; on-boarding; posting of open positions.

**Payroll** – interfacing with ADP, handling payroll exceptions, recording PTO, distributing paychecks. Coordinates with and supports PA, MD, Hudson Valley and Paratransit divisions.

**Finance and Accounting** -  treasury functions, daily borrowing base collateral calculations and funding requests, wire transfers, monthly cash schedules; general ledger entries; management of leased vehicles and relationships with leasing companies; financial statements; downloading of payroll information to general ledger; other financial reporting and accounting functions.

IT – systems and software support.

8

Exhibit C

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| Maryland | Ambulance Type 2 - Unit 202-MD - VIN 1FDSS34F43HB65067 | $825 |
| Maryland | Ambulance Type 2 - Unit 206-MD - VIN 1FDSS34FX3HB58043 | $825 |
| Maryland | Ambulance Type 2 - Unit 208-MD - VIN 1FDSS34P19DA93947 | $1,100 |
| Maryland | Ambulance Type 2 - Unit 209-MD - VIN 1FDSS34F93HB10484 | $825 |
| Maryland | Ambulance Type 2 - Unit 214-MD - VIN 1FDSS34F4YHB73046 | $825 |
| Maryland | Ambulance Type 2 - Unit 217-MD - VIN 1FDSS34F03HB01057 | $825 |
| Maryland | Ambulance Type 2 - Unit 223-MD - VIN 1FDSS34P05HA59789 | $825 |
| Maryland | Ambulance Type 2 - Unit 224-MD - VIN 1FDSS34P75HA59790 | $825 |
| Maryland | Ambulance Type 2 - Unit 225-MD - VIN 1FDSS34P39DA89656 | $1,100 |
| Maryland | Ambulance Type 2 - Unit 226-MD - VIN 1FDSS34P79DA89658 | $1,100 |
| Maryland | Ambulance Type 2 - Unit 233-MD - VIN 1FDSS34F12HA01046 | $825 |
| Maryland | Ambulance Type 2 - Unit 234-MD - VIN 1FDSS34P28DB17543 | $825 |
| Maryland | Ambulance Type 3 - Unit 109-MD - VIN 1FDSE35F13HB05396 | $1,275 |
| Maryland | Ambulance Type 3 - Unit 111-MD - VIN 1FDWE35P69DA88105 | $1,700 |
| Maryland | Ambulance Type 3 - Unit 112-MD - VIN 1FDSE35F53HB05398 | $1,275 |
| Maryland | Ambulance Type 3 - Unit 113-MD - VIN 1FDWE35P66HA24506 | $1,275 |
| Maryland | Ambulance Type 3 - Unit 115-MD - VIN 1FDXE45P08DB28820 | $1,275 |
| Maryland | Ambulance Type 3 - Unit 51-MD - VIN 1FDXE45P49DA89411 | $1,700 |
| Maryland | Ambulance Type 3 - Unit 52-MD - VIN 1FDXE45P49DA89666 | $1,700 |
| Maryland | Ambulance Type 3 - Unit 53-MD - VIN 1FDXE45P06HA53509 | $1,275 |
| Maryland | Ambulance Type 3 - Unit 54-MD - VIN 1FDWE35F7YHB40226 | $1,275 |
| Maryland | Ambulance Type 3 - Unit 55-MD - VIN 1FDXE45P29DA89410 | $1,700 |
| Maryland | Ambulette - Unit 356-MD-IC - VIN 1FTNS2EW4BDA36343 | $700 |

