# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

_____

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

_____

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.,

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-
ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

## APPENDIX TO BRIEF FOR THE APPELLANTS

# Volume XXI- A3494-A3530

(l)     <u>Capitalization</u>.

(i)     Each Credit Party is the record and beneficial owner of all of the issued and outstanding shares of Capital Stock of each of the Subsidiaries listed on a Collateral Update Certificate as being owned by such Credit Party; there are no proxies, irrevocable or otherwise, with respect to such shares; no Capital Stock of any Subsidiary of any Credit Party is or may become required to be issued by reason of any options, warrants, rights to subscribe to, calls or commitments of any kind or nature; and there are no contracts, commitments, understandings or arrangements by which any Subsidiary is or may become bound to issue additional shares of its Capital Stock or securities convertible into or exchangeable for such shares.

(ii)     As of the Closing Date, there are no Contractual Obligation or arrangement by which any Credit Party or any Subsidiary of any Credit Party is or may become bound to issue additional shares of its Capital Stock or securities convertible into or exchangeable for such shares.

(m)     <u>Material Misstatements and Omissions</u>.  There are no facts pertaining to the Credit Parties or any of their Subsidiaries, their assets or their businesses that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect and have not been disclosed in this Agreement.  None of the representations or warranties of the Credit Parties contained in the Credit Documents is untrue or incorrect in any material respect when made. When any representation or warranty of any Credit Party contained in any Credit Document is made, there is no information that would in any material respects contradict or be inconsistent with such representation or warranty.

(n)     <u>Solvency</u>.  Each Credit Party is Solvent.

(o)     <u>Labor Practices</u>.  None of the Credit Parties and their Subsidiaries is engaged in any unfair labor practice that could reasonably be expected to have a Material Adverse Effect. There is no (i) no unfair labor practice complaint pending against any Credit Party or any Subsidiary of any Credit Party or, to their knowledge, threatened against any of them before the National Labor Relations Board and no grievance or arbitration proceeding arising out of or under any collective bargaining agreement that is so pending against any Credit Party or any Subsidiary of any Credit Party or to their knowledge threatened against any of them, (ii) no strike or work stoppage in existence or to their knowledge threatened involving any Credit Party or any Subsidiary of any Credit Party and (iii) no union representation question existing with respect to the employees of any Credit Party or any Subsidiary of any Credit Party, as the case may be, and no union organization activity that is taking place, except (with respect to any matter specified in clause (i), (ii) or (iii) above, either individually or in the aggregate) such as could not reasonably likely to have a Material Adverse Effect.

(p)     <u>Employee Benefits</u>. (i) Each Credit Party, each Subsidiary of any Credit Party and each of their ERISA Affiliates are in substantial compliance with all applicable provisions and requirements of ERISA and the Internal Revenue Code and the regulations and published interpretations thereunder with respect to each Employee Benefit Plan, and have performed all their obligations under each Employee Benefit Plan, except where the failure to perform such obligations could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect; (ii) no material liability to the PBGC (other than required premium payments), the Internal Revenue Service, any Employee Benefit Plan or any Trust established under Title IV of ERISA has been or is reasonably expected to be incurred by the Credit Parties or any of their

- 29 -

Confidential

ERISA Affiliates, other than contributions required to be made to Employee Benefit Plans or Trusts; (iii) no ERISA Event has occurred or is reasonably expected to occur that could reasonably be expected to have a Material Adverse Effect; and (iv) each Credit Party, each Subsidiary of each Credit Party and each of their ERISA Affiliates have complied with the requirements of Section 515 of ERISA with respect to each Multiemployer Plan and are not in material "default" (as defined in Section 4219(c)(5) of ERISA) with respect to payments to a Multiemployer Plan).  Except to the extent required under Section 4980B of the Internal Revenue Code or similar state Regulations, no Employee Benefit Plan provides health or welfare benefits (through the purchase of insurance or otherwise) for any retired or former employee of any Credit Party, any Subsidiary of any Credit Party or any of their respective ERISA Affiliates.  Each Employee Benefit Plan that is intended to qualify under Section 401(a) of the Internal Revenue Code is the subject of a favorable determination, opinion or advisory letter from the Internal Revenue Service.

(q)   Environmental Matters.

(i)   No Credit Party and no Subsidiary of any Credit Party has any Environmental Liabilities at any Relevant Property that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect.

(ii)   Each Credit Party and each Subsidiary of any Credit Party:  (A) has operated its business in compliance with all applicable Environmental Laws; (B) has obtained all Environmental Permits required for the ownership and operation of its properties, and all such Environmental Permits are in full force and effect or such Person has made all appropriate filings for issuance or renewal of such Environmental Permits; (C) is not aware of any acts, omissions, events or circumstances that may interfere with or prevent continued compliance with the Environmental Laws and Environmental Permits referred to in the preceding clauses (A) and (B); (D) has not received notice of any asserted or threatened claim, action, suit, proceeding, hearing, investigation or request for information relating to any environmental matter and (E) has not received notice from any Governmental Body that any Credit Party or any Subsidiary of any Credit Party is a potentially responsible party under any Environmental Law at any disposal site containing Hazardous Materials, nor received any notice that any Lien exists under any Environmental Law against any property of any Credit Party or any Subsidiary of any Credit Party, in each case, except for matters that, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect.

(r)   Insurance.  The policies, binders or self-insurance programs for fire, liability, product liability, workmen's compensation, vehicular and other insurance currently held by or on behalf of any Credit Party or any Subsidiary of any Credit Party insure its material properties and business activities against such losses and risks as are adequate to protect its properties in accordance with customary industry practice when entered into or renewed.  As of the date hereof, all such policies, binders and self-insurance programs are in full force and effect.  As of the date hereof, no Credit Party and no Subsidiary of any Credit Party has received notice from any insurer or agent of such insurer that substantial capital improvements or other expenditures are required.  As of the date hereof, no Credit Party and no Subsidiary of any Credit Party has received notice of cancellation of any material insurance policy or binder.

(s)   Intellectual Property.  Each Credit Party and each Subsidiary of each Credit Party owns or licenses or otherwise has the right to use all Intellectual Property necessary for the operation of its business as presently conducted or proposed to be conducted.  As of the date

Confidential

hereof, no Credit Party and no Subsidiary of any Credit Party has any Intellectual Property registered, or subject to pending applications, in the United States Patent and Trademark Office or any similar office or agency in the United States, any State thereof, any political subdivision thereof or in any other country or has granted any licenses with respect thereto.  No event has occurred that permits, or would permit after notice or passage of time or both, the revocation, suspension or termination of such rights.  To the knowledge of each Credit Party and each Subsidiary of each Credit Party, no slogan or other advertising device, product, process, method, substance or other Intellectual Property or goods bearing or using any Intellectual Property presently contemplated to be sold by or employed by any Credit Party or any Subsidiary of any Credit Party infringes any patent, trademark, servicemark, tradename, copyright, license or other Intellectual Property owned by any other Person presently and no claim or litigation is pending or threatened against or affecting any Credit Party or any Subsidiary of any Credit Party contesting its right to sell or use any such Intellectual Property.

(t)     <u>Absence of Events of Default</u>.  No event has occurred and is continuing and no condition exists that constitutes a Default or Event of Default.

(u)     <u>Absence of Other Defaults</u>.  No Credit Party and no Subsidiary of any Credit Party is in default under any Contractual Obligations or Permit to which it is a party (by successor in interest or otherwise), by which it or its property is bound or by which any asset owned by it or used in the conduct of its business is affected that, individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect.  Each Credit Party and each Subsidiary of any Credit Party has complied and is in compliance in all respect with all Regulations and Permits, except for such instances of non-compliance that, individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect.

(v)     <u>Brokerage Fees</u>.  No broker or finder's fee or commission will be payable with respect to the execution and delivery of this Agreement and the other Credit Documents, and no other similar fees or commissions will be payable by the Credit Parties for any other services rendered to the Credit Parties ancillary to the credit transactions contemplated herein.

(w)     <u>Taxes</u>.  Each Credit Party and each Subsidiary of any Credit Party has filed all federal and other material Tax returns required to be filed by it and has not failed to pay any material taxes, or interest and penalties relating thereto, on or before the due dates thereof except for Taxes not yet due and except for those the amount or validity of which is currently being contested in good faith by appropriate proceedings diligently pursued and with respect to which adequate reserves have been set aside on its books.  Except as may be previously disclosed in writing to the Administrative Agent and except to the extent that reserves therefor are reflected in the Financials, (i) there are no material federal, state or local tax liabilities of any Credit Party or any Subsidiary of any Credit Party due or to become due for any tax year ended on or prior to the date hereof relating to any Credit Party or any Subsidiary of any Credit Party and not properly reflected in the Financials delivered pursuant to Section 5.1(a) and (ii) there are no material claims pending, proposed (or to the knowledge of any Credit Party threatened) against any Credit Party or any Subsidiary of any Credit Party for past federal, state or local taxes, except those, if any, as to which proper reserves in accordance with GAAP are reflected in such Financials.

(x)     <u>USA Patriot Act, OFAC, Bribery, Etc</u>.  Each Credit Party is in compliance with the USA Patriot Act (Title III of Pub. L. 107-56), the Trading with the Enemy Act, each of the foreign assets control Regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V) and any Regulation administered or enforced by OFAC.  No Credit Party and no Subsidiary of any Credit Party (a) is a Sanctioned Person or a Sanctioned Entity, (b) has its assets

- 31 -

**A3496**

PP-TRBK0008708

located in Sanctioned Entities, (c) derives revenues from investments in, or transactions with, Sanctioned Persons or Sanctioned Entities, (d) deals in, or otherwise engages in any transactions relating to, any property or interest in property blocked pursuant to any Regulation administered or enforced by OFAC or (e) engages in, or conspire or attempts to engage in, any transaction evading or avoiding any prohibition in any such Regulation.  No part of the proceeds of the extensions of credit hereunder will be used, directly or indirectly, to fund, and none of the Credit Parties and their Subsidiaries are engaged in, (x) any operations in, the financing of any investments or activities in, or any payments to, a Sanctioned Person or Sanctioned Entity, (y) any payments to any government or union official or employee, political party, official of a political party, candidate for political office or anyone else acting in an official capacity, in order to obtain, retain or direct business or obtain any improper advantage, or (z) any other activity in violation of the federal Foreign Corrupt Practices Act of 1977 or any other Regulation sanctioning or purporting to sanction money laundering, bribery, corruption and other improper payments.  Each Lender subject to the USA Patriot Act of 2001 (31 U.S.C. 5318 et seq.) hereby notifies each Credit Party that, pursuant to Section 326 thereof, it is required to obtain, verify and record information that identifies such Credit Party, including the name and address of such Credit Party and other information allowing such Lender to identify such Credit Party.

## ARTICLE V
## Affirmative Covenants

Section 5.1 <u>Affirmative Covenants</u>.  Each Credit Party covenants and agrees that until payment in full of all Obligations, each Credit Party shall perform, and shall cause each of its Subsidiaries to perform, all the covenants in this Article V applicable to it:

(a) <u>Basic Reporting Requirements</u>.  The Borrower shall furnish to the Administrative Agent and the Lenders:

(i) as soon as available but in any event within ninety (90) days after the close of each Fiscal Year, the audited consolidated Financials of the Credit Parties and their Subsidiaries for such Fiscal Year, certified by the Borrower's accountants;

(ii) as soon as available but in any event within thirty (30) days after the end of each Fiscal Quarter, the unaudited consolidated Financials of the Credit Parties and their Subsidiaries for such quarter, certified by its chief financial officer pursuant to a Financial Officer Certification, together with a Collateral Update Certificate;

(iii) as soon as available but in any event within fifteen (15) Business Days after the end of each fiscal month, the unaudited consolidated Financials of the Credit Parties and their Subsidiaries for such month, certified by its chief financial officer pursuant to a Financial Officer Certification;

(iv) together with the quarterly and annual audited consolidated Financials, a certificate of the Borrower setting forth computations demonstrating compliance with the financial covenants set forth in Section 6.2 (if any), and certifying that no Default or Event of Default has occurred, or if a Default or an Event of Default has occurred, the actions taken by the Borrower with respect thereto;

(v) not later than thirty (30) days prior to the end of each Fiscal Year an updated financial projection for the succeeding Fiscal Year;

(vi)     on the date hereof and on every Friday following the date hereof until the Maturity Date, the Borrower agrees to deliver to the Administrative Agent and the Lenders a cash-flow budget (such budget, as amended or modified from time to time by mutual agreement between the Borrower and the Lenders, the "<u>Budget</u>") for the thirteen (13) week period following the date of delivery thereof in form and substance reasonably satisfactory to the Lenders;

(vii)     at any time and from time to time any Credit Party obtains an ownership interest in any New IP Collateral (as such term is defined in the Security Agreement) it shall deliver to the Administrative Agent a written report, in reasonable detail, setting forth the New IP Collateral;

(viii)     at any time and from time to time any Credit Party acquires an ownership interest in any real property or an interest in any Leasehold Property, it shall promptly deliver to the Administrative Agent a written notice of such acquisition and copies of the documentation evidencing such acquisition and such ownership interest or interest in Leasehold Property; and

(ix)     together with the delivery of monthly financial statements pursuant to clause (iii) above, a list of all Overdue Trade Receivables and Overdue Trade Payables.

