# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

———————————————

*IN RE TRANSCARE CORPORATION*, ET AL.

DEBTORS,

———————————————

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

———————————————

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

**APPENDIX TO BRIEF FOR THE APPELLANTS**

# Volume XXII- A3531-A3545

# BILL OF SALE, AGREEMENT TO PAY AND TRANSFER STATEMENT

This Bill of Sale, Agreement to Pay and Transfer Statement (this "Bill of Sale") is dated as of February 24, 2016 and entered into by and among Patriarch Partners Agency Services, LLC, a Delaware limited liability company, for itself and as administrative agent for the Lenders under each Credit Agreement, as defined in the Foreclosure Notice (in such capacity, the "Administrative Agent"), and Transcendence Transit, Inc., a Delaware corporation (the "Purchaser"). Capitalized terms used but not defined herein shall have the meanings set forth in the Notice of Acceptance of Subject Collateral in Partial Satisfaction of Obligation, dated as of the date hereof, by and among TransCare Corporation, TC Ambulance Corporation, TC Ambulance Group, Inc., TC Ambulance North, Inc., TC Billing and Services Corp., TC Hudson Valley Ambulance Corp., TCBA Ambulance, Inc., TransCare Harford County, Inc., TransCare Management Services, Inc., TransCare Maryland, Inc., TransCare ML, Inc., TransCare New York, Inc., TransCare Pennsylvania, Inc., TransCare Westchester, Inc. (collectively, "Transcare"), the Administrative Agent and the Lenders (the "Foreclosure Notice").

## RECITALS

A.  Pursuant to the Credit Agreement, the Lenders made Loans to Transcare.

B.  Pursuant to the Security Agreements, Transcare granted the Administrative Agent, for the benefit of the Lenders and as security for the Loans, security interests in the Collateral.

C.  Transcare subsequently defaulted in the performance of its obligations under the Credit Agreement.

D.  The Administrative Agent, the Lenders and Transcare executed the Foreclosure Notice, pursuant to which Transcare tendered the Subject Collateral as set forth in Schedule A of the Foreclosure Notice, and the Lenders accepted such Subject Collateral.

E.  The consideration for the transfer of the Subject Collateral to Purchaser pursuant to this Bill of Sale shall be $10,000,000 such amount to be financed by Ark Angels III, through Purchaser's agreement to pay, under the terms of the Purchaser Credit Agreement as such term is defined below, a portion of the amounts outstanding in respect of the Loans as of the date hereof as described below.

F.  The Administrative Agent, on behalf of the Lenders, now desires to sell, assign, transfer and deliver the Subject Collateral tendered by Transcare pursuant to the Foreclosure Notice (the "Purchased Assets") to the Purchaser, and the Purchaser desires to purchase, accept, acquire and take the Purchased Assets.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged:

Section 1.  Transfer.  The Administrative Agent, on behalf of the Lenders, hereby sells, assigns, transfers and delivers to the Purchaser all of its and the Lenders' respective rights, title and interest in the Purchased Assets, which are listed on Exhibit A.

- 1 -

Confidential

JX 102
LaMonica v. Tilton, et al., 18-1021-smb

PP-TRBK0091202



A3531

Section 2.    Condition of Purchased Assets. None of the Administrative Agent or any Lender makes any warranty relating to title, possession, quiet enjoyment, or the like with respect to any of the Purchased Assets. The Purchased Assets are sold in "AS IS" condition "WITH ALL FAULTS" (and without any representation or warranty of any kind). Except as expressly set forth in this Bill of Sale, none of the Lenders, the Agent or any other person or entity has made, and the Purchaser has not relied upon, any express or implied representation or warranty on behalf of the Administrative Agent or any Lender in connection herewith, including any implied warranties of merchantability, fitness for a particular purpose, title or enforceability, including as to (a) the physical condition or usefulness for a particular purpose of the personal property included in the Purchased Assets, (b) the use of such Purchased Assets by the Purchaser on or after the date hereof in any manner, or (c) the probable success or profitability of the ownership, use or operation of such Purchased Assets by the Purchaser on or after the date hereof. EXCEPT AS EXPRESSLY SET FORTH IN THIS BILL OF SALE, THE PURCHASED ASSETS ARE HEREBY TRANSFERRED "AS-IS, WHERE IS" AND IN ITS PRESENT CONDITION AND STATE OF REPAIR, WITH ALL FAULTS, LIMITATIONS AND DEFECTS.

