# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

———————————————

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

———————————————

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

———————————————

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

## APPENDIX TO BRIEF FOR THE APPELLANTS

# Volume XXIV- A3555-A3565

(e)     Chief Executive Office. Each Grantor's chief executive office and chief place of business is, and for the four (4) months preceding the date has been, located at the location set forth on Schedule VII hereto.

(f)     Jurisdiction of Organization. Each Grantor is a corporation, organized under the laws of the State listed on Schedule VII hereto. If (and only if) any jurisdiction in which a financing statement is required to be filed in respect of any Grantor to perfect the security interests granted pursuant to the Security Documents requires such financing statement to include the organization identification number or similar identifying number assigned by the jurisdiction of such Grantor's organization on such financing statement, then such organization identification number or similar identifying number for such Grantor is set forth on Schedule VII opposite such Grantor's name, or if no such number exists, Schedule VII so indicates.

(g)     Name. (i) The exact legal name of each Grantor is as set forth on Schedule VII hereto; and (ii) during the past five years except as set forth on Schedule VII, no Grantor has changed its corporate name or done business under an assumed name or trade name.

(h)     Farm Products. None of the Collateral constitutes, or is the Proceeds of, Farm Products.

(i)     Copyrights, Patents and Trademarks. Schedule I hereto includes all registered Copyrights and pending applications for registration of Copyrights and material Copyright Licenses owned by each Grantor in its own name as of the date hereof. Schedule II hereto includes all registered Patents and pending applications for registration of Patents and material Patent Licenses owned by each Grantor in its own name as of the date hereof. Schedule III hereto includes all registered Trademarks and pending applications for registration of Trademarks and material Trademark Licenses owned by each Grantor in its own name as of the date hereof. To the best of each Grantor's knowledge, each material registered Copyright, Patent and Trademark of a Grantor is valid, subsisting, unexpired, enforceable and has not been abandoned. Except as set forth in Schedule I, II or III, no registered Copyrights, Patents and Trademarks of a Grantor is the subject of any licensing or franchise agreement. No holding, decision or judgment has been rendered by any Governmental Authority which would limit, cancel or question the validity of any Copyright, Patent or Trademark and which could reasonably be expected to have a Material Adverse Effect. No action or proceeding is pending (i) seeking to limit, cancel or question the validity of any Copyright, Patent or Trademark, or (ii) which could reasonably be expected to have a Material Adverse Effect.

(j)     Vehicles. Schedule IV is a complete and correct list of all Vehicles owned or leased by each Grantor as of June 30, 2003.

(k)     Bank Accounts. All deposit, custody, money-market or other accounts (whether, in any case, time or demand or interest or non-interest bearing) maintained by any Grantor with any bank or any other financial institution are listed on Schedule V.

(l)     Payroll Accounts. All Payroll Accounts are listed on Schedule VIII.

Section 5.     Covenants. Each Grantor covenants and agrees with the Administrative Agent and the Lenders that, from and after the date of this Security Agreement until the Secured Obligations are paid in full and the Commitments have expired or been terminated:

(a)     Maintenance of Perfected Security Interests; Further Documentation; Pledge of Instruments and Chattel Paper. Each Grantor shall maintain the security interest created by this Security

N187178.1

10

TRANSCARE00230129

Agreement as a perfected security interest having at least the priority described in Section 4(b) hereof and shall defend such security interest against the claims and demands of all Persons whomsoever. At any time and from time to time, upon the written request of the Administrative Agent, and at the sole expense of the Grantors, each Grantor will promptly and duly execute and deliver such further instruments and documents and take such further action as the Administrative Agent may reasonably request for the purpose of obtaining or preserving the full benefits of this Security Agreement and of the rights and powers herein granted, including, without limitation, the filing of any financing or continuation statements under the Uniform Commercial Code in effect in any jurisdiction with respect to the Liens created hereby. Each Grantor also hereby irrevocably authorizes the Administrative Agent to file any such financing or continuation statement or amendment thereto without the signature of the Grantors to the extent permitted by applicable law. Any such financing statement may, at the option of the Administrative Agent, describe the property covered thereby and "all assets" or "all personal property" of such Grantor, or may use a similar description, but shall exclude the Excluded Property. A carbon, photographic or other reproduction of this Security Agreement shall be sufficient as a financing statement for filing in any jurisdiction. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any Instrument or Chattel Paper, such Instrument or Chattel Paper shall be immediately delivered to the Administrative Agent, duly endorsed in a manner satisfactory to the Administrative Agent, to be held as Collateral pursuant to this Security Agreement.

