# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

_____

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

_____

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY-
ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

**APPENDIX TO BRIEF FOR THE APPELLANTS**

# Volume XXIX- A3650-A3674

| | |
|---|---|
| **From:** | Lynn Tilton <Lynn.Tilton@PatriarchPartners.Com> |
| **Sent:** | Wednesday, December 16, 2015 10:46 PM |
| **To:** | Michael Greenberg; Lynn Tilton |
| **Cc:** | Jean Luc Pelissier; Brian Stephen; Randy Jones |
| **Subject:** | RE: Transcare |

You need to call me.



Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Michael Greenberg
**Sent:** Wednesday, December 16, 2015 9:45 PM
**To:** Lynn Tilton
**Cc:** Jean Luc Pelissier; Brian Stephen; Randy Jones
**Subject:** Re: Transcare

That was not my understanding from the discussion with John and Melissa today.  They had an issue with Mark over the past due payroll taxes and the past borrowing base issued and were asking for the past due payroll taxes to be cleared up in order to free up the line.

Michael

On Dec 16, 2015, at 9:39 PM, Lynn Tilton <Lynn.Tilton@PatriarchPartners.Com> wrote:

> I cannot believe how poorly this is being handled to send up here.  This is more even a bigger problem that will lead to disaster.  How could this be the outcome of your converdations.
>
>
> Lynn Tilton
> Chief Executive Officer
> Patriarch Partners, LLC
> One Broadway, 5th Floor
> New York, NY 10004

**DX   92**

LaMonica v. Tilton, et al.
18-01021-smb

**A3650**

Confidential

PP-TRBK0075262

212-825-6772
212-825-2038 FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Kurt.Marsden@wellsfargo.com
**Sent:** December 16, 2015 8:52 PM
**To:** Lynn.Tilton@PatriarchPartners.Com
**Subject:** Transcare

Lynn,

I understand that your team updated you on this situation over the weekend and you made a determination to sell Transcare.  Additionally, I learned that the Patriarch team is working to determine how much money the company needs in order to reach the completion of a sale process, and considering injecting some capital.  Both of these actions were viewed as positive developments from our perspective.  Unfortunately, we discovered today that the company is significantly behind on payroll taxes to the tune of $1.2 million not the $400k that the CFO represented to my team earlier today.  This discovery is highly concerning especially since we have been clear that this is an area of sensitivity for us, and it frankly appears that management has not been completely forthright.  [Non-Responsive] [Non-Responsive] we are highly concerned about the company's ability to survive until a sale is completed.  I appreciate that this is a difficult situation, but it feels like we are nearing the boiling point.  It would be very helpful if we could get clarity on how much financial support Patriarch is considering providing, and how soon the company could have access to that money since the company appears to have immediate liquidity challenges.  Additionally, it would be helpful to understand your thoughts on potentially running the sale through a bankruptcy process. To be clear, our desire is to exit this credit facility and our appetite to support the business outside a process that leads to an exit is extremely limited.  In light of this fact pattern, we need to discuss this situation at your earliest convenience.   I understand from your team that you are tied up today and tomorrow, but perhaps tomorrow, we can find a mutually agreeable window to talk.

Respectfully,

Kurt R. Marsden

Group Head - Corporate Finance Group

Wells Fargo Capital Finance | 2450 Colorado Avenue, Suite 3000 West | Santa Monica, CA 90404
Tel 310-453-7345 | Cell 818-404-2581 | Fax 866-358-0779

kurt.marsden@wellsfargo.com

This message may contain confidential and/or priviledged information.  If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein.  If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message.  Thank you for your cooperation.

**A3651**

Confidential                                                    PP-TRBK0075263

**From:** Lynn Tilton
**Sent:** Friday, December 18, 2015 9:57 AM
**To:** Michael Greenberg
**Subject:** Transcare

Please get me transactions and bankers who did them.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

1

**A3652**

DX   96

LaMonica v. Tilton, et al.
18-01021-smb

PP-TRBK0001414

| | |
|---|---|
| **From:** | Kurt.Marsden@wellsfargo.com |
| **Sent:** | Monday, December 21, 2015 10:33 PM |
| **To:** | Lynn Tilton |
| **Subject:** | RE: Transcare |

Dear Lynn,

I very much appreciate that we have been keeping in touch on these matters and having an open and frank dialogue.  Like you, I have found Transcare very troubling.  We certainly appreciate your support of Transcare, as I know that you appreciate what we have done.  However, given the current circumstances, as an asset-based lender, it is critical for Wells Fargo to keep within the agreed-upon borrowing base to manage our exposure in this credit.

