# 20 Civ. 06274 (LAK)

**United States District Court**

*for the*

**Southern District of New York**

_____

IN RE TRANSCARE CORPORATION, ET AL.

DEBTORS,

_____

PATRIARCH PARTNERS AGENCY SERVICES, LLC, ET AL.

DEFENDANTS-APPELLANTS,

—against—

SALVATORE LAMONICA, AS CHAPTER 7 TRUSTEE OF THE JOINTLY- ADMINISTERED ESTATES OF TRANSCARE CORPORATION, ET AL.,

PLAINTIFF-APPELLEE.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (BERNSTEIN, J.)

IN RE: TRANSCARE CORPORATION, ET AL., CASE NO. 16-10407 (SMB)

LAMONICA V. TILTON, ET AL., ADV. PROC. NO. 18-1021 (SMB)

## SUPPLEMENTAL APPENDIX TO APPELLEE'S BRIEF

Bijan Amini

Avery Samet

AMINI LLC
131 West 35th Street
12th Floor
New York, NY 10001
Tel.: (212) 490-4700
bamini@aminillc.com
asamet@aminillc.com
*Attorneys for Plaintiff-
Appellee Salvatore LaMonica, as
Chapter 7 Trustee*

## TABLE OF CONTENTS

| Document Description | Date | Exhibit No. | Appendix Page |
|---|---|---|---|
| Email from Michael Greenberg to Lynn Tilton; copying Jean Luc Pelissier, Brian Stephen - TransCare - Summary of meeting with Wells Fargo | 12/21/2015 | DX 97 | A4185 |
| Email from Brian Stephen to Matt Nolan and Jean Luc Pelissier, copying Glen Youngblood, Thomas Fuchs, Thomas Milea, Earl Kossuth, Jean Luc Pelissier (CBA), Michael Greenberg, Randy Jones and John Pothin -RE: Securing Assets | 2/25/2016 | JX 103 | A4187 |
| Email from Brian Stephen to Dian Morgenroth - Re: Transcendence Transit II, Inc./Paratransit Agreement | 2/26/2016 | PX 244 | A4192 |
| Exhibit D to Proposed Joint Pretrial Order – Trustee's Designations to J. Husson Deposition | 5/14/2019 | Dkt. 85-4 | A4196 |
| Excerpt of Designated Deposition Testimony of John Husson in *LaMonica v. Tilton, et al*, Adv. Proc. No. 18-01021-smb | 11/12/2018 | | A4203 |

| From: | Michael Greenberg |
|---|---|
| Sent: | Monday, December 21, 2015 7:24 PM |
| To: | Lynn Tilton |
| Cc: | Jean Luc Pelissier; Brian Stephen |
| Subject: | TransCare - Summary of meeting with Wells Fargo |

Privileged and confidential

Lynn,

Below is a summary from today's meeting with John Husson and Bob Strack.  We will discuss a few additional items as well.

- John has been frustrated by the surprises including those related to the borrowing base and recent surprise regarding payroll taxes.

- We explained that we have been similarly frustrated.

- Their attorneys said that the Milea property's eviction could still be enforceable (Milea will still want to evict even if payments are made) (even if $888k in payments are made).  Mark reported the same post the receipt of the court order (case is on January 22nd).  TransCare will also look to pay its $81k in rent in January.  TransCare is looking for alternative space in the interim (just in case).

- John mentioned the upcoming January 31st maturity and that they continue to lend on a discretionary basis (we said that it why the short-term agreement needs to be completed).

Key components as they outlined to a long-term agreement.
- <u>We mentioned a 9-month time frame.</u>  They believed that it may be long but could definitely live with a 6-month time frame (9 months if possible but would need to discuss internally).
- <u>Payment priority in a sale (allocation of sale proceeds).</u>  Wells Fargo would want assure that Wells Fargo is paid out first from the proceeds of a sale.  Wells had said that the Intercreditor Agreement is silent on this issue but believe they should be adequately covered on their outstanding amount.
- <u>Agreed upon budget.</u>  Based on the time frame, Wells Fargo would like to receive a budget shows TransCare paying all expenses on a current basis.  Covenant that will allow for a 10% - 15% variance (sounded like 15% could work).
- <u>Capitalization and liquidity.</u>  Prefer a plan that has a liquidity cushion (does not have to be $1MM in unused availability but even $500k (enough to absorb allowed variance) versus current level which is typically very low (under $100k).
- <u>Ongoing financial reporting will be required</u> as part of covenants.
- <u>Consultant</u> – Wells Fargo would want a third-party consultant.  Wells Fargo has someone they would recommend but Patriarch would interview and vet.  Consultant would report to the Board but Wells Fargo would have access to consultant.  Consultant would assist Mark or be interim CFO and review budget, assist Mark in managing liquidity, perform a variance analysis of actual vs. budget.
  - Company would pay for the consultant.  Cost likely to average about $40k per month.
  - None of the high priced firms.  Wells Fargo has several consultants with experience in the ambulance sector.
  - 
- <u>Critical payments</u> – Wells Fargo would want a representation that critical payments are being made in accordance with the agreed upon budget (mentioned in particular payroll, payroll taxes and