9

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| Maryland | Ambulette - Unit 360-MD-IC - VIN 1FTNS24W46DB06933 | $525 |
| Maryland | Ambulette - Unit 366-MD-IC - VIN 1FTNS2EW8ADA89478 | $700 |
| Maryland | Ambulette - Unit 367-MD-IC - VIN 1FTNS2EW5ADA89499 | $700 |
| Maryland | Ambulette - Unit 369-MD-IC - VIN 1FTNS2EW8BDA36345 | $700 |
| New York Core | Ambulance Type 1 - Unit 928 - VIN 1FDSS34P29DA73707 | $1,700 |
| New York Core | Ambulance Type 2 - Unit 021 - VIN 1FDSS3EP1ADA36148 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 022 - VIN 1FDSS3EP3ADA36149 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 023 - VIN 1FDSS3EP1ADA36151 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 055 - VIN 1FDSS34F2YHB45536 | $825 |
| New York Core | Ambulance Type 2 - Unit 223 - VIN 1FDSS34F12HA22401 | $825 |
| New York Core | Ambulance Type 2 - Unit 235 - VIN 1FDSS34F72HA01066 | $825 |
| New York Core | Ambulance Type 2 - Unit 247 - VIN 1FDSS34F12HB02524 | $825 |
| New York Core | Ambulance Type 2 - Unit 256 - VIN 1FDSS34F72HB40808 | $825 |
| New York Core | Ambulance Type 2 - Unit 270 - VIN 1FDSS34F62HA03813 | $825 |
| New York Core | Ambulance Type 2 - Unit 297 - VIN 1FDSS34F92HA36627 | $825 |
| New York Core | Ambulance Type 2 - Unit 301 - VIN 1FDSS34F73HB53818 | $825 |
| New York Core | Ambulance Type 2 - Unit 302 - VIN 1FDSE35F53HB05403 | $825 |
| New York Core | Ambulance Type 2 - Unit 304 - VIN 1FDSE35F03HA93824 | $825 |
| New York Core | Ambulance Type 2 - Unit 305 - VIN 1FDSS34F53HB05394 | $825 |
| New York Core | Ambulance Type 2 - Unit 306 - VIN 1FDWE35F03HB42859 | $825 |
| New York Core | Ambulance Type 2 - Unit 310 / Ell - VIN 1FDSS34F83HB01047 | $825 |
| New York Core | Ambulance Type 2 - Unit 313 - VIN 1FDSS34F83HA67580 | $825 |
| New York Core | Ambulance Type 2 - Unit 315 - VIN 1FDSS34F43HB01059 | $825 |
| New York Core | Ambulance Type 2 - Unit 317 - VIN 1FDSS34F03HB23057 | $825 |

10

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| New York Core | Ambulance Type 2 - Unit 325 - VIN 1FDSS34F33HB01053 | $825 |
| New York Core | Ambulance Type 2 - Unit 327 - VIN 1FDSS34F83HB18012 | $825 |
| New York Core | Ambulance Type 2 - Unit 329 - VIN 1FDSS34F53HA62112 | $825 |
| New York Core | Ambulance Type 2 - Unit 330 / WM2 - VIN 1FDSS34F33HA60956 | $825 |
| New York Core | Ambulance Type 2 - Unit 333 - VIN 1FDSS34F83HB23064 | $825 |
| New York Core | Ambulance Type 2 - Unit 340 - VIN 1FDSS34F53HA60957 | $825 |
| New York Core | Ambulance Type 2 - Unit 350 - VIN 1FDSS34F13HB01066 | $825 |
| New York Core | Ambulance Type 2 - Unit 355 - VIN 1FDSS34F73HB01069 | $825 |
| New York Core | Ambulance Type 2 - Unit 359 - VIN 1FDSS34F83HB58042 | $825 |
| New York Core | Ambulance Type 2 - Unit 360 - VIN 1FDSS34F33HB10478 | $825 |
| New York Core | Ambulance Type 2 - Unit 363 - VIN 1FDSS34F43HA90239 | $825 |
| New York Core | Ambulance Type 2 - Unit 367 - VIN 1FDSS34F23HB53807 | $825 |
| New York Core | Ambulance Type 2 - Unit 375 - VIN 1FDSS34F53HB10479 | $825 |
| New York Core | Ambulance Type 2 - Unit 380 - VIN 1FDSS34F63HB10488 | $825 |
| New York Core | Ambulance Type 2 - Unit 383 - VIN 1FDSS34F23HA90238 | $825 |
| New York Core | Ambulance Type 2 - Unit 387 - VIN 1FDSS34F43HB58037 | $825 |
| New York Core | Ambulance Type 2 - Unit 397 - VIN 1FDSS34FX3HA67578 | $825 |
| New York Core | Ambulance Type 2 - Unit 400 - VIN 1FDSS34P14HA69410 | $825 |
| New York Core | Ambulance Type 2 - Unit 403 . - VIN 1FDSS34P64HA69449 | $825 |
| New York Core | Ambulance Type 2 - Unit 405 - VIN 1FDSS34P54HA48799 | $825 |
| New York Core | Ambulance Type 2 - Unit 410 - VIN 1FDSS34P34HA69442 | $825 |
| New York Core | Ambulance Type 2 - Unit 415 - VIN 1FDSS34F03HB65065 | $825 |
| New York Core | Ambulance Type 2 - Unit 420 - VIN 1FDSS34P34HA54374 | $825 |
| New York Core | Ambulance Type 2 - Unit 435 - VIN 1FDSS34P24HA98317 | $825 |