(b)     <u>Visitation; Verification</u>.  Each Credit Party and each Subsidiary of any Credit Party shall keep true and accurate books of account in accordance with GAAP and shall permit the Administrative Agent, or any of its designated representatives, upon reasonable notice and at the expense of the Borrower, during normal business hours to visit and inspect the premises of any Credit Party or any Subsidiary of any Credit Party, to examine the books of account of any such Persons and their Affiliates (and to make copies or extracts therefrom) and to discuss the affairs, finances and accounts of such Persons and their Affiliates with, and to be advised as to the same by, the managers, executives and officers of such Persons and to be advised as to such or other business records upon the request of the Administrative Agent.

(c)     <u>Existence; Maintenance of Properties; Compliance with Regulations</u>.  Each Credit Party and each Subsidiary of any Credit Party shall maintain its corporate/legal existence and business, maintain its assets in good operating conditions and repair (subject to ordinary wear and tear and casualty damage and to all provisions of this Agreement permitting sales of certain assets), keep its business and assets adequately insured, maintain its chief executive office in the United States, continue to engage in the same or substantially similar lines of business, and comply in all respects with all Regulations and Permits, including ERISA and Environmental Laws, except where a failure to do so could individually or in the aggregate reasonably be expected to have a Material Adverse Effect.

(d)     <u>Notice of Material Events</u>.  Each Credit Party and each Subsidiary of any Credit Party shall notify the Administrative Agent and the Lenders promptly in writing upon an Authorized Officer becoming aware of any of the following: (i) the occurrence of any Default or Event of Default, (ii) any noncompliance with ERISA or any Environmental Law or proceeding in respect thereof that could reasonably be expected to have a Material Adverse Effect, (iii) any change of address of any Credit Party or any Subsidiary of any Credit Party, (iv) any threatened or pending litigation or similar proceeding affecting any Credit Party or any Subsidiary of any Credit Party involving claims in excess of $100,000 in the aggregate or any material change in any such litigation or proceeding previously reported, (v) claims in excess of $100,000 in the

- 33 -

**A3498**

PP-TRBK0008710

aggregate against any Collateral and (vi) any other development that results in, or could reasonably be expected to result in, a Material Adverse Effect.

(e)       Use of Proceeds.  No Credit Party shall, nor shall any Subsidiary of any Credit Party, use the proceeds of the Loans for the purpose of purchasing or carrying of "margin security" or "margin stock" within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224, or otherwise use such proceeds in any manner that might cause such Borrowing or the application of such proceeds to violate Regulation T, Regulation U or Regulation X of the Board of Governors of the Federal Reserve System or any other Regulation.

(f)       Further Assurances.

(i)       Each Credit Party and each Subsidiary of any Credit Party shall cooperate with the Administrative Agent, take such action, execute such documents, and provide such information as the Administrative Agent may from time to time reasonably request in order further to effect the transactions contemplated by and the purposes and intent of the Credit Documents.

(ii)       Each Credit Party and each Subsidiary of any Credit Party shall promptly, upon request by the Administrative Agent, correct, and cause each of the other parties to the Credit Documents to promptly correct, any defect or error that may be discovered in any Credit Document or in the execution, acknowledgment or recordation of the Credit Document.  Promptly upon request by the Administrative Agent, each Credit Party and each Subsidiary of any Credit Party shall execute, authorize, acknowledge, deliver, record, file and register, any and all such further acts, deeds, conveyances, documents, security agreements, pledge agreements, mortgages, deeds of trust, trust deeds, assignments, financing statements and continuations, notices of assignment, transfers, certificates, assurances and other instruments as the Administrative Agent or the Required Lenders may require from time to time in order to carry out more effectively the purposes and intent of each Credit Document.  Without limiting the foregoing, each Credit Party and each Subsidiary of any Credit Party shall (A) authorize the filing by the Administrative Agent of UCC-1 financing statements for all jurisdictions deemed necessary or desirable by the Administrative Agent, and (B) take such action from time to time (including authorizing, filing, executing and/or delivering such assignments, security agreements and other instruments) as shall be reasonably requested by the Administrative Agent to create, in favor of the Lenders, to the extent required under the respective Collateral Documents and to the maximum extent permitted under applicable Regulations, a first-priority perfected Lien in all of the Collateral, subject only to Permitted Liens.

(g)       Account Control Agreements.       Except as otherwise agreed by the Administrative Agent:

(i)       each Domestic Credit Party shall establish and maintain one or more accounts (each a "Collection Account") pursuant to arrangements acceptable to the Administrative Agent with banks approved by the Administrative Agent, and shall deposit into such Collection Accounts all funds it receives (including checks, drafts, notes and all proceeds of all Accounts).  The Domestic Credit Parties shall ensure that all of the following occurs with respect to their Deposit Accounts unless, to the extent agreed by

- 34 -

**A3499**

the Administrative Agent in its sole discretion, no Revolving Credit Loan shall be outstanding:

(A)     All funds received in any Collection Account shall automatically be swept on a daily basis (or with such other frequency as the Administrative Agent may direct in its sole discretion) to an account of the Administrative Agent designated by the Administrative Agent (the "Administrative Agent Account").

(B)     Notwithstanding the foregoing clause (A), on any Business Day, the Domestic Credit Parties may, except as directed by the Administrative Agent in its sole discretion, transfer funds out of any Collection Account to any other Deposit Account for the sole purpose of making, on such Business Day, payments for obligations then due and payable.   Upon request by the Administrative Agent, the Domestic Credit Parties shall promptly provide the Administrative Agent with notice and a description of such transfers and payments, including any other information as the Administrative Agent may reasonably request with respect thereto.

(C)     The Domestic Credit Parties shall ensure that, on each Friday at 6 p.m. (New York time) (or such other dates as the Administrative Agent in its sole discretion may notify the Borrower), the aggregate amount on deposit in all Deposit Accounts of the Domestic Credit Parties shall not exceed $50,000 (or such higher amount as the Administrative Agent may agree in its sole discretion), measured on a book balance basis but after giving effect, without duplication, to outstanding checks drawn but not yet cleared, transfers ordered but not yet deducted and any other deductions and charges to be made by the deposit bank on or prior to the next Business Day.

(ii)     Any property of any Domestic Credit Party in possession of the Administrative Agent at any time hereafter (including proceeds of Collateral received or collected by the Administrative Agent) may be, in the discretion of the Administrative Agent and without limitation, (A) held by the Administrative Agent without any interest accruing to any Credit Party, provided, that, upon payment in full of all Obligations, the Administrative Agent shall return to the Domestic Credit Parties all such property that remains held in such manner (unless applied pursuant to clause (C)), (B) released to the Domestic Credit Parties or (C) applied to payment of the Obligations (provided, that Loans shall be paid in the order of their Prepayment Preferences) and, so long as all Obligations then due and payable have been paid in full, to the payment of any amount or other obligation due and owing to the Administrative Agent, the Lenders or their Affiliates by any Credit Party or any Affiliate of any Credit Party.  The rights provided in this clause (ii) do not limit, and are in addition to and not in substitution for, any set off and other rights that the Administrative Agent and the Lenders may have by Regulations or Permits or any right any Domestic Credit Party may have to direct that any payment that the Administrative Agent determined should be returned to it should be used for any other purpose.

(iii)     Each Domestic Credit Party shall enter into account control agreements in form and substance acceptable to the Administrative Agent in its sole discretion as necessary to provide the Administrative Agent with "control" over, except as determined by the Administrative Agent in its sole discretion, each Deposit Account of such Domestic Credit Party (including each Collection Account) as provided for under

- 35 -

Confidential

Section 9-104 of Article 9 of the UCC for the purpose of perfecting the security interest which the Administrative Agent has in such Deposit Account pursuant to the Collateral Documents (each an "Account Control Agreement"). No arrangement contemplated hereby or by any Account Control Agreement in respect of any such Deposit Account of any Domestic Credit Party shall be modified without the prior written consent of the Administrative Agent.

(iv)     All amounts in the Collection Accounts shall (A) immediately become and be the property of the Administrative Agent (for application to the Obligations, except for amounts used for transfers as provided in clause (i)(B) above which, when transferred as described in such clause, shall be returned to the Domestic Credit Parties), (B) be kept separate and apart from the own funds of the Domestic Credit Parties so that they are capable of identification as such property of the Administrative Agent and (C) be held by the Domestic Credit Parties as trustee of an express trust for the Administrative Agent's benefit until deposited to an account of the Administrative Agent. Any disbursements of proceeds in the Administrative Agent Account will only be made by the Administrative Agent. The Administrative Agent assumes no responsibility for the Collection Accounts and the Administrative Agent Account, including all bank charges for the Deposit Accounts and any claim of accord and satisfaction or release with respect to deposits that any banks accepts thereunder. The Administrative Agent has no duty to protect, insure, collect or realize upon the Accounts to preserve rights in them or in any other Collateral.

(h)     Insurance. Each Credit Party and each Subsidiary of any Credit Party shall maintain, at its own expense, and keep in effect with responsible insurance companies, such liability insurance for bodily injury and third-party property damage as is customary in the case of companies engaged in the same or similar business or having similar properties, similarly situated. Each Credit Party and each Subsidiary of any Credit Party shall keep and maintain, at its own expense, its material real and personal property insured against loss or damage by fire, theft, explosion, spoilage and all other risks ordinarily insured against by other owners or users of such properties in similar businesses in an amount equal to the full replacement or cash value thereof, subject to deductible amounts that the Borrower, in its reasonable judgment, deems prudent. At any time that a Default or an Event of Default has occurred and is continuing, the Administrative Agent shall make, settle, and adjust all claims under policies of insurance of any Credit Party or any Subsidiary of any Credit Party and make all determinations and decisions with respect to such policies of insurance.

(i)     Information Regarding Collateral. Each Credit Party will furnish to the Administrative Agent prompt written notice of any change in (i) any Credit Party's corporate name or any trade name used to identify it in the conduct of its business or any Credit Party's chief executive office, its principal place of business or its jurisdiction of organization, (ii) any Credit Party's identity or corporate structure or (iii) any Credit Party's federal Taxpayer Identification Number. No Credit Party will effect or permit any change referred to in the preceding sentence unless all filings have been made under the UCC and all other actions have been taken that are required so that such change will not at any time adversely affect the validity, perfection or priority of any Lien established under any Credit Document on the Collateral.

(j)     Existence; Conduct of Business. Each Credit Party and each Subsidiary of any Credit Party will do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the Permits (including Environmental Permits), Consents, privileges, franchises, patent, copyrights, trademarks and trade names material to the conduct of

- 36 -

**A3501**

PP-TRBK0008713

its business, except for actions that, either individually or in the aggregate, could not reasonably be expected to have a Material Adverse Effect; provided that the foregoing shall not prohibit any merger, consolidation, liquidation or dissolution permitted under Section 6.1(g).

(k)     Payment of Obligations.  Each Credit Party and each Subsidiary of any Credit Party will pay its Indebtedness and other obligations, including Tax liabilities, before the same shall become delinquent or in default, except where (i) the validity or amount thereof is being contested in good faith by appropriate proceedings diligently pursued and available to the Borrower or such Subsidiary, as the case may be, (ii) the Borrower or such Credit Party has set aside on its books adequate reserves with respect thereto in accordance with GAAP, (iii) such contest effectively suspends collection of the contested obligation and the enforcement of any Lien securing such obligation and (iv) the failure to make payment pending such contest could not reasonably be expected to result in a Material Adverse Effect.