Section 3.    Agreement to Pay Certain of the Outstanding Indebtedness under the Credit Agreement. The Purchaser hereby agrees to pay $10,000,000, constituting a portion of the principal amount outstanding of under the TransCare Credit Agreement as of the date hereof prior to giving effect to the foreclosure described in the Foreclosure Notice, excluding TransCare's liabilities and obligations to pay any accrued and unpaid interest on such principal amount or costs and expenses in connection with such amount or commitment (the aggregate amounts Purchaser is agreeing to pay, the "Closing Date Obligations"). Such Closing Date Obligations shall be owing by the Purchaser on and after the date hereof and will be governed exclusively by the Credit Agreement, dated as of the date hereof, by and between Administrative Agent, the lenders party thereto, and the Purchaser (the "Purchaser Credit Agreement") and the "Credit Documents" as defined in the Purchaser Credit Agreement. TransCare shall be relieved of its obligations to pay such Closing Date Obligations both under the Foreclosure Notice and this Agreement (but without duplication) and the Purchaser shall have no right against TransCare in respect of such amounts under the TransCare Credit Agreement and related documents. If the Administrative Agent or any Lender hereafter receives any amounts or payments in respect of the Closing Date Obligation from TransCare or any third party, the Administrative Agent or such Lender, as the case may be, shall promptly turn over any such amounts to PPAS, as administrative agent (in such capacity, the "New Administrative Agent") for the lenders under the Purchaser Credit Agreement and, subject to any applicable intercreditor agreements, such amounts shall be applied to repay the obligations outstanding under the Purchaser Credit Agreement and related "Credit Documents" (as defined in the Purchaser Credit Agreement), as set forth therein, until the Closing Date Obligations shall be paid in full.

Section 4.    Further Assurances. Subject to the limitations herein, including without limitation, those stated in this Section 4, if the Purchaser shall consider or be advised that any deeds, bills of sale, instruments of conveyance, assignments, assurances or any other actions or things are necessary or desirable to vest, perfect or confirm ownership (of record or otherwise) in the Purchaser (or its designee), its right, title or interest in, to or under any or all of the Purchased Assets, the Administrative Agent, on behalf of any or all Lenders, shall execute and deliver all deeds, bills of sale, instruments of conveyance, assignments and assurances and take and do all such other actions and things as may be reasonably requested by the Purchaser (or its

- 2 -

Confidential

designee) in order to vest, perfect or confirm any and all right, title and interest in, to and under such rights, properties or assets in the Purchaser, in each case at the Purchaser's cost and expense.

Section 5. <u>Transfer Statement</u>. This Bill of Sale also constitutes a "transfer statement" for purposes of Section 9-619 of the UCC.

Section 6. <u>Binding on Successors; No Third Party Beneficiaries</u>. This Bill of Sale shall be binding upon and inure to the benefit of each of the parties hereto and their respective successors and permitted assigns, except that no party hereto shall have the right to assign such party's rights hereunder or any interest herein without the prior written consent of all other parties hereto.

Section 7. <u>No Release</u>. Nothing herein shall be construed to release TransCare of any of their obligations under the Credit Agreement and other "Loan Documents" under and as defined in the Credit Agreement, except with respect to the Closing Date Obligations.