(b) Indemnification. Each Grantor agrees, jointly and severally, to pay, and to save the Administrative Agent and the Lenders harmless from, any and all liabilities, costs and expenses (including, without limitation, legal fees and expenses) (i) with respect to, or resulting from, any delay in paying, any and all excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral, (ii) with respect to, or resulting from, any delay in complying with any Requirement of Law applicable to any of the Collateral or (iii) in connection with any of the transactions contemplated by this Security Agreement. In any suit, proceeding or action brought by the Administrative Agent or any Lender under any Account or Contract for any sum owing thereunder, or to enforce any provisions of any Account or Contract, each Grantor will save, indemnify and keep the Administrative Agent and such Lender harmless from and against all expense, loss or damage suffered by reason of any defense, setoff, counterclaim, recoupment or reduction or liability whatsoever of the account debtor or obligor thereunder, arising out of a breach by any Grantor of any obligation thereunder or arising out of any other agreement, indebtedness or liability at any time owing to or in favor of such account debtor or obligor or its successors from any Grantor, except where the same is the direct result of the gross negligence or willful misconduct of the Administrative Agent or any Lender.

(c) Maintenance of Records. Each Grantor will keep and maintain at its own cost and expense satisfactory and complete records of the Collateral, including, without limitation, a record of all payments received and all credits granted with respect to the Accounts. Each Grantor will mark its books and records pertaining to the Collateral to evidence this Security Agreement and the security interests granted hereby. Upon the occurrence and during the continuance of an Event of Default, each Grantor shall turn over copies of books and records pertaining to the Collateral to the Administrative Agent or to its representatives during normal business hours at the request of the Administrative Agent.

(d) Right of Inspection. The Administrative Agent and the Lenders shall at all times, upon prior notice except in the case of a Default or Event of Default, have full and free access during normal business hours to all the books, correspondence and records of each Grantor, and the Administrative Agent and the Lenders or their respective representatives may examine the same, take extracts therefrom and make photocopies thereof, and each Grantor agrees to render to the Administrative Agent and the Lenders, at the Grantors' cost and expense, such clerical and other assistance as may be reasonably requested with regard thereto. The Administrative Agent and the Lenders and their respective representatives shall at all times also have the right to enter into and upon any premises of Grantor

N187178.1

11

TRANSCARE00230130

(subject to the requirements of any lessor of such premises, each Grantor hereby agreeing to use good faith efforts to assist the Administrative Agent and the Lenders in satisfying any such requirements) where any of the Inventory or Equipment is located for the purpose of inspecting the same, observing its use or otherwise protecting its interests therein.

(e)     <u>Compliance with Laws, etc</u>. Each Grantor will comply in all material respects with all Requirements of Law applicable to the Collateral or any part thereof or to the operation of such Grantor's business except to the extent that the failure to comply therewith would not, in the aggregate, have a Material Adverse Effect, and provided that each Grantor may contest any Requirement of Law in any reasonable manner which shall not, in the sole opinion of the Administrative Agent, adversely affect the Administrative Agent's or the Lenders' rights or the priority of its Liens on the Collateral.

(f)     <u>Limitation on Liens on Collateral</u>. Other than the Liens created hereby and other than as permitted pursuant to the Credit Agreement, no Grantor will create, incur or permit to exist any Lien or claim on or to the Collateral and each Grantor, will defend the Collateral against, and will take such other action as is necessary to remove, such Liens or claims, and will defend the right, title and interest of the Administrative Agent and the Lenders in and to any of the Collateral against the claims and demands of all Persons whomsoever.

(g)     <u>Limitations on Dispositions of Collateral</u>. No Grantor will sell, transfer, lease or otherwise dispose of any of the Collateral, or contract or enter into a legally binding commitment to do so except for (x) sales of Inventory in the ordinary course of its business and (y) so long as no Default or Event of Default has occurred and is continuing, the disposition in the ordinary course of business of property not material to the conduct of its business or (z) sales, transfers and other dispositions of Collateral permitted under Section 9.6 of the Credit Agreement.