While there are various other issues to be worked out, in view of your email from this past Sunday and our relationship, I want to be clear with you concerning the right of Wells Fargo to set up reserves, so as to be sure that we have an understanding as to what I tried to convey in our prior conversations.  If some event occurs that may adversely affect our ability to get repaid, or perhaps we receive inaccurate or stale information concerning our collateral or the company, we will need to address it in some manner with a reserve being a possible outcome.  We will act within the scope of our agreements as we have all along and will continue to do, but in view of the position of this company (i.e., periodic liquidity crisis events, attachments of bank accounts that hold our collateral and defaults that have occurred), we cannot commit to give you any specific amount of advance notice before doing so.  Nevertheless, I remain committed to maintaining an open line of communication with you and alerting you promptly when issues arise.

I value our relationship, and want to be direct with you, as I have all along.  I understand that you want to make an informed decision about putting money into Transcare, and we certainly understand the company's need for liquidity to get to a sale.  But, at the same time, Wells Fargo cannot be in a position where we are unable to react to circumstances that may arise that are out of our control and jeopardize our recovery or otherwise create more exposure beyond our collateral values.  This is consistent with what I have said to you before, and what you already know given your extensive experience with how asset-based lending works.

I understand that our teams met for a couple of hours this afternoon and covered a fair amount of ground and it was a productive meeting.  No doubt you will certainly be receiving a full report.  I know that this issue is very challenging for both Patriarch and Wells Fargo so I would welcome further dialog though I recognize that Wells Fargo's positon likely creates a decision point for you.  I'm available tomorrow if you would like to talk.

Kurt

---

**From:** Lynn Tilton [mailto:Lynn.Tilton@PatriarchPartners.Com]
**Sent:** Sunday, December 20, 2015 8:15 AM
**To:** Marsden, Kurt
**Subject:** Transcare

Dear Kurt,

1

| DX   98 |
|---|
| LaMonica v. Tilton, et al.<br>18-01021-smb |

Confidential                                                                 PP-TRBK0018258

I have lost a lot of sleep over Transcare over the last few nights.  I am so deeply troubled by so much of what has happened here. But I am highly concerned that the 2 week forbearance language in no way reflected what you and I spoke to.  Rather it became a toothless nothing which allows you to do whatever you choose with a weak effort to reach out before you do so.  If the bullying is to continue and there is no intent to work together through a sale, then I really cannot in good faith put any more funding into the company.  I know this might not be coming from you **Non-Responsive**   One thing is said and actions show a very different intent.  I always do what I say and I will always lose in a situation where the intent is not mutual.  I funded in good faith and then received an agreement that in no way reflected what you and spoke to.  If I cannot get reasonableness in a 2 week agreement then I fear there will be no way to come to agreement over many months.  We can let the teams talk tomorrow but I wanted to give you a heads up on where I stand.  If I cannot trust that we will work together, then it may be you should work alone.
Lynn



Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

2

**A3654**

Confidential

| | |
|---|---|
| **From:** | Michael Greenberg |
| **Sent:** | Wednesday, December 30, 2015 5:26 PM |
| **To:** | Lynn Tilton |
| **Cc:** | Jean Luc Pelissier; Brian Stephen |
| **Subject:** | TransCare - update on Wells Fargo discussions (privileged and confidential) |

Privileged and confidential

Lynn,

Below is an update on the Wells Fargo discussions.

**Wells Fargo longer term agreement**
We have continued discussions with Wells Fargo to work toward a framework around a longer term agreement.

Due to challenges for the company in terms of getting any lease financing (even if for a nominal number of vehicles) given the short ABL maturity.  We discussed a possibility of optionality with regard to maturity to the extent performance exceeds a threshold (i.e., fixed charge coverage of 1:1).  John said that they would consider the possibility.

**Budget**
We continue to work with the company toward a 2016 budget.  The management team has been working on an interactive budget that allows for the adjustment of certain variables (we will be meeting with them tomorrow).  Finalization of budget is a key component to the longer term agreement.

Below are some revised terms and the timeline stemming from the discussions.

**Timeline Discussions**
- Wells Fargo initially mentioned a 5 – 6 month time frame but we requested 9 months through multiple discussions.  Wells Fargo has countered with a 7-month time frame.

- Below is our suggested timeline with their counter (however, we continue to push back for more time and a provision to cover any closing conditions incl. license or contract transfers).

| Item | PPAS Date | Wells Fargo counter |
|---|---|---|
| Budget to be prepared and reviewed by Advisor | 01/15/16 | Agreed |
| Investment banker hired (WF wants to be apprised of terms of the engagement) | 02/15/16 | 01/31/16 |
| Information Memorandum completed | 03/31/16 | 02/28/16 |
| Receipt of LOIs | 05/31/16 | 05/15/16 |
| Purchase/Sale Agreement | 07/31/16 | 06/30/16 |
| Sale closing | 09/30/16 | 07/31/16 |