1

DX   97

LaMonica v. Tilton, et al.
18-01021-smb

Confidential

PP-TRBK0106826

insurance).  Critical operating expenses (payroll, payroll taxes, insurance were mentioned).  Otherwise, they would view this as an event of default.

- <u>Milestones</u> would be set as part of the sale process (depending on the time frame agreed to).
- <u>Reserves</u> -  John said he could see if they could provide some notice on a reserve if still within BBC formula (Wells Fargo is not over advanced after the borrowing request).
- <u>Sub-note as part of ABL</u> – They highlighted a number of legal concerns and that it went all the way up to Kurt (who discussed with credit side but could not get there).


Wells Fargo also asked for the latest payments that are coming due.  We explained that NYSIF remaining payments ($1MM by year-end) and Milea/Hamilton payment ($444k by December 31st) were the most meaningful.  NYSIF is owed another $800k in Q1 2016 and requested a $400k down payment to renew in 2016 (originally deferred).

Thank you,
Michael

Michael S. Greenberg
Patriarch Partners
One Broadway, 5th Floor
New York, NY 10004
Direct: 646-723-7657
Fax:  212-825-2038
Email: michael.greenberg@patriarchpartners.com
www.patriarchpartners.com

**A4186**

Confidential

PP-TRBK0106827

| | |
|---|---|
| **From:** | Brian Stephen |
| **Sent:** | Thursday, February 25, 2016 11:39 PM |
| **To:** | 'Matt Nolan'; Jean Luc Pelissier (CBA) |
| **Cc:** | 'Glen Youngblood'; 'Thomas Fuchs'; 'Thomas Milea'; Earl Kossuth; Jean Luc Pelissier; Michael Greenberg; Randy Jones; John Pothin |
| **Subject:** | RE: Securing Assets |

Please note that this would only apply to employees in good standing with Transcendence – **meaning those that continue to work as scheduled**.

---

**From:** Brian Stephen
**Sent:** Thursday, February 25, 2016 11:37 PM
**To:** 'Matt Nolan'; Jean Luc Pelissier (CBA)
**Cc:** Glen Youngblood; Thomas Fuchs; Thomas Milea; Earl Kossuth; Jean Luc Pelissier; Michael Greenberg; Randy Jones; John Pothin
**Subject:** RE: Securing Assets

Matt,

I have information on the payroll – and we ask that Glenn to please get this message out to the NewCo employees ASAP.

If the Transcare bankruptcy estate does not make payroll for last week, Transcendence Transit will pick up that liability and pay Transcendence Transit employees for their last week of work for TransCare.  It may take a day or so to get the payments into the system, but the employees will be paid.

---

**From:** Matt Nolan [mailto:MattN@transcare.com]
**Sent:** Thursday, February 25, 2016 11:25 PM
**To:** Jean Luc Pelissier (CBA)
**Cc:** Brian Stephen; Glen Youngblood; Thomas Fuchs; Thomas Milea; Earl Kossuth; Jean Luc Pelissier; Michael Greenberg; Randy Jones; John Pothin
**Subject:** Re: Securing Assets

Is Hudson Valley payroll ok for tomorrow?

MN

Matt Nolan
Vice President
TransCare Hudson Valley
10 South White Street
Poughkeepsie, New York 12601
(845) 234-3199

On Feb 25, 2016, at 11:23 PM, "pelissier@cbagroupllc.com" <pelissier@cbagroupllc.com> wrote:

1

**A4187**

**JX 103**

LaMonica v. Tilton, et al., 18-1021-smb

PP-TRBK0043500

Brian and all

I just talked to Glenn who had just talked to Tom Milea

Here is the plan : Tom, Glenn and some other resources are going to the Milea building to pick up the AS400 server.

The server will be moved using a non ambulance vehicle to the MTA facility and reconnected on time for the MTA para transit division to do their early morning routing.

Earl in PA will not be able to do CAD toomorow and will have to manage with the according procedure.