11

Confidential

PP-TRBK0044013

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| New York Core | Ambulance Type 2 - Unit 450 - VIN 1FDSS34P44HA98318 | $825 |
| New York Core | Ambulance Type 2 - Unit 460 - VIN 1FDSS34P04HA98865 | $825 |
| New York Core | Ambulance Type 2 - Unit 465 - VIN 1FDSS34P24HA98320 | $825 |
| New York Core | Ambulance Type 2 - Unit 475 - VIN 1FDSS34P74HA69444 | $825 |
| New York Core | Ambulance Type 2 - Unit 480 - VIN 1FDWE35P54HB12217 | $825 |
| New York Core | Ambulance Type 2 - Unit 500 - VIN 1FDSS34P35HA58698 | $825 |
| New York Core | Ambulance Type 2 - Unit 550 - VIN 1FDSS34P45HA65837 | $825 |
| New York Core | Ambulance Type 2 - Unit 810 - VIN 1FDSS34P58DA70167 | $825 |
| New York Core | Ambulance Type 2 - Unit 820 - VIN 1FDSS34P08DA77771 | $825 |
| New York Core | Ambulance Type 2 - Unit 901 - VIN 1FDSS34P79DA72262 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 902 - VIN 1FDSS34P89DA64316 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 922 - VIN 1FDSS34P99DA78578 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 924 - VIN 1FDSS34P69DA89652 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 925 - VIN 1FDSS34P09DA73706 | $1,100 |
| New York Core | Ambulance Type 2 - Unit 926 - VIN 1FDSS34P19DA89655 | $1,100 |
| New York Core | Ambulance Type 3 - Unit 033 - VIN 1FDWE3FP1ADA18997 | $1,700 |
| New York Core | Ambulance Type 3 - Unit 404 - VIN 1FDWE35P54HB03114 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 425 / M03 - VIN 1FDSS34P04HA98316 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 440 / M01 - VIN 1FDSS34P14HA54373 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 505 / NR2 - VIN 1FDWE35P05HA65079 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 520 - VIN 1FDWE35P75HA65080 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 530 - VIN 1FDSS34P45HA65840 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 540 - VIN 1FDWE35P05HA65082 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 602 - VIN 1FDXE45P56HA83220 | $1,275 |

12

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| New York Core | Ambulance Type 3 - Unit 605 / WP1 - VIN 1FDWE35P76DA19435 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 620 - VIN 1FDWE35PX6DB09632 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 800/ MTS - VIN 1FDXE45P78DA54117 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 815 - VIN 1GBJG316981122015 | $1,275 |
| New York Core | Ambulance Type 3 - Unit 912 - VIN 1FDWE35P29DA88103 | $1,700 |
| New York Core | Ambulance Type 3 - Unit 914 - VIN 1FDWE35P09DA88102 | $1,700 |
| New York Core | Ambulance Type 3 - Unit 936 - VIN 1FDXE45P09DA89664 | $1,700 |
| New York Core | Ambulance Type 3 - Unit M02 - VIN 1FDWE35P46DA91872 | $1,275 |
| New York Core | Ambulance Type 3 - Unit M03 - VIN 1FDWE35P36DA91877 | $1,275 |
| New York Core | Ambulance Type 3 - Unit M04 - VIN 1FDWE35P08DA39075 | $1,275 |
| New York Core | Ambulance Type 3 - Unit M05 - VIN 1FDWE35PX8DA60970 | $1,275 |
| New York Core | Ambulance Type 3 - Unit MS_1 - VIN 1FDWE35P58DA95531 | $1,275 |
| New York Core | Ambulance Type 3 - Unit MS1/ BI98 - VIN 1FBNE31L37DA11289 | $1,275 |
| New York Core | Ambulance Type 3 - Unit MS2 - VIN 1FDWE35P89DA66302 | $1,700 |
| New York Core | Ambulance Type 3 - Unit MTS-2 - VIN 1FDWF36F82EB37341 | $1,275 |
| New York Core | Heavy Duty Truck (> 26000 lbs.) - Unit TOW - VIN 1HTSCAAM3YH320789 | $600 |
| New York Core | Invalid Coach - Unit BI98 - VIN 1FDWE35P25HB01399 | $750 |
| New York Core | Invalid Coach - Unit FM7/ 535 - VIN 1FTSS34P25HA57787 | $750 |
| New York Core | Sports Utility Vehicle - Unit 105/ PLOW - VIN 1J4FJ68S4TL311895 | $592 |
| New York Core | Sports Utility Vehicle - Unit 506 - Sup - VIN 1FMZU73E15UB41232 | $592 |
| New York Core | Sports Utility Vehicle - Unit 803 - Sup - VIN 1FMCU931X8KB33211 | $592 |
| NY Transit | Bus - Unit TS14 - VIN 1FDEE3FL7ADA01386 | $1,200 |
| NY Transit | Invalid Coach - Unit TS3 - VIN 1FDEE35L99DA64597 | $1,000 |