(l)     Compliance with Laws.  Each Credit Party and each Subsidiary of any Credit Party will comply with all Regulations (including all Environmental Laws) applicable to it or its property and all of its Permits, except where failures to do so, in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

(m)     Subsidiaries.  Each Credit Party shall cause each of its Subsidiaries to comply with the Credit Documents.  If any Subsidiary is formed or acquired by any Credit Party after the Closing Date, such Credit Party will, prior to the date upon which such Subsidiary is formed or acquired, notify the Administrative Agent thereof and immediately following such formation or acquisition, cause any equity interest in, assets owned or leased by, or Indebtedness owned by or on behalf, of such Subsidiary to be added to the Collateral; provided that if such newly formed Subsidiary is a Foreign Subsidiary, such Credit Party shall cause only 65% of the equity interests thereof to be added to the Collateral.

(n)     Guarantors.  Each Credit Party shall cause each other Domestic Subsidiary to become a Guarantor hereunder by (i) executing a joinder to this Agreement in the form of Exhibit D hereto (ii) executing a joinder to the Security Agreement in the form of Exhibit A thereto, and (iii) executing a guaranty in form and substance acceptable to the Administrative Agent and the Lenders in their sole discretion (each, a "Guaranty").  Upon delivery of any such joinder and such guaranty to the Administrative Agent, notice of which is hereby waived by the Credit Parties, each such Guarantor shall be as fully a party hereto as if such Guarantor were an original signatory hereof.  Each Guarantor expressly agrees that its obligations arising hereunder shall not be affected or diminished by the addition or release of any other Guarantor hereunder, nor by any election of the Administrative Agent not to cause any Subsidiary of any Credit Party to become a Guarantor hereunder.

(o)     Broker's Claims.  Each Credit Party jointly and severally hereby agrees to indemnifies and hold each Secured Party harmless from and against any and all Losses that may be incurred by such Secured Party, in respect of any Action or cause of action now or hereafter asserted by a broker or any Person acting in a similar capacity arising from or in connection with the execution and delivery of this Agreement or any other Credit Document or Derivative or the consummation of the transactions contemplated herein or therein.  This Section 5.1(o) shall survive termination of this Agreement.

(p)     Landlord Consent.  At the request of the Administrative Agent, to the extent that any Credit Party or any Subsidiary of any Credit Party has or acquires any Leasehold Properties, such Credit Party shall deliver to the Administrative Agent such landlord consents or waivers as

- 37 -

**A3502**

PP-TRBK0008714

may be reasonably requested by the Administrative Agent within 15 days of any request by the Administrative Agent for same (or such longer time as the Administrative Agent may agree, in its sole discretion).

(q)      Compliance with ERISA.  Each Credit Party and each Subsidiary of any Credit Party shall and shall cause its ERISA Affiliates to: (i) maintain each Employee Benefit Plan in compliance in all material respects with the applicable provisions of ERISA, the Internal Revenue Code and other Regulations; (ii) cause each Employee Benefit Plan that is intended to be qualified under Section 401(a) of the Internal Revenue Code to maintain such qualification; (iii) not terminate any Pension Plan so as to incur any material liability to the Pension Benefit Guaranty Corporation; (iv) not allow or suffer to exist any prohibited transaction involving any Employee Benefit Plan or any trust created thereunder that would subject any Credit Party, any Subsidiary of any Credit Party or any of their ERISA Affiliates to a material tax or other material liability on prohibited transactions imposed under Section 4975 of the Internal Revenue Code or ERISA; (v) make all required contributions to any Employee Benefit Plan that it is obligated to pay under Section 302 of ERISA, Section 412 of the Internal Revenue Code or the terms of such Employee Benefit Plan; or (vi) not allow or suffer to exist any occurrence of, with respect to any such Pension Plan, an ERISA Event that could reasonably be likely to have a Material Adverse Effect or any other event or condition (x) presenting a material risk of termination by the Pension Benefit Guaranty Corporation of any Employee Benefit Plan that is a single employer plan and (y) that could result in any material liability to the Pension Benefit Guaranty Corporation.

(r)      Mortgages.  At the request of the Administrative Agent, to the extent that any Credit Party or any Subsidiary of any Credit Party has or acquires any ownership interest in real property, such Credit Party or such Subsidiary shall execute and deliver to the Administrative Agent, for itself and for the benefit of the Lenders, mortgages, deeds of trust or similar instruments in form and substance satisfactory to the Administrative Agent as the Administrative Agent shall deem necessary or appropriate to grant, evidence and perfect a first priority Lien in such property in favor of the Administrative Agent, for itself and for the benefit of the Lenders, together with such other assignments, conveyances, agreements, surveys, appraisals, title insurance policies, environmental assessments and other documents, in each case, as the Administrative Agent shall deem necessary or appropriate in connection with same.

ARTICLE VI
Negative Covenants/Financial Covenants

Section 6.1      Negative Covenants.  Each such Credit Party covenants and agrees that until all of the Obligations have been paid in full, each Credit Party shall perform, and shall cause each of its Subsidiaries to perform, all covenants in this Section 6.1 applicable to it:

(a)      Indebtedness.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, incur, or remain liable or responsible for, any Indebtedness, performance or other Contractual Obligation or obligation to pay dividends of any other Person, except for the following:

(i)      the Obligations, including any guaranties thereof;

(ii)      purchase money Indebtedness (including Capital Leases) arising after the date hereof to the extent secured by purchase money security interests in Equipment (including Capital Leases) and purchase money mortgages on real property not to exceed $100,000 in the aggregate at any time outstanding so long as such security interests and

- 38 -

**A3503**

mortgages do not apply to any property other than the Equipment or real property so acquired, and the Indebtedness secured thereby does not exceed the cost of the Equipment or real property so acquired, as the case may be;

(iii)     the Indebtedness owing to any Credit Party or any Subsidiary of any Credit Party arising after the date hereof pursuant to Investments made by any Credit Party or any Subsidiary of any Credit Party expressly permitted under Section 6.1(e)(iv);

(iv)     reimbursement and other obligations with respect to letters of credit as may be approved from time to time by the Administrative Agent in its sole discretion by notice to the Borrower;

(v)     Indebtedness constituting surety, customs, reclamation, performance and other similar bonds issued for the account of any Credit Party, including without limitation, all guarantee, indemnity, reimbursement and contribution agreements and similar Contractual Obligations entered into in connection therewith, all as may be approved from time to time by the Administrative Agent in its sole discretion by notice to the Borrower;

(vi)     Indebtedness acceptable to the Administrative Agent consisting of the financing by any insurance company of insurance premiums for policies issued by such insurance company to any Credit Party and incurred by such Credit Party in the ordinary course of business in an aggregate principal amount not to exceed the unpaid premium on such policies and on other terms and conditions and with a counterparty acceptable to the Administrative Agent;

(vii)     any Derivative on terms, conditions and with counterparties acceptable to the Administrative Agent in its sole discretion and entered into by any Credit Party in the ordinary course of business for the sole purpose of hedging business risks associated with the operations of the Credit Parties and their Subsidiaries and acceptable to the Administrative Agent in its sole discretion.

(b)     Liens.   No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, incur, maintain or otherwise permit to exist, any Liens on any asset of any Credit Party or any Subsidiary of any Credit Party, except for the following (the "Permitted Liens"):

(i)     Liens in favor of the Secured Parties to secure the Obligations;

(ii)     Liens securing the payment of taxes, assessments or other governmental charges or levies either not yet overdue or the validity of which are being contested in good faith by appropriate proceedings diligently pursued and with respect to which adequate reserves have been set aside on its books;

(iii)     non-consensual statutory Liens (other than Liens securing the payment of taxes) arising in the ordinary course of business to the extent (A) such Liens secure Indebtedness that is not overdue or (B) such Liens secure Indebtedness relating to claims or liabilities that are fully insured and being defended at the sole cost and expense and at the sole risk of the insurer or being contested in good faith by appropriate proceedings diligently pursued, in each case prior to the commencement of foreclosure or other similar proceedings and with respect to which adequate reserves have been set aside on its books;

- 39 -

**A3504**

(iv)     zoning and land use restrictions, easements, encumbrances, licenses, covenants and other restrictions affecting the use of Real Property that do not interfere in any material respect with the use of such Real Property or the ordinary conduct of the business of the Credit Parties and their Subsidiaries as presently conducted thereon or materially impair the value of the Real Property that may be subject thereto;

(v)     purchase money security interests in Equipment (including Capital Leases) and purchase money mortgages on real property to secure Indebtedness permitted under Section 6.1(a)(iii);

(vi)     pledges and deposits of cash after the date hereof in the ordinary course of business in connection with workers' compensation, unemployment insurance and other types of social security benefits consistent with current practices as in effect on the date hereof;

(vii)     pledges and deposits of cash after the date hereof as may be approved from time to time by the Administrative Agent in its sole discretion by notice to the Borrower (A) to secure the performance of tenders, bids, leases, trade contracts (other than for the repayment of Indebtedness), statutory obligations and other similar obligations in each case in the ordinary course of business consistent with current practices as in effect on the date hereof or (B) made in lieu of, or to secure the performance of, surety, customs, reclamation or performance bonds (in each case not related to judgments or litigation); <u>provided</u>, that, in connection with any customs, performance or other bonds issued by a surety or other person, the issuer of such bond shall have waived in writing any rights in or to, or other interest in, any Collateral in an agreement, in form and substance satisfactory to the Administrative Agent;

(viii)     Liens arising from (A) operating leases and the precautionary UCC financing statement filings in respect thereof and (B) Equipment or other materials that are not owned by any Credit Party or any Subsidiary of any Credit Party and that are located on the premises of such Credit Party or such Subsidiary (but not in connection with, or as part of, the financing thereof) from time to time in the ordinary course of business and consistent with current practices of such Credit Party or such Subsidiary and the precautionary UCC financing statement filings in respect thereof;

(ix)     judgments and other similar Liens arising in connection with court proceedings that do not constitute an Event of Default; <u>provided</u>, that, (A) such Liens are being contested in good faith and by appropriate proceedings diligently pursued, (B) adequate reserves or other appropriate provision, if any, as are required by GAAP have been made therefor and (C) a stay of enforcement of any such Liens is in effect;

(x)     Liens securing Indebtedness incurred pursuant to Section 6.1(a)(vi) as may be approved from time to time by the Administrative Agent in its sole discretion by notice to the Borrower;

(xi)     Liens securing indebtedness described in Section 6.1(a)(vii) solely on the proceeds of insurance policies financed by such Indebtedness;

(xii)     leases, subleases or licenses granted to others in the ordinary course of business;

- 40 -

Confidential                                                                                              PP-TRBK0008717

(xiii)   any Liens to which the underlying fee interest of the owners of Real Property leased by any Credit Party or any Subsidiary of any Credit Party is subject, including any Liens that apply to such leasehold interests by virtue of the underlying fee interest being subject to such Liens;

(xiv)   landlord Liens for rent not yet due and payable; and

(xv)   all Liens and other matters specifically disclosed on Schedule B of the mortgagee's title insurance policy delivered in connection with this Agreement.

(c)   <u>Sales and Lease-Backs</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, directly or indirectly, become or remain liable as lessee or as a guarantor or other surety with respect to any lease of any property (whether real, personal or mixed), whether now owned or hereafter acquired, that such Credit Party (i) has sold or transferred or is to sell or to transfer to any other Person (other than the Credit Parties and their Subsidiaries) or (ii) intends to use for substantially the same purpose as any other property which has been or is to be sold or transferred by such Credit Party to any Person (other than the Credit Parties and their Subsidiaries) in connection with such lease.

(d)   <u>Transactions with Shareholders and Affiliates</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, directly or indirectly, enter into or permit to exist any transaction (including the purchase, sale, lease or exchange of any property or the rendering of any service) with any Affiliate thereof, except those transactions that are on terms no less favorable to such Credit Party or such Subsidiary, as the case may be, than those that generally might be obtained at the time from a Person who is not such a holder or an Affiliate.

(e)   <u>Investments</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, make or maintain any Investments other than the following:

(i)   Cash;

(ii)   Endorsements for collection or deposit in the ordinary course of business;

(iii)   ownership of the Capital Stock of Subsidiaries of the Credit Parties created or acquired after the date hereof with the prior written consent of the Administrative Agent;

(iv)   Investments (A) by any Credit Party in any other Credit Party or (B) by any Subsidiary of any Credit Party that is not a Credit Party in any Credit Party or in any Subsidiary of any Credit Party;

(v)   loans or advances to employees for moving, entertainment and travel expenses, drawing accounts and similar expenditures in the ordinary course of business;

(vi)   Investments consisting of stock, obligations, securities or other property received in settlement of Accounts from financially troubled obligors in the ordinary course of business in an aggregate amount not to exceed, $100,000 at any time outstanding; <u>provided</u>, that (A) the Borrower shall provide the Administrative Agent with at least 2 Business Days prior written notice of such Investment and (B) upon receipt of

- 41 -

**A3506**

such Investments, such Credit Party shall take all actions to ensure that such Investment is subject to the first priority Lien of the Administrative Agent;

(vii)   Investments consisting of non-cash consideration received in connection with an Asset Sale permitted under Section 6.1(g); and

(viii)   such other Investments as the Administrative Agent may from time to time approve in writing.