Section 8. <u>Counterparts</u>. This Bill of Sale may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Any such counterpart that may be delivered by facsimile, email or similar electronic transmission shall be deemed the equivalent of an originally signed counterpart and shall be fully admissible in any enforcement proceedings regarding this Bill of Sale.

Section 9. <u>Governing Law</u>. THE VALIDITY AND CONSTRUCTION OF THIS BILL OF SALE SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS THAT WOULD REQUIRE THE APPLICATION OF ANOTHER JURISDICTION'S LAWS.

[SIGNATURE PAGE FOLLOWS]

Confidential

IN WITNESS WHEREOF, the undersigned hereby execute this Bill of Sale effective as of the day and year first above written.

ZOHAR CDO 2003-1, LIMITED

By: Patriarch Partners VIII, LLC,
    its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager

ZOHAR II 2005-1, LIMITED

By: Patriarch Partners XIV, LLC,
    its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager

ZOHAR III, LIMITED

By: Patriarch Partners XV, LLC,
    its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager

PATRIARCH PARTNERS AGENCY SERVICES, LLC, as the Administrative Agent

By: _____
Name: Lynn Tilton
Title: Manager

Confidential

PP-TRBK0091205

ARK INVESTMENT PARTNERS II, L.P.

By: Ark Investment GP II, LLC,
its Collateral Manager

By: _____
Name: Lynn Tilton
Title: Manager

TRANSCENDENCE TRANSIT, INC.

By: _____
Name: Glen Youngblood
Title: President

Confidential

PP-TRBK0091206

**A3535**

## EXHIBIT A

The Purchased Assets consists of all of the following as defined in the Foreclosure Notice:

1. All of TransCare's personal property of every kind and description, wherever located, including, without limitation, Bank Accounts; Chattel Paper; Commercial Tort Claims; Copyrights; Copyright Licenses; Documents; Equipment (including, but not limited to, computer servers and related data); General Intangibles; Instruments; Inventory; Investment Property; Letter of Credit Rights; Patents; Patent Licenses; Trademarks; Trademark Licenses; Vehicles; and books and records pertaining to the Purchased Assets, as such terms are defined in the Security Agreement.
2. The following Contracts as such term is defined in the Security Agreement (may be subject to consent of assignment):
    a. Contract No. 07H9751I between New York City Transit Authority and TransCare New York, Inc.
    b. The equipment lease for Carefusion – LTV 1200 ventilators pursuant to Master Lease Agreement no. 062710-KB between First Financial Corporate Leasing, LLC (dba First Financial healthcare Solutions) and TransCare.
    c. emsCharts Service Agreement dated August 21, 2015 by and between TransCare Corporation and emsCharts, Inc.
3. All shares of capital stock listed on Table A, together with all stock certificates, options or rights of any nature whatsoever which have been issued or granted by any of the corporations identified on Table A as an Issuer, to the Pledgors in respect to the stock identified in Table A, <u>but not</u> any additional or other capital stock pledged for any other corporations that are not identified on Table A.

*Table A*

| Issuer | Pledgor | Class of Stock | Stock Certificate Number | Number of Shares |
|---|---|---|---|---|
| TransCare Pennsylvania, Inc. | TransCare Corporation | Common | 2 | 1,000 |
| TC Hudson Valley Ambulance Corp. | TransCare Corporation | Common | 2 | 100 |
| TC Ambulance Corporation | TransCare Corporation | Common | 2 | 1,000 |

4. All additions, accessions, substitutions, replacements, products and proceeds (whether cash or non-cash) of any of the foregoing, in whatever form, including, without limitation, proceeds of insurance.

PROVIDED, HOWEVER, that the Purchased Assets expressly does not include the following:
    A. Accounts as such term is defined in the Security Agreement.
    B. Any leasehold or other Contract interest, except as identified in Paragraph 2 of this Schedule.