(h)     <u>Limitations on Discounts, Compromises, Extensions of Accounts; Exercise of Rights; Notices</u>. No Grantor shall re-date any invoice or sale or make sales on extended dating beyond that customary in such Grantor's business or extend or modify any Account, except in the ordinary course of the Grantors' business when no Event of Default exists. If a Grantor becomes aware of any matter adversely affecting the collectibility of any Account or the account debtor therefor involving an amount greater than $250,000, including information regarding the account debtor's creditworthiness, such Grantor will promptly so advise the Administrative Agent. No Grantor shall accept any note or other instrument (except a check or other instrument for the immediate payment of money) with respect to any Account without the Administrative Agent's written consent, <u>provided</u> that the foregoing shall not prohibit Grantor from agreeing to payment plans with its account debtors in respect of Accounts less than $400,000 in the aggregate. If the Administrative Agent consents to the acceptance of any such instrument, it shall be considered as evidence of the applicable Account and not payment thereof and the applicable Grantor will promptly deliver such instrument to the Administrative Agent, endorsed by such Grantor to the Administrative Agent in a manner satisfactory in form and substance to the Administrative Agent. Without limiting the obligation of the Grantors to disclose ineligible Accounts pursuant to the Loan Documents, each Grantor promptly shall notify the Administrative Agent of all disputes and claims in excess of $500,000 with any account debtor, and agrees to settle, contest, or adjust such dispute or claim at no expense to the Administrative Agent or any Lender. No discount, credit or allowance shall be granted to any such account debtor without the Administrative Agent's prior written consent, except for discounts, credits and allowances made or given in the ordinary course of the Grantors' business when no Event of Default exists. The applicable Grantor shall send the Administrative Agent a copy of each credit memorandum in excess of $250,000 as soon as issued. At all times when an Event of Default exists, the Administrative Agent may settle or adjust disputes and claims directly with account debtors for amounts and upon terms which the Administrative Agent or the Required Lenders, as applicable, shall consider advisable and, in all cases, upon application of such amounts to the payment of the Secured Obligations

N187178.1

12

TRANSCARE00230131

the Administrative Agent will credit the loan accounts maintained by the Administrative Agent in respect of the Facilities as provided in the Credit Agreement with the net amounts received by the Administrative Agent in payment of any Accounts.

(i)     Maintenance of Equipment.  Each Grantor will maintain each item of Equipment in good operating condition, ordinary wear and tear and immaterial impairments of value and damage by the elements excepted, and will provide all maintenance, service and repairs necessary for such purpose, except that such Grantor's obligations pursuant to this Section 5(i) shall not extend to obsolete Equipment or Equipment no longer useful and necessary in its business.

(j)     Further Identification of Collateral.   Each Grantor will furnish to the Administrative Agent from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Administrative Agent may reasonably request, all in reasonable detail.

(k)     Changes in Locations, Name, etc.  No Grantor will (i) change the location of its jurisdiction of organization from that specified in Section 4(f) or remove its books and records concerning the billed Accounts from the locations specified in Section 4(c), (ii) permit any of the Inventory or Equipment to be kept at a location other than those listed on Schedule VI hereto (except, in the case of Vehicles, when such Vehicles (and any Equipment therein) are being used in the ordinary course of business), (iii) change its name, identity or corporate structure or (iv) reorganize under the laws of another jurisdiction, unless it shall have given the Administrative Agent at least 30 days prior written notice thereof (which written notice shall be deemed to supplement Schedules VI and VII, as applicable).

(l)     Patents, Trademarks and Copyrights.

(i)     Each Grantor (either itself or through licensees) will (i) continue to use each Material Trademark on each and every trademark class of goods applicable to its current line as reflected in its current catalogs, brochures and price lists in order to maintain such Material Trademark in full force free from any claim of abandonment for non-use, (ii) maintain as in the past the quality of products and services offered under such Material Trademark, (iii) employ such Material Trademark with the appropriate notice of registration, and (iv) not (and not permit any licensee or sublicensee thereof to) do any act or knowingly omit to do any act whereby any Material Trademark may become invalidated.