**Other terms discussed (a few terms have been added / clarified since our prior discussion)**

1

**A3655**

DX   100

LaMonica v. Tilton, et al.
18-01021-smb

PP-TRBK0106767

- **LOI and APA** – Wells Fargo would like to be kept apprised and the opportunity to review LOI and APA (not veto rights per John Husson) to confirm that is in a form and substance satisfactory to them.  Sensitive issues mentioned are priority of repayment (discussed below), payment at closing with no term out, discounts, indemnification, trailing liabilities.
    - WF would provide a 1 week cure period to the extent there is an issue on the LOI or APA.
- **Financial advisor** (CFO/CRO) – To be agreed upon by both Patriarch Partners and WF.  I will update separately on the various consultants reached out to.
- **Open to extension of short-term forbearance beyond January 8th** if long-term agreement not finalized by then (would require Wels Fargo internal approval).
- **No financial covenants.**
- **Budget** – Company would be held to a certain variance off of the budget (revenue, expenses, projected availability).  The variance and amounts would be determined after review of the budget.
- **Covenant** – Company meeting critical expenses including maintaining insurance, payrolls, payroll tax payments.
- **Allocation of Proceeds and Priority of Repayment** - Wells Fargo would also want confirmation that WF would be paid out first (mentioned that WF has ample collateral to cover its outstanding).
- **Patriarch Partners to provide an amount $TBD per the Budget.**

Please let us know if you have any comments or questions.

Thank you,
Michael

Michael S. Greenberg
Patriarch Partners
One Broadway, 5th Floor
New York, NY 10004
Direct: 646-723-7657
Fax:  212-825-2038
Email: michael.greenberg@patriarchpartners.com
www.patriarchpartners.com

A3656

Confidential

PP-TRBK0106768

# CONSULTING AGREEMENT

CONSULTING AGREEMENT, dated as of January 7, 2016 (this Agreement"), by and between TransCare Corporation with its principal place of business at 1 Metrotech Center, Brooklyn, NY 11201 ("TransCare" or the "Company") and Carl Marks Advisory Group LLC, with its principal place of business at 900 Third Avenue, New York, NY 10022 ("CMAG").

WHEREAS, TransCare desires to engage the consulting services of CMAG, subject to and on the terms and conditions hereinafter set forth; and

WHEREAS, CMAG has agreed to provide such consulting services subject to and on such terms and conditions.

NOW, THEREFORE, in consideration of the above premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Engagement**:   TransCare engages CMAG, and CMAG hereby agrees to serve TransCare, as consultant and to provide the services described in Section 2 hereof (the "Engagement").   Mark L. Claster and Marc L. Pfefferle, Partners of CMAG, will serve as the project partners on the Engagement.  Messrs. Claster and Pfefferle shall supervise the Engagement with whatever additional resources from CMAG are reasonably required to perform the Engagement.  TransCare understands and acknowledges that CMAG and Messrs. Claster and Pfefferle have and will continue to have other engagements during the term of this Agreement and the total combined time of Messrs. Claster and Pfefferle will be an average of one (1) business day per week.  For the avoidance of doubt, if Messrs. Claster or Pfefferle combined spend an average of one (1) day a week on this Engagement then they will have met their obligation under this Agreement.

2. **Scope**: CMAG will report directly to TransCare's Board of Directors (the "Board") or its authorized representatives and will assist TransCare by providing and overseeing the implementation process of recommendations intended to manage, secure, improve its financial performance and liquidity.  In that connection, CMAG will provide Carl Landeck, a Managing Director to perform in the role of Interim Chief Financial Officer and provide the associated services therewith.  In addition, CMAG will also provide

1

DX   106

LaMonica v. Tilton, et al.
18-01021-smb

Confidential                                                                    PP-TRBK0043438

Jonathon Killion to deliver financial advisory assistance in conjunction with Messrs. Mark L. Claster and Marc L. Pfefferle who will provide CMAG Partner oversight; such services shall include:

- Perform normal duties of the position of TransCare CFO, including fulfilling reporting requirements of the Company's lenders;
- In conjunction with TransCare's CEO, oversee overall efforts to improve performance of the Company;
- Analyze the Company's financial and capital needs in detail including all significant underlying assumptions;
  - o Review past performance and current financial trends
  - o Review revenue and margin assumptions
  - o Review cost assumptions including current run rates, cost reduction programs already in progress, prospective cost reduction programs, etc.
  - o Review balance sheet and liquidity assumptions
- As necessary, refine the Company's 13-week cash flow forecasts to improve accuracy in forecasting liquidity;
- Review and update as necessary existing financial projections and internal budget, and perform normal reporting of current performance, variances, monthly and quarterly financials;
- Review the Company's critical financial functions and process, and provide recommendations for improvement;
- Assist with further identification of actionable opportunities to improve profitability, cost related or otherwise, intended to improve the Company's performance;
- Oversee implementation process of business changes identified above;
- Communicate, interface and negotiate as necessary with the Company's creditors, vendors, NY State Insurance Fund, and stakeholders;
- Perform other tasks and duties related to this engagement as are reasonably directed by the Board or its authorized representatives and acceptable to CMAG.