Billing in PA will be held for a couple of days until the system is back in service. The AS400 move should not have any impact on Hudson Valley since they are using a different system for call intake, dispatch and billing.

So as long as they can take the system tonight and move it to the MTA , they know they have enough air conditioning to run it and get going.

Earl , you will have to plan running the next two days without CAD access which I understand you have a procedure for it.

Best regards, Jean Luc
Sent via BlackBerry by AT&T

---

**From:** Brian Stephen <Brian.Stephen@PatriarchPartners.com>
**Date:** Fri, 26 Feb 2016 04:14:35 +0000
**To:** Matt Nolan<MattN@transcare.com>
**Cc:** Glen Youngblood<GlenY@transcare.com>; Thomas Fuchs<thomasf@transcare.com>; Thomas Milea<thomasm@transcare.com>; Earl Kossuth<earlk@transcare.com>; Jean Luc Pelissier<JeanLuc.Pelissier@PatriarchPartners.com>; Michael Greenberg<Michael.Greenberg@PatriarchPartners.com>; Randy Jones<Randy.Jones@PatriarchPartners.com>; John Pothin<John.Pothin@PatriarchPartners.com>
**Subject:** RE: Securing Assets

Matt,

I am trying to confirm that it does not, but I've been out of the loop on some of that.  It is my understanding that we want to do all we can for NewCo employees and a big part of that is having an operating company as a whole.

Is there anyone who can reach out to emsCharts about the ePCR agreement?  We need to get that moved to Newco ASAP.  Please let me know who might be able to handle that.

Also, we're going to need to make sure we can get to the MTA vehicles – I have been corresponding with Tom Charles and his attorney tonight and they are expecting business as usual while we iron work through the assignment process.

2

**A4188**

Ultimately, we need to identify someone at Transcendence who can help make sure that things do not go off the rails because of whatever might be happening at TransCare.

---

**From:** Matt Nolan [mailto:MattN@transcare.com]
**Sent:** Thursday, February 25, 2016 10:59 PM
**To:** Brian Stephen
**Cc:** Glen Youngblood; Thomas Fuchs; Thomas Milea; Earl Kossuth; Jean Luc Pelissier; Michael Greenberg; Randy Jones; John Pothin
**Subject:** Re: Securing Assets

Does this impact Hudson Valley payroll?

Matt Nolan
Vice President
TransCare Hudson Valley
10 South White Street
Poughkeepsie, New York 12601
(845) 234-3199

On Feb 25, 2016, at 10:53 PM, Brian Stephen <Brian.Stephen@PatriarchPartners.com> wrote:

> Everyone,
>
> As you may be aware, the senior lenders for TransCare foreclosed on all of its assets and those assets were sold to Transcendence Transit.
>
> The initial proposal was to allow TransCare to continue to use those assets for a period of time to allow it to wind-down its business in an orderly fashion.
>
> Unfortunately, due to a number of circumstances, that will not be the case and there will be no wind-down period.
>
> As a result, we need to try and secure as many assets (ambulances, equipment, etc.) as possible as quickly as we can.
>
> I am not entirely sure where the most valuable assets are, but it makes sense to target those first – if those assets can be moved.
>
> The TransCare bankruptcy trustee has ordered employees to stop working and to return to their bases.  I have heard unconfirmed reports that some are leaving ambulances on the road and walking away – I am not sure whether that is an accurate report.
>
> We need to develop a plan to try and save as much as we can.

3

**A4189**

Confidential

Please let me know if people are available for a call tonight and we will try to come up with a method to save what we can.

Thanks,
Brian

Brian D. Stephen
Senior Director, Legal
Patriarch Partners, LLC
One Broadway
New York, NY 10004
646.723.7656 Office
212.825.2038
www.patriarchpartners.com

---

The information in this email is confidential and may be legally privileged. If you are not an intended recipient, you should delete this message.  Access to this email by anyone else is unauthorized, and any disclosure, copying, distribution or action taken or omitted in reliance on it is prohibited and may be unlawful.

---

**TransCare Corporation Confidentiality Note** This E-mail message is intended to be received by persons entitled to receive the confidential information it may contain.  Please do not Read, Copy, Forward or Save this message unless you are the intended recipient.  If you have received this message in error, Please Forward it back to the Sender and Delete it completely from your computer system.

---

Checked: By Barracuda Spam and Virus Firewall

---

The information in this email is confidential and may be legally privileged. If you are not an intended recipient, you should delete this message.  Access to this email by anyone else is unauthorized, and any disclosure, copying, distribution or action taken or omitted in reliance on it is prohibited and may be unlawful.