13

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| NY Transit | Invalid Coach - Unit TS4 - VIN 1FTNS2EW1ADA26528 | $1,000 |
| NY Transit | Invalid Coach - Unit TS6 - VIN 1FDEE3FL9ADA69995 | $1,000 |
| NY Transit | Invalid Coach - Unit TS9 - VIN 1FTNE2EW2ADA99642 | $1,000 |
| NY Transit | Invalid Coach - Unit TS90 - VIN 1FDEE3FL5ADA23340 | $1,000 |
| NY Transit | Invalid Coach - Unit TS91 - VIN 1FDEE3FL4ADA38153 | $1,000 |
| NY Transit | Sports Utility Vehicle - Unit 703 - Sup - VIN 1FMYU93127KB25043 | $592 |
| NYC EMS | Ambulance Type 3 - Unit 300 / AS1 - VIN 1FDSS34F13HA97231 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BI1/ 1720 - VIN 1FDWE35P49DA88099 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit BI2/ 1723 - VIN 1FDWE35P98DA39074 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BI4 / 1721 - VIN 1FDWE35P86DB12626 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BI5/ 1727 - VIN 1FDWE35P49DA88104 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit BI8 /1724 - VIN 1FDWE35P66DB09630 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BL1/ 2860 - VIN 1FDWE35P28DB04430 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BL10/ 2859 - VIN 1FDWE35P29DA88098 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit BL11/ 2861 - VIN 1FDWE35P78DA82585 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BL3/ 2852 - VIN 1FDWE35P79DA50947 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit BL5/ 2854 - VIN 1FDXE45P39DA85818 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit BL8 / 2857 - VIN 1FDWE35P18DA56919 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit BL9 / 2858 - VIN 1FDWE35P36DB31410 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit EN2 /2405 - VIN 1FDWE35P79DA67795 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit EN3/2403 - VIN 1FDWE35P99DA88096 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit EN9/ 2412 - VIN 1FDWE35P89DA68535 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit M01 - VIN 1FDWE35P37DA96451 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit MS5 /1924 - VIN 1FDWE35P09DA88097 | $1,700 |

14

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| NYC EMS | Ambulance Type 3 - Unit MS6 / 1925 - VIN 1FDWE35P27DA96411 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit MS7 / 1922 - VIN 1FDWE35P88DA56920 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit MS8/ 1923 - VIN 1FDWE35P58DB55520 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit MT10/ 2411 - VIN 1FDWE35P29DA18486 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit MT3 / 2836 - VIN 1FDWE35P38DA64326 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit MT8 / 2408 - VIN 1FDWE35PX9DA68536 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit NU1/ BI6 / 1725 - VIN 1FDWE35P78DA95529 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit NU2/ 1953/ 603 - VIN 1FDWE35P06DB31400 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit NU4/ 1951/ 509 - VIN 1FDWE35P85HA17023 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit SB1/ 2501 - VIN 1FDWE35P08DB55523 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit SB10/ 2509 - VIN 1FDWE35P99DA50948 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit SB2/ 2502 - VIN 1FDWE3FP2ADA18944 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit SB3/ 2500/ 931 - VIN 1FDWE35P89DA80281 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit SB5 / 2504 - VIN 1FDWE35P07DA96410 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit SB7 / 2506 - VIN 1FDWE35P07DA96407 | $1,275 |
| NYC EMS | Ambulance Type 3 - Unit SB8 / 2507 - VIN 1FDWE35P69DA66296 | $1,700 |
| NYC EMS | Ambulance Type 3 - Unit SB9/ 2508 - VIN 1FDWE3FP5ADA18856 | $1,700 |
| NYC EMS | Cargo Van - Unit 410L - VIN 1FTSS34P34HA88514 | $375 |
| NYC EMS | Sports Utility Vehicle - Unit 003 - VIN 1FMCU9DG2AKC84617 | $789 |
| NYC EMS | Sports Utility Vehicle - Unit 004 - VIN 1FMCU9DG4AKC84618 | $789 |
| NYC EMS | Sports Utility Vehicle - Unit 401 - Sup - VIN 1FMYU92104KA61243 | $592 |
| NYC EMS | Sports Utility Vehicle - Unit 402 - Sup - VIN 1FMYU92174DA24064 | $592 |
| NYC EMS | Sports Utility Vehicle - Unit 503 - Sup - VIN 1FMYU93105DA19983 | $592 |
| NYC EMS | Sports Utility Vehicle - Unit 507 - Sup - VIN 1FMYU93135KD98182 | $592 |