(f)   <u>Certain Agreements</u>.  Except with respect to (i) specific property encumbered to secure payment of particular Indebtedness or to be sold pursuant to an executed agreement with respect to a permitted Asset Sale and (ii) restrictions by reason of customary provisions restricting assignments, subletting or other transfers contained in leases, licenses and similar Contractual Obligations entered into in the ordinary course of business (<u>provided</u>, that such restrictions are limited to the assets secured by such Liens or the assets subject to such leases, licenses or similar Contractual Obligations, as the case may be), no Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, enter into any agreement prohibiting the creation or assumption of any Lien upon any of its assets, whether now owned or hereafter acquired.

(g)   <u>Mergers; Acquisitions; Asset Sales</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, (i) become party to a merger, amalgamation, consolidation, liquidation or dissolution or adopt a plan relating to the foregoing, (ii) enter into, or suffer the occurrence of, any Asset Sale with respect to their property, (iii) make any changes in the corporate structure or identity of any Credit Party or any Subsidiary of any Credit Party that could reasonably be expected to have a Material Adverse Effect, (iv) acquire any brand or all or substantially all of the assets of any Person or all or substantially all of the assets constituting any line of business, division, branch, operating division or other unit operation of any Person without the consent of the Administrative Agent or (v) enter into any Contractual Obligation or arrangement to do any of the foregoing; other than the following:

(A)   Asset Sales in the ordinary course of business;

(B)   Asset Sales in the ordinary course business and in an aggregate amount not to exceed $100,000 per Fiscal Year; <u>provided</u> that at the time of and after giving effect to such Asset Sales, the Credit Parties and their Subsidiaries are in pro forma compliance with the financial covenants set forth in Section 6.2;

(C)   Asset Sales of property determined by the board of directors (or equivalent governing body) of the Borrower to be obsolete, worn out or surplus property or no longer useful in the business of the Credit Parties and their Subsidiaries;

(D)   Asset Sales among the Credit Parties;

(E)   Asset Sales among the Subsidiaries of the Credit Parties that are not Credit Parties; and

(F)   (1) any Credit Party other than the Borrower may merge with any other Credit Party and (2) any Subsidiary of any Credit Party that is not a Credit Party may merge with and into any Credit Party, in each case upon not less than thirty

- 42 -

**A3507**

(30) days' prior written notice (or such lesser time as the Administrative Agent may accept) to the Administrative Agent of such merger.

(h)     <u>Fiscal Year; Fiscal Quarter</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, change its or any of its Subsidiaries' fiscal year or fiscal quarter without the prior written consent of the Administrative Agent, which consent shall not be unreasonably withheld.

(i)     <u>Restricted Payments</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, directly or indirectly, declare, order, pay, make or set apart any sum for (i) any Restricted Junior Payment (other than to any Credit Party or any Secured Party) or (ii) Indebtedness owed to any Affiliate of such Credit Party (other than to any Credit Party or any Subsidiary of any Credit Party); <u>provided</u> that so long as no Default or Event of Default has occurred, is continuing or would result therefrom, the Borrower may make dividends and distributions to its shareholders.

(j)     <u>Subsidiaries</u>.  No Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, form, or cause to be formed, any other Subsidiary of any Credit Party, unless (i) all property and assets of such newly formed Subsidiary (if a Domestic Subsidiary) and (ii) all stock of any class of such newly formed Subsidiary (or in the case of a Foreign Subsidiary 65% of the stock of any class of such newly formed Subsidiary), in each case, are pledged to the Administrative Agent for the benefit of the Secured Parties in accordance with the terms hereof and of the Collateral Documents.

(k)     <u>Conduct of Business</u>.  From and after the Closing Date, no Credit Party shall, nor shall any Credit Party permit any of its Subsidiaries to, engage in any business other than (i) the business engaged in by such Credit Party on the Closing Date and similar or related businesses, and (ii) such other lines of business as may be consented to by the Administrative Agent.

Section 6.2     <u>Financial Covenants</u>.     Within 30 calendar days after delivery by the Administrative Agent to the Borrower of a demand for financial covenants, including a proposal setting forth proposed language and levels for such financial covenants, the Credit Parties, the Administrative Agent and the Lenders shall amend this Agreement to include such financial covenants or other financial covenants acceptable to the Administrative Agent and the Lenders.

ARTICLE VII
<u>Increased Costs; Taxes; Indemnifications, Set Off; Etc.</u>

Section 7.1     <u>Increased Costs; Capital Adequacy</u>.  In the event that any Lender shall have determined that the adoption, effectiveness, phase in or applicability after the Closing Date of any Regulation (or any provision thereof) regarding capital adequacy, or any change therein or in the interpretation or administration thereof by any Governmental Body, central bank or comparable agency charged with the interpretation or administration thereof, or compliance by any Lender (or its applicable lending office) with any guideline, request or directive regarding capital adequacy (whether or not having the force of law) of any such Governmental Body, central bank or comparable agency, has or would have the effect of reducing the rate of return on the capital of such Lender or any corporation controlling such Lender as a consequence of, or with reference to, such Lender's Loans or Commitments or other obligations hereunder with respect to the Loans to a level below that which such Lender or such controlling corporation could have achieved but for such adoption, effectiveness, phase in, applicability, change or compliance (taking into consideration the policies of such Lender or such controlling

- 43 -

**A3508**

PP-TRBK0008720

corporation with regard to capital adequacy), then from time to time after the adoption, effectiveness or applicability of such Regulation, within five Business Days after receipt by the Borrower from such Lender of the statement referred to in the next sentence, the Borrower shall pay to such Lender such additional amount or amounts as will compensate such Lender or such controlling, corporation on an after tax basis for such reduction.  Such Lender shall deliver to the Borrower (with a copy to the Administrative Agent) a written statement, setting forth in reasonable detail the basis for calculating the additional amounts owed to Lender under this Section 7.1, which statement shall be conclusive and binding, upon all parties hereto absent manifest error.

Section 7.2    Taxes: Withholding, Etc.

(a)    Payments to Be Free and Clear.  All sums payable by any Credit Party hereunder and under the other Credit Documents shall (except to the extent required by Regulations) be paid free and clear of, and without any deduction or withholding on account of, any Tax (other than a Tax on the overall net income of any Lender) imposed, levied, collected, withheld or assessed by or within the United States of America or any political subdivision in or of the United States of America or any other jurisdiction from or to which a payment is made by or on behalf of any Credit Party or by any federation or organization of which the United States of America or any such jurisdiction is a member at the time of payment; provided, that the Borrower shall be under no obligation to increase the sum payable to any Lender not organized under the laws of the United States or a state thereof (a "Foreign Lender") by an amount equal to the amount of the United States Tax required to be withheld under United States Regulations from the sums paid to such Foreign Lender, if such withholding is caused by the failure of such Foreign Lender to be engaged in the active conduct of a trade or business in the United States, or all amounts of interest and fees to be paid to such Foreign Lender hereunder are not effectively connected with such trade or business within the meaning of U.S. Treasury Regulation 1.1441-1(a) or such Foreign Lender fails to comply with Section 7.2(c).

(b)    Withholding of Taxes.  If any Credit Party or any other Person is required by Regulations to make any deduction or withholding on account of any such Tax from any sum paid or payable by any Credit Party to any Secured Party in the ordinary or general conduct of business, which such Secured Party would have been subject to without regard to whether it had engaged in any transaction under any Credit Document: (i) the Borrower shall notify the Administrative Agent of any such requirement or any change in any such requirement as soon as the Borrower becomes aware of it, (ii) the Borrower shall pay any such Tax before the date on which penalties attach thereto, such payment to be made either, if the liability to pay is imposed on any Credit Party, for its own account or, if such liability is imposed on such Secured Party, on behalf of and in the name of such Secured Party, (iii) the sum payable by such Credit Party in respect of which the relevant deduction, withholding or payment is required shall be increased to the extent necessary to ensure that, after the making of that deduction, withholding or payment, such Secured Party receives on the due date a net sum equal to what it would have received had no such deduction, withholding or payment been required or made, and (iv) within 30 days after paying any sum from which it is required by Regulations to make any deduction or withholding, and within 30 days after the due date of payment of any Tax it is required by clause (ii) above to pay, the Borrower shall deliver to the Administrative Agent evidence satisfactory to the other affected parties of such deduction, withholding or payment and of the remittance thereof to the relevant taxing or other authority.

(c)    Foreign Lenders.  Each Foreign Lender agrees that it will deliver to the Borrower and the Administrative Agent (i) two duly completed copies of United States Internal Revenue Service Form W-8BEN or W-8ECI or other applicable United States Internal Revenue

- 44 -

Confidential

Service forms, or successor applicable form(s), as the case may be, together with any other certificate or statement of exemption required under the Internal Revenue Code or regulations issued thereunder.  Each such Foreign Lender also agrees to deliver to the Borrower and the Administrative Agent two further copies of said Form W-8BEN or W-8ECI or other applicable United States Internal Revenue Service forms, or successor applicable form(s) or other manner of certification, as the case may be, on or before the date that any such form expires or becomes obsolete or after the occurrence of any event requiring a change in the most recent form previously delivered by it to the Borrower and the Administrative Agent, and such extensions or renewals thereof as may reasonably be requested by the Borrower or the Administrative Agent, unless in any such case an event (including any change in Regulation) has occurred prior to the date on which any such delivery would otherwise be required that renders all such forms inapplicable or which would prevent such Foreign Lender from duly completing and delivering any such form with respect to it and such Lender so advises the Borrower and the Administrative Agent.  Such Foreign Lender shall certify in the case of a Form W-8BEN or W-8ECI or other applicable United States Internal Revenue Service forms that it is entitled to receive payments under this Agreement without deduction or withholding of any United States federal income taxes and that it is entitled to an exemption from United State backup withholding tax.

Section 7.3    Indemnification.

(a)    Indemnification by the Borrower.  Each Credit Party will jointly and severally indemnify and defend each Secured Party against and hold each Secured Party harmless from any and all Losses (including cleanup costs, settlements, costs of preparation and investigation, costs incurred in enforcing this indemnity and reasonable attorneys' fees and expenses) imposed on, incurred by or asserted against any Secured Party and arising out of, relating to, or due to (i) any inaccuracy or breach of any representation or warranty of any Credit Party contained in any Credit Document or in any certificate delivered thereunder, (ii) the nonfulfillment or breach of any obligation of any Credit Party contained in any Credit Document or in any certificate delivered thereunder, (iii) any Environmental Liability or (iv) any use of proceeds of any Loans; provided that such indemnity shall not, as to any Secured Party, be available to the extent such Losses arise out of the gross negligence or willful misconduct of such Secured Party as determined by a court of competent jurisdiction in a final and non-appealable judgment.  Upon request of the Administrative Agent, the Credit Parties jointly and severally agree that they shall retain counsel reasonably satisfactory to the Administrative Agent to represent the applicable Secured Party in connection with any Losses or threatened Losses and shall pay the reasonable fees and disbursements of such counsel.  Each Secured Party shall have the right to employ its own counsel at the expense, joint and several, of the Credit Parties if (i) the employment of counsel by such Secured Party has been authorized in writing by the Borrower, (ii) the Borrower has not in fact employed counsel to represent such Secured Party within a reasonable time after receiving notice of a request for the retention of counsel from the Administrative Agent or (iii) both such Secured Party, on the one hand, and any Credit Party or any Subsidiary of any Credit Party, on the other, are implicated with respect to the Losses or threatened Losses, and representation of both parties by the same counsel would be inappropriate due to actual or potential differing interests between them, in each of which cases the reasonable fees and expenses of counsel (including local counsel) will be at the joint and several expense of the Credit Parties, and all such fees and expenses will be reimbursed promptly as they are incurred.

(b)    Contribution.  If the indemnification by any Credit Party provided for in this Section 7.3 is prohibited under Regulations applicable to, or Permits of, a Secured Party, then such Credit Party, in lieu of indemnifying such Secured Party, will contribute to the amount paid or payable by such Secured Party as a result of the Losses in such proportion as is appropriate to

- 45 -

**A3510**

PP-TRBK0008722

reflect the relative fault of the Credit Parties, on the one hand, and of such Secured Party, on the other, in connection with the events or circumstances that resulted in the Losses as well as any other relevant equitable considerations.