Confidential

PP-TRBK0091207

**A3536**

**Fill in this information to identify the case:**

Debtor 1: TransCare Corporation

Debtor 2 (Spouse, if filing): _____

United States Bankruptcy Court for the: Southern District of New York

Case number: 16-10407

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**
Patriarch Partners Agency Services, LLC
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor PPAS

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Proskauer Rose LLP Attn: Timothy Q. Karcher
Name
Eleven Times Square
Number   Street
New York          NY          10036
City              State       ZIP Code

Contact phone 212-969-4750
Contact email tkarcher@proskauer.com

Where should payments to the creditor be sent? (if different)
Loan Administration, PPAS
Name
1 Liberty Plaza, 35th Floor
Number   Street
New York          NY          10006
City              State       ZIP Code

Contact phone 212-825-0550
Contact email info@patriarchpartners.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on ___/___/_____  MM/DD/YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                        Proof of Claim                        page 1

EXHIBIT 104  10-29-18



A3537

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. Do you have any number you use to identify the debtor?
   ☒ No
   ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

7. How much is the claim?   $ not less than 35,090,492.76. Does this amount include interest or other charges?
   ☐ No
   ☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?
   Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
   Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
   Limit disclosing information that is entitled to privacy, such as health care information.

   Money loaned (see attached rider)

9. Is all or part of the claim secured?
   ☐ No
   ☒ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☒ Other. Describe:   See attached rider.

   **Basis for perfection:**   See attached rider.
   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of property:                            $ Unknown
   Amount of the claim that is secured:          $ Unknown
   Amount of the claim that is unsecured:  $ Unknown   (The sum of the secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:   $ N/A

   Annual Interest Rate (when case was filed) _____% (See attached rider)
   ☐ Fixed
   ☐ Variable

10. Is this claim based on a lease?
    ☒ No
    ☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

11. Is this claim subject to a right of setoff?
    ☒ No
    ☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | Amount entitled to priority |
|---|---|---|
| | ☐ Yes. *Check one:* | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10/09/2017
                  MM / DD / YYYY

*/s/ Signature*

**Print the name of the person who is completing and signing this claim:**

| Name | Kathleen | Marie | Patrick |
|---|---|---|---|
| | First name | Middle name | Last name |

Title: Authorized Signatory

Company: Patriarch Partners Agency Services, LLC
*Identify the corporate servicer as the company if the authorized agent is a servicer.*

Address: 1 Liberty Plaza, 35th Floor
Number  Street
New York    NY    10006
City        State ZIP Code

Contact phone: 212-825-6835    Email: Kate.Patrick@PatriarchPartners.com

Official Form 410    Proof of Claim    page 3

A3539

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Timothy Q. Karcher
Chris Theodoridis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
*In re*                                          :     Chapter 7
                                                 :
TRANSCARE CORPORATION, *et al.*,                 :     Case No. 16-10407 (SMB)
                                                 :
                                    Debtors.[1]  :     (Jointly Administered)
---------------------------------------------------------------x

### RIDER TO PROOF OF CLAIM OF
### PATRIARCH PARTNERS AGENCY SERVICES, LLC

1.  Patriarch Partners Agency Services, LLC ("PPAS"), on behalf of itself and as the administrative agent for a number of prepetition secured lenders (the "Lenders"), hereby submits this rider in connection with the prefixed proof of claim (the "Proof of Claim") filed against TransCare Corporation (the "Debtor"). The Debtor's chapter 7 case has been assigned Case No. 16-10407 (SMB).