(ii)     No Grantor will do any act, or omit to do any act, whereby any registered Material Patent may become abandoned or dedicated.

(iii)     Each Grantor (either itself or through licensees) will, for each work covered by a Material Copyright, continue to publish, reproduce, display, adopt and distribute the work with appropriate copyright notice as necessary and sufficient to establish and preserve such Grantor's material rights under all applicable copyright laws.

(iv)     Each Grantor will notify the Administrative Agent and the Lenders immediately if it knows, or has reason to know, that any registered Material Patent, Material Trademark or Material Copyright or any application or registration relating to any thereof may become abandoned, lost or dedicated, or of any adverse determination or development (including, without limitation, the institution of, or any such determination or development in, any proceeding in the United States Patent and Trademark Office, the United States Copyright Office or any court or tribunal or similar office in any country) regarding such Grantor's ownership of any Material

A3558

TRANSCARE00230132

Patent, Material Trademark or Material Copyright or its right to register the same or to keep and maintain the same.

(v)     Whenever any Grantor, either by itself or through any agent, employee, licensee or designee, shall file an application for the registration of any Material Patent or Material Trademark with the United States Patent and Trademark Office or any similar office or agency in any other country or any political subdivision thereof, or shall file an application for registration of any Material Copyright with the United States Copyright Office or any similar office or agency in any other country or any political subdivision thereof, such Grantor shall report such filing to the Administrative Agent within fifteen Business Days after the last day of the fiscal quarter in which such filing occurs.

(vi)     Each Grantor shall from time to time execute and deliver any and all agreements, instruments, documents, and papers as the Administrative Agent may request (including, without limitation, one or more Notice of Security Interest in Patents attached hereto as Annex A, one or more Memorandum of Security Agreement - Trademarks attached hereto as Annex B and one or more Copyright filing documents attached hereto as Annex C, in each case with appropriate completions and schedules) to evidence the Administrative Agent's security interest for the ratable benefit of the Lenders in any Material Patent, Material Trademark or Material Copyright and the goodwill and general intangibles of the Grantors relating thereto or represented thereby, and each Grantor hereby constitutes the Administrative Agent its attorney-in-fact to execute and file all such writings for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed, such power being coupled with an interest is irrevocable until the Secured Obligations are paid in full and the Commitments are terminated.

(vii)     Each Grantor will take all reasonable and necessary steps, including, without limitation, in any proceeding before the United States Patent and Trademark Office or the United States Copyright Office, or any similar office or agency in any other country or any political subdivision thereof, to maintain and pursue each application (and to obtain the relevant registration) and to maintain each registration of the Material Patents, Material Trademarks and Material Copyrights (to the extent registered or as to which application for registration is made), including, without limitation, timely filing of applications for renewal, affidavits of use and affidavits of incontestability and payment of maintenance fees.

(viii)     In the event that any registered Material Patent, Material Trademark or Material Copyright included in the Collateral is infringed, misappropriated or diluted by a third party, each Grantor shall promptly notify the Administrative Agent and the Lenders after it learns thereof and, at the Grantors' sole expense, shall, unless the Grantors shall reasonably determine that such Patent, Trademark or Copyright is not of sufficient economic value to the Grantors as considered against the anticipated cost of infringement litigation, promptly sue for infringement, misappropriation or dilution, to seek injunctive relief where appropriate and to recover any and all damages for such infringement, misappropriation or dilution, or take such other actions as the Grantors shall reasonably deem appropriate under the circumstances to protect such Material Patent, Material Trademark or Material Copyright.

(ix)     Upon and during the continuance of an Event of Default and at the reasonable request of the Administrative Agent, each Grantor shall use its reasonable efforts to obtain all requisite consents or approvals by the licensor of each Material Copyright License, Material Patent License or Material Trademark License to effect the assignment of all of such Grantor's rights, title and interest thereunder to the Administrative Agent or its designee.

N187178.1

14

TRANSCARE00230133

(m)   <u>Vehicles</u>.   Each Grantor will maintain each Vehicle useful and necessary in its business, or having a material economic value (if any), in good operating condition, ordinary wear and tear and immaterial impairments of value and damage by the elements and casualty losses excepted, and will provide all maintenance, service and repairs necessary for such purpose.