3. **Term**:  The term of this Agreement (the "Term") shall commence as of the date of this Agreement and shall continue for a minimum period of three (3) months unless canceled with or without cause by CMAG or, after the expiration of the initial three (3) month period, with or without cause by either party on ten (10) business days prior written notice.  Upon termination, any compensation and expenses owing to CMAG pursuant to Sections 4 and 5 below shall be immediately due and payable.

2

Confidential

PP-TRBK0043439

4. **Compensation**: TransCare shall pay CMAG for its consulting services a fixed fee of $135,000 per monthly period, or for any partial month the pro rata portion thereof, to perform the services as outlined in Section 2 above. TransCare shall pay such fixed fee in advance each month, beginning upon the execution of this Agreement and within two (2) business days of the beginning of each subsequent monthly period in which consulting services are to be provided; provided, however, that if the Engagement is terminated prior to the end of any month, CMAG shall only be entitled to the pro rata portion of the fees paid for services actually provided during such month and shall repay TransCare the balance of the fees paid for such month. CMAG shall also receive a retainer from TransCare of $135,000 upon the execution of this Agreement to be applied against unpaid fees and expenses, if any. Any unused portion of the retainer shall be returned to TransCare at the completion of CMAG's services under this Agreement. CMAG will submit consulting service fee invoices for each payment due. TransCare understand and agrees that if any invoice is not paid in accordance with the terms of this Section 4, CMAG shall have the right to immediately cease providing services under, and may terminate, this Agreement.

5. **Expenses**: CMAG shall be entitled to reimbursement for all reasonable expenses incurred by it in the performance of its duties (the "Expenses") upon presentation of appropriate documentation therefore. The Expenses shall include, but not be limited to, transportation of any of CMAG personnel, employees or associates on business related to the Engagement, cost of hotels, meals, research, etc. Such Expenses shall also include, but not be limited to, all reasonable legal expenses incurred by CMAG in connection with the performance of the Engagement. All Expenses will be reimbursed by TransCare upon receipt of invoices therefore, which shall be submitted promptly after the end of each week in which CMAG renders services.

6. **Indemnification**: TransCare will indemnify CMAG and hold it harmless from all losses, claims, damages, and judgments against CMAG directly arising from any acts or omissions, and all decisions made, by CMAG (other than as a result of CMAG's gross negligence or willful misconduct) while performing services for TransCare pursuant to the Engagement, including reasonable attorneys' fees actually and necessarily incurred in connection with the defense of any such claims based on CMAG's alleged acts, omissions or decisions (other than made or taken through gross negligence or willful misconduct), including any suit or proceeding relating thereto and any appeal therefrom and the costs

3

**A3659**

Confidential                                                              PP-TRBK0043440

of any settlement thereof ("Claim"), provided that (i) TransCare shall engage counsel and advisors (which counsel and advisors shall be reasonably acceptable to CMAG) and direct such counsel and advisors in connection with any matters giving rise to a Claim for indemnification under this Section 6, (ii) TransCare shall have the right to settle, at its sole expense, any Claim providing for the payment of monetary damages without the consent of CMAG, and (iii) CMAG shall reimburse TransCare for any expenses incurred pursuant to this Section 6 if it is determined by a court of competent jurisdiction that the Claim resulted from CMAG's gross negligence or willful misconduct.  CMAG may, at its own expense, select counsel of its choosing and control the defense of any such Claim, but TransCare shall have the right to accept or reject any settlement of any Claim for which indemnification is sought by CMAG hereunder (which acceptance or rejection shall not be unreasonably withheld or delayed).  For purposes of this Section, "CMAG" includes its members, officers, directors, employees and/or agents, and CMAG's affiliates and each of their respective shareholders, members, officers, directors, employees and/or agents.

The provisions of this Section 6 shall survive the term of this Agreement.

**7.  Proprietary Work Product and Confidential Company Information:**  TransCare acknowledges and agrees that any work product including, without limitation, any information, advice, recommendations or other content of any reports, presentations or other communications produced by CMAG is for the sole use of TransCare and is not intended for distribution to, or to be relied upon by, any third party.