---

**TransCare Corporation Confidentiality Note** This E-mail message is intended to be received by persons entitled to receive the confidential information it may contain.  Please do not Read, Copy, Forward or Save this message unless you are the intended recipient.  If you have received this message in error, Please Forward it back to the Sender and Delete it completely from your computer system.

---

Checked: By Barracuda Spam and Virus Firewall

4

**A4190**

**A4191**

Confidential

PP-TRBK0043504

| | |
|---|---|
| **From:** | Brian Stephen |
| **Sent:** | Friday, February 26, 2016 11:34 AM |
| **To:** | 'Morgenroth, Diane' |
| **Subject:** | RE: Transcendence Transit II, Inc./Paratransit Agreement |

Hi Diane,

Do you have a moment to speak about TC Paratransit?

If so, please let me know the best number to reach you.

Best,
Brian

**From:** Morgenroth, Diane [mailto:Diane.Morgenroth@nyct.com]
**Sent:** Thursday, February 25, 2016 11:12 PM
**To:** Brian Stephen
**Subject:** Re: Transcendence Transit II, Inc./Paratransit Agreement

Ok. Talk to you tomorrow. I just finished dinner!!!! And the restaurant was packed.

Diane M.

On Feb 25, 2016, at 10:03 PM, Brian Stephen <Brian.Stephen@PatriarchPartners.com> wrote:

Diane,

Thank you.

I have a doctor's appointment in the morning, but will be in around 9:45 or so and we can catch up anytime when you are available,

Best,
Brian

**From:** Morgenroth, Diane [mailto:Diane.Morgenroth@nyct.com]
**Sent:** Thursday, February 25, 2016 9:56 PM
**To:** Brian Stephen
**Cc:** Charles, Thomas; Randy Jones
**Subject:** Re: Transcendence Transit II, Inc./Paratransit Agreement

Thank you for the explanation. We will be in touch tomorrow.
I understood that you and Transcare were to meet with the Trustee today and I would be interested in learning what transpired.

Diane Morgenroth

1

**A4192**

**PX 244**

LaMonica v. Tilton, et al., 18-1021-smb

Confidential

PP-TRBK0043520

On Feb 25, 2016, at 8:49 PM, Brian Stephen <Brian.Stephen@PatriarchPartners.com> wrote:

Tom and Diane,

My name is Brian Stephen and I am an attorney with Patriarch Partners.

I understand there has been some confusion about recent events and I am hopeful that my below description will shed some much needed light on events.

At 12:01AM on February 24, 2016, certain secured lenders of TransCare Corporation and TransCare New York, Inc. (collectively, "TransCare") notified TransCare that the company was in default under the terms of its credit agreement.

The secured lenders agreed to accept certain collateral from TransCare, including, but not limited to, the Access-A-Ride Paratransit Transportation Service Agreement (the "Agreement") between the MTA and TransCare, in satisfaction of a portion of TransCare's obligations to the secured lenders.

The Agreement is a "general intangible" and, under the applicable credit document, the lenders were able to foreclose on it.  The lenders foreclosed on the Agreement to try and protect the MTA's Paratransit operations as well as the 390 TransCare employees who provide the service.
Immediately after the foreclosure, the secured lenders sold the foreclosed assets (including the Agreement) to Transcendence Transit, Inc., which, in turn, contributed the Agreement to its wholly-owned subsidiary Transcendence Transit II, Inc.

Our goal in establishing Transcendence Transit II and for housing the Agreement with this entity is to protect the integrity of the Agreement and properly segregate any and all MTA-related revenue from the rest of the Transcendence Transit's operations.  From our prior discussions, we know that this separation is necessary in order to allow the MTA to properly audit and monitor Transcendence Transit II's performance and compliance with the Agreement's terms and conditions.  Basically, we carefully considered the concerns that the MTA raised with TransCare over the years and took meticulous care to try and structure the arrangement to address all of those concerns – including establishing separate bank accounts for Transcendence Transit II.

Both Transcendence Transit and Transcendence Transit II are Delaware corporations and were formed on February 10, 2016, which is 14 days prior to the foreclosure.  For your reference, I have also attached the Certificates of Incorporation for both companies.

2

**A4193**

All of the 390 drivers and other TransCare employees necessary for Transcendence Transit II to continue to provide service under the Agreement were transferred to Transcendence Transit II at the time of the foreclosure and are now employees of Transcendence Transit II; complete with health benefits and the availability of direct deposit for wages, which was no longer possible with TransCare New York.

In addition, both Transcendence Transit and Transcendence Transit II have Automobile Insurance, Excess Liability Insurance (including Excess Automobile coverage), General Liability Insurance, and Workers' Compensation Insurance.