15

| TransCare Division to Use | Vehicle (Description, VIN) | Monthly Charge* |
|---|---|---|
| NYC EMS | Sports Utility Vehicle - Unit 508 - Sup - VIN 1FMYU93145KE22019 | $592 |
| NYC EMS | Sports Utility Vehicle - Unit 702 - Sup - VIN 1FMYU93117KA64820 | $592 |
| NYC EMS | Sports Utility Vehicle - Unit 805 - Sup - VIN 1FMEU73E18UB11540 | $592 |
| NYC EMS | Sports Utility Vehicle - Unit 903 - Sup - VIN 1FMCU93GX9KC24629 | $789 |
| Westchester EMS | Ambulance Type 2 - Unit 032 - VIN 1FDWE3FP3ADA18807 | $1,100 |
| Westchester EMS | Ambulance Type 2 - Unit 357 - VIN 1FDSS34F43HB53808 | $825 |
| Westchester EMS | Ambulance Type 2 - Unit 510 - VIN 1FDSS34P15HA58697 | $825 |
| Westchester EMS | Ambulance Type 2 - Unit 921 - VIN 1FDSS34P49DA77595 | $1,100 |
| Westchester EMS | Ambulance Type 2 - Unit 923 - VIN 1FDSS34PX9DA89654 | $1,100 |
| Westchester EMS | Ambulance Type 3 - Unit 909 - VIN 1FDWE35PX9DA67791 | $1,700 |
| Westchester EMS | Ambulance Type 3 - Unit 932 - VIN 1FDWE35PX9DA80282 | $1,700 |
| Westchester EMS | Ambulance Type 3 - Unit 934 - VIN 1FDWE35P69DA80277 | $1,700 |
| Westchester EMS | Automobile - Unit 005 - VIN 1FMEU7DE6AUA36984 | $789 |
| Westchester EMS | Sports Utility Vehicle - Unit 001 - VIN 1FMEU7DE4AUA36983 | $789 |
| Westchester EMS | Sports Utility Vehicle - Unit 807 - Sup - VIN 1FMEU73E58UB11542 | $592 |

| Totals | Vehicles: 181 | $195,446 |
|---|---|---|

* Vehicles owned and aged greater than seven (7) years are discounted 25% from standard lease rate

16

| | |
|---|---|
| **From:** | Brian Stephen |
| **Sent:** | Wednesday, February 24, 2016 12:07 AM |
| **To:** | Peter Wolf |
| **Cc:** | Financial and Investment Law |
| **Subject:** | Please see attached |
| **Attachments:** | LGL-_20160223225130.PDF; Notice of Default and Acceleration (Executed) (02242016).pdf |

Please see attached documents.

Brian D. Stephen
Senior Director, Legal
Patriarch Partners, LLC
One Broadway
New York, NY 10004
646.723.7656 Office
212.825.2038
www.patriarchpartners.com

**JX 096**

LaMonica v. Tilton, et al., 18-1021-smb

Confidential

PP-TRBK0043305



# PATRIARCH
## PARTNERS AGENCY
### SERVICES, LLC

One Broadway, 5th Floor
New York, NY 10004

**VIA EMAIL AND CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

February 24, 2016

TransCare Corporation
TC Ambulance Corporation
TC Ambulance Group, Inc.
TC Ambulance North, Inc.
TC Billing and Services Corp.
TC Hudson Valley Ambulance Corp.
TCBA Ambulance, Inc.
TransCare Harford County, Inc.
TransCare Management Services, Inc.
TransCare Maryland, Inc.
TransCare ML, Inc.
TransCare New York, Inc.
TransCare Pennsylvania, Inc.
TransCare Westchester, Inc.
One Metrotech Center
Brooklyn, New York 11201
Attention: Chief Operating Officer

Re:      Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation

Ladies and Gentlemen:

Reference is made to (a) the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TransCare Corporation, a Delaware corporation ("TransCare"), the financial institutions and other investors from time to time party thereto as lenders ("Lenders"), and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent ("Agent"); (b) the related Pledge Agreement dated as of August 4, 2003, made by TransCare, Trans Care Maryland, Inc., a Delaware corporation, and TransCare New York, Inc., a Delaware corporation, in favor of Agent; (c) the Security Agreement, dated as of August 4, 2003, made by TransCare and the Grantors that are signatories thereto in favor of Agent; and (d) the related Subsidiaries' Guarantee dated as of August 4, 2003 (as modified to the date hereof ) made by Guarantors that are signatories thereto in favor of Agent. Capitalized terms used but not defined herein are used as defined in the Credit Agreement.

{P1J05589.2}

1

Confidential                                                                                          PP-TRBK0043306

Each of the undersigned acknowledges the occurrence of an Event of Default as defined in the Credit Agreement.  Pursuant to Section 9-620 of the Uniform Commercial Code, notice is hereby given of the Agent's acceptance of the subject collateral identified on Schedule A attached hereto in partial satisfaction of the undersigned entities' Obligations under the Credit Agreement (the "Subject Collateral").  The Subject Collateral is accepted by Agent in satisfaction of $10,000,000 of the Obligations, which represents a partial satisfaction of the Obligations.