(c)     Limitation of Liability for Certain Damages.  In no event shall any Secured Party be liable on any theory of liability for any special, indirect, consequential or punitive damages (including any loss of profits, business or anticipated savings), as opposed to direct or actual damages.  Each Credit Party hereby waives, releases and agrees (and shall cause each of their Related Parties to waive, release and agree) not to sue upon any such claim for any special, indirect, consequential or punitive damages, whether or not accrued and whether or not known or suspected to exist in its favor.

Section 7.4     Right of Set Off.  In addition to any rights now or hereafter granted under applicable Regulations and not by way of limitation of any such rights, upon the occurrence and during the continuance of any Event of Default each Secured Party is hereby authorized by each Credit Party at any time or from time to time, without notice or demand to any Credit Party or to any other Person, any such notice or demand being hereby expressly waived, to set off and to appropriate and to apply any and all deposits (general or special, time or demand, provisional or final, including Indebtedness evidenced by certificates of deposit, whether matured or unmatured, but not including trust accounts) and any other Indebtedness at any time held or owing by such Lender or the Administrative Agent to or for the credit or the account of any Credit Party against and on account of the Obligations of any Credit Party to such Lender or the Administrative Agent hereunder, irrespective of whether or not (a) such Secured Party shall have made any demand hereunder or (b) the principal of or the interest on the Loans or any other Obligation shall have become due and payable and although such obligations and liabilities, or any of them, may be contingent or unmatured.  Any amount so collected by such Secured Party shall be subject to Section 2.13.

Section 7.5     Funding Breakage.  In addition to the compensation required under Section 7.1, the Borrower shall pay all fees charged by Lender, and indemnify each Lender against any Loss (including loss of margin) imposed on, incurred by or asserted against such Lender, in each case as a consequence of any payment (including prepayment) of any Loan on a day other than the last day of the corresponding Interest Period, whether or not such payment is mandatory or automatic and whether or not such payment is then due.  Any Lender demanding reimbursement or indemnification of any such Loss or an administrative expense shall promptly notify the Borrower and the Administrative Agent through a writing setting forth in reasonable detail the amount determined in good faith by such Lender (which determination shall be conclusive absent manifest error) of such Loss or administrative expenses.  Such amount shall be due and payable by the Borrower to the Administrative Agent for the account of such Lender, five Business Days after such notice is given.

ARTICLE VIII
Events of Default

Section 8.1     Events of Default.  The occurrence of any one or more of the following events shall constitute an "Event of Default":

(a)     Failure to Make Payments When Due.  Failure by any Credit Party to pay when due any Obligations, including failure by any Credit Party to pay when due any installment of principal of, or interest on, the Loans, whether at stated maturity, by acceleration, by notice of voluntary prepayment, by mandatory prepayment or otherwise, or any fee or any other amount due hereunder, and such failure continues for seven Business Days (or any other period not to exceed seven Business Days agreed by the Administrative Agent with respect to such failure);

- 46 -

**A3511**

                                                                                                 PP-TRBK0008723

(b)      Breach of Certain Covenants.  Failure of any Credit Party to perform or comply with any term or condition contained in Section 2.3, Article V or Article VI and, with respect only to Sections 5.1(f), 5.1(i) and 5.1(o), such failure continues ten (10) days after the date such term or condition should have been performed or complied with; provided, that such ten (10) day period shall not apply in the case of (i) any such failure that is not capable of being cured within such period or that has been the subject of a prior failure within a six-month period or (ii) an intentional breach by any Credit Party;

(c)      Breach of Representations, Etc.  Any representation, warranty, certification or other statement made or deemed made by any Credit Party in any Credit Document or in any statement or certificate at any time given by any Credit Party or any of its Affiliates in writing, pursuant hereto or thereto or in connection herewith or therewith shall be false in any material respect as of the date made or deemed made;

(d)      Other Defaults Under Credit Documents.  Any Credit Party shall default in the performance of or compliance with any term contained in any Credit Document, other than any such term referred to in any other section of this Section 8.1, and, unless such default is an intentional breach by any Credit Party, such default shall not have been remedied or waived within ten (10) days after the date upon which written notice thereof is given to the Borrower by the Administrative Agent or any Lender;

(e)      Default in Other Agreements.  (i)  Failure of any Credit Party to pay when due any principal of or interest on or any other amount payable in respect of one or more items of Indebtedness in an individual principal amount of $50,000 or more or with an aggregate principal amount of $100,000 or more, in each case beyond the grace period, if any, provided therefor, or (ii) breach or default by any Credit Party with respect to any other material term of any Contractual Obligation of one or more items of Indebtedness in the individual or aggregate principal amounts referred to in clause (i) above, without cure or waiver within the grace period, if any, provided therefor, if the effect of such breach or default is to cause, or to permit the holder or holders of such Indebtedness (or a trustee on behalf of such holder or holders), to cause, such Indebtedness to become or be declared due and payable (or redeemable) prior to its stated maturity or the stated maturity of any underlying obligation, as the case may be;

(f)      Involuntary Bankruptcy, Appointment of Receiver, etc.  (i)  A court of competent jurisdiction shall enter a decree or order for relief in respect of any Credit Party or any Subsidiary of any Credit Party in an involuntary case under the Bankruptcy Code or under any other applicable bankruptcy, insolvency or similar Regulation now or hereafter in effect, which decree or order is not stayed, or any other similar relief shall be granted under any applicable Regulations or (ii) an involuntary case shall be commenced against any Credit Party or any Subsidiary of any Credit Party under the Bankruptcy Code or under any other applicable bankruptcy, insolvency or similar Regulation now or hereafter in effect, or a decree or order of a court having jurisdiction in the premises for the appointment of a receiver, manager, liquidator, sequestrator, trustee, custodian or other officer having similar powers over any Credit Party or any Subsidiary of any Credit Party, or over all or a substantial part of its property, shall have been entered; or there shall have occurred the involuntary appointment of an interim receiver, trustee or other custodian of any Credit Party or any Subsidiary of any Credit Party for all or a substantial part of its property or a warrant of attachment, execution or similar process shall have been issued against any substantial part of the property of any Credit Party or any Subsidiary of any Credit Party, and any such event described in this clause (ii) shall continue for 60 days without having been dismissed, bonded or discharged;

Confidential                                                                 PP-TRBK0008724

(g)  Voluntary Bankruptcy, Appointment of Receiver, Etc.  (i) Any Credit Party or any Subsidiary of any Credit Party shall have an order for relief entered with respect to it or shall commence a voluntary case under the Bankruptcy Code or under any other applicable bankruptcy, insolvency or similar Regulation now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case, or to the conversion of an involuntary case to a voluntary case, under any such Regulation, or shall consent to the appointment of or taking possession by a receiver, manager, trustee or other custodian for all or a substantial part of its property; or any Credit Party or any Subsidiary of any Credit Party shall make any assignment for the benefit of creditors, or (ii) any Credit Party or any Subsidiary of any Credit Party shall be unable, or shall fail generally, or shall admit in writing its inability, to pay its debts as such debts become due; or the board of directors (or similar governing body) of any Credit Party or any Subsidiary of any Credit Party (or any committee thereof) shall adopt any resolution or otherwise authorize any action to approve any action referred to herein or in Section 8.1(f);

(h)  Judgments and Attachments.  Any money judgment, writ or warrant of attachment or similar process involving (i) in any individual case an amount in excess of $50,000 or (ii) in the aggregate at any time an amount in excess of $100,000 (in either case to the extent not adequately covered by insurance as to which a solvent and unaffiliated insurance company has acknowledged coverage) shall be entered or filed against any Credit Party or any Subsidiary of any Credit Party or any of their respective assets and shall remain undischarged, unvacated, unbonded or unstayed for a period of 30 days (or in any event later than five calendar days prior to the date of any proposed sale of assets under such judgment, writ or warrant of attachment or similar process);

(i)  Dissolution.  Any order, judgment or decree shall be entered against any Credit Party decreeing, the dissolution or split up of any Credit Party or any Subsidiary of any Credit Party and such order shall remain undischarged or unstayed for a period in excess of ten (10) days;

(j)  Change of Control.  A Change of Control shall occur;

(k)  Collateral Documents and other Credit Documents.  At any time after the execution and delivery thereof, (i) this Agreement or any Credit Document ceases to be in full force and effect (other than by reason of a release of Collateral in accordance with the terms hereof or thereof or the satisfaction in full of the Obligations in accordance with the terms hereof) or shall be declared null and void, or the Administrative Agent shall not have or shall cease to have a valid and perfected first priority Lien, subject only to Permitted Liens, in any material portion of Collateral purported to be covered by the Collateral Documents (except (A) as expressly permitted by the Collateral Documents or (B) as a direct result of the actions or inactions of the Administrative Agent or any Lender) or (ii) any Credit Party shall contest the validity or enforceability of any Credit Document in writing or deny in writing that it has any further liability under any Credit Document to which it is a party;

(l)  Liens.  At any time after the execution and delivery thereof, the Liens created by the Collateral Documents shall not constitute a valid and perfected first priority Lien on the Collateral intended to be covered thereby (to the extent perfection by filing, registration, recordation or possession is required herein or therein) in favor of the Lenders, free and clear of all other Liens (other than Permitted Liens or Liens permitted under the respective Collateral Documents), or, except for expiration in accordance with its terms, any Collateral Document shall for whatever reason be terminated or cease to be in full force and effect, or the enforceability thereof shall be contested by any Credit Party;

- 48 -

**A3513**

(m)      Condemnation or Forfeiture of Collateral.  Any judicial process, condemnation or forfeiture proceedings is brought against any material item or portion of the Collateral or any rights therein shall be subject to such judicial process, condemnation or forfeiture proceedings;

(n)      Defaults Under Material Contracts and License Agreements.  Any default by any Credit Party or any Subsidiary of any Credit Party under License Agreement or other Contractual Obligation, which default continues, without written waiver by the other parties thereto, for more than the applicable cure period, or any modification, waiver, termination or failure to renew, which default, amendment, modification, waiver, termination or failure to renew could reasonably be expected to have a Material Adverse Effect; or

Section 8.2      Remedies.  Upon and after the occurrence of an Event of Default:

(a)      Non-Bankruptcy Related Defaults.  In the case of any Event of Default specified in any Section other than Section 8.1(f) or 8.1(g), the Administrative Agent may, by notice to the Borrower from time to time do any or all of the following:  (i) declare any part of the unpaid principal amount of the Loans and interest accrued thereon and any other Obligation to be immediately due and payable, which shall become immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by each Credit Party or (ii) declare the Commitments terminated, whereupon the Commitments will terminate and any fee hereunder shall be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are hereby waived, and an action therefor shall immediately accrue.

(b)      Bankruptcy Events of Default.  In the case of any Event of Default specified in Section 8.1(f) or 8.1(g), automatically, without any notice to any Credit Party or any other act by the Administrative Agent or any Lender, (i) the Commitments shall thereupon terminate, and (ii) each of the following shall immediately become due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by each Credit Party, (A) the unpaid principal amount of and interest on the Loans and (B) all other Obligations.

(c)      Remedies in All Events of Default.  The Administrative Agent shall, at the request of or with the consent of the Required Lenders, (i) exercise all rights and remedies provided in the Credit Documents, (ii) exercise any right of counterclaim, setoff, banker's lien or otherwise which it may have with respect to money or property of any Credit Party or any Subsidiary of any Credit Party, (iii) bring any Action permitted by Regulations for the specific performance of, or injunction against any violation of, any Credit Document and may exercise any power granted under or to recover judgment under any Credit Document, (iv) enforce any and all Liens and security interests created pursuant to the Credit Documents and (v) exercise any other right or remedy permitted by applicable Regulations or otherwise available to the Administrative Agent and/or the Lenders at law, in equity or otherwise.

(d)      Lenders' Remedies.  Unless otherwise directed by the Required Lenders, in case any one or more of the Events of Default shall have occurred and be continuing, and whether or not the Lenders shall have accelerated the maturity of the Loans pursuant to Section 8.2, the Required Lenders, if owed any amounts with respect to the Loans, may proceed to protect and enforce their rights by suit in equity, action at law or other appropriate proceeding, whether for the specific performance of any provision of any Credit Document, including as permitted by applicable Regulation the obtaining of the ex parte appointment of a receiver, and, if such amount shall have become due, by declaration or otherwise, proceed to enforce the payment thereof or

- 49 -

Confidential                                                                                           PP-TRBK0008726

any other legal or equitable right of the such the Lenders, but subject to the provisions of Section 9.9(b).