2.  On February 24, 2016 (the "Initial Petition Date"), the Initial Debtors each filed voluntary petitions for relief pursuant to chapter 7 of title 11 of the United States Code (the

---

[1] The jointly administered Chapter 7 estates are (i) TransCare Corporation, (ii) TransCare New York, Inc., (iii) TransCare ML, Inc., (iv) TC Ambulance Group, Inc., (v) TransCare Management Services, Inc., (vi) TCBA Ambulance, Inc., (vii) TC Billing and Services Corporation, (viii) TransCare Westchester, Inc., (ix) TransCare Maryland, Inc., (x) TC Ambulance North, Inc., and (xi) TransCare Harford County, Inc. (these entities' Chapter 7 petitions were filed on February 24, 2016; collectively, these entities have been referred to in the case as "Initial Debtors"). Included in the jointly administered estates are the Chapter 7 cases of (xii) TransCare Pennsylvania, Inc., (xiii) TC Ambulance Corporation, and (xiv) TC Hudson Valley Ambulance Corp. (these entities' Chapter 7 petitions were filed on April 25, 2016; collectively, the "Subsequent Debtors," and together with the Initial Debtors, the "Debtors").

Case 1:20-cv-06274-LAK   Document 11-22   Filed 09/30/20   Page 12 of 16

16-10407-smb    Claim 584    Filed 10/09/17    Pg 5 of 9

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). On March 1, 2016, the Initial Debtors' cases were jointly administered under Case No. 16-10407 (TransCare Corporation). On April 25, 2016 (the "Subsequent Petition Date," and together with the Initial Petition Date, the "Petition Dates"), the Subsequent Debtors each filed voluntary petitions for relief pursuant to chapter 7 of the Bankruptcy Code in this Court. On June 29, 2016, the Subsequent Debtors' cases were jointly administered with the Initial Debtors' cases under Case No. 16-10407 (TransCare Corporation).

3. Pursuant to a Credit Agreement dated August 4, 2003 (as amended, the "Credit Agreement") by and among the Debtor, the Lenders, and PPAS (for itself and as administrative agent for the Lenders), the Lenders, among other things, made certain loans to the Debtors.[2] Prior to the commencement of the Initial Debtors' bankruptcy cases, the aggregate outstanding indebtedness owed to PPAS pursuant to the Credit Agreement was not less than $34,771,873.10 (inclusive of a $10 million credit as a result of a strict foreclosure carried out prepetition).[3] Subsequent to the Initial Petition Date, attorneys' fees in the amount of not less than $318,619.66 have accrued, and continue to accrue, and are being asserted as part of the Proof of Claim, bringing the total value of PPAS' claim to not less than $35,090,492.76, all as set forth on **Schedule 1** attached hereto, including other fees, charges, claims and expenses owed pursuant to the Credit Agreement and all other loan documents entered into in connection therewith (such

---

[2] The Credit Agreement was subsequently amended, modified, and/or superseded numerous times over a number of years to, among other things, include the Debtors as presently constituted.

[3] Pursuant to the Credit Agreement, the various credit facilities issued by the Lenders to the Debtors bear interest at different rates, certain of which are fixed rates and others being floating rates tied to LIBOR.

2

A3541

other loan documents, collectively, the "Loan Documents").[4] At this time, the value of the secured portion of PPAS' claim is unknown.

4. Simultaneously with the execution of the Credit Agreement, certain Debtors entered into a Subsidiaries' Guarantee, dated as of August 4, 2003 (the "Subsidiaries' Guarantee"), in favor of PPAS and the Lenders. Under the Subsidiaries' Guarantee, each of the Debtors individually (with the exception of TransCare Corporation), jointly and severally guaranteed to PPAS and the Lenders the payment and other obligations under the Credit Agreement.

5. To secure the obligations under the Credit Agreement and the Subsidiaries' Guarantee, the Debtors entered into a Security Agreement, dated as of August 4, 2003 (the "Security Agreement"), in favor of PPAS and the Lenders. Pursuant to the Security Agreement, the Debtors, among other things, granted to the Lenders and PPAS (as administrative agent for the Lenders) a security interest in certain Collateral (as that term is defined in the Security Agreement, the "Collateral").[5]

6. To further secure the obligations under the Credit Agreement, certain Debtors entered into a Pledge Agreement, dated as of August 4, 2003 (the "Pledge Agreement"), in favor of PPAS and the Lenders. Under the Pledge Agreement, each Debtor (except TransCare ML,

---

[4] The Credit Agreement, the other Loan Documents, and other documents supporting the Proof of Claim are voluminous and are not being filed herewith. PPAS believes such documents are in the possession of the Debtor, and they are available upon reasonable written request to counsel to PPAS listed herein.