(n)   <u>Inventory</u>.   None of the Inventory of any Grantor shall be evidenced by a warehouse receipt.

(o) <u>Commercial Tort Claims</u>.   If any Grantor shall at any time hold or acquire a commercial tort claim with a potential net monetary recovery by Grantors in excess of $500,000, such Grantor shall immediately notify the Administrative Agent in a writing signed by such Grantor of the particulars thereof, and granting to the Administrative Agent, for the benefit of the Lenders, a security interest therein and in the proceeds thereof, all upon the terms of this Agreement, such writing to be in form and substance satisfactory to the Administrative Agent.

(p) <u>Letter-of-Credit Rights</u>.   If any Grantor is or at any time hereafter becomes a beneficiary under a letter of credit in excess of $500,000, such Grantor shall promptly notify the Administrative Agent thereof and, if requested by the Administrative Agent, shall (pursuant to an agreement satisfactory to the Administrative Agent in form and substance) either (i) arrange for the issuer and any confirming bank or other nominated person of such letter of credit to consent to an assignment to the Administrative Agent, for the benefit of the Lenders, of the proceeds of the letter of credit or (ii) arrange for the Administrative Agent to become the transferee beneficiary of the letter of credit, the Administrative Agent agreeing, in each case, that the proceeds of such letter of credit shall be applied as required for Proceeds of Collateral pursuant to the Security Documents.

Section 6.   <u>Agent's Appointment as Attorney-in-Fact</u>.

(a)   <u>Powers</u>.   Each Grantor hereby irrevocably constitutes and appoints the Administrative Agent and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of each Grantor and in the name of each Grantor or in its own name, from time to time in the Administrative Agent's discretion, for the purpose of carrying out the terms of this Security Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Security Agreement, and, without limiting the generality of the foregoing, each Grantor hereby gives the Administrative Agent the power and right, on behalf of each Grantor, without notice to or assent by any Grantor, to do the following:

(i)   in the name of each Grantor or its own name, or otherwise, to take possession of and endorse and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under any Account, Instrument, General Intangible or Contract or with respect to any other Collateral and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by the Administrative Agent for the purpose of collecting any and all such moneys due under any Account, Instrument, General Intangible or Contract or with respect to any other Collateral whenever payable;

(ii)   to pay or discharge taxes and Liens levied or placed on or threatened against the Collateral, to effect any repairs or any insurance called for by the terms of this Security Agreement and to pay all or any part of the premiums therefor and the costs thereof;

(iii)   in the case of any Patent, Trademark or Copyright, to execute and deliver any and all agreements, instruments, documents and papers as the Administrative Agent may request to

TRANSCARE00230134

evidence the Administrative Agent's and the Lenders' security interest in such Patent, Trademark or Copyright and the goodwill and general intangibles of the Grantors relating thereto or represented thereby;

(iv)      to execute, in connection with any sale provided for in Section 9 hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral; and

(v)      (A) to direct any party liable for any payment under any of the Collateral to make payment of any and all moneys due or to become due thereunder directly to the Administrative Agent or as the Administrative Agent shall direct; (B) to ask or demand for, collect, receive payment of and receipt for. any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any Collateral; (C) to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications, notices and other documents in connection with any of the Collateral; (D) to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any thereof and to enforce any other right in respect of any Collateral; (E) to defend any suit, action or proceeding brought against any Grantor with respect to any Collateral; (F) to settle, compromise or adjust any such suit, action or proceeding and, in connection therewith, to give such discharges or releases as the Administrative Agent may deem appropriate; (G) to assign any Patent or Trademark (along with the goodwill of the business to which any such Trademark pertains), throughout the world for such term or terms, on such conditions, and in such manner, as the Administrative Agent shall in its sole discretion determine; and (H) generally, to sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though the Administrative Agent were the absolute owner thereof for all purposes, and to do, at the Administrative Agent's option and the Grantors' expense, at any time, or from time to time, all acts and things which the Administrative Agent deems necessary to protect, preserve or realize upon the Collateral and the Administrative Agent's, Liens thereon for the ratable benefit of the Lenders and to effect the intent of this Security Agreement, all as fully and effectively as the Grantors might do.