In addition, CMAG acknowledges and agrees that as a result of the services to be provided hereunder, the persons performing such services may acquire knowledge and information of TransCare and its affiliates that is of a secret and confidential nature.  CMAG further acknowledges and agrees that this information constitutes valuable property of TransCare generally not being disseminated or made known to persons or organizations outside TransCare at all, or if made known, being done so only under specific and restrictive conditions such as to ensure that it does not become readily available to the public, and also that confidential information of others may be received by TransCare with restrictions on its use and disclosure.  Accordingly, CMAG agrees that:

4

Confidential                                                    PP-TRBK0043441

(i)   CMAG and any person performing any services for CMAG hereunder shall not, during the Term nor at any time thereafter, disclose to anyone outside TransCare any secret or confidential information of TransCare or its subsidiaries or affiliates, except as authorized by TransCare.  TransCare information which is not readily available to the public shall be considered secret and confidential for the purpose of this Agreement and shall include, but not be limited to, information relating to TransCare and its subsidiaries and affiliates, customers, processes, products, apparatus, data, compounds, business studies, business and contracting plans, business procedures and finances;

(ii)  CMAG and any person performing any services for CMAG hereunder shall not, during the Term nor at any time thereafter, disclose to any other person or use secret or confidential information of others, which, to the knowledge of CMAG, has been disclosed to TransCare with restriction on the use or disclosure thereof, in violation of those restrictions.

(iii) CMAG and any person performing any services for CMAG hereunder shall not, during the Term nor at any time thereafter, disclose to TransCare or its affiliates or induce TransCare or its affiliates to use, without prior permission of the owner, any secret or confidential information or material of others of which CMAG is or may become possessed; and

(iv)  Notwithstanding the foregoing, CMAG and any person performing services for CMAG hereunder shall not be liable for the disclosure of information which may otherwise be deemed confidential hereunder:

   (a) if the information is in, or becomes part of, the public domain, other than by CMAG's disclosure of the information; or
   (b) if the information is furnished to a third party by TransCare without restriction on the third party's right to disseminate the information;
   (c) if the information is already of record in CMAG's files at the time of disclosure, or is disclosed to CMAG by a third party as a matter of right;
   (d) if the information is disclosed with TransCare's written approval; or
   (e) if the information is compelled to be revealed via subpoena, civil investigative demand or other judicial or administrative process.  In the event disclosure is required by subpoena, civil investigation, demand, or other judicial

5

**A3661**

Confidential                                                                   PP-TRBK0043442

administrative process, CMAG or its counsel, as applicable, will provide TransCare with reasonable advance notice and permit TransCare to comment on the form and content of the disclosure and/or interpose an objection to such disclosure.

The provisions of this Section 7 shall survive for a period of twenty-four (24) months.

Notwithstanding anything to the contrary contained herein, during the term of the Engagement, CMAG may disclose information about TransCare or the Engagement to Wells Fargo Bank, National Association.

8. **Client Cooperation; Reliance on Client's Information**:  TransCare acknowledges and agrees that the ability of CMAG to perform the Engagement requires the full cooperation and assistance of TransCare and its personnel.  Accordingly, TransCare covenants and agrees to furnish to CMAG all information, documents and other materials requested by CMAG and to make available to CMAG for meetings, conference calls and otherwise all personnel designated by CMAG to enable CMAG to receive on a timely basis, in writing and verbally, all information requested by CMAG related to the Engagement under this Agreement.  TransCare acknowledges and agrees that CMAG, in performance of the Engagement, will be relying on the truth, completeness and accuracy of the written documentation delivered and the verbal communications made by TransCare and its representatives to CMAG in connection with all matters relating to the Engagement.

9. **Covenant Not to Sue**:  TransCare hereby covenants and agrees that it will not, directly or indirectly, assert any claim, cause of action or liability, or otherwise bring any suit, proceeding or other legal action, against CMAG based upon or arising in respect of acts and omissions of, and decisions made by, CMAG in the performance of services pursuant to the Agreement except with respect to any claim resulting from the gross negligence or willful misconduct of CMAG.  For purposes of this Section, "CMAG" includes CMAG, its shareholders, members, officers, directors, employees and/or agents, and CMAG's affiliates and each of their respective shareholders, members, officers, directors, employees and/or agents.  The provisions of this Section 9 shall survive the term of this Agreement.

<center>6</center>

<center>A3662</center>

Confidential                                                                                          PP-TRBK0043443

10 **Conflicts of Interest**:  Nothing contained in this Agreement or otherwise, shall diminish or impair the right of CMAG to accept engagements, directly or indirectly, from TransCare's lender(s) or other professionals or other third parties provided such engagements do not involve the relationship of the lender(s), other professionals or other third parties to TransCare.

11. **Limitation on CMAG Liability**:  If CMAG fails to perform its obligations under or is otherwise in breach of or default under this Agreement, the maximum liability of CMAG in respect thereof shall be limited to an amount equal to the aggregate of all fees paid to CMAG pursuant to this Agreement.

12. **Representations**:  All parties represents and warrants to the other that: (a) it has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder, (b) this Agreement has been fully and duly authorized by all necessary action on and has been duly executed and delivered by it, and (c) constitutes a valid and binding agreement enforceable against it in accordance with its terms.