With respect to the bankruptcy, TransCare filed for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code on the evening of February 24th and *after* the foreclosure.  <u>The bankruptcy trustee does not have the power and authority to unwind the foreclosure – nor has he expressed any misgivings or concerns about the foreclosure</u>.  In point of fact, it is much better for the bankruptcy trustee and for TransCare's bankruptcy estate that the Agreement and the employees associated with it have been moved and are no longer TransCare's responsibility.

<u>The bankruptcy of TransCare has no impact on Transcendence Transit II's ability to provide uninterrupted service to the MTA in accordance with the terms of the Agreement</u>.

I hope this provides you with answers to some of your questions and I will be available to speak with you and/or Ms. Morgenroth at 10PM or before if either of you becomes available.

Best,
Brian

Brian D. Stephen
Senior Director, Legal
Patriarch Partners, LLC
One Broadway
New York, NY 10004
646.723.7656 Office
212.825.2038
www.patriarchpartners.com

---

The information in this email is confidential and may be legally privileged. If you are not an intended recipient, you should delete this message.  Access to this email by anyone else is unauthorized, and any disclosure, copying, distribution or action taken or omitted in reliance on it is prohibited and may be unlawful.

---

&lt;TRANSCENDENCE TRANSIT INC - DE - Formation.pdf&gt;

&lt;TRANSCENDENCE TRANSIT II INC - DE - Formation.pdf&gt;

---

The information in this email is confidential and may be legally privileged. If you are not an intended recipient, you should delete this message.  Access to this email by anyone else is unauthorized, and any disclosure, copying, distribution or action taken or omitted in reliance on it is prohibited and may be unlawful.

**A4194**

Confidential

PP-TRBK0043522

4

**A4195**

Confidential

PP-TRBK0043523

LAMONICA V. TILTON, ET AL.

EXHIBIT D TO PROPOSED JOINT PRETRIAL ORDER

TRUSTEE'S DESIGNATIONS TO J. HUSSON DEPOSITION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | Chapter 7 |
|     **TRANSCARE CORPORATION, *et al.*,** | Case No. 16-10407 (SMB) |
|                              **Debtors.** | (Jointly Administered) |
| **SALVATORE LAMONICA, as Chapter 7 Trustee** **for the Estates of TransCare Corporation, <u>et al.</u>,** | Adv. Proc. No. 18-01021 |
|                       **Plaintiff,** | |
|    v. | |
| **LYNN TILTON, <u>et al.</u>,** | |
|                       **Defendants.** | |

**TRUSTEE'S DESIGNATIONS OF THE**
**DEPOSITIONS OF JOHN HUSSON DATED NOVEMBER 12, 2018 AND**
<u>**DEFENDANTS' OBJECTIONS AND CROSS-DESIGNATIONS**</u>

I. *Ien v. TransCare Corp., et al.*, Adv. Proc. No. 16-1033, Rule 30(b)(6) Deposition Transcript[1]

| | DESIGNATIONS (PAGES/LINES) | OBJECTION(S) | CROSS DESIGNATIONS (PAGES/LINES) |
|---|---|---|---|
| 1. | 8:22-9:3 | | |
| 2. | 9:8-13:24 | | |
| 3. | 16:25-18:25 | 17:23-18:17: Lack of personal knowledge; Improper lay opinion<br><br>18:18-25: Hearsay | |
| 4. | 19:7-21:8 | 19:10-23: Hearsay; Lack of foundation; Lack of personal knowledge<br><br>21:3-8: Lack of personal knowledge; Improper lay opinion | |
| 5. | 27:17-20 | | |
| 6. | 28:22-29:8 | Lack of relevance | |
| 7. | 32:13-36:20 | 33:2-34:6: Lack of personal knowledge; Hearsay<br><br>36:17-20: Lack of personal knowledge; Improper lay opinion | |
| 8. | 39:11-18 | | |
| 9. | 42:6-45:9 | 42:12-23: Hearsay; Lack of personal knowledge<br><br>42:24-43:16: Hearsay; Lack of personal knowledge; Lack of relevance<br><br>44:3-44:23: Hearsay; Lack of personal knowledge; Lack of relevance | |

---

[1] To the extent the Trustee withdraws any portion of the testimony designated herein, Defendants reserve all rights to supplement their designations with some or all of the withdrawn testimony.