If you are in agreement with the terms of this letter and agree to Agent's acceptance of the Subject Collateral in partial satisfaction of the undersigned entities' Obligations under the Credit Agreement in the amount set forth in the immediately preceding paragraph, please sign and date below.

*Signature pages follow.*

**A3448**

Confidential                                    PP-TRBK0043307

Very truly yours,



PATRIARCH PARTNERS AGENCY SERVICES, LLC,
as Administrative Agent

By: _____
   Lynn Tilton
   Manager

ZOHAR CDO 2003-1, LIMITED,
as Lender

By: Patriarch Partners VIII, LLC
Its Collateral Manager

By: _____
   Lynn Tilton
   Manager

ZOHAR II 2005-1, LIMITED
as Lender

By: Patriarch Partners XIV, LLC
Its Collateral Manager

By: _____
   Lynn Tilton
   Manager

ZOHAR III, LIMITED
as Lender

By: Patriarch Partners XV, LLC
Its Collateral Manager

By: _____
   Lynn Tilton
   Manager

ARK INVESTMENT PARTNERS II, L.P.,
as Lender

By: Ark Investment GP II, LLC,
Its General Partner

By: _____
   Lynn Tilton
   Manager

[P1105589:2]

3

**A3449**

Confidential

PP-TRBK0043308

By signing below, each entity (together, the "Debtors") indicates its agreement with the terms of this letter and agrees to Agent's acceptance of the Subject Collateral identified in Schedule A in partial satisfaction of the entity's Obligations under the Credit Agreement in the amount set forth above:

Date: February ___, 2016

TransCare Corporation
TC Ambulance Corporation
TC Ambulance Group, Inc.
TC Ambulance North, Inc.
TC Billing and Services Corp.
TC Hudson Valley Ambulance Corp.
TCBA Ambulance, Inc.
TransCare Harford County, Inc.
TransCare Management Services, Inc.
TransCare Maryland, Inc.
TransCare ML, Inc.
TransCare New York, Inc.
TransCare Pennsylvania, Inc.
TransCare Westchester, Inc.

By: _____
Name:
Title:

{F1105589.2}                              -4-

**A3450**

Confidential                                                                     PP-TRBK0043309

## SCHEDULE A

### THE SUBJECT COLLATERAL

1. All of Debtors' personal property of every kind and description, wherever located, including, without limitation, Bank Accounts; Chattel Paper; Commercial Tort Claims; Copyrights; Copyright Licenses; Documents; Equipment (including, but not limited to, computer servers and related data); General Intangibles; Instruments; Inventory; Investment Property; Letter of Credit Rights; Patents; Patent Licenses; Trademarks; Trademark Licenses; Vehicles; and books and records pertaining to the Subject Collateral, as such terms are defined in the Security Agreement.

2. The following Contracts as such term is defined in the Security Agreement (may be subject to consent of assignment):

   a. Contract No. 07H9751I between New York City Transit Authority and TransCare New York, Inc.

   b. The equipment lease for Carefusion – LTV 1200 ventilators pursuant to Master Lease Agreement no. 062710-KB between First Financial Corporate Leasing, LLC (dba First Financial healthcare Solutions) and TransCare.

   c. emsCharts Service Agreement dated August 21, 2015 by and between TransCare Corporation and emsCharts, Inc.

3. All shares of capital stock listed on Table A, together with all stock certificates, options or rights of any nature whatsoever which have been issued or granted by any of the corporations identified on Table A as an Issuer, to the Pledgors in respect to the stock identified in Table A, but not any additional or other capital stock pledged for any other corporations that are not identified on Table A.

*Table A*

| Issuer | Pledgor | Class of Stock | Stock Certificate Number | Number of Shares |
|---|---|---|---|---|
| TransCare Pennsylvania, Inc. | TransCare Corporation | Common | 2 | 1,000 |
| TC Hudson Valley Ambulance Corp. | TransCare Corporation | Common | 2 | 100 |
| TC Ambulance Corporation | TransCare Corporation | Common | 2 | 1,000 |

4. All additions, accessions, substitutions, replacements, products and proceeds (whether cash or non-cash) of any of the foregoing, in whatever form, including, without limitation, proceeds of insurance.