(e)      Remedies Cumulative.  No remedy herein conferred upon any Lender or the Administrative Agent or the holder of any Note is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute or any other provision of any Regulation.

ARTICLE IX
The Administrative Agent

Section 9.1      Appointment of Administrative Agent.  PPAS is hereby irrevocably appointed the Administrative Agent hereunder, and each Lender hereby irrevocably authorizes the Administrative Agent to take such actions on its behalf and to exercise such power as are delegated to the Administrative Agent by the terms of the Credit Documents, together with such actions and powers as are reasonably incidental thereto, in accordance with the terms of such Credit Documents.  The provisions of this Article IX are solely for the benefit of the Administrative Agent and the Lenders and no Credit Party shall have any rights as a third party beneficiary of any provision thereof.  It is understood and agreed that the use of the term "agent" herein or in any other Credit Document (or any other similar term) with reference to the Administrative Agent is not intended to connote, and the Administrative Agent does not assume and shall not be deemed to have assumed, any fiduciary, trust or other implied (or express) obligation or relationship arising under agency doctrine of any applicable Regulation.  Instead, such term is used as a matter of market custom, and is intended to create or reflect only an administrative relationship between contracting parties.  The Administrative Agent without consent of or notice to any party hereto, may assign any and all of its rights or obligations hereunder to any of its Affiliates.

Section 9.2      Powers and Duties.  Each Lender irrevocably authorizes the Administrative Agent to take such action on such Lender's behalf and to exercise such powers, rights and remedies hereunder and under the other Credit Documents as are specifically delegated or granted to the Administrative Agent by the terms hereof and thereof, together with such powers, rights and remedies as are reasonably incidental thereto.  The Administrative Agent shall have only those duties, obligations and responsibilities that are expressly specified herein and the other Credit Documents and shall not have any duty to take any discretionary action or exercise any discretionary powers, except for those expressly mentioned by any Credit Document as required to be taken by the Administrative Agent upon the direction of all or part of the Lenders; provided that, even in such cases, the Administrative Agent shall not be required to take any action that, in the opinion of the Administrative Agent, may expose the Administrative Agent to liability or that is contrary to any Credit Document or any applicable Regulation. The Administrative Agent may execute any of its duties under the Credit Documents by or through agents or attorneys in fact, or may assign such duties to its wholly owned nominee without the consent of the Lenders, and shall be entitled to rely on advice of counsel concerning all matters pertaining to such duties. Without limiting the foregoing, the Administrative Agent shall not (a) be subject to any fiduciary or implied duties, regardless of whether a Default has occurred or (b) except as expressly set forth in the Credit Documents, have any duty to disclose, or be liable for any failure to disclose, any information relating to the Borrower or any of its Affiliates that is communicated to or obtained by the Person serving as the Administrative Agent or any of its Affiliates in any capacity.

Section 9.3      Delegation of Duties.  The Administrative Agent may execute any of its duties under any Credit Document by or through third parties, agents, employees or attorneys in fact (any such entity, a "Sub-Agent") or may assign such duties to its wholly owned nominee without the consent of the Lenders, and shall be entitled to advice of counsel concerning all matters pertaining to such duties.  Each

- 50 -

**A3515**

PP-TRBK0008727

of the Administrative Agent and any such Sub-Agent may perform any and all of its duties and exercise its rights and powers by or through its Related Parties.  The exculpatory provision of this Article IX shall apply to any such Sub-Agent and to the Related Parties of the Administrative Agent and each such Sub-Agent, and shall apply to activities prior to the execution of this Agreement, including the syndication of the Loans.  The Administrative Agent shall not be responsible for the negligence or misconduct of any Sub-Agent that it selects as long as such selection was made in the absence of gross negligence or willful misconduct as determined by a court of competent jurisdiction in a final and non-appealable judgment.  Each Credit Party and each Lender hereby agree that any Sub-Agent appointed hereunder shall be entitled to the benefit of the provisions of Sections 7.3, 9.2, 9.4, 9.5, 9.6, 9.7, 9.9, 9.10, 9.11 and 9.12 as if such Sub-Agent was party to this Agreement.

Section 9.4    General Immunity.

(a)    No Responsibility for Certain Matters.  The Administrative Agent shall not be responsible for or have any duty to ascertain or inquire into (i) any statement, recitals, warranty or representation made in or in connection with any Credit Document, whether written or oral, (ii) the contents of any certificate, financial or other statement, instrument, report or other document delivered under, or in connection with, any Credit Document or the transactions contemplated thereby, (iii) the performance or observance of any of the covenants, agreements or other terms or conditions set forth in any Credit Document or the occurrence of any Default, including the use of the proceeds of the Loan or the existence or possible existence of any Default or Event of Default, (iv) the validity, enforceability, collectability, effectiveness, sufficiency or genuineness of any Credit Document or any other document or any Obligation, (v) the satisfaction of any condition set forth in Article III (Conditions Precedent; Conditions Subsequent) or elsewhere herein or in any Credit Document, other than to confirm receipt of items expressly required to be delivered to the Administrative Agent and then only unless the Administrative Agent confirms such receipt in writing or (vi) the financial condition or business affairs of any Credit Party or any other Person liable for the payment of any Obligation.  Anything contained herein to the contrary notwithstanding, the Administrative Agent shall not have any liability arising from confirmations of the amount of outstanding Loans.

(b)    Exculpatory Provisions.  The Administrative Agent shall not be liable to the Lenders for any action taken or omitted by it, its Sub-Agents or their Related Parties under or in connection with any Credit Document except to the extent caused by the Administrative Agent's gross negligence or willful misconduct as determined by a court of competent jurisdiction in a final and non-appealable judgment.  The Administrative Agent shall be entitled to refrain from taking any action (including from failing to take any action) in connection with any Credit Document or from the exercise of any power, discretion or authority vested in it under any Credit Document unless and until the Administrative Agent shall have received instructions in respect thereof from the Required Lenders (or such other Lenders as may be required to give such instructions under Section 10.1) and, upon receipt of such instructions from the Required Lenders (or such other Lenders, as the case may be), the Administrative Agent shall be entitled to act or refrain from acting, or to exercise such power, discretion or authority, in accordance with such instructions.  Without prejudice to the generality of the foregoing, (i) the Administrative Agent shall be entitled to rely, and shall be fully protected in relying, upon any communication or document believed by it to be genuine and correct and to have been signed or sent by the proper Person or Persons, including any statement made to it orally or by telephone, and shall be entitled to rely, and shall be fully protected in relying on, opinions and judgments of attorneys (who may be attorneys for any Credit Party or any Subsidiary of any Credit Party), accountants, experts and other professional advisors selected by it, and (ii) no Lender shall have any right to any Action whatsoever against the Administrative Agent as a result of the Administrative Agent acting or

- 51 -

**A3516**

PP-TRBK0008728

refraining from acting hereunder or any other Credit Document in accordance with the instructions of the Required Lenders (or such other Lenders, as the case may be).  In determining compliance with any condition to the obligation of any Lender to make any Loan or any other financial accommodation described herein, whether on the Closing Date or any other Borrowing Date, that by its terms must be fulfilled to the satisfaction of any Lender, the Administrative Agent may presume that such condition is satisfactory to such Lender unless the Administrative Agent shall have received notice to the contrary from such Lender prior to the making of such Loan or other financial accommodation.

Section 9.5    Administrative Agent Entitled to Act with the Borrower.  The Administrative Agent and its Affiliates may accept deposits from, lend money to, provide management services to and generally engage in any kind of banking, trust, financial advisory or other business with, any Credit Party or any of their Affiliates as if it were not performing the duties specified herein, and may accept fees and other consideration from any Credit Party or any Affiliate of any Credit Party for services in connection herewith and otherwise without having to account for the same to the Lenders.

Section 9.6    Lenders' Representations, Warranties and Acknowledgment.

(a)      Each Lender represents and warrants that it has made its own independent investigation of the financial condition and affairs of the Credit Parties and their Subsidiaries in connection with Borrowings hereunder and that it has made, and shall continue to make, its own appraisal of the creditworthiness of the Credit Parties and their Subsidiaries, in each case based on such documents and information as it has deemed appropriate and without reliance upon any other Secured Party or any other Related Party of any other Secured Party.  The Administrative Agent shall not have any duty or responsibility, either initially or on a continuing basis, to make any such investigation or any such appraisal on behalf of the Lenders or to provide any Lender with any credit or other information with respect thereto, whether coming into its possession before the making of the Loans or at any time or times thereafter, and the Administrative Agent shall not have any responsibility with respect to the accuracy of or the completeness of any information provided to the Lenders.

(b)      Each Lender, by delivering its signature page to this Agreement and funding or holding any of its Loans and accepting its Commitments on the Closing Date, shall be deemed to have acknowledged receipt of, and consented to and approved, each Credit Document and each other document required to be approved by the Administrative Agent or the Lenders, as applicable on the Closing Date.

Section 9.7    Right to Indemnity.  Each Lender, in proportion to its Pro Rata Share, severally (and not jointly) agrees to indemnify the Administrative Agent and its Related Parties, to the extent that the Administrative Agent or such Related Party shall not have been reimbursed by any Credit Party, for and against any and all Losses imposed on, incurred by or asserted against the Administrative Agent or any of its Related Parties in the exercise by the Administrative Agent of its powers, rights and remedies or performing its duties hereunder or under the other Credit Documents or otherwise in its capacity as the Administrative Agent in any way relating to or arising out hereof or in connection with the Credit Documents; provided, that no Lender shall be liable to the Administrative Agent or any of its Related Parties for any portion of such Losses resulting from the Administrative Agent's or such Related Party's, as the case may be, gross negligence or willful misconduct, as determined by a court of competent jurisdiction in a final and non-appealable judgment.  If any indemnity furnished to the Administrative Agent or any of its Related Parties for any purpose shall, in the opinion of the Administrative Agent, be insufficient or become impaired, the Administrative Agent may call for additional indemnity and cease, or not commence, to do the acts indemnified against until such additional indemnity is furnished; provided,

- 52 -

**A3517**

further, that in no event shall this sentence require any Lender to indemnify the Administrative Agent or any of its Related Parties against any Losses in excess of such Lender's Pro Rata Share thereof, and provided, further, that this sentence shall not be deemed to require any Lender to indemnify the Administrative Agent or any of its Related Parties against any Losses described in the proviso in the immediately preceding sentence.

Section 9.8    Successor Administrative Agent.

(a)    The Administrative Agent may resign at any time by giving not less than ten (10) Business Days prior written notice thereof to the Lenders and the Borrower.  Upon any such resignation, the Required Lenders shall have the right to appoint a successor the Administrative Agent, which shall be (i) one of the Lenders or an Affiliate of one of the Lenders or (ii) a Person who would be an eligible successor agent if appointed by the resigning Administrative Agent under Section 9.8(b).

(b)    If no successor Administrative Agent shall have been so appointed by the Lenders within ten (10) Business Days after the resigning Administrative Agent's giving of notice of resignation, then the resigning Administrative Agent may appoint, on behalf of the Borrower and the Lenders, a successor Administrative Agent.  In the event that the Administrative Agent is unable to appoint a replacement successor within ten (10) Business Days after it is entitled to do so after using reasonable efforts, the Administrative Agent may nonetheless resign by delivering a written resignation to the Lenders and the Borrower, provided that in such circumstances, and unless and until a successor Administrative Agent is appointed, the Administrative Agent may, in its sole discretion, remain the Administrative Agent solely for the purpose of serving as secured party of record with respect to the Collateral, its sole duty in that capacity shall be to take such ministerial actions as it may decide to take (including the execution and delivery of documents relating to the Collateral), and the Administrative Agent shall be entitled to reimbursement from the Credit Parties, jointly and severally, for its services and its out of pocket costs and expenses.  If the Administrative Agent has resigned and no successor Administrative Agent has been appointed, subject to the preceding sentence, the Lenders shall perform the duties of the Administrative Agent hereunder, and the Credit Parties shall make all payments in respect of the Obligations to the applicable Lender and shall deal directly with the Lenders.

(c)    No successor Administrative Agent shall be deemed to be appointed hereunder until such successor Administrative Agent has accepted the appointment in writing.  Upon the acceptance of any appointment as Administrative Agent hereunder by a successor Administrative Agent and upon the execution and filing of such financing statements, or amendments thereto, and such other documents, as may be necessary or desirable or as the Required Lenders may request, in order to continue the perfection of the Liens granted or purported to be granted under the Collateral Documents, such successor Administrative Agent shall succeed to and become vested with all the rights, powers, discretion, privileges and duties of the resigning Administrative Agent, and the resignation of the Administrative Agent shall then be effective for all purposes.  Upon the effectiveness of the resignation of the Administrative Agent, the resigning Administrative Agent shall be discharged from its duties and obligations under the Credit Documents.  After the effectiveness of the resignation of the Administrative Agent, the provisions of Section 7.3, Section 10.3 and this Article IX shall inure to the former Administrative Agent's benefit as to any actions taken or omitted to be taken by it while it was acting as Administrative Agent under this Agreement.