[5] The Collateral includes all of the following property owned or acquired at any time by Debtors or in which Debtors have any right, title or interest (with all defined terms having the meaning given to them in the Pledge Agreement): all Accounts; all Bank Accounts; all Chattel Paper; all Commercial Tort Claims; all Contracts; all Copyrights; all Copyright Licenses; all Documents; all Equipment; all General Intangibles; all Instruments; all Inventory; all Investment Property; all Letter of Credit Rights; all Patents; all Patent Licenses; all Trademarks; all Trademark Licenses; all Vehicles; all books and records pertaining to the Collateral; and to the extent not otherwise included, all Proceeds and products of any and all of the foregoing.

3

Inc.) granted to the Lenders and PPAS (for the benefit of the Lenders) a security interest in certain Pledged Collateral, including, among other things, certain Pledged Stock (as such terms are defined in the Pledge Agreement).

7. PPAS and the Lenders properly perfected their security interests in the Collateral and the Pledged Stock through the filing of UCC-1 Financing Statements and related UCC-3 Amendment and Continuation Statements with the Delaware Office of the Secretary of State.[6]

8. PPAS reserves its right to: (a) amend, modify, or supplement this Proof of Claim for any reason, including, but not limited to, supplementing the amount or classification of the claim asserted herein; (b) assert any additional amounts owed to PPAS, including any claims for accrued interest, fees, expenses, and/or advances made by PPAS or the Lenders; and (c) file and assert any additional claims that may be or later become due, including any secured, priority, and administrative expense or general unsecured claims under the Bankruptcy Code.

9. The filing of this Proof of Claim is not and shall not be deemed or construed as: (a) a waiver or release of PPAS' rights against any person, entity, or property; (b) a consent by PPAS to the jurisdiction of the Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving PPAS; (c) a waiver or release of PPAS' right to trial in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such trial right is pursuant to statute or the United States Constitution; (d) a consent by PPAS to a trial in this Court or any

---

[6] As well as in any and all products, proceeds, and insurance amounts relating thereto, and whether then owned or thereafter acquired.

4

other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of PPAS' right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a United States District Court Judge; (f) a waiver of PPAS' right to move to withdraw the reference with respect to: (i) the subject matter of this Proof of Claim; (ii) any objection thereto; or (iii) any other proceeding which may be commenced in this case relating to the Proof of Claim or otherwise involving PPAS; (g) an election of remedies; or (h) an acknowledgment that PPAS received adequate notice of any bar date fixed in this case.

10. All notices concerning this Proof of Claim shall be sent to:

> Proskauer Rose LLP
> Eleven Times Square
> New York, NY 10036
> Attn:  Timothy Q. Karcher, Esq.
>        Chris Theodoridis, Esq.
> Telephone: (212) 969-3000
> Facsimile: (212) 969-2900

> -and-

> Patriarch Partners Agency Services, LLC
> 1 Liberty Plaza, 35th Floor
> New York, NY 10006
> Attn:  Kate M. Patrick
> Telephone: (212) 825-6835
> Facsimile: (212) 825-2038

11. No judgment has been rendered on any of the amounts asserted herein.

## Schedule 1

### Claim Calculation

| | |
|---|---:|
| Outstanding Principal | $43,609,343.08 |
| Accrued Interest | $913,030.02 |
| Postpetition Attorneys' Fees | $318,619.66 |
| Agency Fees | $249,500.00 |
| Acceptance of Collateral | ($10,000,000.00) |
| **Total Amount of Claim** | **$35,090,492.76** |