Anything in this Section 6(a) to the contrary notwithstanding, the Administrative Agent agrees that it will not exercise any rights under the power of attorney provided for in this Section unless an Event of Default has occurred and is continuing.

Each Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and are irrevocable.

(b)      No Duty on Agent's or Lenders' Part.  The powers conferred on the Administrative Agent and the Lenders hereunder are solely to protect the Administrative Agent's and the Lenders' interests in the Collateral and shall not impose any duty upon the Administrative Agent or any Lender to exercise any such powers. Each of the Administrative Agent and the Lenders shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither they nor any of their officers, directors, employees or agents shall be responsible to any Grantor for any act or failure to act hereunder, except for its own gross negligence or willful misconduct.

Section 7.      Performance by Agent of Borrower's Obligations.  If any Grantor fails to perform or comply with any of its agreements contained herein, the Administrative Agent, at its option, but without any obligation to do so, may itself perform or comply, or otherwise cause performance or compliance, with such agreement. The expenses of the Administrative Agent incurred in connection with

N187178.1

TRANSCARE00230135

such performance or compliance, together with interest thereon at a rate per annum 2.0% above the rate applicable to Revolving Credit Loans which are Base Rate Loans, shall be payable, jointly and severally, by the Grantors to the Administrative Agent on demand and shall constitute Secured Obligations secured hereby.

Section 8.    Remedies.  If an Event of Default shall occur and be continuing, the Administrative Agent, on behalf of the Lenders, may exercise, in addition to all other rights and remedies granted to it in this Security Agreement and in any other instrument or agreement securing, evidencing or relating to the Secured Obligations, all rights and remedies of a secured party under the Code.  Without limiting the generality of the foregoing, the Administrative Agent, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or as provided in the Credit Agreement) to or upon any Grantor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, lease, assign, give option or options to purchase, or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, at any exchange, broker's board or office of the Administrative Agent or any Lender or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk.  The Administrative Agent or any Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in any Grantor, which right or equity is hereby waived or released.  Each Grantor further agrees, at the Administrative Agent's request, to assemble the Collateral and make it available to the Administrative Agent at places which the Administrative Agent shall reasonably select, whether at any Grantor's premises or elsewhere.  The Administrative Agent shall apply the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Administrative Agent and the Lenders arising out of the exercise by the Administrative Agent hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Secured Obligations, in such order as the Administrative Agent may elect, and only after such application and after the payment by the Administrative Agent of any other amount required by any provision of law, including, without limitation, Section 9-615 of the Code, need the Administrative Agent account for the surplus, if any, to the Grantors.  To the extent permitted by applicable law, each Grantor waives all claims, damages and demands it may acquire against the Administrative Agent or any Lender arising out of the exercise by the Administrative Agent or any Lender of any of its rights hereunder.  If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least 10 days before such sale or other disposition.  Each Grantor shall remain liable for any deficiency if the proceeds of any sale or other disposition of the Collateral are insufficient to pay the Secured Obligations and the fees and disbursements of any attorneys employed by the Administrative Agent or any Lender to collect such deficiency.

Section 9.    Grant of License to Use Patent, Trademark and Copyright Collateral.  For the purpose of enabling the Administrative Agent to exercise rights and remedies under Section 9 hereof at such time as the Administrative Agent shall be lawfully entitled to exercise such rights and remedies, each Grantor hereby grants to the Administrative Agent an irrevocable, non-exclusive license (exercisable without payment of royalty or other compensation to any Grantor) to use, license or sublicense any of the Copyrights, Patents and Trademarks, now owned or hereafter acquired by any Grantor, and wherever the same may be located, and including in such license reasonable access to all

N187178.1

TRANSCARE00230136

media in which any of the licensed items may be recorded or stored.  The use of such license by the Administrative Agent shall be exercised, at the option of the Administrative Agent for any purpose appropriate in connection with the exercise of remedies hereunder, only upon the occurrence and during the continuance of an Event of Default, provided that any license, sublicense or other transaction entered into by the Administrative Agent in accordance herewith shall be binding upon each Grantor notwithstanding any subsequent cure of an Event of Default.  The Administrative Agent agrees to apply the net proceeds received from any license as provided in Section 8 hereof.