13. **Notices**:  All notices, requests, demands and other communications provided for by this Agreement shall be in writing addressed with respect to TransCare to: Board of Directors, TransCare Corporation, c/o Lynn Tilton, 1 Broadway, 5th Floor, New York, NY 10004, and with respect to CMAG to it at the address first set forth above.  All such notices and communications shall be transmitted by either facsimile (fax), personal or overnight courier delivery or by certified mail.  All notices, etc. shall be deemed given when received by the party to whom it is addressed.

14.  **Successors and Assigns**:  This Agreement shall inure to the benefit of, and be binding upon, each of TransCare and CMAG and their respective successors and assigns. No party may assign its rights and/or obligations under this Agreement without the written consent of the other, which consent shall not be unreasonably withheld or delayed.

15.  **Applicable Law**:  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without reference to principles of conflicts of law.

**A3663**

Confidential

PP-TRBK0043444

16. **Amendments**:  No amendment, modification, termination or waiver of any provision of this Agreement or consent to any departure by any party therefrom shall be effective unless in writing signed by the parties hereto, and, in any event, shall be effective only in the specific instance and for the specific purpose for which given.

17. **No Waiver; Cumulative Remedies**:  No failure or delay on the part of any party in exercising any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude the exercise of any other right, power or remedy.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

18. **Headings**:  Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

19. **Counterparts**:  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

20. **Waiver of Jury Trial**:  Each of the parties to this Agreement hereby waives its right to a jury trial with respect to any claim, action, suit or proceeding made or brought by one of the parties against the others in connection with or arising from this Agreement.

21. **Publication**:   CMAG may, at its expense, place an announcement in such newspapers, periodicals, electronic publications and other print as CMAG may choose stating that CMAG has acted as a consultant for the Company in connection therewith; provided, however, that no announcements or publications may be made without the prior consent of the Board.

22. **Independent Contractor Relationship**:   CMAG shall serve as an independent contractor to TransCare pursuant to the terms and conditions of this Agreement and this Agreement does not create and shall not be construed to create a relationship of principal and agent, fiduciary, joint venturer, co-partners, employer and employee, master and servant or any similar relationship between CMAG and TransCare and the parties hereto expressly deny the existence of any such relationship.

8

**A3664**

Confidential

PP-TRBK0043445

23. **Non-Solicitation**:  For a period of two-years from the date of this Agreement, or one-year following its termination, whichever is later; neither TransCare nor CMAG (or any of their respective Affiliates) will (A) solicit or cause to be solicited any employee, agent or representative of the other party with whom it (or any of its Affiliates) has had contact, or who became known to it (or any of its Affiliates) during the term of the Engagement; or (B) hire or cause to be hired any employee, agent or representative of either CMAG or TransCare, with whom either CMAG or TransCare, as applicable (or any of their respective Affiliates) has had contact, or who became known to it (or any of their respective Affiliates) during the term of the Engagement and who was, within twelve (12) months of such proposed hiring, an employee, agent or representative of CMAG or TransCare, as applicable.  As used herein, the term "Affiliates" shall mean and include any person, firm, corporation or other entity directly or indirectly controlling, controlled by or under common control with CMAG or TransCare, as applicable.  The restrictions set forth in this Section 23 shall not apply to employees of either party who seek employment and are hired by the other party in response to general advertisements for employment that are not specifically directed toward the employees of the other party.

9

**A3665**

Confidential

PP-TRBK0043446

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

**TRANSCARE CORPORATION**

By: _____
Name: Peter N. Wolf
Title: COO

**CARL MARKS ADVISORY GROUP LLC**

By: _____
Mark L. Claster
Partner

10

Confidential                                                                 PP-TRBK0043447

| | |
|---|---|
| **From:** | Ashley Gerczak |
| **Sent:** | Friday, January 15, 2016 4:07 PM |
| **To:** | Carlos Mercado |
| **Subject:** | RE: BB&T Wire - Approval Requested - Ark II Funding |

Thank you!

My best,

Ash


**Ashley Gerczak**
*Office of the CEO*
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
646.723.7660 (o)
[PII] (m)

---

**From:** Carlos Mercado
**Sent:** Friday, January 15, 2016 4:03 PM
**To:** Ashley Gerczak
**Subject:** FW: BB&T Wire - Approval Requested - Ark II Funding

FYI

Carlos E. Mercado
Controller

Patriarch Partners, LLC
One Broadway, 5th FL
New York, NY 10004
646-723-7632

---

**From:** Carlos Mercado
**Sent:** Friday, January 15, 2016 3:58 PM
**To:** Lynn Tilton
**Cc:** Accounting
**Subject:** BB&T Wire - Approval Requested - Ark II Funding

Lynn,

We have initiated a **BB&T wire from Ark II to PPAS** in the amount of **$1,172,757.53** for Transcare payments as follows:

1

> DX 112
>
> LaMonica v. Tilton, et al.
> 18-01021-smb

Confidential                                                                        PP-TRBK0015408

| | |
|---|---|
| Zurich | 221,122.00 |
| IPFS | 142,993.83 |
| AETNA | 334,802.76 |
| NEW YORK (NYSIF) | 473,838.94 |
| Total amount: | 1,172,757.53 |

**You will need to provide your PIN code for the wire to be released**.  Please let us know when it will be convenient to connect you with BB&T.