| | DESIGNATIONS (PAGES/LINES) | OBJECTION(S) | CROSS DESIGNATIONS (PAGES/LINES) |
|---|---|---|---|
| | | 44:24-45:5: Lack of foundation; Lack of personal knowledge; Lack of relevance | |
| 10. | 48:15-51:6 | 50:8-14: Lack of relevance; Lack of foundation | |
| 11. | 53:23-54:12 | Lack of relevance | |
| 12. | 56:18-57:25 | 56:18-57:20: Lack of relevance<br><br>57:21-25: Lack of relevance; Lack of personal knowledge; Lack of foundation | |
| 13. | 58:2-60:8 | | |
| 14. | 63:16-65:16 | Lack of personal knowledge | |
| 15. | 66:19-71:6 | | |
| 16. | 71:15-18 | | |
| 17. | 72:5-73:24 | 73:2-21: Hearsay | |
| 18. | 84:7-86:3 | Lack of relevance | |
| 19. | 87:22-88:2 | Lack of relevance; Lack of personal knowledge | |
| 20. | 93:8-94:5 | Lack of relevance | |
| 21. | 95:17-97:8 | Lack of personal knowledge; Lack of relevance | |
| 22. | 98:22-99:4 | Lack of foundation; Lack of relevance | |
| 23. | 99:10-23 | Lack of relevance | |
| 24. | 100:12-101:18 | Lack of relevance | |
| 25. | 107:18-108:2 | | |
| 26. | 109:13-110:9 | | |
| 27. | 112:22-114:10 | Lack of relevance | |

| | DESIGNATIONS (PAGES/LINES) | OBJECTION(S) | CROSS DESIGNATIONS (PAGES/LINES) |
|---|---|---|---|
| 28. | 114:22-116:16 | 116:4-16: Lack of relevance | |
| 29. | 116:17-119:16 | Lack of relevance | |
| 30. | 120:21-122:7 | 120:21-121:11: Lack of relevance<br><br>121:12-122:7: Lack of relevance; Lack of foundation | |
| 31. | 123:9-22 | | |

II.    *Lamonica v. Tilton, et al.*, Adv. Proc. No. 18-1021, Rule 30(b)(6) Deposition Transcript

| | DESIGNATIONS (PAGES/LINES) | OBJECTION(S) | CROSS DESIGNATIONS (PAGES/LINES) |
|---|---|---|---|
| 1. | 10:25-11:25 | | |
| 2. | 12:2-14:5 | Lack of relevance | |
| 3. | 14:14-15:16 | | |
| 4. | 16:14-22:15 | 19:7-20:2: Improper lay opinion; Lack of foundation<br><br>20:14-21:5: Lack of relevance<br><br>21:6-22:15: Lack of foundation; Lack of personal knowledge; Lack of relevance | |
| 5. | 23:11-25:10 | | |
| 6. | 25:11-28:5 | | |
| 7. | 29:9-31:5 | Lack of foundation; Lack of personal knowledge | |
| 8. | 40:25-42:3 | | |
| 9. | 44:3-50:11 | 46:13-47:7: Lack of relevance<br>47:8-48:10: Lack of relevance; Lack of personal knowledge<br>48:11-50:11: Lack of | |

| | DESIGNATIONS (PAGES/LINES) | OBJECTION(S) | CROSS DESIGNATIONS (PAGES/LINES) |
|---|---|---|---|
| | | relevance | |
| 10. | 50:12-51:5 | | |
| 11. | 52:10-55:18 | | |
| 12. | 55:19-57:6 | | |
| 13. | 59:12-60:8 | | |
| 14. | 65:11-67:10 | Lack of relevance | |
| 15. | 67:22-68:4 | Lack of relevance | |
| 16. | 72:12-73:13 | | |
| 17. | 73:14-78:9 | 76:19-77:5: Improper lay opinion | |
| 18. | 78:24-79:6 | | |
| 19. | 80:3-17 | | |
| 20. | 82:3-83:8 | 82:23-83:5: Improper lay opinion | |
| 21. | 84:3-15 | | |
| 22. | 87:2-21 | Lack of relevance | |
| 23. | 88:4-25 | Lack of relevance; Hearsay | |
| 24. | 92:11-95:4 | 92:11-93:11: Lack of relevance<br><br>93:12-95:4: Lack of relevance; Hearsay | |
| 25. | 99:12-102:18 | Lack of relevance; Hearsay | |
| 26. | 111:8-113:22 | 113:3-22: Lack of relevance | |
| 27. | 114:4-12 | Lack of relevance; Hearsay | |
| 28. | 115:7-16 | | |
| 29. | 117:7-120:24 | | |
| 30. | 125:25-128:9 | | 128:10-22 |

| | DESIGNATIONS (PAGES/LINES) | OBJECTION(S) | CROSS DESIGNATIONS (PAGES/LINES) |
|---|---|---|---|
| 31. | 129:13-131:15 | | |
| 32. | 132:15-133:11 | | |