PROVIDED, HOWEVER, that the Subject Collateral expressly does not include the following:

A. Accounts as such term is defined in the Security Agreement.

B. Any leasehold or other Contract interest, except as identified in Paragraph 2 of this Schedule.

**A3451**

Confidential                                                                    PP-TRBK0043310



## PATRIARCH PARTNERS

One Broadway, 5th Floor
New York, NY 10004

February 24, 2016

VIA E-MAIL

To:   TransCare Corporation
      One Metrotech Center
      Brooklyn, New York 11201
      Attention: Chief Financial Officer

NOTICE OF DEFAULT AND ACCELERATION

Ladies and Gentlemen:

Reference is made to the Credit Agreement, dated as of August 4, 2003 (as modified to the date hereof, the "Credit Agreement"), among TransCare Corporation, a Delaware corporation (the "Borrower" or "you"), the financial institutions and other investors from time to time party thereto as Lenders and Patriarch Partners Agency Services, LLC, a Delaware limited liability company, as administrative agent for such Lenders (in such capacity, the "Administrative Agent" or "we"). Capitalized terms used herein but not defined herein are used as defined in the Credit Agreement.

Your failure to pay interest when due under the Credit Agreement caused an Event of Default to occur under Section 10(a) of the Credit Agreement. Because of this and other Events of Default under the Credit Agreement, the Lenders hereby declare all of the Obligations to be due and payable forthwith, and all of the Commitments to be terminated. Therefore, on the date hereof, such Obligations have immediately become due and payable, such Commitments have terminated and any fees accrued under the Credit Agreement shall be immediately due and payable.

Although the Lenders have not provided notice described in Section 5.1(i) of the Credit Agreement at this stage, the Lenders reserve the right to provide such notice at any time after the date hereof to provide that interest shall accrue at the increased rate set forth in such Section 5.1(i).

The Lenders expressly reserves all rights, powers, privileges and remedies under or in respect of the Credit Agreement and applicable legal requirements with respect to any Default, Event of Default or any other term of any Loan Document. Any past or future Loans to Borrower shall not be considered an agreement, express or implied, on the part of the Lender to make or consider

**A3452**

Confidential

making additional Loans to Borrower or to consider modifying or waiving, or to modify or waive, any condition precedent, any Event of Default or any Default or any other term of any Loan Document. Nothing herein, in the course of dealing or in the discussions between any Credit Party and the Lender or any of its representatives, shall waive any Default or Event of Default or waive or modify any other provision of any Loan Document. No failure on the part of the Lender to exercise, and no delay in exercising, any right under the Credit Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.

This letter is a Loan Document under the Credit Agreement and shall be governed by and construed in accordance with the law of the State of New York. The fact that any term or provision of this letter is held invalid, illegal or unenforceable as to any person in any situation in any jurisdiction shall not affect the validity, enforceability or legality of the remaining terms or provisions hereof or the validity, enforceability or legality of such offending term or provision in any other situation or jurisdiction or as applied to any person.

[SIGNATURE PAGES FOLLOW]

2

**A3453**

PP-TRBK0043312

Very truly yours,

PATRIARCH PARTNERS AGENCY SERVICES, LLC,
as Administrative Agent

By: _____
Name: Lynn Tilton
Title: Manager


ZOHAR CDO 2003-1, LIMITED,
as Lender
By: Patriarch Partners VIII, LLC,
its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager


ZOHAR II 2005-1, LIMITED,
as Lender
By: Patriarch Partners XIV, LLC,
its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager


ZOHAR III, LIMITED,
as Lender
By: Patriarch Partners XV, LLC,
its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager


SIGNATURE PAGE TO NOTICE OF DEFAULT AND ACCELERATION FOR TRANSCARE CORPORATION

**A3454**

Confidential
PP-TRBK0043313

ARK INVESTMENT PARTNERS II, L.P.,
  as Lender
By: Ark Investment GP II, LLC,
  its General Partner

By: _____
  Name:  Lynn Tilton
  Title:  Manager

SIGNATURE PAGE TO NOTICE OF DEFAULT AND ACCELERATION FOR TRANSCARE CORPORATION

**A3455**

PP-TRBK0043314

| | |
|---|---|
| **From:** | Lynn Tilton |
| **Sent:** | Wednesday, February 24, 2016 1:29 PM |
| **To:** | 'Giglio, Cindi' |
| **Cc:** | Harrison III, Lynn P.; Brian Stephen; Buenger, Peter J.; 'rcreswell@perkinsthompson.com' |
| **Subject:** | RE: Board Meeting |

Wells cannot collect the cash going to the company and then pay down their loan at the expense of payrolls and then pin it on me.
They have collected more than sufficient cash over the weeks to make payroll and they have not.
I am not being backed into this corner.
And I cannot believe lawyers sit back quiet while the company is told by Landeck that whether people are paid on Friday depends on me.
Really???