- 53 -

**A3518**

PP-TRBK0008730

Section 9.9    <u>Collateral Documents</u>.

(a)    <u>Administrative Agent as the Administrative Agent under Collateral Documents</u>. Each Lender hereby further authorizes the Administrative Agent, on behalf of and for the benefit of the Lenders, to be the agent for and representative of the Lenders with respect to the Collateral and the Collateral Documents.  Subject to Section 10.1, without further written consent or authorization from the Lenders, the Administrative Agent may execute any documents necessary to release any Lien encumbering any item of Collateral that is the subject of an Asset Sale permitted hereby or to which the Lenders have otherwise consented in the manner provided herein.

(b)    <u>Administrative Agent's Right to Realize on Collateral</u>.  Anything contained in any Credit Document to the contrary notwithstanding each Credit Party, the Administrative Agent and each Lender hereby agree that (i) no Lender shall have any right individually to realize upon any Collateral or otherwise individually take any Action with respect to this Agreement, it being understood and agreed that all powers, rights and remedies hereunder may be exercised solely by the Administrative Agent, on behalf of the Lenders in accordance with the terms hereof and (ii) in the event of a foreclosure by the Administrative Agent on any Collateral pursuant to a public or private sale, the Administrative Agent or any Lender may be the purchaser of any or all of such Collateral at any such sale and the Administrative Agent, as agent for and representative of the Lenders (but not any Lender or the Lenders in its or their respective individual capacities unless the Required Lenders shall otherwise agree in writing) shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold at any such public sale, to use and apply any Obligation as a credit on account of the purchase price for any collateral payable by the Administrative Agent at such sale.

Section 9.10    <u>Proof of Claims</u>.  In case of the pendency of any proceeding described in Section 8.1(f) or 8.1(g) or any other proceeding under the Bankruptcy Code or any other judicial proceeding relative to any Credit Party, the Administrative Agent (irrespective of whether the principal of any Loan shall then be due and payable as herein expressed or by declaration or otherwise and irrespective of whether the Administrative Agent shall have made any demand on the Borrower) shall be entitled and empowered (but not obligated) by intervention in such proceeding or otherwise (a) to file and prove a claim for the whole amount of the principal and interest owing and unpaid in respect of the Loans and all other Obligations that are owing and unpaid and to file such other documents as may be necessary or advisable in order to have the claims of the Secured Parties (including any claim for the compensation, expenses, disbursements and advances of the Secured Parties and all other amounts due to the Secured Parties under any Credit Document, including Sections 2.7 (Fees), 7.3(a) (Indemnification by the Borrower) and 10.3 (Expenses) allowed in such judicial proceeding; and (b) to collect and receive any monies or other property payable or deliverable on any such claims and to distribute the same and, for each of clause (a) and (b) any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Secured Party to make such payments to the Administrative Agent and, in the event that the Administrative Agent shall consent to the making of such payments directly to the Secured Parties , to pay to the Administrative Agent any amount due for the reasonable compensation, expenses, disbursements and advances of the Administrative Agent and its agents and counsel, and any other amounts due the Administrative Agent under any Credit Document, including Sections 2.7 (Fees), 7.3(a) (Indemnification by the Borrower) and 10.3 (Expenses).

Section 9.11    <u>Notice of Default</u>.  The Administrative Agent shall not be deemed to have knowledge or notice of the occurrence of any Default or Event of Default hereunder unless the

Confidential

Administrative Agent has received notice from a Lender or the Borrower referring to this Agreement, describing such Default or Event of Default and stating that such notice is a "notice of default".

## ARTICLE X
### Miscellaneous

Section 10.1      Amendments and Waivers; Release of Collateral.

(a)      General.    Subject to Section 10.1(b) and Section 10.1(c), no amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall be effective without the written consent of the Required Lenders.

(b)      Other Consent.    Notwithstanding the provisions of Section 10.1(a), no amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall amend, modify, terminate or waive any provision of Article IX as the same applies to the Administrative Agent, or any other provision hereof as the same applies to the rights or obligations of the Administrative Agent, in each case without the consent of the Administrative Agent.

(c)      Prior Unanimous Written Consent.    Without the prior unanimous written consent of the affected the Lenders,

(i)      no amendment, consent or waiver shall (A) affect the amount or extend the time of the obligation of any Lender to make Loans or (B) extend the originally scheduled time or times of repayment of the principal of the Loans or (C) alter the time or times of payment of interest on any Loan or of any fees payable for the account of the Lenders or (D) alter the amount of the principal of the Loans or the rate of interest thereon or (E) alter the amount of any fee payable hereunder to the account of the Lenders or (F) permit any subordination of the principal of or interest on the Loans or (G) permit the subordination of the Lien created by the Collateral Documents in any Collateral,

(ii)      no Collateral, other than in connection with an Asset Sale made in accordance with the terms hereof or as otherwise specifically permitted in this Agreement or the Collateral Documents, shall be released from the Lien of the Collateral Documents; and

(iii)      none of the provisions of this Section 10.1(c) shall be amended.

(d)      Effect of Notices, Waivers or Consents.    Any waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.  No notice to or demand on any Credit Party in any case shall entitle any Credit Party to any other or further notice (except as otherwise specifically required hereunder or under any Credit Document) or demand in similar or other circumstances.  Any amendment, modification, termination, waiver or consent effected in accordance with this Section 10.1 shall be binding upon each Lender at the time outstanding, each future Lender and, if signed by a Credit Party, on such Credit Party.

(e)      Certain Collateral Releases.    The Credit Parties are entitled to receive, and the Administrative Agent is authorized to effect, (i) the release of Collateral that is the subject of an

- 55 -

**A3520**

Asset Sale permitted hereunder or any other sale made in accordance with the terms thereof or as otherwise specifically permitted in this Agreement or the Collateral Documents from the Lien of the Collateral Documents and (ii) upon payment in full of all Obligations to the satisfaction of the Administrative Agent, the release of all Collateral.

(f)      *Other Consent*. Notwithstanding any other provision of this Agreement to the contrary, no amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall amend, modify, terminate or waive any provision of this Agreement as the same applies to the Administrative Agent, or any other provision hereof as the same applies to the rights or obligations of the Administrative Agent, in each case without the consent of the Administrative Agent.

(g)      *Administrative Agent Consent*. Notwithstanding any other provision of this Agreement to the contrary, no amendment, modification, termination or waiver of any provision of the Credit Documents, or consent to any departure by any Credit Party therefrom, shall be effective without the written consent of the Administrative Agent."

Section 10.2      *Notices*.  All notices, requests, demands and other communications to any party or given under any Credit Document (collectively, the "Notices") will be in writing and delivered personally, by overnight courier or by registered mail to the parties at the following address or sent by facsimile, with confirmation received, to the facsimile number specified below (or at such other address or telecopy number as will be specified by a party by like notice given at least five calendar days prior thereto):

  (a)      If to any Credit Party, at:

    Transcendence Transit, Inc.
    10615 Foster Avenue
    Brooklyn, NY 11236
    Attention: Chief Financial Officer

  (b)      If to the Administrative Agent, at:

    Patriarch Partners Agency Services, LLC
    One Broadway, 5th Floor
    New York, NY 10004
    Telephone:   (212) 825-0550
    Facsimile:    (212) 825-2038
    Attention:    Loan Administration/ Transcendence Transit, Inc.

  (c)      If to the Lenders, to the address for such Lender set forth on the signature pages hereto or in the Assignment Agreement delivered by such Lender.

provided, that, for each of clauses (a), (b) and (c) above, the following Notices may be delivered by e-mail, effective upon delivery by the recipient of a confirmation of the receipt thereof through an e-mail to the sender: (x) Notices to any Credit Party, when addressed to    and (y) Notices to the Administrative Agent expressly mentioned in Article II (Loans), Section 3.2 or Section 5.1(a), when addressed to creditnotices@patriarchpartners.com.

- 56 -

A3521

PP-TRBK0008733

All Notices will be deemed delivered when actually received. Each of the parties will hereafter notify the other in accordance with this Section of any change of address or telecopy number to which notice is required to be mailed.

Section 10.3    Expenses.    Whether or not the transactions contemplated hereby shall be consummated or any Loans shall be made, the Credit Parties jointly and severally agree to pay promptly:

(a)    all the actual and reasonable costs and expenses of preparation of the Credit Documents and any consents, amendments, waivers or other modifications thereto; the reasonable fees, expenses and disbursements of counsel to the Administrative Agent in connection with the negotiation, preparation, execution and administration of the Credit Documents and any consents, waivers, amendments, supplements or other modifications thereto and any other documents or matters requested by the Borrower;

(b)    all the actual costs and reasonable expenses of creating and perfecting Liens in favor of the Administrative Agent, for the benefit of the Lenders and the Administrative Agent, pursuant hereto, including filing and recording fees, expenses and taxes, stamp or documentary taxes, search fees, title insurance premiums and reasonable fees, expenses and disbursements of counsel to the Administrative Agent and the Lenders;

(c)    all the actual costs and reasonable fees, expenses and disbursements of any auditors, accountants, consultants or appraisers;

(d)    all the actual costs and reasonable expenses (including the reasonable fees, expenses and disbursements of any appraisers, consultants, advisors and agents employed or retained by the Administrative Agent and its counsel) in connection with the inspection, verification, custody or preservation of any Collateral, to the extent required or permitted hereunder;

(e)    after the occurrence of a Default or an Event of Default, all costs and expenses, including reasonable attorneys' fees (including allocated costs of internal counsel) and costs of settlement, incurred by any the Administrative Agent or the Lenders in enforcing any Obligations of or in collecting any payments due from any Credit Party hereunder or under the other Credit Documents by reason of such Default or Event of Default (including in connection with the sale of, collection from, or other realization upon any Collateral or the enforcement of any guaranty) or in connection with any negotiations, reviews, refinancing or restructuring of the credit arrangements provided hereunder, including in the nature of a "work out" or pursuant to any insolvency or bankruptcy cases or proceedings; and

(f)    the foregoing shall be in addition to, and shall not be construed to limit, any other provisions of the Credit Documents regarding costs and expenses to be paid by any Credit Party.

Section 10.4    Enforceability; Successors and Assigns.

(a)    Enforceability; Successors and Assigns. This Agreement will be binding upon and inure to the benefit of and is enforceable by the parties hereto, the Secured Parties that have agreed to comply with the provisions hereof, and their respective successors and, if permitted, assigns. This Agreement may not be assigned by any Credit Party without the prior written consent of the Administrative Agent and each Lender. Any assignment or attempted assignment

- 57 -

Confidential

in contravention of this Section will be void ab initio and will not relieve the assigning party of any obligation under this Agreement.

(b)        Assignments.  Each Lender may assign (each, an "Assignment") to one or more Eligible Assignees (each, an "Assignee") all or a portion of its rights and obligations under this Agreement (including all or a portion of such Lender's Loans, Commitments and Notes, as the case may be).  Such Assignment may be made without the consent of any Credit Party but shall require the consent of the Administrative Agent.  In connection with any such Assignment, the assigning Lender and the Assignee shall execute and deliver to the Administrative Agent an Assignment Agreement, in the form of Exhibit E (each, an "Assignment Agreement"), and a $3,500.00 fee (the "Assignment Fee") payable to the Administrative Agent.  Upon its receipt of a duly executed and completed Assignment Agreement, the Administrative Agent shall record the information contained in such Assignment Agreement in the Register, shall give prompt notice thereof to the Borrower and shall maintain a copy of such Assignment Agreement in its Principal Office.  From and after the effective date of an Assignment, the Assignee shall be a party hereto and, to the extent of the interest assigned pursuant to the Assignment, have the rights and obligations of a lender under this Agreement, and the assigning Lender shall, to the extent of the interest assigned, be released from its obligations under this Agreement.  The Credit Parties hereby consent to the disclosure of any information obtained by Lender in connection with this Agreement to any Person to which Lender sells, or proposes to sell, its Loans, Commitments or Notes, provided any such Person shall agree to keep any such information confidential.