Section 10.    Limitation on Duties Regarding Presentation of Collateral.    The Administrative Agent's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Code or otherwise, shall be to deal with it in the same manner as the Administrative Agent deals with similar property for its own account. None of the Administrative Agent nor any Lender nor any of their respective directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of any Grantor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.  The powers conferred on the Administrative Agent and the Lenders hereunder are solely to protect the Administrative Agent's and the Lenders' interests in the Collateral and shall not impose any duty upon the Administrative Agent or any Lender to exercise any such powers. The Administrative Agent and the Lenders shall be accountable only for amounts that they actually receive as a result of the exercise of such powers, and neither they nor any of their officers, directors, employees or agents shall be responsible to any Grantor for any act or failure to act hereunder, except for their own gross negligence or willful misconduct.

Section 11.    Powers Coupled with an Interest.  All authorizations and agencies herein contained with respect to the Collateral are irrevocable and powers coupled with an interest.

Section 12.    Notices.  Notices, requests and demands to or upon the Administrative Agent or any Grantor hereunder shall be effected in the manner set forth in Section 12.2 of the Credit Agreement.

Section 13.    Authority of Administrative Agent.  Each Grantor acknowledges that the rights and responsibilities of the Administrative Agent under this Security Agreement with respect to any action taken by the Administrative Agent or the exercise or non-exercise by the Administrative Agent of any option, voting right, request, judgment or other right or remedy provided for herein or resulting or arising out of this Security Agreement shall, as between the Administrative Agent and the Lenders, be governed by the Credit Agreement and by such other agreements with respect thereto as may exist from time to time among them, but, as between the Administrative Agent and the Grantors, the Administrative Agent shall be conclusively presumed to be acting as agent for the Lenders with full and valid authority so to act or refrain from acting, and no Grantor shall be under any obligation, or entitlement, to make any inquiry respecting such authority.

Section 14.    Severability.  Any provision of this Security Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

N187178.1

18

TRANSCARE00230137

Section 15.   <u>Paragraph Headings</u>.   The paragraph headings used in this Security Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

Section 16.   <u>No Waiver; Cumulative Remedies</u>. None of the Administrative Agent, nor any Lender shall by any act (except by a written instrument pursuant to Section 18 hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of the Administrative Agent or any Lender, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Administrative Agent or any Lender of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Administrative Agent or such Lender would otherwise have on any future occasion. The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

Section 17.   <u>Waivers and Amendments; Successors and Assigns; Governing Law</u>. None of the terms or provisions of this Security Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by (i) each Grantor and (ii) the Lenders required to approve the same pursuant to Section 12.1 of the Credit Agreement or the Administrative Agent, with the written consent of such Lenders, as required pursuant to Section 12.1 of the Credit Agreement. This Security Agreement shall be binding upon the successors and assigns of each Grantor and shall inure to the benefit of the Administrative Agent and the Lenders and their respective successors and assigns. This Security Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

Section 18.   <u>Additional Grantors</u>. Each Subsidiary of the Borrower which is required pursuant to Section 8.10 of the Credit Agreement to become party to this Security Agreement shall become a Grantor for all purposes of this Security Agreement upon execution and delivery by such Subsidiary of a Supplement in the form of Annex E hereto.

[SIGNATURE PAGE FOLLOWS]

TRANSCARE00230138

IN WITNESS WHEREOF, each Grantor has caused this Security Agreement to be duly executed and delivered as of the date first above written.

TRANSCARE CORPORATION

TRANSCARE NEW YORK, INC.

TRANSCARE PENNSYLVANIA, INC.

TRANSCARE MARYLAND, INC.

TRANSCARE HARFORD COUNTY, INC.

TRANSCARE WESTCHESTER, INC.

TC AMBULANCE CORPORATION

TC AMBULANCE NORTH, INC.

TC AMBULANCE GROUP, INC.

TRANSCARE MANAGEMENT SERVICES, INC.

TCBA AMBULANCE, INC.

TC HUDSON VALLEY AMBULANCE CORP.

TC BILLING AND SERVICES CORP.

By: _____
    Name:  Todd L. Miller
    Title:   Vice President

**A3565**