## For Value January 15, 2016

## BB&T Wire 1-800-682-9473

| From Account: | ███████████ – Ark II CLO 2001-1 Ltd |
|---|---|
| Transaction # | 11020 |
| Amount: | $1,172,757.53 |
| Bank: | Wells Fargo Bank N.A. |
| ABA: | 121000248 |
| Account #: | ████████████ |
| Account Name: | Patriarch Partners Agency Services, LLC<br>One Broadway<br>New York, NY 10004 |
| Ref: | Transcare |

**Carlos E. Mercado**
Controller

Patriarch Partners, LLC
One Broadway, 5th FL
New York, NY 10004
646-723-7632

2

**A3668**

PP-TRBK0015409

| | |
|---|---|
| **From:** | Lynn Tilton |
| **Sent:** | Friday, January 29, 2016 4:56 PM |
| **To:** | Renee Dudley |
| **Cc:** | Financial and Investment Law; Carlos Mercado |
| **Subject:** | RE: Approval to release funds from PPAS- TransCare  1/29/2016 (additional 690K wire) Amount released ** Privileged and Confidential** |

Thank you.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

**From:** Renee Dudley
**Sent:** Friday, January 29, 2016 4:55 PM
**To:** Lynn Tilton
**Cc:** Financial and Investment Law; Carlos Mercado
**Subject:** RE: Approval to release funds from PPAS- TransCare 1/29/2016 (additional 690K wire) Amount released **
Privileged and Confidential**

Lynn:

Just want to let you know as per our conversation earlier, the funds (690K) have been  released the
funds from PPAS.

**From:** Renee Dudley
**Sent:** Friday, January 29, 2016 4:34 PM
**To:** Lynn Tilton
**Subject:** RE: Approval to release funds from PPAS- TransCare 1/29/2016 (additional 690K wire) Just for clarification

Lynn:

I just want to make extra sure that these funds can be released from PPAS?

<div style="border:1px solid black">

**DX  121**

LaMonica v. Tilton, et al.
18-01021-smb

</div>

1

**A3669**

**From:** Renee Dudley
**Sent:** Friday, January 29, 2016 2:38 PM
**To:** Lynn Tilton
**Subject:** RE: Approval to release funds from PPAS- TransCare 1/29/2016 (additional 690K wire)

Okay thank you, I agree that you definitely need to be protected.

---

**From:** Lynn Tilton
**Sent:** Friday, January 29, 2016 2:34 PM
**To:** Renee Dudley
**Subject:** RE: Approval to release funds from PPAS- TransCare 1/29/2016 (additional 690K wire)

Yes, but I need documents first here to protect me.



PATRIARCH PARTNERS

Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

---

**From:** Renee Dudley
**Sent:** Friday, January 29, 2016 2:33 PM
**To:** Lynn Tilton
**Subject:** Approval to release funds from PPAS- TransCare 1/29/2016 (additional 690K wire)

Lynn:

*I understand that you are awaiting additional documentation, however, I wanted to be proactive with sending you this request to release an additional wire from PPAS.*

This is requesting approval to release an additional $690,168.24 from PPAS today for Transcare on 1/29/2016.

Renee

---

**From:** Lynn Tilton
**Sent:** Thursday, January 28, 2016 7:55 PM
**To:** Carlos Mercado
**Cc:** Renee Dudley; Michael Greenberg
**Subject:** RE: Ark II Funding - TransCare Vehicles

2

**A3670**

PP-TRBK0099193

These vehicles will be owned by Ark II and leased to Transcare.
PPAS should wire and Ark II will reimburse PPAS.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

---

**From:** Carlos Mercado
**Sent:** Thursday, January 28, 2016 7:54 PM
**To:** Lynn Tilton
**Cc:** Renee Dudley; Michael Greenberg
**Subject:** Ark II Funding - TransCare Vehicles

Lynn,

Pursuant to Michael's email with respect to providing funding for the purchase of two vehicles for TransCare, with your approval, tomorrow morning we will initiate a wire in the amount of **$195,975** (2 vehicles @ $90K each plus applicable sales tax) from Ark II.