Dated:  May 14, 2019
        New York, New York

                        STORCH AMINI PC

                        By:  *s/ Avery Samet*
                              Bijan Amini
                              Avery Samet
                              Jaime B. Leggett
                              New York, NY 10017
                              Tel.:  (212) 490-4100
                              Fax:  (212) 490-4208
                              Email:  bamini@storchamini.com
                                       asamet@storchamini.com
                                     jleggett@storchamini.com
                              *Attorneys for Plaintiff*

Dated:  May 14, 2019
        New York, New York

                        PROSKAUER ROSE LLP

                        By:  *s/ Michael T. Mervis*
                              Michael T. Mervis
                              Timothy Q. Karcher
                              Eleven Times Square
                              New York, NY  10036-8299
                              Tel.: (212) 969-3000
                              Fax: (212) 969-2900
                              Email: mmervis@proskauer.com
                                     tkarcher@proskauer.com

                              Nicole A. Eichberger (*pro hac vice*)
                              650 Poydras Street
                              Suite 1800
                              New Orleans, LA 70130-6146
                              Tel.: (504) 310-2024
                              Fax: (504) 310-2022
                              Email: neichberger@proskauer.com
                              *Attorneys for Defendants*

## <u>11/12/2018 Husson Deposition Transcript</u>

## **[Page 1-7; 82-83]**

1
2          UNITED STATES BANKRUPTCY COURT
3          SOUTHERN DISTRICT OF NEW YORK
4    -------------------------------X
5    In re:
6    TRANSCARE CORPORATION, et al,      Chapter 7
7                   DEBTORS,
8    -------------------------------X  CASE NO:
     SALVATORE LAMONICA, as Chapter 7   16-10407
9    Trustee of the Estates of            (SMB)
     TransCare Corporation, et al.,
10
                    Plaintiff,          Jointly
11                                      Administered
            VS.
12
     LYNN TILTON, PATRIARCH PARTNERS
13   AGENCY SERVICES, LLC, PATRIARCH    Adv. Proc.
     PARTNERS, LLC, PATRIARCH PARTNERS  No. 18-1021
14   MANAGEMENT GROUP, LLC, ARK II CLO
     2001-1, LIMITED, ARK INVESTMENT
15   PARTNERS II, LP, LD INVESTMENTS,
     LLC, PATRIARCH PARTNERS II, LLC,
16   PATRIARCH PARTNERS III, LLC,
     PATRIARCH PARTNERS VIII, LLC,
17   PATRIARCH PARTNERS XIV, LLC,
     PATRIARCH PARTNERS XV, LLC,
18   TRANSCENDENCE TRANSIT, INC., and
     TRANSCENDENCE TRANSIT II, INC,
19
                    Defendants.
20   -------------------------------X
21      VIDEOTAPED DEPOSITION OF JOHN HUSSON
22         Monday, November 12, 2018
23            New York, New York
24   Reported by:
     AYLETTE GONZALEZ, RPR, CLR, CCR
25   JOB NO. 150938

1

2                    DATE:  November 12, 2018

3                    TIME:  3:14 p.m.

4

5

6      Videotaped deposition of JOHN HUSSON,

7    held at the offices of STORCH AMINI, P.C., 2

8    Grand Central Tower, 140 East 45th Street,

9    New York, New York  10017, pursuant to

10   NOTICE, before AYLETTE GONZALEZ, a

11   Registered Professional Reporter, Certified

12   LiveNote Reporter, Certified Court Reporter

13   and Notary Public of the States of New York

14   and New Jersey.

15

16

17

18

19

20

21

22

23

24

25

1

2    A P P E A R A N C E S:

3

4    STORCH AMINI

5    Special Counsel for Chapter 7 Trustee

6    Salvatore LaMonica

7            2 Grand Central Tower

8            140 East 45th Street

9            New York, New York  10017

10   BY:     BIJAN AMINI, ESQ.

11

12

13   PROSKAUER ROSE

14   Counsel for Defendants

15            Eleven Times Square

16            New York, New York  10036

17   BY:     MICHAEL MERVIS, ESQ.

18            NICOLE EICHBERGER, ESQ.

19

20

21

22

23

24

25

```
 1

 2    A P P E A R A N C E S:

 3

 4    OUTTEN & GOLDEN

 5    Counsel for Ien Plaintiffs

 6          685 Third Avenue

 7          New York, New York  10017

 8    BY:     JACK RAISNER, ESQ.

 9          ROBERT FISHER, ESQ.

10

11

12

13

14    OTTERBOURG

15    Counsel for the Witness JOHN HUSSON

16          230 Park Avenue

17          New York, New York  10169

18    BY:     STANLEY LANE, JR., Esq.

19

20

21

22

23

24

25
```