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Giglio, Cindi [mailto:cgiglio@curtis.com]
**Sent:** Wednesday, February 24, 2016 12:57 PM
**To:** Lynn Tilton
**Cc:** Harrison III, Lynn P.; Brian Stephen; Buenger, Peter J.
**Subject:** Re: Board Meeting

Yes

Cindi Giglio
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
(212) 696-6936



**JX 097**

LaMonica v. Tilton, et al., 18-1021-smb

EXHIBIT
136
10-29-18

1

Confidential

PP-TRBK0047662

**A3456**

On Feb 24, 2016, at 12:54 PM, Lynn Tilton
<Lynn.Tilton@PatriarchPartners.Com<mailto:Lynn.Tilton@patriarchpartners.com>> wrote:

Is Wells aware of the foreclosure?

<image001.jpg>
Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com<mailto:Lynn.Tilton@PatriarchPartners.com>
Web: www.patriarchpartners.com<http://www.patriarchpartners.com/>

From: Giglio, Cindi [mailto:cgiglio@curtis.com]
Sent: Wednesday, February 24, 2016 10:59 AM
To: Lynn Tilton
Cc: Harrison III, Lynn P.; Brian Stephen; Buenger, Peter J.
Subject: Board Meeting

Lynn,

Can we plan to do the telephonic board meeting at 5PM? If that works, we will circulate a dial in.

Thanks,
Cindi

Cindi Giglio
Counsel


Curtis, Mallet-Prevost, Colt & Mosle LLP

101 Park Avenue
New York, New York 10178-0061


Direct Dial: +1 212 696 6936
Fax: +1 917 368 8863
cgiglio@curtis.com<mailto:cgiglio@curtis.com>


[http://www.curtis.com/pix/announcements/curtis_esignature.jpg]<http://www.curtis.com/>
www.curtis.com<http://www.curtis.com/>


[http://www.curtis.com/pix/announcements/curtis_environment.jpg]

2

Please consider the
environment before
printing this email.

This e-mail, including any attachments, may contain information that is protected by law as privileged and
confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient,
you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information
contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the
sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Your
privacy is very important to our firm. Therefore, if this message contains unsolicited commercial content, you
may forward this e-mail to unsubscribe@curtis.com<mailto:unsubscribe@curtis.com> or click here
(www.curtis.com/unsubscribe.htm<http://www.curtis.com/unsubscribe.htm>) if you do not want to receive
further messages of this nature. Thank you.

Curtis, Mallet-Prevost, Colt & Mosle LLP (101 Park Avenue, New York, NY 10178)

Confidential

PP-TRBK0047664

| From: | Lynn Tilton |
|---|---|
| Sent: | Wednesday, February 24, 2016 2:06 PM |
| To: | 'Giglio, Cindi'; Harrison III, Lynn P. |
| Cc: | Brian Stephen |
| Subject: | FW: Transcare borrowings - Privileged and Confidential |
| Importance: | High |

I have funded payroll all year.
Wells has taken my money and then not made payroll.



PATRIARCH PARTNERS

*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

## Transcare Corporation

| Effective Date | Principal Balance | Funds Came From |
|---|---|---|
| 02/26/2015 | $ 1,100,000.00 | Zohar Funds |
| 03/05/2015 | $ 250,000.00 | Zohar Funds |
| 04/09/2015 | $ 300,000.00 | Zohar Funds |
| 04/10/2015 | $ 300,000.00 | Zohar Funds |
| 04/23/2015 | $ 550,000.00 | Zohar Funds |
| 07/07/2015 | $ 150,115.00 | Zohar Funds |
| 07/08/2015 | $ 650,000.00 | Zohar Funds |
| 07/16/2015 | $ 1,479,906.42 | Zohar Funds |
| 10/08/2015 | $ 250,000.00 | Zohar Funds |
| 10/16/2015 | $ 500,000.00 | Zohar Funds |
| 12/08/2015 | $ 100,000.00 | Zohar Funds |
| 12/11/2015 | $ 110,000.00 | Zohar Funds |

1

Confidential

EXHIBIT
15
10·17·18

Blumberg No. 5119

PP-TRBK0047615

JX 099

LaMonica v. Tilton, et al., 18-1021-smb

| Date | Amount | Fund |
|---|---|---|
| 12/17/2015 | $ 1,278,501.84 | Zohar Funds |
| 01/05/2016 | $ 115,000.00 | Zohar Funds |
| 01/07/2016 | $ 100,000.00 | Zohar Funds |
| 1/15/2016 | $ 1,172,757.53 | Ark II - CLO 2001-1 |
| 1/28/2016 | $ 195,975.00 | Ark Angels II |
| 1/29/2015 | $ 690,168.24 | Ark II - CLO 2001-1 |

Totals:

| | | |
|---|---|---|
| Zohar Funds: | $ | 7,233,523.26 |
| Ark II - CLO 2001-1 | $ | 1,862,925.77 |
| Ark Angels II | $ | 195,975.00 |
| Grand Total : | $ | 9,292,424.03 |

2

Confidential

PP-TRBK0047616

**A3460**