(c)        Participations.  Each Lender may sell participations (each, a "Participation") to one or more Persons (each, a "Participant") in all or a portion of such Lender's rights and obligations under this Agreement (including all or a portion of such Lender's Loans, Revolving Credit Commitment and Notes, as the case may be); provided that (i) such Lender's obligations under this Agreement shall remain unchanged, (ii) such Lender shall remain solely responsible to the Credit Parties for the performance of such obligations and (iii) the Credit Parties shall continue to deal solely and directly with the Lender and the Administrative Agent in connection with the Lender's rights and obligations under this Agreement.  Any agreement or instrument pursuant to which the Lender sells such a participation shall provide that the Lender shall retain the sole right to enforce the Credit Documents and to approve any amendment, modification or waiver of any provision of the Credit Documents.  The Credit Parties hereby consent to the disclosure of any information obtained by a Lender in connection with this Agreement and/or any other Credit Document to any Person to which such Lender participates, or proposes to participate, its Loans, Commitments or Notes.

(d)        Notwithstanding anything else to the contrary contained herein, any Lender may any time pledge its Loans and such Lender's rights under this Agreement and the other Credit Documents to a Federal Reserve Bank and, in the case of any Lender that is a fund, for the benefit of its investors; provided, that no such pledge shall release such Lender from such Lender's obligations hereunder or under any other Credit Document.

Section 10.5    Lenders' Obligations Several.  The obligation of each Lender hereunder is several and not joint and neither the Administrative Agent nor any Lender shall be responsible for the obligation of any other Lender hereunder.  Nothing contained in any Credit Document and no action taken by the Administrative Agent or any Lender pursuant hereto or thereto shall be deemed to constitute the Lenders to be a partnership, an association, a joint venture or any other kind of entity.  The amounts payable at any time hereunder to each Lender shall be a separate and independent debt.

- 58 -

A3523

Section 10.6     Integration.    This Agreement and the other Credit Documents contain and constitute the entire agreement of the parties with respect to the subject matter hereof and supersede all prior negotiations, agreements and understandings, whether written or oral, of the parties hereto.

Section 10.7     No Waiver; Remedies.    No failure or delay by any party in exercising any right, power or privilege under this Agreement or any other Credit Document will operate as a waiver of such right, power or privilege.  A single or partial exercise of any right, power or privilege will not preclude any other or further exercise of the right, power or privilege or the exercise of any other right, power or privilege.   The rights and remedies provided in the Credit Documents will be cumulative and not exclusive of any rights or remedies provided by Regulations.

Section 10.8     Submission to Jurisdiction.    Any Action with respect to any Credit Document may be brought in the New York State courts sitting in New York County or the federal courts of the United States of America for the Southern District of New York and sitting in New York County.  Each Credit Party and Secured Party (a) accepts for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of such courts, (b) irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens, that it may now or hereafter have to the bringing of any Action in those jurisdictions, (c) irrevocably consents to the service of process of any court referred to above in any Action by the mailing of copies of the process to the parties hereto as provided in Section 10.2 and (d) agrees that a final judgment in any such Action shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Service effected as provided in this manner will become effective ten (10) calendar days after the mailing of the process.  Nothing contained in any Credit Document shall affect the right of any Secured Party to serve process in any other manner permitted by applicable Regulation or commence Actions or otherwise proceed against any Credit Party in any other jurisdiction.

Section 10.9     Execution in Counterparts.    This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile or e-mail shall be equally as effective as delivery of an original executed counterpart of this Agreement.

Section 10.10     **GOVERNING LAW**.  **EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN ANY OTHER CREDIT DOCUMENT, THIS AGREEMENT, THE OTHER CREDIT DOCUMENTS AND ALL CLAIMS, ACTIONS AND MATTERS ARISING HEREUNDER OR THEREUNDER OR RELATED HERETO OR THERETO WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

Section 10.11     **WAIVER OF JURY**.  **THE PARTIES HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE REGULATIONS, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION OR IN ANY ACTION, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTIES WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER CREDIT DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.**

Section 10.12     Severability.  Any provision of any Credit Document being held illegal, invalid or unenforceable in any jurisdiction shall not affect any part of such provision not held illegal, invalid or

Confidential

unenforceable, any other provision of any Credit Document or any part of such provision in any other jurisdiction, so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party.  In addition, upon any determination that any such term or other provision is invalid, illegal or incapable of being enforced, the parties hereto will negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

Section 10.13    Survival.  All representations, warranties, covenants, agreements, and conditions contained in or made pursuant to this Agreement or the other Credit Documents shall survive (a) the making of the Loans and the payment of the Obligations and (b) the performance, observance and compliance with the covenants, terms and conditions, express or implied, of all Credit Documents, until the due and punctual (i) indefeasible payment of the Obligations and (ii) performance, observance and compliance with the covenants, terms and conditions, express or implied, of this Agreement and all of the other Credit Documents; provided, that the provisions of Section 5.1(o), Article VII, Section 9.2 through 9.11, Sections 10.2, 10.3 and Sections 10.5 through 10.18 (together with the definitions set forth in Section 1.1 to the extent such terms are used in such other sections) shall survive (x) indefeasible payment of the Obligations and (y) performance, observance and compliance with the covenants, terms and conditions, express or implied, of this Agreement and all of the other Credit Documents.

Section 10.14    Maximum Lawful Interest.  Notwithstanding anything to the contrary contained herein, in no event shall the amount of interest and other charges for the use of money payable under this Agreement or any other Credit Document exceed the maximum amounts permissible under any Regulation that a court of competent jurisdiction shall, in a final determination, deem applicable.  The Credit Parties and the Lenders, in executing and delivering this Agreement, intend legally to agree upon the rate or rates of interest and other charges for the use of money and manner of payment stated within it; provided, that, anything contained herein to the contrary notwithstanding, if the amount of such interest and other charges for the use of money or manner of payment exceeds the maximum amount allowable under applicable Regulation, then, ipso facto as of the Closing Date, the Credit Parties are and shall be liable only for the payment of such maximum as allowed by Regulations, and payments received from the Credit Parties in excess of such legal maximum, whenever received, shall be applied to reduce the principal balance of the Loans to the extent of such excess.

Section 10.15    Marshaling.  No Secured Party shall be under any obligation to marshal any property in favor of any Credit Party or any other party or against or in payment of any Obligation.  To the extent that any Secured Party receives a payment from the Borrower, from the proceeds of the Collateral, from the exercise of its rights of setoff, any enforcement action or otherwise, and such payment is subsequently, in whole or in part, invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party, then to the extent of such recovery, the obligation or part thereof originally intended to be satisfied, and all Liens, rights and remedies therefor, shall be revived and continued in full force and effect as if such payment had not occurred.

Section 10.16    Lender-Creditor Relationship.  The relationship between the Secured Parties, on the one hand, and the Credit Parties, on the other hand, created by the Credit Documents and the transactions contemplated therein is solely that of lender and creditor.  No Secured Party has any fiduciary relationship or duty to any Credit Party arising out of or in connection with, and there is no agency, tenancy or joint venture relationship between the Secured Parties and the Credit Parties by virtue of, any Credit Document or any transaction contemplated therein.

Section 10.17    No Press Releases; Confidentiality.  None of the Credit Parties and their Affiliates shall (i) use any name, trademark, service mark, symbol, logo (or any abbreviation, contraction or simulation thereof) of, or otherwise refer to, any Secured Party without the prior consent of the

- 60 -

A3525

PP-TRBK0008737

Administrative Agent (including in any press release, letterhead, public announcement or marketing material), except, after consulting with the Administrative Agent, to the extent required to do so under applicable Regulations or (ii) represent that any Credit Party or their Affiliates, any product or service of any Credit Party or their Affiliates, or any know how or policy or practice of the Credit Parties or their Affiliates has been approved or endorsed by any Secured Party. Each of the Credit Parties shall, and shall ensure that their Related Parties shall, maintain confidential all information about obtained by them with respect to the Secured Parties in connection with this Agreement.

Section 10.18    Interpretation.  This Agreement and the other Credit Documents were negotiated between legal counsel for the parties and any ambiguity in this Agreement or the other Credit Documents shall not be construed against the party who drafted this Agreement or such other Credit Documents.  As used in this Agreement, references to the singular will include the plural and vice versa and references to the masculine gender will include the feminine and neuter genders and vice versa, as appropriate.  Unless otherwise expressly provided in this Agreement (a) the words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement will refer to this Agreement as a whole and not to any particular provision of this Agreement, (b) article, section, subsection, schedule and exhibit references are references with respect to this Agreement unless otherwise specified, (c) except as otherwise expressly written herein, any reference to any agreement in any Credit Document shall include a reference to all appendices, exhibits and schedules to such agreement and, unless the prior written consent of any party is required hereunder and is not obtained, shall be a reference to such agreement as waived, amended, restated, supplemented or otherwise modified and (d) except as otherwise expressly written herein, any reference to a specific Regulation shall be to such Regulation, as modified from time to time, together with any successor or replacement Regulation, in each case as in effect at the time of determination.  Unless the context otherwise requires, when used in any Credit Document, the following terms have the following meaning: (u) "execution", "signed", "signature" and words of like import shall be deemed to include electronic signatures and the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable Regulation, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act and any other similar state Regulation based on the Uniform Electronic Transactions Act, (v) "incur" means incur, create, make, issue, assume or otherwise become or remain directly or indirectly liable in respect of or responsible for, in each case whether directly or indirectly, as primary obligor or guarantor or endorser, and the terms "incurrence" and "incurred" and similar derivatives shall have correlative meanings, (w) "knowledge" of any Credit Party means the best knowledge of any officer, director or employee of such Credit Party or any of its Subsidiaries after due inquiry, (x) "including" means "including, without limitation," (y) "asset" and "property" have the same meaning and mean, "collectively, all rights and interests in tangible and intangible assets and properties, whether real, personal or mixed and including cash, Capital Stock, revenues, accounts, leasehold interests, contract rights and other rights under Permits and Contractual Obligations" and (z) "documents" means "collectively, all documents, drafts, instruments, agreements, indentures, certificates, forms, opinions, powers of attorney, notices, summons, reports, financial statements and other writings, however evidenced, whether in physical or electronic form." The headings in this Agreement are included for convenience of reference only and will not affect in any way the meaning or interpretation of this Agreement.  Any Collateral Update delivered pursuant hereto shall, after the receipt thereof by the Administrative Agent, become part of the Disclosure Schedule for all purposes hereunder other than in respect of representations and warranties made prior to the date of such receipt.

Section 10.19    Reserved.

Section 10.20    Agreement to Pay Closing Date Obligations.  The rights and obligations of the Administrative Agent, the Lenders, the other Secured Parties and the Credit Parties with respect to the

Confidential

Closing Date Obligations on or after the Closing Date (including the right to assign or sell participations in the Closing Date Obligations on or after the Closing Date) shall be governed exclusively by the provisions of this Agreement.

[SIGNATURE PAGES FOLLOW]

**A3527**

Confidential

In witness whereof, the parties hereto have caused this Agreement to be duly executed and delivered by their respective representatives thereunto duly authorized as of the date first written above.

TRANSCENDENCE TRANSIT, INC.,
    as Borrower


By: _____
    Name:
    Title:


PATRIARCH PARTNERS AGENCY SERVICES, LLC,
    as Administrative Agent


By: _____
    Name:  Lynn Tilton
    Title:    Manager


TRANSCENDENCE TRANSIT II, INC.,
    as Guarantor


By: _____
    Name:
    Title:

SIGNATURE PAGE TO CREDIT AGREEMENT OF TRANSCENDENCE TRANSIT, INC.

**A3528**

PP-TRBK0008740

ARK ANGELS III
    as Lender

By: _____

Name:

Title:

c/o Patriarch Partners Agency Services
One Broadway, 5th Floor
New York, NY 10004
Telephone:  (212) 825-0550
Facsimile:  (212) 825-2038
Attention:  Loan Administration/ Transcendence Transit, Inc.

SIGNATURE PAGE TO CREDIT AGREEMENT OF TRANSCENDENCE TRANSIT, INC.

**A3529**

Confidential

**SCHEDULE 2.1**
**COMMITMENTS**

**PART I**

**(AS OF FEBRUARY 24, 2016)**

| Type of Loan | Tranche | Commitments with Board Approval for Borrowings | Outstandings | Lender | Applicable Margin | LIBOR Floor | Interest Payment Date | Maturity Date | Commitment Period (if applicable) | Prepayment Preference | OID Number | Closing Date Obligations |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revolving Loan | RCA | $10,000,000 | $0 | ARK ANGELS III | 4% | 3% | The first day of each February, May, August and November | February 24, 2019 | From the date hereof to but excluding the Maturity Date | 1st | 1 | $10,000,000 |

**A3530**

Confidential