**Would you prefer have the wire: (i) go directly from Ark II to the vendor, or (ii) go to PPAS first and via direction letter be forwarded to the vendor?**

Thanks,


**Carlos E. Mercado**
Controller

Patriarch Partners, LLC
One Broadway, 5th FL
New York, NY 10004
646-723-7632

3

**A3671**

PP-TRBK0099194

| | |
|---|---|
| **From:** | Lynn Tilton |
| **Sent:** | Thursday, February 4, 2016 8:23 AM |
| **To:** | Jean Luc Pelissier; Michael Greenberg; Brian Stephen; Randy Jones |
| **Subject:** | RE: Privileged and Confidential |

You can let Carl Marks know we never thought we hired them to ask for cash but actually to help rationalized the business, cut expenses and make it work.  Overpaid bill payers.



*Lynn Tilton*
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

---

**From:** Jean Luc Pelissier
**Sent:** Thursday, February 04, 2016 7:49 AM
**To:** Lynn Tilton; Michael Greenberg; Brian Stephen; Randy Jones
**Subject:** Re: Privileged and Confidential

Lynn

Michael and I will be at Transcare all day today to build alternatives business scenario for your review Friday. I believe that we have all the pieces to do so bottom up.

Can you let us know of an appropriate time on your calandar Friday early in the day to review our conclusion ?

Thank you, Jean Luc

Sent via BlackBerry by AT&T

---

**From:** Lynn Tilton <Lynn.Tilton@PatriarchPartners.Com>
**Date:** Thu, 4 Feb 2016 12:23:32 +0000
**To:** Jean Luc Pelissier<JeanLuc.Pelissier@PatriarchPartners.com>; Michael Greenberg<Michael.Greenberg@PatriarchPartners.com>; Brian Stephen<Brian.Stephen@PatriarchPartners.com>; Randy Jones<Randy.Jones@PatriarchPartners.com>
**Subject:** Privileged and Confidential

1

DX  123

LaMonica v. Tilton, et al.
18-01021-smb

**A3672**

Confidential

PP-TRBK0107343

I really need a plan on Friday on a way to move forward or a shut down plan on Transcare.
I cannot put any more money into a blind black hole.
It also means the need for a CEO and CFO if it moves forward.
Right now no one is fixing the business just asking for piles of cash.
It kept me up all night.



Lynn Tilton
Chief Executive Officer
Patriarch Partners, LLC
One Broadway, 5th Floor
New York, NY 10004
212-825-6772
212-825-2038 – FAX
Lynn.Tilton@PatriarchPartners.com
Web: www.patriarchpartners.com

2

**A3673**

Confidential

| From: | Michael Greenberg |
|---|---|
| Sent: | Sunday, February 7, 2016 8:48 AM |
| To: | Jean Luc Pelissier |
| Subject: | TransCare |
| Attachments: | TransCare - Summary Presentation 02.06.16 v6.pptx |

Jean Luc,

Below were the follow up items.

I think we can potentially be ready (for the most part) to discuss with Lynn by the end of the day tomorrow.  I have to be at PP first thing due to expected issue with [Non-Responsive] and its interest payment but then can be at TransCare.

I think we may need to think through with Glen Youngblood, Earl and Pete how one would effectuate a reduction in the operation like the one being considered.

Carl said that he would be sending a revised 13-week cash forecast by noon today (excl. core/NYC 911) so should hopefully have that soon.

Jonathan is reviewing a revised 2016 budget model which I was working through yesterday and he is preparing a summary of the expense structure by division.

1. Which entities hold which contracts?  Been reviewed but Brian also taking a look at.
2. File some of the pieces / entities. Seems to be a challenge given that there is some crossing between entities in certain areas.
3. MTA – set up in a separate entity – provide some separate funding (MTA – address the rebate)
4. Negotiate out of the headquarters lease – would need to have that discussion to see what can be done
5. Financial forecast – Scenario 2 – expense structure by division - compare expenses % of revenue by business (in particular driver comp. as a % of revenue) (shutting down non core / EMS) (Jonathan is working on)
6. 13-week cash forecast – use MSG latest but look at what expenses can be avoided due to entities not going forward with.
7. NYC 911 or non-core – look at pricing – ways to make it more profitable to make it worthwhile (discuss with Glen Youngblood or speak with customers)
8. Assess TransCare Corp. filing to restructure
9. Discuss improvements to be made – market – by – market (previously covered - in presentation as an overview)

I was debating as to whether we need to meet today with Carl, Jonathan and possibly Glen but we can continue to compile today.

I have some Super Bowl events later today but otherwise around today.

If you think of anything or think we should have a call or meet (possibly later as things come together more), please let me know.  I can get in early tomorrow as well.

Michael

DX  127

LaMonica v. Tilton, et al.
18-01021-smb

Confidential