1

2    A P P E A R A N C E S:

3

4    LAMONICA, HERBST & MANISCALCO

5    Counsel for the Trustee

6            3305 Jerusalem Avenue

7            Wantagh, New York  11793

8    BY:    JOSEPH MANISCALCO, ESQ.

9

10

11

12   PATRIARCH PARTNER

13           One Liberty Plaza

14           New York, New York  10006

15   BY:    WINDY McCRACKEN, ESQ.

16

17

18

19   ALSO PRESENT:

20           MALENE SCHJOENNING, Videographer

21

22

23

24

25

1        JOHN HUSSON (11/12/18)

2        THE VIDEOGRAPHER:  Good afternoon.

3   We're on the record to begin the

4   deposition of representative of Wells

5   Fargo Bank, John Husson in the matter

6   of Salvatore Lamonica vs. Lynn Tilton,

7   et al.

8        The case is venued in the

9   United States Bankruptcy Court

10  Southern District of New York.  The

11  case number is 16-10407.

12       Today's date is Monday,

13  November 12, 2018.  The time is

14  3:15 p.m.  The deposition is taking

15  place at Storch Amini PC, 140 East

16  45th Street, 25th Floor, New York,

17  New York 10017.

18       The legal videographer is Malene

19  Schnoenning here on behalf of Story

20  Cloud.

21       The court reporter is

22  Aylette Gonzalez here on behalf of TSG

23  Reporting.

24       Counsel, beware, the microphone is

25  sensitive, may pick up whispers,

1        JOHN HUSSON (11/12/18)

2    private conversations and cellular

3    interference, which may be captured on

4    the video, as well as taken down by

5    the court reporter as part of the

6    record of these proceedings.

7        The witness know you're still

8    under oath?

9        THE WITNESS:  Yes.

10        THE VIDEOGRAPHER:  You may

11    proceed.

12        MR. AMINI:  Before we start,

13    Michael, I think we've agreed, have we

14    not, that the transcript in the case

15    that was just taken in the WARN action

16    can be used in our action if as though

17    it were taken in our action?

18        MR. MERVIS:  Sure.

19        MR. AMINI:  That way, we'll avoid

20    any -- we'll avoid a lot of

21    repetition, put it that way.

22        MR. MERVIS:  Yes.

23        MR. AMINI:  All right.

24  J O H N   H U S S O N, resumed and testified

25  as follows:

Page 82

1             JOHN HUSSON (11/12/18)

2        Q.    No.

3              When did you find out about the

4    fore- -- do you know what the -- did you come

5    to an understanding that Ms. Tilton had

6    foreclosed on certain businesses?

7        A.    Yes.

8        Q.    How did you find out about that?

9        A.    I was alerted to that by our

10   counsel.

11       Q.    All right.  Were you alerted to it

12   after the fact?

13       A.    After the fact.

14       Q.    Were you told beforehand that it

15   was going to happen?

16       A.    No.  We had considered doing this

17   in a bankruptcy, but that never took place.

18   And then it was -- the companies were filed

19   and we found out about it, it was sort of done

20   unilaterally -- unilaterally without any

21   discussion or consideration given to us.

22   That's my recollection.

23       Q.    And did you believe that having

24   done it unilaterally without any discussion or

25   consideration given to us was a default under

1              JOHN HUSSON (11/12/18)

2    your Agreement?

3              MR. MERVIS:  Objection to the

4         form.

5         A.   Oh, yes.

6         Q.   You -- did you give consent to that

7    foreclosure?

8         A.   No.

9              MR. AMINI:  All right.  Can we

10        take a break, a very short break.  I

11        may be done.

12             THE VIDEOGRAPHER:  We're now off

13        the record.  The time is 5:13 p.m.

14             (Whereupon, at this time, a short

15        break was taken.)

16             THE VIDEOGRAPHER:  Back on the

17        record.  The time is 5:26 p.m.

18     EXAMINATION BY

19     MR. MERVIS:

20        Q.   Mr. Husson, my name's

21    Michael Mervis.  I represent the Defendants in

22    the lawsuit that Mr. Amini was just

23    questioning you about.

24        A.   Okay.

25        Q.   The one that was brought by